**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LINDA MIGLIORI, FRANCIS J. FOX, | ) | |
| RICHARD E. RICHARDS, KENNETH | ) | |
| RINGER, and SERGIO RIVAS | ) | |
| | ) | |
| Plaintiffs, | ) | Civ. No. 2:22-cv-00397 |
| | ) | |
| v. | ) | |
| | ) | |
| LEHIGH COUNTY BOARD OF | ) | |
| ELECTIONS, | ) | |
| | ) | |
| Defendant. | ) | |

_____

## <u>MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION</u>

Stephen A. Loney, Jr.  (No. 202535)
Marian K. Schneider (No. 50337)
ACLU OF PENNSYLVANIA
P.O. Box 60173
Philadelphia, PA 19102
P: 215-592-1513
sloney@aclupa.org
mschneider@aclupa.org

Witold Walczak (No. 62976)
Richard Ting (No. 200438)
ACLU OF PENNSYLVANIA
P.O. Box 23058
Pittsburgh, PA 15222
P: 412-681-7864
vwalczak@aclupa.org
rting@aclupa.org

*Counsel for Plaintiffs*

## I.   **INTRODUCTION**

Absent immediate court action, the Lehigh County Board of Elections ("Elections Board") will disenfranchise Plaintiffs, and hundreds of other duly registered Pennsylvania voters in Lehigh County, because they did not hand write the date when they signed their mail-in-ballot-return envelopes.  To be clear, there is no question that Plaintiffs timely voted in the 2021 election with duly signed mail-in ballots received by the Elections Board before the Election Day deadline.  And neither the Elections Board nor any other interested party has alleged any fraud or mischief with respect to the timing of these votes.  Plaintiffs' only transgression was an immaterial one.  While the Pennsylvania Election Code provision setting forth the "General rule" for mail-in voting states that electors "shall . . . date and sign" the outer envelope, 25 P.S. § 3150.16(a), summarily throwing out otherwise valid ballots for failure to date the signature violates the Civil Rights Act of 1964 and the First and Fourteenth Amendments to the United States Constitution.

Plaintiffs—a bipartisan group of impacted Lehigh County voters—require immediate action to prevent the irretrievable loss of their right to vote. Because the Elections Board has noticed a meeting for Tuesday morning, February 1, to certify the 2021 Municipal Election results, Plaintiffs file this emergency motion seeking to enjoin briefly the certification until such time as this Court can consider the merits of the federal claims.[1]  Plaintiffs request a temporary restraining order and preliminary injunction to enjoin the Elections Board from certifying

---

[1] Attached to Plaintiffs' accompanying Complaint at Ex. 11 is a true and correct copy of the Elections Board's notice to convene meetings on January 31, 2022, to count remaining ballots (*not* including Plaintiffs') and on February 1, 2022, "for the purpose of Final Certification of the conditional results for the 2021 Municipal Election within Lehigh County and for general purposes."

election results without counting these voters' ballots.  This relief is warranted, as Plaintiffs will suffer irreparable harm and are likely to succeed on the merits of their voting rights claims.

First, not counting Plaintiffs' ballots over the immaterial handwritten date provision runs afoul of section 10101(a)(2)(B) of the Civil Rights Act.  52 U.S.C. §10101(a)(2)(B).  This provision, known as the "Materiality Provision," plainly forbids denying individuals the fundamental right to vote based on an error or omission that is immaterial to determining the voter's eligibility to vote.  *Id.*  Where, as here, voters completed, signed and submitted their ballots prior to the statutory deadline to vote on Election Day, a requirement that they hand write the date on which they completed and signed the mail-in ballot is immaterial under any meaning of that term.  It is irrelevant to the issue of eligibility to vote, as the Election Code provides that each voter's eligibility was determined before they could even be issued a mail-in ballot.  And there is no law—in the Pennsylvania Election Code or otherwise—attaching any significance to the date on which a return envelope was completed and signed before it is timely returned for Election Day.  Indeed, the Pennsylvania Supreme Court determined that undated mail-in ballots would count for the 2020 general election.  *In re Canvass of Absentee and Mail-In Ballots of Nov. 3, 2020 General Election*, 241 A.3d 1058, 1079 (Pa. 2020) ["*In re 2020 Canvass*"].  The rejection of these similarly situated timely ballots for the 2021 election violates federal law pursuant to the Materiality Provision.

Second, disenfranchising Plaintiffs based on the Pennsylvania Election Code's handwritten date provision violates their fundamental right to vote under the First and Fourteenth Amendments to the U.S. Constitution, because it does not advance any legitimate state interest. While the requirement that voters add the date next to their signatures might appear to impose relatively little burden on individuals' right to vote, even the slightest burden on this most

important of rights must be supported by an important government interest.  There is simply *no* government interest behind layering a strict handwritten date requirement on top of the requirements that voters sign their ballots and submit them by 8:00 p.m. on Election Day.[2]

There is no adequate remedy at law to redress these violations of Plaintiffs' fundamental rights, especially if the Elections Board is left to certify an election without counting their votes on February 1.  The loss of the franchise is a rights deprivation of the highest order: "[T]he right of suffrage is a fundamental matter in a free and democratic society.  Especially since the right to exercise the franchise in a free and unimpaired manner is preservative of other basic civil and political rights, any alleged infringement of the right of citizens to vote must be carefully and meticulously scrutinized." *Reynolds v. Sims*, 377 U.S. 533, 561–62 (1964). Immediate injunctive relief is the only option to prevent this irreparable loss of fundamental constitutional rights.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are a bipartisan group of registered Pennsylvania voters.  They are five of the 257 Lehigh County voters whose mail ballots in the November 2, 2021, election will *not* be counted on Tuesday, February 1, solely because these voters did not hand write the date of their signatures on ballot return envelopes.

As more fully set forth in the accompanying Complaint for Emergency Injunctive and Declaratory Relief, all of the plaintiffs are eligible, registered voters in Lehigh County, all applied for and received their mail ballots from the Elections Board, all completed their ballots, signed the declaration on the outer envelope and sent their mail ballots to the county, and all of

---

[2] Plaintiffs have pled a third claim, alleging that discarding Plaintiffs' votes without giving them opportunity to cure this minor defect, or be heard to confirm eligibility and validity of their ballots, violates the Due Process Clause of the Fourteenth Amendment. In the interest of time and efficiency, however, they are not advancing the argument in this motion, as the request for temporary restraining order and preliminary injunctive relief are warranted based on the facts and law underlying Counts I and II of Plaintiffs' Complaint.

the Plaintiffs and the rest of the 257 voters who forgot or did not realize they needed to insert the

date on their ballot envelope will be disenfranchised because of this inconsequential omission.

In Pennsylvania, registered voters may vote by mail, either as an "absentee elector," if

they satisfy prescribed conditions, like current military service or absence from jurisdiction on

Election Day for work, or as a "mail-in" elector if they timely apply for a ballot, *See* 25 P.S. §§

3146.1 and 3150.11, respectively.  Under the Pennsylvania Election Code, identical procedures

govern how voters complete and return both types of ballots.[3]  Specifically, the procedures are

outlined in a provision of the Election Code entitled "General rule":

> At any time after receiving an official mail-in ballot, but on or before eight
> o'clock p.m. the day of the primary or election, the mail-in elector shall, in secret,
> proceed to mark the ballot only in black lead pencil, indelible pencil or blue, black
> or blue-black ink, in fountain pen or ball point pen, and then fold the ballot,
> enclose and securely seal the same in the envelope on which is printed, stamped
> or endorsed "official election ballot." This envelope shall then be placed in the
> second one, on which is printed the form of declaration of the elector, and the
> address of the elector's county board of election and the local election district of
> the elector. The elector shall then fill out, date and sign the declaration printed on
> such envelope. Such envelope shall then be securely sealed and the elector shall
> send same by mail, postage prepaid, except where franked, or deliver it in person
> to said county board of election.

*Id*. § 3150.16(a).  The voter delivers the entire package by mail or by hand to their county

elections board, and delivery is timely if made by 8:00 p.m. on Election Day.  *Id.* §§ 3146.6(c)

and 3150.16(c).[4]

Pursuant to this "General rule," Pennsylvania used a preprinted outer return envelope for

mail-in ballots during the 2021 election, a true and correct copy of which is attached as Ex. 10 to

Plaintiffs' Complaint.  The envelope is covered with a finely printed "Voter's declaration" and

two alternative signature fields—one for voters signing on their own behalf and the other to be

---

[3] We refer to both types of ballots simply as "mail-in" or "mail" ballots.
[4] Different timelines govern uniform military and overseas electors, but the differences are
immaterial to resolution of this dispute.

completed on behalf of voters "unable to sign their declaration because of illness or physical disability." *Id*. The blank fields for voters to complete are accompanied by even finer print indicating what information is to be included on each blank line. For voters signing on their own behalf, the return envelope includes a blank signature box with a dark **X** indicating where to sign. Next to that box is a blank line with the word "Date" printed underneath it in tiny font. *Id.*

It is undisputed that Plaintiffs' mail-in ballots were submitted and received before 8:00 p.m. on Election Day and otherwise complied with the foregoing "General rule" provision, but for the immaterial failure to hand write the date next to the signature field on the return envelope. All agree that Plaintiffs were eligible voters, and each of them placed their ballot in the correct secrecy envelope, placed the secrecy envelope in the outer return envelope, and signed it as required under the Election Code. The missing handwritten date on the return envelope is the only reason the Elections Board is not counting Plaintiffs' and the other mail voters' undated ballots.

The missing dates do not, however, affect the integrity of the ballot. Neither the Elections Board nor any interested party has contended otherwise. Counties log when a mail ballot has been received, and make that information available to voters on the Department of State's website. *See* Election Ballot Status, Dep't of State, https://www.pavoterservices.pa.gov/Pages/Ballot Tracking.aspx. Timely absentee and mail-in ballots that county boards of elections have verified consistent with the procedures set forth in § 3146.8(g)(3), that have not been challenged, and for which there is no proof that the voter died prior to Election Day, are counted and included with the election results. *Id*. § 3146.8(d), (g)(4). Whether the voter writes the date on the outer envelope does not affect either the timeliness of the ballot's return or the Elections Board's verification of timeliness. This conclusion is

consistent with the Pennsylvania Department of State's existing guidance, which instructs that the date written on the envelope is not "used to determine the eligibility of the voter." *See* Email from Jonathan Marks, Deputy Secretary for Elections & Commissions, Dep't of State, to County Election Officials (June 1, 2021).[5]  In short, the requirement that the voter write the date is immaterial to the integrity of the electoral process.

Recognizing that the missing handwritten dates were immaterial, the Elections Board initially determined that it would count the 257 ballots at issue.  However, following a Pennsylvania Commonwealth Court decision addressing whether *Pennsylvania law*—as opposed to the U.S. Constitution or Civil Rights Act—makes the date a precondition for counting the ballot, the Elections Board is now preparing to discard these ballots and certify the election without counting them on February 1, 2022.  The Pennsylvania courts' treatment of this issue is sparse, and reliant on Pennsylvania, not federal, law.

The Pennsylvania Supreme Court first addressed this issue during the 2020 general election and ruled that mail-in ballots returned signed but not dated would be counted during the 2020 election.  *See In re 2020 Canvass*, 241 A.3d at 1079 (opinion announcing judgment).  The Pennsylvania Supreme Court did not, however, produce a majority opinion in that case.  Three Justices concluded that undated ballots should be counted because the Pennsylvania Election Code's date rule is "directory" rather than mandatory.  *Id*. at 1076–78 (opinion announcing judgment).  A voter's non-compliance with some part of the Election Code can justify disenfranchisement, the plurality explained, only if the underlying instruction serves a "weighty interest."  *Id*. at 1076. And the date written on the outer envelope "does not implicate any weighty interest."  *Id*. at 1078.

---

[5] A true and correct copy of the June 1, 2021 email reflecting the Pennsylvania Department of State's guidance is attached to Plaintiffs' Complaint as Ex. 6.

Three other Justices wrote that undated ballots should not be counted, even for the 2020 election, because § 3146.6(a)'s and § 3150.16(a)'s "shall . . . date" language supplies an unambiguous, mandatory direction. *Id.* at 1090–91 (Dougherty, J., concurring and dissenting). In concurring, one justice rejected the "weighty interest" analysis altogether, despite decades of Pennsylvania Supreme Court precedent applying that interpretive framework, writing instead that the Election Code's instruction that voters "shall . . . date" the outer envelope is an "unmistakable statutory directive" that voters must follow.  *Id.* at 1085–87 (Wecht, J., concurring and dissenting).  Justice Wecht agreed, however, that undated ballots should be counted for the 2020 election because even diligent voters would not have known the consequence of omitting the date.  *Id.* at 1089 (Wecht, J., concurring and dissenting).  Importantly, four justices, including Justice Wecht, observed that voiding undated ballots may conflict with the federal "Materiality Provision" in 52 U.S.C. § 10101(a)(2)(B), but declined to rest their decision on that issue.  *Id.* at 1074 n.5 (opinion announcing judgment); *id.* at 1089 n.54 (Wecht, J., concurring and dissenting).

Following the November 2021 election, a candidate for the Lehigh County Court of Common Pleas, David Ritter, challenged the Election Board's determination to count undated mail ballots, including the ballots timely submitted by Plaintiffs here.  On November 30, 2021, the Lehigh County Court of Common Pleas affirmed the Election Board's decision to count all 261 ballots at issue pursuant to the analysis applied by the plurality in *In re 2020 Canvass*.[6]   A copy of the decision is attached as Ex. 7 to Plaintiffs' accompanying Complaint.  On January 3, 2022, in an unpublished, 2-1 opinion, the Commonwealth Court reversed the decision below, following the single-justice concurrence from *In re 2020 Canvass* as the decisive vote on whether the statutory language requiring a date is mandatory.  *Ritter v. Lehigh Cnty. Bd. of*

---

[6] The candidate's state court challenge raised the 257 mail-in ballots that were missing a date on the outer envelope, along with 4 ballots that had the date written in the wrong place.

*Elections*, No. 1322 C.D. 2021, 2022 WL 16577 (Pa. Commw. Ct. Jan. 3, 2022).  A copy of the

slip opinion is attached as Ex. 8 to Plaintiffs' Complaint.  The *Ritter* decision rested on state

statutory grounds.  The Commonwealth Court did not consider the voters' fundamental right to

vote under the U.S. or Pennsylvania constitutions, and discussed a secondary argument under the

Materiality Provision only in passing, and only because it was raised *sua sponte* by the common

pleas court.  On January 27, the Pennsylvania Supreme Court denied review.  *Ritter v. Lehigh*

*Cnty. Bd. Of Election*, No. 9 MAL 2022, 2022 WL 244122 (Pa. Jan. 27, 2022).

Now, the otherwise valid ballots of 257 Lehigh County voters, including Plaintiffs, will

not be counted when the Defendant Elections Board votes to certify the election results on

Tuesday morning, February 1.[7]  The impending disenfranchisement of Plaintiffs and similarly

situated voters constitutes irreparable harm for which there is no adequate remedy at law.

## III.   **ARGUMENT**

The requested injunctive relief is necessary to prevent summary violation of Plaintiffs'

most fundamental rights.  Rule 65 of the Federal Rules of Civil Procedure requires this Court to

consider four factors in deciding Plaintiffs' request for a preliminary injunction:  (1) whether

Plaintiffs have shown a reasonable probability of success on the merits of their underlying

claims; (2) whether Plaintiffs will be irreparably harmed by denial of the relief; (3) whether

granting preliminary relief will result in even greater harm to the non-moving party; and (4)

whether the requested relief is in the public interest."  *B.H. v. Easton Area Sch. Dist.*, 725 F.3d

293, 302 (3d Cir. 2013) (en banc).[8]  Each and every one of these factors weighs in favor of

granting a temporary restraining order and preliminary injunction in this case.

---

[7] The four voters who included a date but placed it incorrectly will be counted.

[8] Because this is a non-commercial case where no money is at issue, and the balance of hardships
favors the Plaintiff voters, the security bond requirement set forth at Fed. R. Civ. P. 65(c) should

## A.   PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CONSTITUTIONAL AND CIVIL RIGHTS ACT CLAIMS.

Plaintiffs bring this action pursuant to 42 U.S.C. § 1983, which imposes liability for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  Here, Plaintiffs set forth multiple claims for deprivation of their basic right to vote in violation of the Civil Rights Act of 1964 ("CRA") and the First and Fourteenth Amendments to the U.S. Constitution.  Each of those claims is likely to succeed.

### 1.   Rejecting Plaintiffs' Ballots for the Immaterial Omission of Handwritten Dates on Return Envelopes Violates the Materiality Provision of the Civil Rights Act of 1964.

Summarily tossing out every mail-in ballot missing a handwritten date on the return envelope violates the CRA.  Section 10101 (formerly codified at 42 U.S.C. § 1971), also known as the "Materiality Provision" of the CRA, states in relevant part that:

> [N]o person acting under color of state law shall . . . deny the right of any individual to vote in any election because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting**, *if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election*.

52 U.S.C. § 10101(a)(2)(B) (emphasis added). This provision was enacted to end requirements that "served no purpose other than as a means of inducing voter-generated errors that could be used to justify" denying the right to vote. *Fla. State Conf. of NAACP v. Browning*, 522 F.3d 1153, 1173 (11th Cir. 2008).

Notably, several justices of the Pennsylvania Supreme Court recognized that federal courts have repeatedly "barred the enforcement of several administrative requirements to disqualify electors" under the Materiality Provision, *In re 2020 Canvass*, 241 A.3d at 1074 n.5

---

be waived.  *See B.H. v. Easton Area Sch. Dist.*, 827 F. Supp. 2d 392, 409 (E.D. Pa. 2011) (citing *Elliot v. Kiesewetter*, 98 F.3d 47, 59–60 (3d Cir. 1996)).

(opinion announcing the judgment), and observed that voiding undated ballots under these circumstances might conflict with the CRA. *Id. See also id.* at 1089 n.54 (Wecht, J., concurring and dissenting).  While it ultimately did not rule on this issue, the Pennsylvania Supreme Court still determined that undated mail-in ballots should count in the 2020 election based on an analysis of Pennsylvania law.

When Ritter's challenge to these 2021 Lehigh County ballots raised the same undated-ballot issue, the Commonwealth Court wrote a single paragraph reflecting its cursory view of the CRA at the end of its unpublished decision.  *See Ritter*, 2022 WL 16577, at *9.[9]

### a. *Discarding mail-in ballots denies the right to vote within the meaning of the Materiality Provision.*

The CRA directs that "vote" in this context means "*all action necessary to make a vote effective including***,** but not limited to, registration or other action required by State law prerequisite to voting, *casting a ballot, and having such ballot counted and included in the appropriate totals of votes cast* with respect to candidates for public office and propositions for which votes are received in an election."  *Id.* §§ 10101(a)(3)(A), 10101(e) (emphasis added).

---

[9] Plaintiffs here were not parties to the *Ritter* litigation, nor were they in privity with any of the parties to that case, which was brought and litigated by judicial candidates vying for the remaining Lehigh County Common Pleas seat that may be impacted by the as-yet uncounted votes.  Accordingly, the Commonwealth Court's cursory review of the Materiality Provision is not binding on Plaintiffs and does not constrain this Court's review of this issue of federal law.  *See Vuyanich v. Smithton Borough*, 5 F. 4th 379, 388 (3d Cir. 2021) (declining to apply *Rooker-Feldman* doctrine where plaintiffs were not party to a prior federal suit).  In any event, the Commonwealth Court summarily dismissed the CRA argument on the theory that the Materiality Provision applies only to the voter registration process and determination of *eligibility* to vote. *Id.* (citing *Friedman v. Snipes*, 345 F. Supp. 2d 1356 (S.D. Fla. 2004)).  This perceived limitation on the Materiality Provision finds no support in the statute itself, and the net result of the Commonwealth Court's decision is an application of Pennsylvania law that denies Plaintiffs' right to vote on grounds that are immaterial to whether the voter "is qualified under State law to vote. . . ." 52 U.S.C. § 10101(a)(2)(B).  Faced with such a conflict between state and federal election law, under the Constitution's Supremacy Clause federal law prevails. U.S. Const. art. VI, cl. 2.  *See also*, *Murphy v. NCAA*, 138 S. Ct. 1461, 1480 (2018) (describing conflict preemption).

Therefore, the statute "by definition includes not only the registration and eligibility to vote, but also the right to have that vote counted" and "prohibits officials from disqualifying votes for immaterial errors and omissions." *Ford v. Tenn. Senate*, No. 06-2031-DV, 2006 WL 8435145, at *11 (W.D. Tenn. Feb. 1, 2006). The Department of Justice, which has non-exclusive statutory authority to institute civil actions for violations of the Materiality Provision, is in accord, stating in the DOJ Justice Manual that the Materiality Provision "prohibits any person acting under color of law from denying eligible persons the right to vote or failing *or refusing to count* their votes," DOJ Justice Manual § 8-2.271 (2018) (emphasis added).

The CRA's legislative history confirms that Congress broadly "intended to address those state election practices that increase the number of errors or omissions on papers or records related to voting and provide an excuse to disenfranchise otherwise qualified voters." *League of Women Voters of Ark. v. Thurston*, No. 5:20-CV-05174, 2021 WL 5312640, at *4 (W.D. Ark. Nov. 15, 2021); *see also Schwier v. Cox*, 340 F.3d 1284, 1294 (11th Cir. 2003) (noting that the provision was intended to prevent elections offices from "requiring unnecessary information"). The legislative history of the provision demonstrates Congressional concern that voters are disenfranchised for immaterial, "hyper-technical" errors that do not place their actual eligibility to vote in doubt. *See* Justin Levitt, *Resolving Election Error: The Dynamic Assessment of Materiality*, 54 Wm. & Mary L. Rev. 83, 147–48 (2012).

Here, the Elections Board's intention to discard votes, apart from any determination as to eligibility of voters, clearly constitutes denial of the right to vote as described in the Materiality Provision.

> **b. *Omission of the handwritten date on a mail-in ballot return envelope is "an error or omission on any record or paper related to [an] . . . act requisite to voting."***

The Materiality Provision applies to any "error or omission on any record or paper related to any . . . act requisite to voting." 52 U.S.C. § 10101(a)(2)(B). Because the statutory definition of "vote" includes "all action necessary to make a vote effective including . . . casting a ballot, and having such ballot counted," *id*. § 10101(e), a plain reading of the statute means that the Elections Board may not deny the right to vote based on an immaterial error or omission occurring at any point in the process, including in the submission of a mail-in ballot. The U.S. District Court for the Northern District of Georgia decision in *Martin v. Crittenden* is instructive. 347 F. Supp. 3d 1302, 1308–09 (N.D. Ga. 2018). The court was confronted with rejection of mail-in ballots based on voters' failure to provide their year of birth, among "other clerical mistakes," *id*. at 1306, and found that such rejections violated the CRA's Materiality Provision, *id*. at 1308–09. Like the rejection of ballots based on "clerical mistakes" in *Martin*, the Lehigh County Elections Board's rejection of ballots here is governed by the CRA because it is based on "an error or omission on any record or paper related to any . . . act requisite to voting."

Applying the plain statutory language, any county that rejects undated ballots has, under the color of state law, denied the right to vote for failure to comply with an act that the Election Code (as interpreted by the Commonwealth Court in *Ritter*) has made "requisite to voting." In addition, as set forth in the accompanying Plaintiff Affidavits, failing to comply with the date rule was "error or omission" on the part of each voter. *See* Ex. 1–5 to Compl. Indeed, it should be self-evident that any failure to add the date next to the voter's signature was an "error or omission" on their part. The 257 ballots being rejected here are those ballots submitted by or on behalf of individuals who *omitted* from the outer envelope information that the relevant statutes solicit, and thus *erred* in complying with an act that either the Pennsylvania Election Code or a county board of elections has made requisite to voting. *See* Jan. 27, 2022 Lehigh C.P. Order, Ex.

9 to Compl. (directing the Elections Board to exclude the 257 ballots that "fail to include a date on the return envelope").

Finally, the envelope from which the date has been omitted is a "record or paper" within the meaning of the Materiality Provision.  Like "act requisite to voting," what qualifies as a "record or paper" is defined by its relevance to the act of voting.  In other words, the papers and records covered by the Materiality Provision are those that state law or counties make requisite to voting.  Insofar as the Elections Board is applying the Election Code in such a way as to require invalidation of undated ballots, then the outer envelope is a "record or paper relating to . . . [an] act requisite to voting."  In all, failing to date an outer envelope is "an error or omission on any record or paper related to [an] . . . act requisite to voting." 52 U.S.C. § 10101(a)(2)(B).

### c.  *The date rule is not material to determining a voter's qualifications.*

At least two recent federal cases support the conclusion that state laws requiring voters to include ministerial information on mail-in ballot envelopes violate the CRA Materiality Provision where such information was immaterial to determining a voter's qualification to vote. *See, e.g.*, *Martin*, 347 F. Supp. 3d 1302, *reconsideration denied*, 1:18-CV-4776-LMM, 2018 WL 9943564 (N.D. Ga. Nov. 15, 2018) (birth date requirement); *Sixth Dist. of Afr. Methodist Episcopal Church v. Kemp*, No. 1:21-CV-01284-JPB, 2021 WL 6495360, at *14 (N.D. Ga. Dec. 9, 2021) (allowing claim under materiality provision to survive a motion to dismiss).  Several other federal courts have struck down similarly immaterial administrative requirements precisely because they bore no relationship to voter qualifications.  *See, e.g.*, *Schwier v. Cox*, 439 F.3d 1285, 1286 (11th Cir. 2006) (holding that a Social Security number is not "material" in determining whether a resident is qualified to vote); *Wash. Ass'n of Churches v. Reed*, 492 F.

Supp. 2d 1264 (W.D. Wash. 2006) (enjoining enforcement of "matching" statute, requiring state to match potential voter's name to Social Security Administration or Department of Licensing database, because failure to match applicant's information was not material to determining qualification to vote).

Similarly, the date requirement on Pennsylvania mail-in return envelopes is an administrative requirement that is not material to determine a person's eligibility to vote, and therefore violates the CRA.  Indeed, unlike the date-of-birth requirements at issue in *Martin* and *Sixth District AME Church*—which were rejected as "immaterial" within the meaning of the CRA,[10] despite having some use for identity verification—a date on the mail-in declaration that was timely received by the Elections Board has *no* material value in determining whether a Lehigh County voter is qualified to vote. *See Martin*, 347 F. Supp. 3d at 1308–09.

In Pennsylvania, the state constitution establishes the "qualifications" needed in order to "be entitled to vote at all elections."  To qualify as an eligible voter, each individual is only required to be:

- A citizen of the United States;
- Over the age of eighteen (as modified by the Twenty-Sixth Amendment to the United States Constitution);
- A resident of the Commonwealth of Pennsylvania; and
- A resident of the election district in which the person offers to vote.

Pa. Const. Art. VII, § 1.  The date on which an eligible voter completed and signed a mail-in ballot bears no relation to voter qualification in Pennsylvania, especially where there is no question that the ballots were timely submitted before the voting deadline.

---

[10] Courts have not established a clear standard for materiality under the CRA. In *Florida State Conference of the NAACP v. Browning*, 522 F.3d 1153 (11th Cir. 2008), the 11th Circuit explained that there are "two kinds of 'materiality,'" in federal law, "one similar to minimal relevance and the other closer to outcome-determinative." *Id.* at 1174. Under either standard, however, a date on the declaration envelope is immaterial, because it has no value whatsoever in determining whether someone is qualified to vote.

Therefore, by any measure, a date requirement on Pennsylvania mail-in return envelopes is immaterial to voter qualifications and, therefore, violates the CRA.

> **2.     The Decision to Disenfranchise Plaintiffs Violates the Voters' Rights Under the First and Fourteenth Amendments to the U.S. Constitution.**

Determining whether a regulation imposes an unconstitutional burden on voting requires application of the framework of *Anderson v. Celebrezze*, 460 U.S. 780 (1983), and *Burdick v. Takushi*, 504 U.S. 428 (1992). The *Anderson/Burdick* framework requires a court to "weigh 'the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate' against 'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'" *Burdick*, 504 U.S. at 434 (quoting *Anderson*, 460 U.S. at 788–89). Strict scrutiny applies when the right to vote is "subjected to 'severe' restrictions." *Burdick*, 504 U.S. at 434. When a challenged regulation "imposes only 'reasonable, nondiscriminatory restrictions' upon the First and Fourteenth Amendment rights of voters, 'the State's important regulatory interests are generally sufficient to justify' the restrictions." *Id.* (quoting *Anderson*, 460 U.S. at 788.)

*Northeast Ohio Coalition for the Homeless v. Husted*, 837 F.3d 612 (6th Cir. 2016), is instructive. In *Husted*, the court held that a rigid requirement for a voter to write their correct address and birthdate on absentee-ballot identification envelopes was not justified by any state interest, even though "the burden is small for most voters." *Id.* at 632. The Ohio law at issue required automatic rejection of absentee ballots where the voter incorrectly wrote their address or birthdate on the identification envelope, meaning "identifiable voters may be disenfranchised based only on a technicality." *Id.* Ohio failed to specifically explain how its posited interests in combatting voter fraud and standardizing identification-envelope requirements would be

advanced by the requirement.  *See id.* at 631–34.  Additionally, neither interest made it

"necessary to burden" voting rights in that manner, as there were sufficient alternatives to

address those interests "without the heavy-handed requirement of ballot rejection on a

technicality."  *Id.* at 633–34.

Similarly here, Lehigh County is imposing a rigid requirement that voters write a date on

their mail-in ballot return envelopes, or automatically "be disenfranchised based only on a

technicality."  *See id.* at 632.  The burden of requiring voters to date the return envelope for a

mail-in ballot is small, but not zero.  257 Lehigh County voters, including Plaintiffs, submitted

mail-in ballots with undated envelopes.  Plaintiffs believed they followed all instructions for

completing and submitting their mail-in ballots and, nonetheless, inadvertently submitted their

ballots in undated return envelopes.  *See* Ex. 1–5 attached to Compl.

Like Ohio in *Husted*, Lehigh County has no "important regulatory interest," *Burdick*, 504

U.S. at 434, to justify even this relatively small burden on the fundamental right to vote.  While

proponents of the date requirement offered justifications in the Pennsylvania state court cases

addressing this provision—*see In re 2020 Canvass*, 241 A.3d at 1090–91 (Dougherty, J.,

concurring and dissenting) (analyzing as part of state statutory interpretation whether the state

had a "weighty interest" in a mandatory date requirement)—none of those proffered "weighty

interests" relates to voter qualifications.  First, a date written on the return envelope is not

necessary to confirm a voter's "desire to cast [a mail-in ballot] in lieu of voting in-person.  *See*

*id*. at 1090.  The act of requesting a mail-in ballot, filling it out, and returning it more than

suffices to demonstrate a desire to vote by mail.  Even if voters who requested a mail-in ballot

later decide to vote in person, they are prevented from doing so under Pennsylvania law unless

they return the blank mail-in ballot at the polling place before voting in person.  25 P.S. §§

3146.6(b)(1)-(3), 3150.16(b)(1)-(3).  Obviously, any individual who mails in the ballot instead of returning a blank ballot at the polling place demonstrates their "desire to cast it in lieu of voting in person," regardless of whether they add a handwritten date on the return envelope.

Second, the dated envelope does not "establish[] a point in time against which to measure the elector's eligibility to cast the ballot."  *See In re 2020 Canvass*, 241 A.3d at 1090 (Dougherty, J., concurring and dissenting).  Rather, Pennsylvania law requires, by statute, that eligibility be determined by each county prior to sending a mail-in ballot.  *See* 25 P.S. §§ 3146.2b, 3150.12b; 25 Pa.C.S. § 1328(b).  The only "point in time" against which to measure eligibility under Pennsylvania law is the time at which they request the ballot, regardless of whether they subsequently send it back with a handwritten date.

Finally, writing the date on the return envelope is not necessary to "ensure[] the elector completed the ballot within the proper time frame."  *See In re 2020 Canvass*, 241 A.3d at 1090 (Dougherty, J., concurring and dissenting).  The Election Code explicitly provides that a ballot will only be counted if it is returned by 8:00 p.m. on Election Day, regardless of the date written on the return envelope.  25 P.S. §§ 3146.6(a) and (c), 3150.16(a) and (c).  And as the Pennsylvania Department of State has clarified, the date on the return envelope is not "used to determine eligibility to vote."  *See* Ex. 6 (June 1, 2021 Email from Jonathan Marks, Deputy Secretary for Elections & Commissions, Dep't of State, to County Election Officials).  Mail-in ballots received by a County Election Office after 8:00 p.m. on Election Day may not be counted under Pennsylvania law, even if signed and dated prior to that time.  Lehigh County deems mail-in ballots in compliance with the date requirement, as long as the return envelope includes *any* date.  There simply is no government interest in requiring a voter to handwrite a date on the return envelope.

Even if Lehigh County could identify some "important regulatory interests" related to the date requirement, those interests do not "make it necessary to burden the plaintiff's rights," *Burdick*, 504 U.S. at 434 (quoting *Anderson*, 460 U.S. at 789), with "the heavy-handed requirement of ballot rejection on a technicality," *Husted*, 837 F.3d at 633.  This burden is particularly unjustified where Lehigh County did not notify Plaintiffs that their ballots would be rejected solely due to having an undated return envelope, and did not offer any opportunity to cure.  Though the Pennsylvania Election Code is silent regarding notice-and-cure procedures for technically defective mail-in ballots, counties are free to adopt such procedures.  With respect to Plaintiffs' ballots, whose only defect was the omission of a date on the return envelope, Lehigh County could have contacted Plaintiffs and sent a new mail-in ballot, or told Plaintiffs they could vote in-person on Election Day.  Lehigh County could have invited Plaintiffs to come to the county offices to date the return envelope.[11]  The availability of potential notice-and-cure procedures demonstrates both the lack of "important regulatory interest" in requiring a voter to handwrite a date on a return envelope, and that the burden on voters outweighs "the heavy-handed requirement of ballot rejection on a technicality."  *Id*.

Even though the requirement that voters date the return envelope for a mail-in ballot imposes a relatively small burden on the voter, it nonetheless is unconstitutional because there is no "important regulatory interest" to justify the burden.

**B.     IN THE ABSENCE OF IMMEDIATE INJUNCTIVE RELIEF, PLAINTIFFS WILL SUFFER IRREPARABLE HARM.**

Denial of the right to vote is not compensable by money damages—once certified, an excluded vote cannot be restored—and is therefore considered irreparable harm.  *See NAACP*

---

[11] To dispute whether a voter writing a date on the return envelope after submission technically complies with the Election Code highlights the lack of government interest in imposing the requirement at all.

*State Conf. of Pa. v. Cortes*, 591 F. Supp. 2d 757, 767 (E.D. Pa. 2008) (holding that failure of electronic voting machines on election day could deprive voters of their ability to cast a ballot and constitutes irreparable harm).

Emergency injunctive relief is a staple of election litigation precisely because the denial of either the opportunity to vote or the actual vote itself cannot be otherwise compensated. Voting is fundamental in our democratic process:

> Undoubtedly, the right of suffrage is a fundamental matter in a free and democratic society. Especially since the right to exercise the franchise in a free and unimpaired manner is preservative of other basic civil and political rights, any alleged infringement of the right of citizens to vote must be carefully and meticulously scrutinized.

*Reynolds v. Sims*, 377 U.S. 533, 561–62 (1964). *See also Wesberry v. Sanders*, 376 U.S. 1, 17 (1964) ("No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live."); *Counsel of Alt. Pol. Parties v. Hooks*, 179 F.3d 64, 70 (3d Cir. 1999) ("[T]he rights of qualified voters to cast their ballots effectively and the rights of individuals to associate for political purposes are of the most fundamental significance under our constitutional structure.").

 Once the Elections Board certifies the election on Tuesday morning, February 1, Plaintiffs lose any opportunity to obtain meaningful redress.  If this Court allows the Elections Board to disqualify Plaintiffs' votes over the missing date, the bell cannot be unrung.  Plaintiffs are not seeking an extended injunction, but only sufficient time to allow for the court to hear from all interested parties and to consider the underlying merits in an orderly fashion.

## C.   THE ELECTIONS BOARD WILL NOT BE HARMED BY ENTRY OF THE REQUESTED PRELIMINARY INJUNCTIVE RELIEF.

The defendant Elections Board will not suffer significant harm from a brief postponement of Tuesday's scheduled certification to permit orderly resolution of the important constitutional

and civil rights issues presented in this case.  Nor will the Elections Board be harmed by a final

ruling from this Court that federal law requires it to count Plaintiffs' ballots and those of the

other voters with undated mail ballots.[12]  Government agencies complying with the constitution

and federal law is always in the public interest.  *See Swartzwelder v. McNeilly*, 297 F.3d 228,

242 (3d Cir. 2002) (holding "the public interest is best served by eliminating . . . unconstitutional

restrictions"); *Hooks*, 121 F.3d at 883–84 ("In the absence of legitimate, countervailing concerns,

the public interest clearly favors the protection of constitutional rights.").  Since the election has

not yet been certified, issuance of a temporary restraining order and preliminary injunctive relief

to maintain the status quo pending the outcome of this case is the only way to avoid harm to

either side so that the Board is not later required to incur additional burdens or expenses to undo

a hasty February 1 certification.

A brief postponement of the certification will only affect final certification in a subset of

races on the November 2021 ballots.  *See* Conditional Final Results dated December 13, 2021

https://www.lehighcounty.org/Portals/0/PDF/Voter/CondCertification.pdf?ver=TlCt3Z3DNZu6

DT9_QfHOOw%3d%3d (last visited Jan. 31, 2022).  Plaintiffs expect that all parties will

cooperate to facilitate the Court's expeditious resolution of the underlying merits.

### D.     PUBLIC POLICY SUPPORTS THE REQUESTED RELIEF.

The public interest in this matter clearly favors Plaintiffs' position.  The requested

preliminary injunction will ensure that no eligible, registered voters are unfairly and illegally

deprived of their right to vote.  The goal of promoting fundamental constitutional rights will

---

[12] Indeed, the relief Plaintiffs seek here would restore the Election Board's original determination to count the 257 ballots it was later compelled to disregard based on the Commonwealth Court's interpretation of the Pennsylvania Election Code.

thereby be advanced, as will the goal of having elections that result in seating the true winner elected by the people, regardless of which side ultimately prevails after all votes are counted.

IV.     **CONCLUSION**

For all of the foregoing reasons, as well as those set forth in Plaintiffs' accompanying Complaint and Motion for Temporary Restraining Order and Preliminary Injunction, Plaintiffs respectfully request that this Court grant said Motion and enter an order briefly enjoining the Elections Board from certifying the results of the 2021 election in Lehigh County until such time as this Court can consider the merits of Plaintiffs' federal claims.

Respectfully submitted,


Dated: January 31, 2022                          s/ Witold Walczak
                                                 Witold Walczak (No. 62976)
                                                 Richard Ting  (No. 200438)
                                                 ACLU OF PENNSYLVANIA
                                                 P.O. Box 23058
                                                 Pittsburgh, PA 15222
                                                 P: 412-681-7864
                                                 vwalczak@aclupa.org
                                                 rting@aclupa.org

                                                 Stephen A. Loney, Jr.  (No. 202535)
                                                 Marian K. Schneider (No. 50337)
                                                 ACLU OF PENNSYLVANIA
                                                 P.O. Box 60173
                                                 Philadelphia, PA 19102
                                                 P: 215-592-1513
                                                 sloney@aclupa.org
                                                 mschneider@aclupa.org

                                                 *Counsel for Plaintiffs*