# Exhibit H

FILED 11/30/2021 3:41 PM, Clerk of Judicial Records, Civil Division, Lehigh County, PA
2021-C-2805    /s/MK

## IN THE COURT OF COMMON PLEAS OF LEHIGH COUNTY, PENNSYLVANIA
## CIVIL DIVISION

| | |
|---|---|
| David Ritter<br>- VS -<br>Lehigh County Board of Elections | File No. 2021-C-2805<br>Assigned Judge: Edward D. Reibman |

### ORDER

AND NOW, this 30th day of November, 2021, upon consideration of Appeal of David Ritter from Decision of Lehigh County Board of Elections dated November 15, 2021, Pursuant to 25 P.S. § 3157, said appeal filed on November 17, 2021; after hearing thereon on November 22, 2021; and for the reasons set forth in the Opinion filed concurrently with this Order;

IT IS ORDERED said appeal is Denied.

IT IS FURTHER ORDERED the Lehigh County Board of Elections shall include in the canvass of the November 2, 2021 Municipal Election the 257 mail-in ballots that are undated and the 4 mail-in ballots that are dated in the wrong location on the return envelope, representing the 261 mail-in ballots at-issue in the within matter,

BY THE COURT:

Edward D. Reibman, J.

FILED 11/30/2021 3:41 PM,Clerk of Judicial Records, Civil Division, Lehigh County, PA
2021-C-2805    /s/MK

# IN THE COURT OF COMMON PLEAS OF LEHIGH COUNTY, PENNSYLVANIA
## CIVIL DIVISION

| | |
|---|---|
| David Ritter <br> - VS - <br> Lehigh County Board of Elections | File No. 2021-C-2805 <br> Assigned Judge: Edward D. Reibman |

Robert P. Daday, Esquire; Ronald T. Elliott, Esquire; and Michael D. Shakely, Esquire, on behalf of Appellant, David Ritter

Joshua S. Mazin, Esquire, on behalf of Appellee Lehigh County Board of Election

Adam C. Bonin, Esquire, on behalf of Intervenor Zac Cohen

**Reibman, J.:**                                                                                 **November 30, 2021**

## OPINION

I.  Background

Among other contests in the November 2, 2021, Municipal Election in Lehigh County was the election of three judges to its court of common pleas. The latest computation of votes is that the candidate with the third most votes, David Ritter, is 74 votes ahead of the candidate with the fourth most votes, Zac Cohen. At issue is 261 mail-in ballots that have been set aside, not opened and not counted. The question is whether those ballots should be counted.

In pertinent part, the Pennsylvania Election Code, 25 P.S. §§ 2601-3591, provides that after an application for a mail-in ballot is approved, the elector receives a packet from the board of elections containing an official mail-in ballot, a secrecy envelope into which the completed ballot is placed and sealed, and an outer, return envelope into which the secrecy envelope and

1

ballot are placed. The mail-in elector is to mark the ballot in secret, and then fold the ballot, enclose, and securely seal the ballot in the secrecy envelope provided. 25 P.S. § 3150.16(a). The secrecy envelope "shall then be placed in the second one [i.e., the return envelope], on which is printed the form of declaration of the elector, and the address of the elector's county board of election and the local election district of the elector." *Id.*

After the elector has completed the ballot and placed and sealed it into the secrecy envelope, "[t]he elector shall then fill out, date and sign the declaration printed on such [i.e., the return] envelope." The package consisting of the return envelope, the secrecy envelope and the ballot are then to be sent or delivered to the board of elections. *Id.*

Of the 261 ballots at issue, 257 ballots contain no date at all on the return envelope and 4 ballots contain a date on the return envelope but not on the line designated for that purpose on the envelope.

The ballots at issue were discussed at an informal meeting with representatives of the Ritter and Cohen campaigns and Timothy Benyo, the Director of the Lehigh County Voter Registration Office, on November 5, 2021. Relying on advice from the Pennsylvania Department of State, Benyo indicated the ballots at issue would not be counted. Cohen did not challenge that decision. Benyo alerted both campaigns on November 12 that the Lehigh County Board of Elections ("Board") would meet on November 15, 2021, and that the issue of "a large number of ballots" would be addressed at that time.[1] Counsel for the Ritter and Cohen campaigns were present at the Board's meeting on November 15 and the viability of the 261

---

[1] 25 P.S. § 2644(a) authorizes each county board of elections to make regulations to govern its public sessions and to fix the time and place for hearing any matters relating to the administration and conduct of primaries and elections.

ballots was discussed. Counsel for each of the parties attended and participated fully at that meeting. No challenges were made as to procedure or jurisdiction. At the conclusion of the meeting, the three members of the Board voted unanimously to count the 261 ballots. Tr., 11/15/21, at 64-66.

Ritter appealed on November 17 to common pleas pursuant to 25 P.S. § 3157. Following a telephone conference with counsel on November 17, the parties were to provide simultaneously a memorandum of law on November 21, and a hearing on the appeal was scheduled for November 22. Ritter raised a procedural issue in his memorandum. The court conducted a telephone conference with counsel after the hearing inviting Cohen and the Board to respond to the procedural issue raised by Ritter and for all counsel to address the applicability of the federal Voting Rights Act, 52 U.S.C. § 10101(a)(2), in a supplemental memorandum due on November 29.

## II. Procedural Issue

Relying on *Rinaldi v. Ferrett*, 941 A.2d 73 (Pa. Commw. 2007), Ritter contends Cohen has failed to follow required procedures to challenge the vote count and, therefore, the court is without jurisdiction to hear the matter.

In *Rinaldi*, Joseph Ferret was a candidate for a seat on the Council of Old Forge Borough in Lackawanna County in the November 6, 2007, municipal election. Brian Rinaldi was a write-in candidate for the same council seat. The issue was whether 111 write-in ballots on which voters had indicated a write-in vote for Rinaldi should be counted where the appropriate oval on the ballot was not fully blackened as directed by the Code. The county voter registration

3

officials set aside the 111 ballots and computed the vote. Rinaldi filed a petition seeking to have the 111 uncounted write-in votes counted in his favor.

Apparently, there was no separate proceeding before the elections board. Instead, the court of common pleas convened a two-judge panel and announced the panel would function concurrently as a board of election and as the court of common pleas to hear argument on the petition. *Id.* at 75. Common pleas granted Rinaldi's petition, directed that all 111 votes be counted and that the voter registration office certify Rinaldi as the winner. *Id.* Rinaldi appealed.

The Commonwealth Court concluded Rinaldi's petition was addressed to the board of elections, not to common pleas, for a recount pursuant to § 3154(e) of the Code. The court noted that under such circumstances the petition must be by at least three voters who verify by affidavit that an error had been committed in the computation of the returns; an appeal to common pleas may be made by a "person aggrieved by any order or decision of any county board regarding the computation or canvassing of the returns; such a request must be made by a petition verified by three qualified electors of the district and accompanied by a cash deposit or bond; and, finally, if the returns have been officially certified, the only manner in which a complainant may challenge the election result is by way of an election contest in the court of common pleas. *Id.* at 76-78.

The Commonwealth Court vacated the order of common pleas and remanded the case for an order quashing Rinaldi's petition holding that common pleas lacked jurisdiction to hear the matter because Rinaldi's petition did not comply with those requirements.

Here, neither Ritter nor Cohen objected to the Board taking up the issue on its own. The Election Code confers broad, plenary powers upon county boards of election including the power

4

> [t]o make and issue such rules, regulations and instructions, not inconsistent with law, as they may deem necessary for the guidance of voting machine custodians, elections officers and electors.
>
> \*      \*      \*
>
> [t]o receive from district election officers the returns of all primaries and elections, to canvass and compute the same, and to certify ... the results thereof....

25 P.S. § 2642 (f) and (k).

The only decision the Board made was to count the 261 ballots. Ritter was the aggrieved party to that decision, and he, not Cohen, appealed it to common pleas.

Finally, Ritter claims Cohen failed to comply with 25 P.S. § 3146.8(f), which required any person challenging a mail-in ballot deposit the sum of $10.00 with the county board of elections. However, in *In re November 3, 2020, General Election*, 240 A.3d 591 (Pa. 2020), a unanimous Supreme Court noted:

> *... in 2020, the legislature eliminated time-of-canvassing challenges entirely from section 3146.8(g)(3).* See Act 12, § 11 (amending 25 P.S. § 3146.8(g)(3) to eliminate the challenging grounds and procedures, and amending Section 3146.8(g)(2) to eliminate the proviso the "Representatives shall be permitted to challenge any absentee elector or mail-in elector in accordance with the provisions of paragraph (3)"). *Accordingly, the Election Code presently provides no mechanism for time-of-canvassing challenges by candidate or party representatives.* See 25 P.S. § 3146.8(g)(4) ("All absentee ballots which have not been challenged under section 1302.2(c) [pertaining to mail-in ballot applications] and that have been verified under paragraph (3) shall be counted and included with the returns of the applicable election district...."). FN 24.
>
> [FN 24: *Admittedly, there are some vestiges remaining in the Election Code of the prior, now eliminated, system for time-of-canvassing ballot challenges. See, e.g., 25 P.S. § 3146.8(f)* (requiring a $10 deposit for each challenge to an absentee or mail-in ballot application or ballot); *id.* § 1308(g)(5) (discussing procedures for handling "[b]allots received whose applications have been challenged and *ballots which have been challenged*"

5

> (emphasis added)). *Now untethered to a procedure for asserting time-of-canvassing challenges in Section 3246.8(g)(3), however, we view the references to ballots in these provisions to be the overlooked remnants of a prior, now eliminated, process.]*

*Id.* at 610-11. (Emphasis added.) The procedure set forth in Section 3146.8(f), upon which Ritter relies, no longer exists.

Once the Board exercised its plenary powers under 25. P.S. § 2642 and decided to count the 261 ballots, the proper avenue to appeal was to common pleas under 25 P.S. § 3157, which Ritter did. Ritter's challenge to the court's jurisdiction is denied; the court has jurisdiction to hear the appeal.

### III. Facts

The following facts are undisputed: Of the 261 mail-in ballots, 257 ballots contain no date at all on the return envelope and 4 ballots contain a date on the return envelope but not on the line designated for that purpose. All of the 261 ballots were signed and cast by qualified electors and received timely by the Board. The receipt date of each of the 261 ballots is verifiable without the date filled-in by the elector. None of the electors of the 261 ballots at issue appeared at the polls to vote twice. Other than not including the date, or including it in the wrong place, on the return envelope, there is no evidence of fraud or misconduct associated with any of the 261 ballots.

Approximately 22,000 votes were cast in Lehigh County in the November 2, 2021, General Election. The 261 ballots at issue represent approximately 1.14% of the total votes cast.

The right to vote is a "fundamental right."[2]

---

[2]   Article I, § 5 of the Pennsylvania Constitution states:

6

Other than the procedural issue raised by Ritter, the sole issue before the court focuses on the statutory language "[t]he elector shall then fill out, date and sign the declaration printed on such [i.e., the outer, "return"] envelope." 25 P.S. § 3150.16(a).

### IV. Relevant Overarching Principles of Law

In *Pa. Democratic Party v. Boockvar*, 238 A.3d 345 (Pa. 2020), all seven Justices of the Supreme Court joined in Part II of now-Chief Justice Baer's opinion that set forth general principles of law that are relevant to this case:

> When presented with matters of statutory construction, this Court is guided by *Pennsylvania's Statutory Construction Act, 1 Pa.C.S. § 1501-1991*. Under this Act, "the object of all statutory construction is to ascertain and effectuate the General Assembly's intention." *Sternlicht v. Sternlicht, 583 Pa. 149, 876 A.2d 904, 909 (Pa. 2005)* (citing *1 Pa.C.S. § 1921 (a)* ("The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly")). When the words of a statute are clear and unambiguous, "the letter of it is not to be disregarded under the pretext of pursuing its spirit." *1 Pa.C.S. § 1921(b)*; see also *Sternlicht, supra*. However, when the words of a statute are not explicit, the General Assembly's intent is to be ascertained by consulting a comprehensive list of specific factors set forth in *1 Pa.C.S. § 1921(c)*. See also *Pennsylvania Associated Builders & Contractors, Inc. v. Commonwealth Dep't of Gen. Servs., 593 Pa. 580, 932 A.2d 1271, 1278 (Pa. 2007)* (recognizing that when the "words of the statute are not explicit, the General Assembly's intent is to be ascertained by considering matters other than statutory language, like the occasion and necessity for the statute; the circumstances of its enactment; the object it seeks to attain; the mischief to be remedied; former laws; consequences of a particular interpretation; contemporaneous legislative history; and legislative and administrative interpretations").

---

Elections shall be free and equal; and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage.

*See, also, Banfield v. Cortes,* 110 A.3d 155, (Pa.2015) ("... the right to vote is fundamental and 'pervasive of other basic civil and political rights,' [citation omitted]."

7

> Moreover, we recognize that in this Commonwealth, "[e]lections shall be free and equal; and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage." *Pa. Const. art. 1, § 5* (hereinafter referred to as the "*Free and Equal Elections Clause*"). The broad text of this specific provision "mandates clearly and unambiguously, and in the broadest possible terms, that *all* elections conducted in this Commonwealth must be 'free and equal.'" *League of Women Voters v. Commonwealth, 645 Pa. 1, 178 A.3d 737, 804 (Pa. 2018)* (emphasis in original). Stated another way, this clause was "specifically intended to equalize the power of voters in our Commonwealth's election process[.]" *Id. at 812.*
>
> Finally, this Court has previously observed that the purpose and objective of the Election Code, which contains Act 77, is "[t]o obtain freedom of choice, a fair election and an honest election return[.]" *Perles v. Hoffman, 419 Pa. 400, 213 A.2d 781, 783 (Pa. 1965).* To that end, the Election Code should be liberally construed so as not to deprive, *inter alia*, electors of their right to elect a candidate of their choice. *Id. at 784.*

*Id.* at 355-356.

## IV. Discussion

In *In re Canvass of Absentee and Mail-In Ballots of November 3, 2020 General Election*, 241 A.3d 1058 (Pa. 2020), the Supreme Court was presented with "the question of whether the Election Code requires a county board of elections to disqualify the mail-in or absentee ballots submitted by qualified electors who signed the declaration on their ballot's outer envelope but did not handwrite their name, their address, and/or date, where no fraud or irregularity has been alleged." *Id.* at 1062.

Three Justices (Justice Donohue joined by now-Chief Justice Baer and Justice Todd) concluded that despite the wording of 25 P.S. § 3150.16(a) that "[t]he elector shall then fill out, date and sign the declaration printed on such [i.e., the "return"] envelope," the Election Code does not require boards of elections to disqualify mail-in or absentee ballots submitted by

8

qualified electors who did not handwrite the date, where no fraud or irregularity has been alleged.

They wrote:

> We do not agree ... that just because the General Assembly used the word "shall" in this context, it is of necessity that the directive is a mandatory one, such that a failure to comply with any part of it requires a board of elections to declare the ballot void and that it cannot be counted.

241 A.3d at 1071. And, in citing cases that go back to 1869, they wrote:

> It has long been part of the jurisprudence of this Commonwealth that the use of "shall" in a statute is not always indicative of a mandatory directive; in some instances, it is to be interpreted as merely directory.

*Id.*

In deciding whether the word "shall" be a mandatory or directive instruction, they looked to whether the statutory instruction implicated "weighty interests." In the context of the election process, such interests are preventing fraud, maintaining the confidentiality of the ballot and preserving the integrity of the election process and overall vote. If the statutory instruction implicated such interests, the instruction would be upheld as mandatory.

For example, in *Pa. Democratic Party v. Boockvar*, 238 A.3d 345 (Pa. 2020), the Supreme Court invalidated the "naked" ballot, i.e., a ballot that arrives at the board of election without the protective shield of a sealed secrecy envelope, where 25 P.S. §3150.16(a) provided the elector "*shall,* in secret" mark the ballot and "securely seal" it in the secrecy envelope. Id. (Emphasis added.) The Court concluded that instruction was mandatory because a "naked" ballot violated voter secrecy and raised concern of voter fraud. The election official could not guarantee a ballot placed in an unsealed secrecy envelope traveled from the voter's hand to the county election board without compromise. Significantly, the Court stated: "the command that

9

the mail-in elector utilize the secrecy envelope ... is neither ambiguous *nor unreasonable.*" *Id. at 378.* (Emphasis added.) It was not enough that the Legislature used the word "shall."

In *In re Canvass of Absentee Ballots of Nov. 4, 2003 General Election (Appeal of Pierce),* 843 A.2d 1223 (Pa. 2004), ballots delivered to the board of elections by third persons on behalf of non-disabled voters were invalidated because "limit[ing] the number of third persons who unnecessarily come in contact with the ballot[,] ... provid[ing] some safeguard that the ballot was filled out by the actual voter, ... and that once the ballot has been marked by the actual voter in secret, no other person has the opportunity to tamper with it." *Id. at 1232.* It was not enough that the pertinent section of the Election Code, 25 P.S. 3146.6(a), provided "the elector *shall* send [the absentee ballot] by mail ... or deliver it in person to the board of election." *Id.* (Emphasis added.) The Supreme Court held the word "shall" was mandatory only after concluding it served the spirit of the Code, "which requires that a voter cast his ballot alone, and that it remain secret and inviolate." *Id.* at 1232. *See, also, Pa. Const. art. VII, §4* ("secrecy in voting shall be preserved.").

On the other hand, where concerns of fraud or voter integrity were not an issue, the Supreme Court allowed the vote to be counted. In *Shambach v. Bickhart,* 845 A.2d 793 (Pa. 2004), the Court declined to invalidate a write-in vote cast for a candidate who was named on the ballot proper even though the pertinent provision of the Election Code, 25 P.S. § 3031.12(b)(3), stated "the voter *shall* vote for the candidates of his choice for each office to be filled ... by making a cross (x) or a check (/) mark or by making a punch or [other] mark in the square opposite the name of the candidate, or he may so mark the write-in position provided on the ballot for the particular office and, in the space provided therefor on the ballot and/or ballot envelope, write the identification of the office in question and the name of any person *not*

10

*already printed on the ballot for that office*, and such mark and written insertion shall count as a vote for that person for such office," *Id.* (Emphasis added.) The Court stated "ballots containing mere minor irregularities should only be stricken for compelling reasons," noting there was no evidence of fraud, the voter's intent was clear, *id. at 803,* and the focus should be on the voter's will. 845 A.2d at 798-799. (Emphasis added.)

Similarly, in *Appeal of Weiskerger,* 290 A.2d 108 (Pa. 1972), the Supreme Court permitted the counting of absentee ballots that were marked in colors other than those colors specified in the Election Code despite the instruction in 25 P.S. § 3146.6 (a) that "the elector *shall* ... proceed to mark the ballot only in black lead pencil, indelible pencil or blue, black or blue-black ink ...". *Id.* (Emphasis added.)

In none of these cases did the Supreme Court simply rest on the conclusion that the word "shall" was, on the face of it, unambiguous and meant "must." Rather, each case turned on whether the instruction implicated a "weighty interest."

Former Chief Justice Castille, in writing for a unanimous court in *In re Absentee Ballots of Nov. 4, 2003,* 843 A.2d 1223 (Pa. 2004), noted:

> Although some contexts may leave the precise meaning of the word "shall" in doubt, *see* B. Garner, Dictionary of Modern Legal Usage 939 (2d ed. 1995) ("Courts in virtually every English speaking jurisdiction have held – by necessity – that *shall* means *may* in some contexts, and vice-versa"), this Court has repeatedly recognized the unambiguous meaning of the word in *most* contexts. [Citations omitted.]

*Id. at 1231-1232.* [Emphasis added.] And, more recently, Justice Dougherty, in an opinion joined by then-Chief Justice Saylor and Justice Wecht, stated:

> "Whether a particular statute is mandatory or directory does not depend upon its form, but upon the intention of the Legislature,

11

> to be ascertained from a consideration of the entire act, its nature, its object, and the consequences that would result from construing it one way or the other." *Deibert v. Rhodes,* 291 Pa. 550, 140 A. 515, 517 (1928); *quoting In re McQuiston's Adoption,* 238 Pa. 304, 86 A. 205, 206 (1913) (citations omitted).

MERSCORP, Inc., v. Delaware County, 207 A.3d 855, 866 (Pa. 2019).

Although three other Justices *In re Canvass* (Justice Dougherty joined by then-Chief Justice Saylor and Justice Mundy) stated the word "shall" was unambiguous, they nonetheless analyzed the obligation of electors to set forth the date they signed the declaration on the return envelope in terms of whether it was a "minor irregularity" or implicated a "weighty interest." They said:

> the date on the ballot envelope provides proof of when "the elector actually executed the ballot in full, ensuring their desire to cast it in lieu of appearing in person at a polling place. The presence of the date also establishes a point in time against which to measure the elector's eligibility to cast the ballot ... [and] [t]he date also ensures the elector completed the ballot within the proper time frame and prevents the tabulation of potentially fraudulent back-dated votes.

241 A.3d at 1090.

With respect, there is no assurance the date the elector placed on the envelope was the date the elector actually executed the ballot. The elector could well have executed the ballot, laid it aside and then completed the declaration on the return envelope some days later when it was mailed or delivered to the Board. Whichever the date, or no date at all, the mere fact the elector completed the ballot and returned it to the Board proves the elector's desire to cast it by mail rather than appear in person at the polling place.

Whether the elector places a date, any date, on the envelope, or no date at all, is superfluous in establishing a point in time against which to measure the elector's eligibility to cast the ballot. The Election Code provides "a completed mail-in ballot must be received in the

12

office of the county board of elections no later than eight o'clock P.M. on the day of the primary or election." 25 P.S. § 3150.16(c). The board stamps the receipt date on the return envelope when it is returned to its office; thus, the receipt date of each of the 261 ballots is verifiable without any date filled-in by the elector. Also, the Election Code requires mail-in ballots cast by electors who died prior to Election Day be rejected and not counted regardless of whether any date or no date was placed on the envelope. 25 P.S. § 3146.8(d). If the elector has not died prior to the election, the vote counts regardless of any date or no date on the ballot. In short, the date that is filled in by the elector, or whether any date is filled in by the elector, is irrelevant. In this case, the undisputed fact is that all 261 electors were eligible to cast their ballots.

The "proper time frame" to complete the ballot is any time after the elector receives it from the Board until such time as it may take for the ballot to be received by the Board by 8:00 P.M. on Election Day. There is no harm if the elector back dates the ballot so long as the ballot is delivered to the Board by 8:00 P.M. on Election Day.

There is no assurance the date any elector puts on the envelope is actually the date the elector signed it. The elector could have made an honest mistake of putting the wrong date on the envelope. A mistake, e.g., confusion, as to what the number of the day of the month is not uncommon, and it is irrelevant. The operative date is the one the Board stamps on the envelope when it is returned to it.

Finally, there is no evidence of double voting. The parties have stipulated there are no allegations of fraud with respect to the 261 ballots. In any event, the Board identifies an earlier cast vote by referencing the date it received the ballot; any date on the return envelope is irrelevant.

In short, the omission of the date *on these ballots,* or the placement of the date on the wrong part *of these envelopes,* does not prevent or promote fraud. Those concerns are simply not present.

In his dissent *In re Canvass*, Justice Wecht would abandon the "weighty interests" test and, with some caveats, simply defer to the Legislature and conclude the word "shall," means "must."

However, Justice Wecht was concerned about the applicability of the federal Voting Rights Act, which provides that no person acting under color of state law may deny anyone the right to vote "in any election because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election." 52 U.S.C. § 10101(a)(2)(B). The right to vote includes the right to have one's ballot "counted properly and included in the appropriate totals of votes cast with respect to candidates for public or party office and propositions for which votes are received in an election." *Id.* at § 10310(c)(1).

As Justices Donohue, now-Chief Justice Baer and Justice Todd noted in *In re 2020 Canvass*:

> Under this section, the so-called "materiality provision," of the Voting Rights Act, federal courts have barred the enforcement of similar administrative requirements to disqualify electors. See, e.g. *Schwier v. Cox*, 340 F.3d 1284 (11th Cir. 2003) (disclosure of voter's social security number is not "material" in determining whether a person is qualified to vote under Georgia law for purpose of the Voting Rights Act); *Washington Ass'n. of Churches v. Reed,* 492 F.Supp.2d 1264 (W.D.Wash.) (enjoining enforcement of "matching" statute, requiring state to match potential voter's name to Social Security Administration or Department of Licensing database, because failure to match applicant's

14

> information was not material to determining qualification to vote);
> *Martin v. Crittenden,* 347 F.Supp.3d 1302 (N.D.Ga.),
> *reconsideration denied,* 1:18-CV-4776-LMM, 2018 WL 9943564
> (N.D.Ga.Nov. 15, 2018) (voter's ability to correctly recite his or
> her year of birth on absentee allot envelope was not material to
> determining said voter's qualifications).

241 A.3d at 1074 n.5.

Justice Wecht acknowledged that provision of the Voting Rights Act was "binding" and stated "[i]t is inconsistent with protecting the right to vote to insert more impediments to its exercise than considerations of fraud, election security, and voter qualifications require." 241 A.3d at 1089 n. 54

Justice Wecht also invited the Legislature to clarify its intention. It has not done so. It is as plausible as any other scenario to conclude the legislature did not intend to disenfranchise an elector for the mere lack of a date on the return envelope when the date itself is largely, if not completely, irrelevant.

In his concurring opinion in *Pa. Democratic Party, supra,* Justice Wecht expressed concern about the ratio of rejected ballots to the overall number of ballots. He stated:

> The failure to "fill out, date and sign the declaration printed on" the ballot return envelope, as required by 25 P.S. § 3150.16(a), is a deficiency that can be readily observed. *Absent some proof that the enforcement of such a uniform, neutrally applicable election regulation will result in a constitutionally intolerable ratio of rejected ballots,* I detect no offense to the Free and Equal Elections Clause.

*238 A.3d at 389. (Emphasis added.)*

The 261 ballots at issue constitute 1.186 %, of the 22,000 total ballots cast in Lehigh County. Significantly, the Election Code requires an automatic recount of ballots in statewide

15

races where the unofficial returns indicate a candidate was defeated by one-half of one percent or less of the votes cast for that office. 25 P.S. § 3154(g). One-half of one percent of the 22,000 votes cast in Lehigh County is 110 votes. The 261 ballots are more than twice that number.

While §3154 (g) is not applicable here, it may be an indication that the 261 ballots at issue is a significant number. The Board acknowledged its warnings to the electorate as to the consequences of failing to include a date, or placing a date on the wrong place, of the mail-in envelope were neither conspicuous nor sufficient

Finally, the Legislature is presumed to know the law, including the Supreme Court's multi-generational history that it has not adopted a mechanical, inflexible interpretation of the word "shall." The Court has determined in each case whether the word "shall" is mandatory or directive.

Had the Legislature intended the placing of the date on the return envelope be a mandatory act, it could have used the word "must," as it did even within the Election Code itself when it set the deadline for when a completed mail-in ballot is to be received in the office of the county boards of elections: "Except as provided under 25 P.S. § 3511 (relating to receipt of voted ballots), a completed mail-in ballot *must* be received in the office of the county board of elections no later than eight o'clock P.M. on the day of the primary or election." 25 P.S. § 3150.16(c). (Emphasis added.) That is an example of an unambiguous, mandatory instruction.

IV. Conclusion

Even after the enactment of the Statutory Construction Act of 1972, the Supreme Court continued its long history of questioning whether the Legislature's use of the word "shall" is intended to require a mandatory or directory act and, in determining that result, engaging in a process of identifying whether the act itself was a "minor irregularity" or a "weighty interest" in

16

furthering a legitimate state interest. In the context of the Election Code, that interest was upholding restrictions or impediments to voting *only* when furthering the overall public policy of avoiding fraud, maintaining the secrecy of the ballot and ensuring the integrity of the election process. The Legislature is presumed to know that jurisprudential history.

Had the Legislature intended to disenfranchise a mail-in voter merely because the voter omitted the date on the return envelope, or placed it on the wrong part of the envelope, it could have used the word "must," as it did elsewhere in the Election Code. Alternatively, it could have accepted Justice Wecht's invitation to clarify its intent; it has not done so. That is not to be critical of the Legislature. Its intent all along may have been to let the courts decide whether the failure to place a date on the return envelope, or placing it on the wrong place of the envelope, is, in the context of a particular case, a "minor irregularity" or a "weighty interest." One cannot assume it intended the draconian result of disenfranchising the voter for what may well be a "minor irregularity," indeed, a superfluous requirement.

In *Shambach v. Bickhart*, 845 A.2d 793 (Pa. 2004), the Court stated:

> There is a "longstanding and overriding policy in this Commonwealth to protect the elective franchise." *Petition of Cioppa*, 533 Pa. 564, 626 A.2d 146, 148 (1993); *see also In re: Weiskerger Appeal*, 447 Pa. 418, 290 A.2d 108, 109 (1972) ("Our goal must be to enfranchise and not to disenfranchise."). Thus, although election laws must be strictly construed to prevent fraud, they "ordinarily will be construed liberally in favor of the right to vote." *Appeal of James*, 105 A.2d at 65 (*quoting* 29 C.J.S., Elections, § 7, p. 27); *see also In re: Nomination Petition of Johnson*, 509 Pa. 347, 502 A.2d 142, 146 (1985); *In re: Mellody Appeal*, 449 Pa. 386, 296 A.2d 782, 784 (1972); *In re: Cole's Election*, 223 Pa. 271, 72 A. 510, 511 (1909). To that end, we have held that ballots containing mere minor irregularities should only be stricken for compelling reasons. *See In re: Melody Appeal*, 296 A.2d at 784; *In re: Petitions to Open Ballot Boxes*, 410 Pa. 62, 188 A2d 254, 256 (1963); *Appeal of Gallagher*, 351 Pa. 451, 41 A.2d 630, 632 (1945).

FILED 11/30/2021 3:41 PM,Clerk of Judicial Records, Civil Division, Lehigh County, PA
2021-C-2805    /s/MK

*Id. at 798.*

The law militates in favor of construing the Election Code in a manner that favors the fundamental right to vote and enfranchises, rather than disenfranchises, the electorate. Given the well-established rulings of the Supreme Court; the public policy of encouraging citizen participation in open and free elections; the Legislature's legitimate interest in imposing restrictions and impediments only when necessary to prevent fraud and ensure the integrity of the election process; no clear legislative intent that voters be disenfranchised merely because they did not place the date, or placed the date on the wrong place, on the return envelope; and the fact there is no fraud here and, indeed, no apparent reason why the failure to place the date on the return envelope, or placing it on the wrong part of it, should disenfranchise 261 voters, it is not for this court to do so. The 261 mail-in ballots at issue must be counted.