**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LINDA MIGLIORI, FRANCIS J. FOX, RICHARD E. RICHARDS, KENNETH RINGER, and SERGIO RIVAS, | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 5:22-cv-00397-JFL |
| and | ) ) | |
| ZACHARY COHEN, | ) ) | |
| Intervenor-Plaintiff, | ) ) ) | |
| v. | ) ) | |
| LEHIGH COUNTY BOARD OF ELECTIONS, | ) ) ) | |
| Defendants, | ) ) ) | |
| and | ) ) | |
| DAVID RITTER, | ) ) | |
| Intervenor-Defendant. | ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT**

Stephen A. Loney, Jr.  (No. 202535)
Marian K. Schneider (No. 50337)
ACLU OF PENNSYLVANIA
P.O. Box 60173
Philadelphia, PA 19102
P: 215-592-1513
sloney@aclupa.org
mschneider@aclupa.org

Witold Walczak (No. 62976)
Richard Ting (No. 200438)
Connor Hayes (No. 330447)
ACLU OF PENNSYLVANIA
P.O. Box 23058
Pittsburgh, PA 15222
P: 412-681-7864
vwalczak@aclupa.org
rting@aclupa.org
chayes@aclupa.org

*Counsel for Plaintiffs*

# <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................. 1

II.   STATEMENT OF FACTS ................................................................... 2

   A. Background ..................................................................................... 2

   B. The Handwritten Date Requirement Advances No Government Interest .............. 4

III.  STATEMENT OF QUESTIONS INVOLVED ................................... 6

IV.   SUMMARY OF ARGUMENT ........................................................... 7

V.    ARGUMENT ....................................................................................... 8

   A. Legal Standard for Summary Judgment ................................................ 8

   B. Rejecting Plaintiffs' Ballots for the Omission of a Meaningless Handwritten
     Date on Outer Return Envelopes Violates the Materiality Provision of the
     Civil Rights Act of 1964. .................................................................... 9

     1.  A voter's handwritten date on the outer envelope "is not
       material in determining whether such individual is qualified
       under State law to vote." .............................................................. 11

     2.  The Materiality Provision applies to technical requirements
       imposed on mail-in ballot return envelopes. ................................ 13

   C. The Decision to Disenfranchise Plaintiffs Violates Voters' Rights
     Under the First and Fourteenth Amendments to the U.S. Constitution. .............. 14

VI.   CONCLUSION .................................................................................. 19

# <u>TABLE OF AUTHORITIES</u>

**Cases:**

*Anderson v. Celebrezze*, 460 U.S. 780 (1983) .................................................................. 9, 14, 15

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) .................................................................. 9

*Boyle v. Cnty. of Allegheny,* 139 F.3d 386 (3d Cir. 1998) .......................................................... 9

*Burdick v. Takushi*, 504 U.S. 428 (1992)........................................................................... 14, 15, 16

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986) ............................................................................ 8

*Florida State Conference of the N.A.A.C.P. v. Browning*,
    522 F.3d 1153 (11th Cir. 2008) ............................................................................ 10

*Ford v. Tenn. Senate*, No. 06-2031-DV,
    2006 WL 8435145 (W.D. Tenn. Feb. 1, 2006)........................................................... 13

*In re Canvass of Absentee and Mail-In Ballots of Nov. 3, 2020 General Election*,
    241 A.3d 1058 (Pa. 2020) ................................................................................... passim

*Lawrence v. City of Phila.,* 527 F.3d 299 (3d Cir. 2008)..........................................................9

*League of Women Voters of Ark. v. Thurston*, No. 5:20-CV-05174,
    2021 WL 5312640 (W.D. Ark. Nov. 15, 2021)........................................................10, 12, 14

*Martin v. Crittenden*, 347 F. Supp. 3d 1302 (N.D. Ga. 2018) ..........................................10, 12, 14

*Murphy v. NCAA*, 138 S. Ct. 1461 (2018) .................................................................................6

*N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue*,
    665 F.3d 464 (3d Cir. 2011)..............................................................................................9

*Northeast Ohio Coalition for the Homeless v. Husted*,
    837 F.3d 612 (6th Cir. 2016) .....................................................................................15, 16

*Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.,*
    470 F.3d 535 (3d Cir. 2006)..............................................................................................9

*Schwier v. Cox*, 340 F.3d 1284 (11th Cir. 2003) .......................................................................10

*Schwier v. Cox*, 439 F.3d 1285 (11th Cir. 2006) .......................................................................11

*Sixth Dist. of Afr. Methodist Episcopal Church v. Kemp*,
    No. 1:21-CV-01284-JPB, 2021 WL 6495360 (N.D. Ga. Dec. 9, 2021)...................................10

*Tolan v. Cotton*, 572 U.S. 650 (2014)......................................................................8

*Wash. Ass'n of Churches v. Reed*, 492 F. Supp. 2d 1264 (W.D. Wash. 2006)..............11

**Statutes:**

25 P.S. § 3146.1......................................................................................................4

25 P.S. § 3146.2b..................................................................................................17

25 P.S. § 3146.6...........................................................................................1, 4, 17, 18

25 P.S. § 3150.11....................................................................................................4

25 P.S. § 3150.12b..............................................................................................17

25 P.S. § 3150.16..........................................................................................1, 4, 17, 18

25 Pa.C.S. § 1328................................................................................................17

52 U.S.C. § 10101.......................................................................................... passim

U.S. Constitution art. VI, cl. 2 ..........................................................................2

**Other Authorities:**

DOJ Justice Manual § 8-2.271 (2018) ............................................................13, 14

Justin Levitt, *Resolving Election Error: The Dynamic Assessment of Materiality*, 54 Wm. & Mary L. Rev. 83 (2012) ............................................................................10

**Rules:**

Fed. R. Civ. P. 56..................................................................................................8

I.      **<u>INTRODUCTION</u>**

Plaintiffs are a bipartisan group of five registered Lehigh County voters facing disenfranchisement.  The five plaintiffs, and 252 others who are similarly-situated and mostly senior citizens, voted in the November 2021 election and fulfilled all necessary requirements to return a ballot except for one: they did not handwrite a date on the signed outer envelope containing their ballot.  *See* Feb. 10, 2022 Joint Stipulation of Facts ("Joint Stip.") (Dkt. 27) ¶¶ 23-26.   Defendants seek to disenfranchise these 257 voters based on this one technicality in the Pennsylvania Election Code, which directs mail voters to "fill out, date and sign" the outer envelope containing the ballot. 25 P.S. §§ 3146.6, 3150.16(a).  Defendants' application of this meaningless date requirement to disenfranchise hundreds of voters violates the Civil Rights Act of 1964 ("CRA") and the First and Fourteenth Amendments to the U.S. Constitution.

To resolve this case as a matter of law, the Court need only decide (a) whether this handwritten date requirement is material to determining Plaintiffs' qualifications to vote; and (b) whether any legitimate state interest is served by enforcing this requirement.  The answer to both questions is "no."  The two government entities overseeing elections in Lehigh County – the Board and the Pennsylvania Department of State – *admit* that the date on the outer envelope serves no purpose in determining voter qualification to cast a ballot.  *See* Ex. E (June 1, 2021 Email fr. J. Marks, Deputy Secretary for Elections & Commissions, Dep't of State, to County Election Officials); Ex. F (Lehigh Cty. Bd. of Elections Hr'g Tr.) at 61:5 – 62:18.[1]  Timothy Benyo, the Board's Chief Clerk, testified on the record that the Board counted ballots with

---

[1]      Citations herein to "Ex. __" refer to the joint exhibits to the parties' Joint Stipulation of Facts (Dkt. 27).

wrong, absurd and even future dates on the outer envelopes. Ex. F at 61:5 – 62:14.  Allowing

wrong, absurd and future dates proves the requirement's immateriality.

Disenfranchisement under these circumstances is exactly what the "Materiality

Provision" of the CRA, 52 U.S.C. § 10101, is designed to prevent.  Even if the Pennsylvania

Election Code plainly mandated cancellation of signed, but undated mail-in-ballot return

envelopes, rejecting otherwise valid ballots for such an immaterial clerical error violates the

CRA, as well as the First and Fourteenth Amendments to the United States Constitution.

Pennsylvania's handwritten date requirement must yield under the Constitution's Supremacy

Clause.  U.S. Const. art. VI, cl. 2.  *See also Murphy v. NCAA*, 138 S. Ct. 1461, 1480 (2018).

This Court should grant Plaintiffs summary judgment on both the CRA and constitutional claims.

## II.   **STATEMENT OF FACTS**

### A.   **Background**

The material facts of this case are straightforward.  Each Plaintiff, and 252 other Lehigh

County voters, are eligible, registered voters in Lehigh County.  *See* Joint Stip. ¶¶ 25, 55, 64, 71,

79, 88.  Each of those 257 voters, most of them seniors, applied for and received an absentee or

mail-in ballot from the Board, marked their ballot, signed the declaration on the outer envelope,

and timely submitted the ballot to Lehigh County.  *Id.* ¶¶ 24-26.  Disqualifying those 257 voters'

ballots would disenfranchise more than 1 out of every 100 voters who cast an absentee or mail-in

ballot for the 2021 municipal election in Lehigh County.  *See id.* ¶ 21 (approximately 22,000

ballots cast by absentee or mail-in ballot).

Plaintiff Linda Migliori is a 70-year-old resident of Schnecksville, Pennsylvania.  *Id.* ¶

55.  She has been a registered voter in Lehigh County for 24 years and regularly votes in every

presidential election and important off-year elections.  *Id.*  Plaintiff Francis Fox is a 66-year-old

resident of Allentown, Pennsylvania. *Id.* ¶ 64. He has been a registered voter in Lehigh County since he was first eligible to vote and votes in every primary and general election. *Id.* Plaintiff Richard Richards is a 66-year-old resident of Allentown and a registered voter in Lehigh County. *Id.* ¶ 71. Mr. Richards has been a registered voter since reaching the legal voting age and generally votes in every election. *Id.* Plaintiff Kenneth Ringer is a 70-year-old resident of Macungie, Pennsylvania. *Id.* ¶ 79. He is a registered voter in Lehigh County and has been a registered voter in Pennsylvania for 20 years. *Id.* Plaintiff Sergio Rivas is a 76-year-old resident of Allentown, Pennsylvania and a registered voter in Lehigh County. *Id.* ¶ 88. He has been a registered voter in Pennsylvania for more than 55 years – the last 18 years in Lehigh County – and generally votes in every election. *Id.* Each Plaintiff believed that their timely-submitted ballots would be counted, and none of them knew their votes were in jeopardy of being discarded until *after* the November 2021 Election Day. *Id.* ¶¶ 61, 69, 74, 77, 86, 93.[2]

Intervenor-Plaintiff Zachary Cohen and Intervenor-Defendant David Ritter both ran for Judge of the Court of Common Pleas of Lehigh County on the November 2, 2021 municipal election ballot. *Id.* ¶¶ 17-20. Neither Cohen nor Ritter cast one of the 257 disputed ballots.

Defendant Lehigh County Board of Elections oversees elections in Lehigh County, and in this capacity manages absentee and mail-in ballots, and certifies election results. The Board voted 3-0 on November 15, 2021, to count the 257 voters' disputed ballots. *Id.* ¶ 34. Ritter then challenged the Board's decision in the Court of Common Pleas of Lehigh County. *Id.* ¶ 35. That litigation resulted in a Pennsylvania Commonwealth Court decision strictly interpreting the

---

[2]   One Plaintiff received a cryptic email three days before Election Day notifying her that "Your Ballot Has Been Received," Ex. M. The body of the email stated, before anyone in the Commonwealth had voted at any polling place, "Your ballot status has been updated to cancelled [*sic.*] because it cannot be counted due to voting at the polling place." *Id.*

Pennsylvania Election Code's provisions that an "elector shall then fill out, date and sign the declaration printed on such envelope," 25 P.S. §§ 3146.6, 3150.16(a), to require disqualification of the 257 voters' disputed ballots.  *See* Joint Stip. ¶ 44, Ex. I.  None of the 257 voters, including Plaintiffs here, were a party to the state court litigation.  The state court litigation did not substantively address the federal statutory or constitutional issues raised in this case.[3]

As a result of that litigation, the Board was set to disenfranchise the 257 voters for the sole reason that those voters did not handwrite a date alongside their signatures on the outer envelope used to return their ballots.  *See id.* ¶ 48, Ex. K.  Plaintiffs filed the present action to preserve their fundamental right to vote and have their ballots counted.  *See id.* ¶ 53.

### B.      The Handwritten Date Requirement Advances No Government Interest

In Pennsylvania, registered voters may vote by mail, either as an "absentee elector" if they satisfy prescribed conditions like current military service or absence from jurisdiction on Election Day for work, or as a "mail-in" elector if they timely apply for a ballot.  *See* 25 P.S. §§ 3146.1, 3150.11.  Under the Pennsylvania Election Code, the procedures for how voters complete and return both types of ballots are substantively identical.[4]  The voter delivers the entire ballot package by mail or by hand to their county elections board, and delivery is timely if made by 8:00 p.m. on Election Day.  Joint Stip. ¶ 5; 25 P.S. §§ 3146.6(c), 3150.16(c).  Thus, the

---

[3]      The Commonwealth Court's decision largely was based on an analysis of the Pennsylvania Supreme Court's fractured decision in *In re Canvass of Absentee and Mail-In Ballots of Nov. 3, 2020 General Election*, 241 A.3d 1058 (Pa. 2020) ["*In re 2020 Canvass*"].  *In re 2020 Canvass* resulted in ballots with undated return envelopes being counted for the 2020 general election, but there was no majority opinion.  Notably, a majority (four) of justices observed that voiding undated ballots may conflict with the "materiality provision" in the CRA's voting protections, 52 U.S.C. § 10101(a)(2)(B), but declined to fully examine that conflict or rest their decision on the issue.  241 A.3d at 1074 n.5 (opinion announcing judgment); *id.* at 1089 n.54 (Wecht, J., concurring and dissenting).

[4]      Different timelines govern uniform military and overseas electors, but the differences are immaterial to resolution of this dispute.

critical time to determine validity of an absentee or mail-in ballot is when the county elections board received the ballot, not when the voter completed it.

The two agencies with a statutory role in administering Lehigh County elections, the Pennsylvania Department of State and the Board, have admitted that the date is immaterial for any election-administration reason.  First, the Department of State sent counties guidance regarding absentee and mail-in ballot envelopes on June 1, 2021, Joint Stip. ¶ 16, stating that "there is no basis to reject a ballot for putting the 'wrong' date on the envelope, ***nor is the date written used to determine the eligibility of the voter***.  You should process those ballots normally." Ex. E (emphasis added).[5]  Thus, it does not matter to the state what date the voter writes on the outer envelope.

Second, consistent with this Department of State guidance, the Board for the 2021 municipal election considered the date requirement satisfied as long as *any* date was written in the designated place on the outer envelope.  *See* Ex. F at 61:5 – 62:18.  Referring to the Department of State guidance, Timothy Benyo, the Board's Chief Clerk's testified before the Board as follows:

> MR. MCCARTHY [Chairman of the Elections Board]: So some voters put down their birth date.
>
> MR. BENYO: The birth date.
>
> MR. MCCARTHY: You would count that.
>
> MR. BONIN [Counsel for the Zachary Cohen Campaign]: And in fact you have counted them in this election.

---

[5]    Attempting to resolve the confusion caused by *In re 2020 Canvass*, the email also told counties to discard any undated ballots. *See* Ex. E. At that time, however, the issue whether the Election Code requires that undated ballots must be discarded was unresolved. Moreover, the DOS' interpretation of the provision relied only on state law and did not account for voters' rights under the CRA and the U.S. Constitution.

MR. BENYO: We have counted them, yes.

MR. COHEN [Zachary Cohen, Plaintiff-Intervenor in the present case]: There's a surprising number of those where it happened.  So it would say 1960, obviously they didn't vote in 1960 for this election.

MS. ERVIN [Elections Board member]: Crazy.

MR. BENYO: It doesn't say what date.  It doesn't require what date.

MR. MCCARTHY: It could be a date in the future.

MR. BENYO: But the date is there.

MR. MAZIN [Elections Board solicitor]: There is a date.

*Id.* at 61:5 – 62:14.  Thus, the Board processed and counted ballots where the voter wrote their birth date on the outer envelope, and would have counted ballots where the voter wrote a future date.

In short, the Pennsylvania Department of State and the Elections Board do not use the handwritten date on outer envelopes for any purpose other than ensuring technical compliance with a statutory directive.

## III.   STATEMENT OF QUESTIONS INVOLVED

1.    Whether cancellation of a voter's mail-in ballot for omitting a handwritten date on the outer envelope violates the CRA's prohibition on denying the right to vote based on an error or omission that is "not material in determining whether such individual is qualified under State law to vote in such election," 52 U.S.C. § 10101, when the handwritten date is unrelated to a voter's qualifications.

2.    Whether cancellation of a mail-in ballot for an individual's omission of a handwritten date violates the First and Fourteenth Amendments to the U.S. Constitution by imposing a burden on voters that serves no government interest.

6

IV.     **SUMMARY OF ARGUMENT**

The undisputed record in this case makes clear that Plaintiffs are eligible, registered voters in Lehigh County, who properly applied for and completed their mail-in ballots, signed the declaration on the outer envelopes, and timely returned their ballot package to the County. The lack of a handwritten date on Plaintiffs' and 252 other voters' mail-in-ballot-return envelopes is the *only* reason their ballots will not be counted. Even interpreting the facts in the light most favorable to the Defendants Board and Ritter, disenfranchisement of 257 voters based on a ministerial handwritten-date requirement that is immaterial and serves no practical purpose violates the CRA and the First and Fourteenth Amendments to the U.S. Constitution.

First, not counting Plaintiffs' ballots over the immaterial handwritten date provision violates the CRA. 52 U.S.C. §10101(a)(2)(B). Known as the "Materiality Provision," it plainly forbids denying individuals the fundamental right to vote based on an error or omission that is immaterial to determining the voter's qualification to vote under state law. *Id.* The Election Code's requirement that voters hand write the date on which they completed and signed the mail-in ballot is immaterial under any meaning of that term. It is irrelevant to the issue of eligibility to vote, as the Election Code provides that each voter's eligibility must be determined before the Board sends them a mail-in ballot. And there is no law—in the Pennsylvania Election Code or otherwise—attaching any significance to the date on which an outer envelope was signed. Indeed, the Pennsylvania Supreme Court determined that undated mail-in ballots would count for the 2020 general election. *In re Canvass of Absentee and Mail-In Ballots of Nov. 3, 2020 General Election*, 241 A.3d 1058, 1079 (Pa. 2020) ["*In re 2020 Canvass*"]. The rejection of these similarly situated timely ballots for the 2021 election serves no purpose and would violate federal law pursuant to the Materiality Provision.

Second, disenfranchising Plaintiffs based on the Pennsylvania Election Code's handwritten-date provision violates their fundamental right to vote under the First and Fourteenth Amendments to the U.S. Constitution because it is unrelated to any legitimate state interest. While the requirement that voters add the date next to their signatures might appear to impose relatively little burden on individuals' right to vote, even the slightest burden on this most important of rights must be supported by an important government interest. There is simply *no* government interest served by requiring handwritten-dates on top of the requirements – clearly satisfied by Plaintiffs here – that voters sign the outside envelope and submit it by 8:00 p.m. on Election Day.

Since there is no dispute of material fact, this Court should grant summary judgment for Plaintiffs on claims under both the CRA and the First and Fourteenth Amendments.

## V.   ARGUMENT

### A.   Legal Standard for Summary Judgment

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). A party moving for summary judgment bears the burden of proving that no genuine issue of material fact exists. *Tolan v. Cotton,* 572 U.S. 650, 656–57 (2014). As such, a movant must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact," *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The reviewing court "should view the facts in the light most favorable to the non-moving party and draw all

reasonable inferences in that party's favor." *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006).

To be material, "a fact must have the potential to alter the outcome of the case." *N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011).  Only factual disputes "that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Boyle v. Cnty. of Allegheny,* 139 F.3d 386, 393 (3d Cir. 1998) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48 (1986)).

The same legal standard applies when parties file cross-motions for summary judgment. *Lawrence v. City of Philadelphia,* 527 F.3d 299, 310 (3d Cir. 2008).  Importantly, as the Third Circuit cautioned in *Lawrence*, cross-motions "'are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.'"  *Id.* (quoting *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968)).

**B.     Rejecting Plaintiffs' Ballots for the Omission of a Meaningless Handwritten Date on Outer Return Envelopes Violates the Materiality Provision of the Civil Rights Act of 1964.**

Canceling every mail-in ballot delivered in a signed outer envelope that is missing only a handwritten date violates the CRA.  The "Materiality Provision" of the CRA, 52 U.S.C. § 10101 (formerly codified at 42 U.S.C. § 1971), states in relevant part:

> [N]o person acting under color of state law shall . . . deny the right of any individual to vote in any election because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, *if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election*.

52 U.S.C. § 10101(a)(2)(B) (emphasis added).  This provision was enacted to end exactly the types of requirements being used to disenfranchise Plaintiffs here—namely, "those state election practices that increase the number of errors or omissions on papers or records related to voting and provide an excuse to disenfranchise otherwise qualified voters."  *League of Women Voters of Ark. v. Thurston*, No. 5:20-CV-05174, 2021 WL 5312640, at *4 (W.D. Ark. Nov. 15, 2021) (allowing CRA materiality claims to proceed as to state law requiring absentee voters to submit unnecessarily duplicative proofs of name, address, date of birth, and registration status when applying for ballots and again when casting ballots); *see also*, *e.g.*, *Schwier v. Cox*, 340 F.3d 1284, 1294 (11th Cir. 2003) (noting that the provision was intended to prevent elections offices from "requiring unnecessary information" like Social Security numbers).  The provision's legislative history demonstrates Congressional concern that voters are often disenfranchised for immaterial, "hyper-technical" errors that do not place their actual eligibility to vote in doubt.  *See* Justin Levitt, *Resolving Election Error: The Dynamic Assessment of Materiality*, 54 Wm. & Mary L. Rev. 83, 147-48 (2012), https://scholarship.law.wm.edu/cgi/viewcontent.cgi?article=3448&context=wmlr.

The decision in *Martin v. Crittenden* illustrates the types of "immaterial" errors or omissions that the Materiality Provision is meant to address.  347 F. Supp. 3d 1302, 1308–09 (N.D. Ga. 2018).  The case involved rejection of mail-in ballots based on voters' failure to provide their year of birth.  *Id.* at 1306.  The court held the plaintiffs were substantially likely to succeed on their claim that the rejections violated the CRA's Materiality Provision.  *Id.* at 1308-09;[6] *see also Sixth Dist. of Afr. Methodist Episcopal Church v. Kemp*, No. 1:21-CV-01284-JPB,

---

[6]    Courts have not established a clear standard for materiality under the CRA.  In *Florida State Conference of the NAACP v. Browning*, 522 F.3d 1153 (11th Cir. 2008), the Eleventh Circuit discussed "two kinds of 'materiality,'" in federal law, "one similar to minimal relevance and the other closer to outcome-determinative."  *Id.* at 1174.  Under

2021 WL 6495360, at *14 (N.D. Ga. Dec. 9, 2021) (allowing Materiality Provision challenge to proceed as to state law requirement that absentee voters supply their date of birth with both the absentee ballot application and returned ballot).  Other federal decisions have struck down similarly immaterial administrative requirements precisely because they bore no relationship to voter qualifications.  *See, e.g.*, *Schwier v. Cox*, 439 F.3d 1285, 1286 (11th Cir. 2006) (holding that mandating disclosure of a Social Security number is not "material" to determining whether someone may register to vote); *Wash. Ass'n of Churches v. Reed*, 492 F. Supp. 2d 1264, 1270–71 (W.D. Wash. 2006) (enjoining enforcement of "matching" statute requiring state to match potential voter's name to Social Security Administration or Department of Licensing database, because failure to match applicant's information was not material to determining qualification to vote).

1.   *A voter's handwritten date on the outer envelope "is not material in determining whether such individual is qualified under State law to vote."*

The Pennsylvania Election Code provision calling for a handwritten date on outer return envelopes "is not material in determining whether such individual is qualified under State law to vote in such election," 52 U.S.C. § 10101(a)(2)(B).  Denying the right to vote merely for a voter's omission of this immaterial handwritten date, therefore, violates the Materiality Provision.  As demonstrated by the approach taken by the Board and the Pennsylvania Department of State, the handwritten date requirement is a technical statutory requirement that serves no purpose.

---

either standard, a voter's handwritten date on the declaration envelope is immaterial, because it has no value whatsoever in determining whether someone is qualified to vote.

Like the prohibited rejection of ballots based on a voter's error or omission in writing their birth year in *Martin*, rejecting ballots in this case denies 257 voters their right to vote because of an omission that is altogether immaterial to determining a voter's qualification to participate in the election as a mail-in voter.  When the Board receives an absentee or mail-in ballot *application* from a Lehigh County voter, the Board verifies each voter's proof of identification, and confirms that they are registered to vote (and thereby meet the qualifications to vote).  Joint Stip. ¶ 3.  Thus, a voter's qualifications are established upon dispatch of the mail-in ballot, much like the mail-in ballots at issue in *Martin* and the duplicative proofs of eligibility in *League of Women Voters of Ark*.  *See Martin*, 347 F. Supp. 3d. at 1309 (finding that "the qualifications of the absentee voters" were "not at issue because [county] elections officials have already confirmed such voters' eligibility through the absentee ballot application process").

The voter's handwritten date on the outer envelope that contains the returned ballot, therefore, is immaterial to establishing the voter's qualification as a mail-in voter under Pennsylvania law – especially considering the undisputed fact that the ballots were signed and timely submitted before the voting deadline.  Joint Stip. ¶ 26.  Indeed, a date on the mail-in declaration that was timely received by the Board in this case has *no* conceivable material value at all.  This is underscored by the Department of State's communication to Pennsylvania elections officials emphasizing that the date on the envelope cannot be "used to determine eligibility to vote."  Ex. E.  Moreover, the Board's own Chief Clerk testified under oath that the Board would count a ballot with *any* date on the outer envelope, even a clearly erroneous date. Ex. F at 61:5 – 62:14.

Therefore, even interpreting the facts in the most favorable light for the Defendants, a handwritten date requirement for Pennsylvania ballot return envelopes "is not material in

determining whether such individual is qualified under State law to vote in such election," 52 U.S.C. § 10101(a)(2)(B), and throwing out ballots because voters did not handwrite a date on their outer return envelopes would violate the CRA.

### 2. The Materiality Provision applies to technical requirements imposed on mail-in ballot return envelopes.

A requirement for voters to handwrite a date on an outer return envelope is squarely within the type of "application, registration, or other act requisite to voting" covered by the Materiality Provision.  52 U.S.C. § 10101(a)(2)(B).  The statute directs that "vote" in this context means "*all action necessary to make a vote effective including*, but not limited to, registration or other action required by State law prerequisite to voting, *casting a ballot, and having such ballot counted and included in the appropriate totals of votes cast* with respect to candidates for public office and propositions for which votes are received in an election."  52 U.S.C. §§ 10101(a)(3)(A), 10101(e) (emphases added).[7]  Therefore, the statute "by definition includes not only the registration and eligibility to vote, but also the right to have that vote counted" and "prohibits officials from disqualifying votes for immaterial errors and omissions."  *Ford v. Tenn. Senate*, No. 06-2031-DV, 2006 WL 8435145, at *11 (W.D. Tenn. Feb. 1, 2006).  The Department of Justice, which has non-exclusive statutory authority to institute civil actions for violations of the Materiality Provision, is in accord, stating in the DOJ Justice Manual that the Materiality Provision "prohibits any person acting under color of law from denying eligible

---

[7]     The Commonwealth Court decision in *Ritter v. Lehigh County Board of Elections* (Ex. I) sidestepped the CRA argument by erroneously claiming that the Materiality Provision was "inapplicable" to the counting of ballots.  *See* No. 1322 C.D. 2021, 2022 WL 16577, at *9 (Pa. Commw. Ct. Jan. 3, 2022).  This cursory and plainly incorrect interpretation of the Materiality Provision does not constrain this court's review of the federal issues. Plaintiffs were not parties to the *Ritter* litigation, nor were they in privity with any of the parties to that case, which was litigated by intervenors Ritter and Cohen.  Consequently, the Commonwealth Court's terse characterization of the Materiality Provision does not bind plaintiffs, or this Court.  *See Vuyanich v. Smithton Borough*, 5 F. 4th 379, 388 (3d Cir. 2021) (declining to apply *Rooker-Feldman* doctrine where plaintiffs were not party to a prior federal suit).

persons the right to vote or failing *or refusing to count* their votes," U.S. Dep't of Justice, Just. Manual § 8-2.271 (2018), https://www.justice.gov/jm/jm-8-2000-enforcement-civil-rights-civil-statutes#8-2.271 (emphasis added).  Federal courts have repeatedly applied the Materiality Provision to administrative difficulties faced by voters in seeking to have their ballots properly counted.  *See, e.g.*, *Martin*, 347 F. Supp. 3d 1302 (birth year requirement on returned mail ballots); *League of Women Voters of Ark.*, 2021 WL 5312640 (requirement that absentee voters provide duplicative name, address, and date of birth with absentee ballots); *Ford*, 2006 WL 8435145 (requirement to sign both a ballot and a poll book in order to vote).

Moreover, the lack of a handwritten date on an outer return envelope is clearly an "error or omission on any record or paper related to any . . . act requisite to voting."  52 U.S.C. § 10101(a)(2)(B).  Applying the plain statutory language, any county that rejects undated ballots has, under color of state law, denied the right to vote for failure to comply with an act that the Election Code (as being applied here) has made "requisite to voting."  Failing to handwrite a date on the outer envelope is clearly an "error or omission" by each voter – and this error or omission is the sole and undisputed reason that voters did not have their vote counted.  *See* Joint Stip. ¶¶ 24–26.  Plaintiffs are therefore facing exactly the type of harm contemplated by the CRA.

## C.   The Decision to Disenfranchise Plaintiffs Violates Voters' Rights Under the First and Fourteenth Amendments to the U.S. Constitution.

The same lack of rational basis that dooms the handwritten date requirement under the CRA's Materiality Provision also renders this requirement unconstitutional.  The Supreme Court's *Anderson/Burdick* framework determines whether a regulation imposes an unconstitutional burden on the fundamental right to vote.  *See Anderson v. Celebrezze*, 460 U.S. 780 (1983); *Burdick v. Takushi*, 504 U.S. 428 (1992).  That framework requires a court to "weigh 'the character and magnitude of the asserted injury to the rights protected by the First and

14

Fourteenth Amendments that the plaintiff seeks to vindicate' against 'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'" *Burdick*, 504 U.S. at 434 (quoting *Anderson*, 460 U.S. at 789). Strict scrutiny applies when the right to vote is "subjected to 'severe' restrictions." *Burdick*, 504 U.S. at 434. When a challenged regulation "imposes only 'reasonable, nondiscriminatory restrictions' upon the First and Fourteenth Amendment rights of voters, 'the State's *important* regulatory interests are generally sufficient to justify' the restrictions." *Id.* (quoting *Anderson*, 460 U.S. at 788) (emphasis added). Here, the State has zero regulatory interest in requiring the date – as emphasized in the State's *amicus* brief before the Pennsylvania Commonwealth Court – and as such, the date requirement is invalid under the federal Constitution. *See* Br. of. Amicus Commonwealth of Pa. at 17–19, *Ritter v. Lehigh Cnty. Bd. of Elections,* No. 1322 C.D. 2021, (Pa. Commw. Ct.).[8]

    *Northeast Ohio Coalition for the Homeless v. Husted*, 837 F.3d 612 (6th Cir. 2016), is on point. In *Husted*, the court held that a rigid requirement for a voter to write their correct address and birthdate on absentee-ballot identification envelopes was not justified by any state interest, even though "the burden is small for most voters." *Id.* at 632. The Ohio law required automatic rejection of absentee ballots where the voter incorrectly wrote their address or birthdate on the identification envelope, meaning "identifiable voters may be disenfranchised based only on a technicality." *Id.* Ohio failed to explain specifically how its posited interests in combatting voter fraud and standardizing identification-envelope requirements would be advanced by the

---

[8]    A true and correct copy of the Commonwealth of Pennsylvania's previous *amicus* brief before the Commonwealth Court is attached hereto at Appendix 1.

requirement.  *See id.* at 631–34.  Additionally, neither interest made it "necessary to burden" voting rights in that manner, as there were sufficient alternatives to address those interests "without the heavy-handed requirement of ballot rejection on a technicality."  *Id.* at 633–34.

Similarly here, the Board is imposing a rigid requirement that voters write a date on their mail-in ballot return envelopes, or automatically "be disenfranchised based only on a technicality."  *See id.* at 632.  The burden of requiring voters to date the outer envelope for a mail-in ballot is small, but not zero.  The parties do not dispute that Plaintiffs and 252 other Lehigh County voters, the vast majority of whom are seniors and make up more than 1% of Lehigh County mail-in voters, submitted mail-in ballots with undated envelopes.  *See* Joint Stip. ¶¶ 21-26.  Similarly, in the *In re 2020 Canvass* case, 2,349 voters from Allegheny County had mailed their ballots back with a signed – but undated – outer envelopes.  *In re 2020 Canvass*, 241 A.3d at 1063.  Even with detailed instructions provided with the ballot package, *see* Ex. C & D, the burden on voters to date their ballots is evidently more than zero.

Like Ohio in *Husted*, the Board has no "important regulatory interest," *Burdick*, 504 U.S. at 434, to justify even this relatively small burden on the fundamental right to vote. As noted above, the Department of State has previously emphasized that the date on the outer envelope is not "used to determine eligibility to vote."  Ex. E.  And the Board's Chief Clerk testified under oath that even a clearly erroneous date would suffice on the outer envelope, confirming again that the date has no material value in determining voter qualifications.   Ex. F at 61:5 – 62:14. Indeed, in the Court of Common Pleas hearing in *Ritter*, the judge and then-counsel for Intervenor-Defendant Ritter spent several minutes of testimony searching for any possible justification for the date requirement – and failed to identify a single rationale, beyond a

statement from counsel that signing and dating is just "the way we do business."  *See* Ex. G at 74:18–78:14, Ex. H.

And while proponents of the date requirement have attempted to offer some justifications in the Pennsylvania state court cases addressing this provision—*see In re 2020 Canvass*, 241 A.3d at 1090–91 (Dougherty, J., concurring and dissenting)—none of those proffered interests reasonably apply, much less could be characterized as important.  First, a date written on the outer envelope is not necessary to confirm a voter's "desire to cast [a mail-in ballot] in lieu of appearing in person at a polling place."  *See id*. at 1090.  The act of requesting a mail-in ballot, filling it out, and returning it on time more than suffices to demonstrate a desire to vote by mail. Even if voters who requested a mail-in ballot subsequently decide to vote in person, they are prevented from doing so under Pennsylvania law unless they return the blank mail-in ballot at the polling place before voting in person.  25 P.S. §§ 3146.6(b)(1)-(3), 3150.16(b)(1)-(3). Obviously, any individual who mails in the ballot instead of returning a blank ballot at the polling place demonstrates their "desire to cast it in lieu of voting in person," regardless of whether they add a handwritten date on the outer envelope.

Second, the dated envelope does not "establish[] a point in time against which to measure the elector's eligibility to cast the ballot."  *See In re 2020 Canvass*, 241 A.3d at 1090 (Dougherty, J., concurring and dissenting).  Rather, Pennsylvania law requires, by statute, that eligibility be determined by each county prior to sending the voter a mail-in ballot.  *See* 25 P.S. §§ 3146.2b, 3150.12b; 25 Pa.C.S. § 1328(b).  The only "point in time" against which to measure

17

eligibility under Pennsylvania law is the time at which they request the ballot, regardless of whether they subsequently send it back with a handwritten date.[9]

Finally, writing the date on the outer envelope is not necessary to "ensure[] the elector completed the ballot within the proper time frame." *See In re 2020 Canvass*, 241 A.3d at 1091 (Dougherty, J., concurring and dissenting). The Election Code explicitly provides that a ballot will only be counted if it is returned by 8:00 p.m. on Election Day, regardless of the date written on the outer envelope. 25 P.S. §§ 3146.6(a) and (c), 3150.16(a) and (c). It is undisputed that Plaintiffs' mail-in ballots, and the 252 other ballots at issue, all were timely received by the Board. As the State's *amicus* brief to the Commonwealth Court in *Ritter* emphasized, "non-compliance with the date rule is a denial of the right to vote for an omission that *does not in any way interfere with determining the voter's eligibility*." Appx. 1 at 19. There simply is no government interest in requiring a voter to handwrite a date on the outer envelope.

Even though the requirement that voters date the return envelope for a mail-in ballot imposes a relatively small burden on the voter, it nonetheless is unconstitutional when this small burden is balanced with the fact that the state has no "important regulatory interest" behind the date requirement. Indeed, as the Board and Intervenor-Defendant Ritter have stipulated, the failure to include a date has no impact whatsoever on the risk of fraud for any of the disputed ballots. Joint Stip. ¶ 26. Yet despite the lack of any important state interest behind the dating requirement, 257 votes, or over 1% of mail-in ballots cast in the 2021 Lehigh County general election, will be discarded on that basis. If the same percentage of mail-in ballots in the 2020 Pennsylvania general election were discarded, about 27,000 Pennsylvania voters would have

---

[9] Absentee and mail-in ballots are not counted if there is proof the voter died before Election Day, but that is not relevant for any of the 257 disputed ballots. Additionally, absence of a handwritten date on a mail-in ballot outer envelope is not proof that a voter died before Election Day.

been disenfranchised.[10]  An injury to voting rights of such substantial "character and magnitude"

is impermissible under the U.S. Constitution, especially given the lack of *any* important

regulatory interest to justify the injury.

## VI.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request summary judgment that

Defendant Lehigh County Board of Elections will violate the Civil Rights Act and the U.S.

Constitution if they discard the disputed ballots.  The undisputed facts demonstrate that there is

zero state interest behind the date requirement on mail-in ballot outer-return envelopes.  Even

taking the facts in the light most favorable to Ritter and the Board, discarding ballots for such an

immaterial administrative requirement is clearly a violation of the CRA's Materiality Provision,

as well as the First and Fourteenth Amendments to the Constitution.

Respectfully submitted,

Dated: February 11, 2022

s/ Stephen A. Loney, Jr.
Witold Walczak (No. 62976)
Richard Ting (No. 200438)
Connor Hayes (No. 330447)
ACLU OF PENNSYLVANIA
P.O. Box 23058
Pittsburgh, PA 15222
P: 412-681-7864
vwalczak@aclupa.org
rting@aclupa.org
chayes@aclupa.org

Stephen A. Loney, Jr.  (No. 202535)
Marian K. Schneider (No. 50337)
ACLU OF PENNSYLVANIA
P.O. Box 60173
Philadelphia, PA 19102
P: 215-592-1513
sloney@aclupa.org

---

[10]  Approximately 2.7 million Pennsylvanians cast mail-in ballots in the 2020 General Election.
https://www.dos.pa.gov/VotingElections/Documents/2020-General-Election-Report.pdf

mschneider@aclupa.org

*Counsel for Plaintiffs*

20