# Appendix 1

Received 12/8/2021 3:19:53 PM Commonwealth Court of Pennsylvania

Filed 12/8/2021 3:19:00 PM Commonwealth Court of Pennsylvania
1322 CD 2021

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Petition Challenging November 2, 2021
General Election of Lehigh County for Judge of
the Court of Common Please

No. 1322 CD 2021

Appeal of: David D. Ritter

## COMMONWEALTH OF PENNSYLVANIA'S AMICUS BRIEF IN SUPPORT OF AFFIRMING THE JUDGMENT BELOW

Josh Shapiro
Attorney General
Commonwealth of Pennsylvania

Keli M. Neary
Executive Deputy Attorney General

Michael J. Fischer
Chief Counsel and Executive Deputy
Attorney General

Karen M. Romano
J. Bart DeLone
Chief Deputy Attorneys General

Jacob B. Boyer
Deputy Attorney General

Howard G. Hopkirk
Senior Deputy Attorney General

PENNSYLVANIA OFFICE OF
ATTORNEY GENERAL
1600 Arch Street, Suite 300
Philadelphia, PA 19103

Daniel B. Mullen
Deputy Attorney General

PENNSYLVANIA OFFICE OF
ATTORNEY GENERAL
15th Floor
Strawberry Square
Harrisburg, PA 17120

*Attorneys for Amicus Commonwealth
of Pennsylvania*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................... iii

STATEMENT OF INTEREST ............................................................... 1

INTRODUCTION ................................................................................. 2

BACKGROUND .................................................................................. 3

ARGUMENT ...................................................................................... 8

I.    Failing to Count a Ballot Denies the Right to Vote................... 10

II.   Failing to Date the Outer Envelope is "an error or omission on
      any record or paper related to [an] . . . act requisite to voting" ................. 11

III.  The Date Rule is not Material to Determining a Voter's
      Qualifications.................................................................... 14

CONCLUSION .................................................................................. 20

# TABLE OF AUTHORITIES

**Cases**

*Dooner v. DiDonato*, 971 A.2d 1187 (Pa. 2009) ................................................. 8, 9

*Fla. State Conf. of NAACP v. Browning*, 522 F.3d 1153 (11th Cir. 2008) ...................................................................................... 9, 12, 14, 16

*In re Canvass of Absentee & Mail-in Ballots of Nov. 3, 2020 Gen. Election*, 241 A.3d 1058 (Pa. 2020) ......................................................... *passim*

*Kuznik v. Westmoreland Cty. Bd. of Comm'rs*, 902 A.2d 476 (Pa. 2006) ................................................................................................... 9

*Martin v. Crittenden*, 347 F. Supp. 3d 1302 (N.D. Ga. 2018) ........................ 11, 16

*Murphy v. NCAA*, 138 S. Ct. 1461 (2018) ........................................................ 8

*Org. for Black Struggle v. Ashcroft*, 493 F. Supp. 3d 790 (W.D. Mo. 2020) .................................................................................................... 12

*Pennsylvania Democratic Party v. Boockvar*, 238 A.3d 345 (Pa. 2020) .............. 19

*Schwier v. Cox*, 412 F. Supp. 2d 1266 (N.D. Ga. 2005), *aff'd*, 439 F.3d 1285 (11th Cir. 2006) ........................................................... 17

*Washington Ass'n of Churches v. Reed*, 492 F. Supp. 2d 1264 (W.D. Wash. 2006) ................................................................................... 17

**Constitutions**

Pa. Const. art. VII, § 1 .......................................................................... 3, 15, 18

Pa. Const. art. VII, § 14 ............................................................................ 4

U.S. Const. amend. XXVI ...................................................................... 3, 15

U.S. Const. art. VI, cl. 2 ........................................................................... 8

**Statutes and Legislation**

1 Pa.C.S. § 1922 .................................................................................... 8

25 P.S. § 2602 ........................................................................................ 4

25 P.S. § 2811.................................................................... 3, 15, 18

25 P.S. § 3146.1....................................................................4

25 P.S. § 3146.2....................................................................4

25 P.S. § 3146.2a...................................................................4

25 P.S. § 3146.2b........................................................... 4, 15, 18

25 P.S. § 3146.5....................................................................4

25 P.S. § 3146.6.............................................................*passim*

25 P.S. § 3146.8....................................................................6

25 P.S. § 3150.11...................................................................4

25 P.S. § 3150.12...................................................................4

25 P.S. § 3150.12a..................................................................4

25 P.S. § 3150.12b.......................................................... 4, 15, 18

25 P.S. § 3150.15...................................................................4

25 P.S. § 3150.16............................................................*passim*

25 Pa. C.S. §§ 3501–3519 ...........................................................5

25 Pa.C.S. § 1301 .......................................................... 3, 15, 18

25 Pa.C.S. § 1328 .......................................................... 3, 15, 18

52 U.S.C. § 10101..........................................................*passim*

Civil Rights Act of 1964, Pub. L. No. 88-352, 78 Stat. 241 (1964) ...................7, 9

Voting Rights Act of 1965, Pub. L. No. 89-110, 79 Stat. 437 (1965) ....................9

**Other Authorities**

Complaint, *United States v. Texas*, No. 21-1085 (W.D. Tex. Nov. 4, 2021)...........................................................................11

DOJ Manual § 8-2.271 ...................................................................... 10

Election Ballot Status, Dep't of State,
    https://www.pavoterservices.pa.gov/Pages/BallotTracking.aspx ................ 6, 19

Email from Jonathan Marks, Deputy Secretary for Elections &
    Commissions, Dep't of State, to County Election Officials (June 1,
    2021) ..................................................................................... 15, 16

Opinion No. 05-050, Office of Attorney General, Commonwealth of
    Virginia, 2005 WL 2227983 (Aug. 1, 2005) .................................... 12

Pennsylvania Rule of Appellate Procedure 531 ................................... 1

## STATEMENT OF INTEREST

The Commonwealth of Pennsylvania files this *amicus* brief in support of appellees and in support of affirming the judgment below. Pursuant to Pennsylvania Rule of Appellate Procedure 531(b)(2), *amicus* discloses that no other person or entity other than *amicus* and its counsel paid, in whole or in part, for the preparation of this brief or authored, in whole or in part, this brief.

In consecutive years, questions have arisen about whether county boards of elections may count, and include in their election results, otherwise lawfully cast absentee and mail-in ballots if the voter has not dated the outer envelope used to return the ballot. For the 2020 election, the Pennsylvania Supreme Court ruled that so-called "undated ballots" could be counted. *In re Canvass of Absentee & Mail-in Ballots of Nov. 3, 2020 Gen. Election*, 241 A.3d 1058, 1078 (Pa. 2020) (opinion announcing judgment). This challenge to the Lehigh County Board of Elections' decision to count undated ballots for the 2021 general election has brought the issue to court again.

The Commonwealth of Pennsylvania has an interest in properly resolving whether undated ballots should be counted and included in a county's election results. That interest derives from the Commonwealth's interest in seeing that all its political subdivisions—including counties—lawfully exercise their authority.

Similarly, the Commonwealth has an interest in ensuring that the declared winners of its elections are those who receive the most lawfully cast votes.

Additionally, the Commonwealth has an interest in conclusively resolving whether undated ballots should be counted and included in a county's election results. Four Justices of the Pennsylvania Supreme Court recognized in *In re Absentee & Mail-in Ballots* that voiding an otherwise lawfully cast absentee or mail-in ballot because the voter failed to date the outer envelope used to return the ballot may conflict with federal law. Likewise, although the Court of Common Pleas ruled that Pennsylvania law requires counties to count undated ballots, it also recognized that federal law may require counting undated ballots. Definitively answering whether such ballots should be counted requires looking at both state and federal law. This brief primarily addresses the relevance of federal law so that the status of undated ballots may be finally resolved.

## INTRODUCTION

The Lehigh County Board of Elections has voted to include in its 2021 general election results 261 absentee or mail-in ballots in which the voter failed to date the envelope used to return the ballot.[1] Lehigh—and all other counties—is not only permitted to count such "undated ballots," it must.

---

[1] The analysis in this brief applies equally to the 257 ballots returned without a date and the four ballots dated in the wrong location.

Federal law forbids denying individuals the right to vote because the voter has made an error or omission that is immaterial to determining the voter's eligibility to vote. 52 U.S.C. § 10101(a)(2)(B). Failing to date an otherwise lawfully cast absentee or mail-in ballot is such an error or omission and thus cannot be the basis for denying the right to vote. So that all parts of the Pennsylvania Election Code remain effective, the Election Code's instruction to date the outer envelope of an absentee or mail-in ballot should be read, if possible, not to conflict with this federal provision. If there is a conflict, federal law requires that undated ballots be counted.

## BACKGROUND

In Pennsylvania, a person is qualified to vote if they: (1) are 18 years old at the time of the election; (2) have been a citizen for at least one month prior to the election; (3) have lived in Pennsylvania for ninety days preceding the election; (4) have lived in the election district where they will vote for at least thirty days immediately preceding the election, and (5) have not been imprisoned for a felony conviction within the last five years. U.S. Const. amend. XXVI; Pa. Const. art. VII, § 1; 25 P.S. § 2811; 25 Pa.C.S. § 1301(a). Each county assesses compliance with these conditions when a person submits a voter registration application. 25 Pa.C.S. § 1328. The county approves an application to register only if the applicant meets all the eligibility criteria. *Id*. § 1328(b).

3

Qualified, registered voters may cast a ballot in a primary or general election in person, as an "absentee elector," or as a "mail-in elector." 25 P.S. §§ 3146.1, 3150.11. A registered voter may vote as an absentee elector only if they satisfy any of several conditions, including current military service or absence on Election Day for business reasons. Pa. Const. art. VII, § 14; 25 P.S. § 3146.1. Any registered voter may vote as a mail-in elector if they apply and are approved to do so. 25 P.S. § 3150.11(b); *see also* 25 P.S. § 2602(t).

Voters apply with their county board of elections to cast a ballot as an absentee or mail-in elector under procedures set forth in the Pennsylvania Election Code. 25 P.S. §§ 3146.2, 3150.12. County boards of elections must confirm that the applicant meets Pennsylvania's criteria for voter eligibility before approving any application. *Id.* §§ 3146.2b, 3150.12b. The deadline to apply to vote in any primary or general election as an absentee or mail-in elector is 5 p.m. on the Tuesday before the relevant election. *Id.* §§ 3146.2a(a), 3150.12a(a).

County boards of elections must begin mailing ballots to approved absentee electors between 45 and 14 days before the election, and must begin mailing ballots to approved mail-in electors as soon as the official ballot is certified, but no later than 14 days before the election. *Id.* §§ 3146.5(a)–(b)(1), 3150.15.[2] All ballots

---

[2] Ballots may be sent sooner to people "living or performing military service in an extremely remote or isolated area of the world." 25 P.S. § 3146.5(a).

4

for a particular election must be sent to absentee and mail-in electors within 48 hours of the deadline to apply to vote as an absentee or mail-in elector—meaning by 5 p.m. on the Thursday before an election. *Ibid*.

Materially identical procedures govern how voters complete and return both absentee and mail-in ballots. At any time between receiving the official ballot and 8 p.m. on Election Day, the voter secretly marks their ballot, places the ballot in an envelope marked "Official Election Ballot," and then places that envelope in an outer envelope. *Id*. §§ 3146.6(a), 3150.16(a). The outer envelope has a printed declaration that the voter "shall then fill out, date and sign." *Ibid*. The voter delivers the entire package by mail or by hand to their county board of elections. *Ibid*.

An absentee or mail-in ballot is timely if received by the voter's county board of elections by 8 p.m. on Election Day. *Id*. §§ 3146.6(c), 3150.16(c).[3] Counties log when a mailed ballot has been received, and make that information available to voters on the Department of State's website. *See* Election Ballot Status, Dep't of State, https://www.pavoterservices.pa.gov/Pages/Ballot Tracking.aspx; *see also In re Canvass of Absentee & Mail-in Ballots of Nov. 3, 2020 Gen. Election*, 241 A.3d 1058, 1077 (Pa. 2020) (opinion announcing

---

[3] Separate rules govern uniform military and overseas electors. 25 Pa. C.S. §§ 3501–3519.

judgment) (explaining the same). Timely absentee and mail-in ballots that county boards of elections have verified consistent with the procedures set forth in § 3146.8(g)(3), that have not been challenged, and for which there is not due proof that the voter has died prior to Election Day, are counted and included with the election results. *Id.* § 3146.8(d), (g)(4).

During the 2020 general election, a question arose about whether counties could count absentee and mail-in ballots returned without the voter having followed § 3146.6(a)'s and § 3150.16(a)'s instruction to date the outer envelope. The Supreme Court ruled that such undated ballots could be counted for the 2020 general election. *See In re Absentee & Mail-in Ballots*, 241 A.3d at 1079 (opinion announcing judgment). The Court did not, however, produce a majority opinion.

Three Justices concluded that undated ballots should be counted because the Pennsylvania Election Code's date rule is directory rather than mandatory. *Id.* at 1076 (opinion announcing judgment). A voter's non-compliance with some part of the Election Code can justify disenfranchisement, the plurality explained, only if the underlying instruction serves a "weighty interest." *Id.* (opinion announcing judgment). And the date written on the outer envelope "does not implicate any weighty interest." *Id.* at 1078 (opinion announcing judgment).

Justice Wecht rejected the "weighty interest" analysis, writing instead that the Election Code's instruction that voters "shall . . . date" the outer envelope is an

"unmistakable statutory directive" that voters must follow. *Id.* at 1085-87 (Wecht, J., concurring and dissenting). Still, Justice Wecht agreed that undated ballots should be counted for the 2020 election because even diligent voters would not have known the consequence of omitting the date. *Id.* at 1089 (Wecht, J., concurring and dissenting).

Three other Justices wrote that undated ballots should not be counted, even for the 2020 election, because § 3146.6(a)'s and § 3150.16(a) "shall . . . date" language supplies an unambiguous, mandatory direction. *Id.* at 1090–91 (Dougherty, J., concurring and dissenting).

In the same case, four Justices observed that voiding undated ballots may conflict with 52 U.S.C. § 10101(a)(2)(B), otherwise known as the federal "Materiality Provision." *In re Absentee & Mail-in Ballots*, 241 A.3d at 1074 n.5 (opinion announcing judgment); *id.* at 1089 n.54 (Wecht, J., concurring and dissenting). That provision forbids states from denying the right to vote because of an "error or omission" that "is not material in determining whether such individual is qualified under State law to vote in such election." 52 U.S.C. § 10101(a)(2)(B).[4] The opinion announcing the judgment of the Court described one party as having argued with "persuasive force" that there would be a conflict. *Id.* at 1074 n.5. But

---

[4] The Materiality Provision was initially codified at 42 U.S.C. § 1971, *see* Civil Rights Act of 1964, Pub. L. No. 88-352, § 101, 78 Stat. 241 (1964), but was moved to Title 52 in 2014.

the Court had no need to analyze the possible conflict because it ruled that undated ballots should be counted for the 2020 election.

## ARGUMENT

Pennsylvania statutes should be interpreted so that they are "effective and certain" and do not conflict with sources of law that would require invalidation. *See* 1 Pa.C.S. § 1922(2)-(3). Because Pennsylvania statutes that conflict with federal law cannot be given effect, U.S. Const. art. VI, cl. 2; *Murphy v. NCAA*, 138 S. Ct. 1461, 1480 (2018) (describing conflict preemption); *Dooner v. DiDonato*, 971 A.2d 1187, 1198 (Pa. 2009) (same), Pennsylvania statutes should be interpreted, where possible, not to conflict with federal law. But if a conflict between a Pennsylvania statute and federal law is unavoidable, federal law prevails. *Ibid.*

Relevant here, the federal Materiality Provision, enacted as part of the Civil Rights Act of 1964, provides:

> No person acting under color of law shall . . . deny the right of any individual to vote in any election because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election.

52 U.S.C. § 10101(a)(2)(B).[5] The Materiality Provision was enacted to end trivial requirements that "served no purpose other than as a means of inducing voter-generated errors that could be used to justify" denying the right to vote. *Fla. State Conf. of NAACP v. Browning*, 522 F.3d 1153, 1173 (11th Cir. 2008). It ensures that if a voter is denied the right to vote because of an error, it will be because that error interferes with determining whether that individual is qualified to vote.

For reasons explained below, denying a qualified Pennsylvania voter their right to vote merely because the voter has failed to date the outer envelope used to return an absentee or mail-in ballot would conflict with the Materiality Provision. Pennsylvania law should be interpreted not to create such a conflict. If the conflict is unavoidable, Pennsylvania law is preempted.[6]

---

[5] This Court cannot look past the Materiality Provision just because its relevance is not raised on behalf of a party whose right to vote has been denied. The Materiality Provision forbids disqualifying undated ballots. Any conflicting state law directive "is nullified." *Dooner*, 971 A.2d at 1194; *see also Kuznik v. Westmoreland Cty. Bd. of Comm'rs*, 902 A.2d 476, 487 (Pa. 2006) (explaining that state law is "displaced" if it conflicts with federal law). This Court may not order that Lehigh, as a matter of Pennsylvania law, may not count the 261 undated ballots if such an order would require Lehigh to violate federal law.

[6] This conclusion applies to both federal and state elections. When initially passed in 1964, the Materiality Provision read "No person acting under color of law shall . . . deny the right of any individual to vote in any *Federal* election . . . ." Civil Rights Act of 1964, Pub. L. No. 88-352, § 101, 78 Stat. 241 (emphasis added). In 1965, Congress amended the provision to delete "Federal." Voting Rights Act of 1965, Pub. L. No. 89-110, § 15, 79 Stat. 437 (1965). Congress thus intends for the Materiality Provision to govern federal and state elections.

## I.       Failing to Count a Ballot Denies the Right to Vote

The word "vote," as used in the Materiality Provision, "includes all action necessary to make a vote effective including, but not limited to, registration or other action required by State law prerequisite to voting, casting a ballot, and *having such ballot counted and included* in the appropriate totals of votes cast with respect to candidates for public office and propositions for which votes are received in an election." 52 U.S.C. § 10101(e) (emphasis added); *see also id*. § 10101(a)(3)(A) ("For purposes of this subsection . . . the term 'vote' shall have the same meaning as in subsection (e) of this section."). The Department of Justice, which has statutory authority to institute civil actions for violations of the Materiality Provision, 52 U.S.C. § 10101(c), similarly explains that federal law, including the Materiality Provision, "prohibits any person acting under color of law from denying eligible persons the right to vote or failing or refusing to count their votes," DOJ Manual § 8-2.271.

The federal definition of "vote" instructs that failing to count a person's ballot and include it in a county's election results denies "the right of an individual to vote." So there is no basis to conclude that a person who has been allowed to register to vote, apply for a ballot, and return that ballot has been allowed to "vote" even though that vote has not been counted. Not counting a person's ballot denies their right to vote.

## II. Failing to Date the Outer Envelope is "an error or omission on any record or paper related to [an] . . . act requisite to voting"

The Materiality Provision applies to any "act requisite to voting," or, in other words, any act for which compliance is a condition of voting. Because the statutory definition of "vote" includes "all action necessary to make a vote effective including, but not limited to, registration or other action required by State law prerequisite to voting, casting a ballot, and having such ballot counted and included in the appropriate totals of votes cast," 52 U.S.C. § 10101(e), the relevant acts may occur at any point in the process of registering to vote or casting a ballot, *see Martin v. Crittenden*, 347 F. Supp. 3d 1302, 1308–09 (N.D. Ga. 2018) (applying the Materiality Provision to errors or omissions made on the ballot envelope of a mailed ballot). Indeed, on November 4, 2021, the U.S. Department of Justice filed a civil action against Texas alleging that a recently enacted statute creating new circumstances that require election officials to reject applications for mail-in ballots or actual mail-in ballot violates the Materiality Provision. Complaint at ¶¶ 59-65, *United States v. Texas*, No. 21-1085 (W.D. Tex. Nov. 4, 2021).

Some have argued that the reach of the Materiality Provision is limited to errors or omissions in the registration process because Congress was motivated to enact the Materiality Provision by past instances of states preventing qualified voters from registering. *See Org. for Black Struggle v. Ashcroft*, 493 F. Supp. 3d

790, 803 (W.D. Mo. 2020) (summarizing party's argument that the "materiality provision applies only to registration and application materials and not to errors and omissions on ballot envelopes"); Opinion No. 05-050, Office of Attorney General, Commonwealth of Virginia, 2005 WL 2227983 at *3-*4 (Aug. 1, 2005). Yet, as the Eleventh Circuit has observed about the Materiality Provision, "Congress in combating specific evils might choose a broader remedy." *NAACP*, 522 F.3d at 1173. Thus, "[t]he text of the resulting statute, and not the historically motivating examples of intentional and overt racial discrimination" must direct the interpretive inquiry. *Id.*

The Materiality Provision's text does not support limiting its reach to errors or omissions in the registration process. Rather, it applies to any "error or omission on any record or paper relating to any application, registration, *or other act requisite to voting.*" 52 U.S.C. § 10101(a)(2)(B) (emphasis added). The phrase "other act requisite to voting" captures a category of actions separate from applying and registering to vote. Apart from making part of the statute redundant, limiting "other act requisite to voting" to registration acts also would be incongruent with Congress's incorporating a definition of "vote" that includes "*all action* necessary to make a vote effective," including action needed for a ballot to be "counted and included in the appropriate totals of votes cast." *Id.* § 10101(e).

If compliance with § 3146.6(a)'s and § 3150.16(a)'s date rule is interpreted to be mandatory, then dating the outer envelope is a necessary condition of voting in Pennsylvania and compliance with the rule is an "act requisite to voting." Similarly, if the date rule merely permits a county to void undated ballots, any county that opts to do so has, under the color of state law, denied the right to vote for failure to comply with an act that the county has made "requisite to voting."

In addition, failing to comply with the date rule is self evidently an "error or omission" on the part of the voter. That person has omitted from the outer envelope information that the relevant statutes solicit, and thus erred in complying with an act that either the Pennsylvania Election Code or a county board of elections has made requisite to voting.

Finally, the envelope from which the date has been omitted is a "record or paper." Like "act requisite to voting," what qualifies as a "record or paper" is defined by its relevance to the act of voting. In other words, the papers and records covered by the Materiality Provision are those that state law or counties make requisite to voting. If § 3146.6(a) and § 3150.16(a) are read to require or permit a county board of elections to invalidate undated ballots, then the outer envelope is a "record or paper relating to . . . [an] act requisite to voting."

In all, failing to date an outer envelope is "an error or omission on any record or paper related to [an] . . . act requisite to voting."

### III.   The Date Rule is not Material to Determining a Voter's Qualifications

Materiality is a familiar legal standard, but can take on different meanings in different contexts. The Court of Appeals for the Eleventh Circuit discussed these different meanings in interpreting the Materiality Provision, noting that in some contexts materiality had a meaning "similar to minimal relevance" while in others it was "closer to outcome-determinative." *NAACP*, 522 F.3d at 1174. It is not necessary to adopt a particular definition of materiality here because, under any definition, requiring a voter to identify the date on which they completed an absentee or mail-in ballot is immaterial to determining whether that person is eligible to vote in Pennsylvania.

The Election Code attaches no significance to when a voter completes their absentee or mail-in election ballot, so long as it happens "at any time after receiving an official absentee [or mail-in] ballot, but on or before eight o'clock p.m. the day of the primary or election." 25 P.S. §§ 3146.6(a), 3150.16(a). No voter can fill out a ballot before receiving it, and because the deadline to complete a ballot and the deadline to return a ballot are both 8 p.m. on Election Day, *id.* §§ 3146.6(c), 3150.16(c), any ballot received by the county board of elections by 8 p.m. on Election Day will necessarily have been completed within the prescribed time period.

Additionally, as discussed above, a person may vote in Pennsylvania if they are 18 years old, have been a citizen for at least a month, have lived in Pennsylvania for at least ninety days, have lived in the election district where they will vote for at least thirty days, and have not been imprisoned for a felony conviction within the last five years. U.S. Const. amend. XXVI; Pa. Const. art VII, § 1; 25 P.S. § 2811; 25 Pa.C.S. § 1301. The age and residency requirements must be satisfied as of Election Day. The date on which a voter fills out an absentee or mail-in ballot has no relevance in determining whether a voter meets these criteria. This conclusion is consistent with the Department of State's existing guidance on this point, which instructs that the date written is not "used to determine the eligibility of the voter." *See* Email from Jonathan Marks, Deputy Secretary for Elections & Commissions, Dep't of State, to County Election Officials (June 1, 2021).

What is more, by the time a voter has returned an absentee or mail-in ballot, their eligibility has already been determined. County boards of elections are required to confirm a person's eligibility to vote both when the person registers and when the person applies to vote absentee or by mail-in ballot. 25 P.S. §§ 3146.2b, 3150.12b; 25 Pa.C.S. § 1328(b). Even if the date written on the outer envelope in any way aided in confirming that a voter satisfies Pennsylvania's voter eligibility criteria, yet another confirmation of that fact is wholly gratuitous.

Moreover, the Department has recently instructed counties that "there is no basis to reject a ballot for putting the 'wrong' date on the envelope." Email from Jonathan Marks, Deputy Secretary for Elections & Commissions, Dep't of State, to County Election Officials (June 1, 2021). Indeed, there is no means of confirming the accuracy of whatever date a voter puts on the outer envelope. Because the relevant inquiry under the Materiality Provision is the importance of the solicited information rather than the magnitude of the voter's mistake, *NAACP*, 522 F.3d at 1174–75, treating errors and omissions distinctly under state law substantiates that the underlying information is immaterial.

Decisions from federal courts are consistent with the conclusion that the date rule is immaterial to determining eligibility to vote in Pennsylvania.

In the most analogous case, a district court in Georgia concluded that rejecting mailed ballots for failing to include a birth date violated the Materiality Provision. *Martin*, 347 F. Supp. 3d at 1308–09. Even though Georgia had a minimum age requirement for voting, any voter who was casting an absentee ballot already would have confirmed their age when they applied to vote absentee, making the requirement to repeat their birth year on the outer envelope entirely superfluous in determining eligibility. *Id.* at 1309. The same is true here.

Other courts have held that voter registration applications cannot be denied because a prospective voter would not disclose a full social security number.

*Schwier v. Cox*, 412 F. Supp. 2d 1266, 1276 (N.D. Ga. 2005), *aff'd*, 439 F.3d 1285 (11th Cir. 2006); *Washington Ass'n of Churches v. Reed*, 492 F. Supp. 2d 1264, 1270–71 (W.D. Wash. 2006). In each case, the court reviewed voter eligibility criteria for the respective state and concluded that failing to provide a complete social security number did not bear on the state's ability to assess compliance with those criteria. *Ibid.* The same rationale holds here.

In line with this analysis, three Justices on the Pennsylvania Supreme Court already have stated that there is "persuasive force" to the idea that voiding undated ballots would conflict with the Materiality Provision. *In re Absentee & Mail-in Ballots* 241 A.3d at 1074 n.5 (opinion announcing judgment). Although Justice Dougherty's dissenting opinion in the same case described why, in his view, the absence of a date is not "a mere technical insufficiency we may overlook," *id.* at 1090 (Dougherty, J., concurring and dissenting), the reasons given are incompatible with materiality analysis.

First, the date on a mailed ballot does not confirm a voter's "desire to cast it in lieu of appearing in person at a polling place." *Contra id.* The presence or absence of a date on the outer envelope is not any more confirmation of a voter's intent to vote absentee or by mail-in ballot than is the act of completing, signing, and returning a ballot. Plus, it is irrelevant whether a person who has cast an absentee or mail-in ballot later has misgivings about having done so. District

registers show which voters have requested and cast an absentee or mail-in ballot; those voters may not vote in person unless they return their blank absentee or mail-in ballot to their polling place. 25 P.S. §§ 3146.6(b)(1)-(3), 3150.16(b)(1)-(3).

Second, the date does not "establish[] a point in time against which to measure the elector's eligibility to cast the ballot." *Contra In re Absentee & Mail-in Ballots*, 241 A.3d at 1090 (Dougherty, J., concurring and dissenting). For reasons discussed above, the date rule does not usefully establish a point in time to determine a voter's eligibility. A person is eligible to vote if they are 18 years old by the day of the election and will have satisfied the residency requirements by that time. Pa. Const. art VII, § 1; 25 P.S. § 2811; 25 Pa.C.S. § 1301. County election boards confirm a voter satisfies those criteria before mailing them a ballot. 25 P.S. §§ 3146.2b, 3150.12b; 25 Pa.C.S. § 1328(b).

Third, the date does not "ensure[] the elector completed the ballot within the proper time frame and prevents the tabulation of potentially fraudulent back-dated votes." *Contra In re Absentee & Mail-in Ballots* 241 A.3d at 1090 (Dougherty, J., concurring and dissenting). Justice Dougherty made this observation in the context of an election in which the Pennsylvania Supreme Court had already ruled that, because of the ongoing global pandemic and documented mail delays, Article 1, Section 5 of the Pennsylvania Constitution required extending the received-by deadline for mailed ballots by three days. *Pennsylvania Democratic Party v.*

*Boockvar*, 238 A.3d 345, 371–72 (Pa. 2020). In that unique context, the date rule may have assisted in confirming that any ballot that the U.S. Postal Service failed to postmark was sent by the Election Day mailing deadline. Ordinarily, however, only ballots received by 8 p.m. on Election Day may be counted. Any ballot received by that time necessarily will have been completed sometime after the voter received the official ballot and before 8 p.m. on Election Day, which is what Pennsylvania law requires. 25 P.S. §§ 3146.6(a), 3150.16(a). Moreover, counties log when mailed ballots were received. *See* Election Ballot Status, Dep't of State, https://www.pavoterservices.pa.gov/Pages/BallotTracking.aspx; *see also In re Absentee & Mail-in Ballots*, 241 A.3d at 1077 (explaining the same). Finally, the date written on the outer envelope is not a piece of information that can be cross-checked against any independent sources of information, so it would not permit any actual oversight either way.

At bottom, voiding an otherwise timely received ballot from a qualified, registered voter because of non-compliance with the date rule is a denial of the right to vote for an omission that does not in any way interfere with determining the voter's eligibility. Therefore, voiding ballots for non-compliance with Pennsylvania's date rule would conflict with federal law.

# CONCLUSION

Failing to count a ballot solely because the outer envelope is undated denies the right to vote for an error or omission that is not material to determining whether the voter is qualified to vote under Pennsylvania law. Failing to count such ballots therefore would violate the Materiality Provision. To avoid a conflict with the Materiality Provision, the Pennsylvania Election Code's date rule must be read, to the extent possible, not to require, or even permit, counties to disqualify undated ballots. If Pennsylvania's date rule is read in a contrary manner, it conflicts with the Materiality Provision and is preempted. For these reasons, the judgment below should be affirmed.

Dated: December 8, 2021

Respectfully submitted,

Josh Shapiro
Attorney General
Commonwealth of Pennsylvania

Keli M. Neary (No. 205178)
Executive Deputy Attorney General

Karen M. Romano (No. 88848)
J. Bart DeLone (No. 42540)
Chief Deputy Attorneys General

Howard G. Hopkirk (No. 74264)
Senior Deputy Attorney General

Daniel B. Mullen (No. 321525)
Deputy Attorney General

Michael J. Fischer (No. 322311)
Chief Counsel and Executive Deputy
Attorney General

/s/ *Jacob B. Boyer*
Jacob B. Boyer (No. 324396)
Deputy Attorney General

PENNSYLVANIA OFFICE OF
ATTORNEY GENERAL
1600 Arch Street, Suite 300
Philadelphia, PA 19103

20

PENNSYLVANIA OFFICE OF
ATTORNEY GENERAL
15th Floor
Strawberry Square
Harrisburg, PA 17120

jboyer@attorneygeneral.gov
(267) 768-3968

*Attorneys for Amicus Commonwealth*
*of Pennsylvania*

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this filing complies with the provisions of the *Case Records Public Access Policy of the Unified Judicial System of Pennsylvania* that require filing confidential information and documents differently than non-confidential information and documents.

Dated: December 8, 2021                    /s/ *Jacob B. Boyer*
                                           Jacob B. Boyer

## <u>CERTIFICATE OF LENGTH</u>

I certify that this brief complies with the word count requirement set forth in Pennsylvania Rule of Appellate Procedure 531(b)(3). Excluding matters identified in Pennsylvania Rule of Appellate Procedure 2135(b), this brief is 4,784 words. I have relied on Word's word count function to determine the length of this brief.

Dated: December 8, 2021                    /s/ *Jacob B. Boyer*_____
                                            Jacob B. Boyer

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record have been electronically served with the foregoing document through PACFile.

December 8, 2021                              /s/ *Jacob B. Boyer*

                                             Jacob B. Boyer