**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

LINDA MIGLIORI, et al.,
      *Plaintiffs*,

v.

THE LEHIGH COUNTY BOARD
OF ELECTIONS, et al.,
      *Defendants*.

Case No. 5:22-cv-00397

**AMICUS BRIEF OF LEGISLATIVE LEADERS IN SUPPORT OF DEFENDANTS'
MOTIONS FOR SUMMARY JUDGMENT**

CHALMERS & ADAMS LLC

Zachary M. Wallen
Pennsylvania Bar No. 309176
301 South Hills Village Drive
Suite LL200-420
Pittsburgh, PA 15241
(412) 200-0842
(412) 235-5001 (*facsimile*)
zwallen@chalmersadams.com

*Counsel for Amici Curiae
Bryan Cutler, Speaker of the Pa. House of
Representatives, Kerry Benninghoff, Pa.
House Majority Leader, Jake Corman, Pa.
Senate President Pro Tempore, and Kim
Ward, Pa. Senate Majority Leader*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................... I

INTEREST OF AMICI CURIAE ................................................................................... 1

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................... 1

ARGUMENT ................................................................................................................. 3

I.   THE LEGISLATIVE HISTORY OF THE STATUTES IN QUESTION
     DEMONSTRATES A CLEAR COMMITMENT BY THE GENERAL ASSEMBLY
     TO FREE, EQUAL, AND FAIR ELECTIONS ................................................. 3

II.  THE REQUIREMENT TO DATE AND SIGN ABSENTEE AND MAIL-IN
     BALLOTS SERVES A CLEAR PURPOSE AS A PART OF THE GENERAL
     ASSEMBLY'S COMPREHENSIVE ELECTION CODE................................. 4

III. THE STATUTES ARE CONSTITUTIONAL ................................................. 5

     A. THE STATUTES DO NOT VIOLATE THE MATERIALITY PROVISION ............ 5

     B. THE STATUTES DO NOT UNDULY BURDEN THE RIGHT TO VOTE................ 8

CONCLUSION........................................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Celebrezze*, 460 U.S. 780 (1983) ............................................................ 2, 8, 9, 11, 13

*Ariz. Democratic Party v. Hobbs*, ___ F. 4th ___, Nos. 20-16759, 20-16766,
   2021 U.S. App. LEXIS 36129 (9th Cir. Dec. 8, 20221) .................................... 9, 10, 12, 13, 14

*Bonner v. Commonwealth*, No. 15 MAP 2022 (Pa. 2022)................................................................ 4

*Burdick v. Takushi*, 504 U.S. 428 (1992)............................................................. 2, 8, 9, 10, 11, 13

*Condon v. Reno*, 913 F. Supp. 946 (D.S.C. 1995)........................................................................... 6

*Crawford v. Marion County Election Bd.*, 913 F. Supp. 946 (D.S.C. 1995)................................. 8

*Democratic Nat'l Comm. v. Wis. State Legis.*, 141 S. Ct. 28 (2020) ........................................... 10

*Diaz v. Cobb*, 435 F. Supp. 2d 1206 (S.D. Fla. 2006) ............................................................... 6, 7

*Donald J. Trump for President, Inc. v. Boockvar*,
   493 F. Supp. 3d 331 (W.D. Pa. 2020) ...................................................... 9, 11, 12, 14, 15

*Donald J. Trump for President, Inc. v. Boockvar*, 502 F. Supp. 3d 899 (M.D. Pa. 2020) ......... 8, 9

*Friedman v. Snipes*, 345 F. Supp. 2d 1356 (S.D. Fla. 2004) .................................................... 6, 8

*Green Party of Pa. v. Aichele*, 89 F. Supp. 3d 723 (E.D. Pa. 2015)............................................. 7

*Griffin v. Roupas*, 385 F.3d 1128 (7th Cir. 2004)................................................................. 11, 15

*In re 2,349 Ballots in 2020 General Election*,
   241 A.3d 694 (Pa. Commw. Ct. 2020)....................................................................... 4, 11, 14

*In re Canvass of Absentee & Mail-in Ballots of Nov. 3, 2020 General Election*,
   241 A.3d 591 (Pa. 2020). ................................................................................... 4, 7, 11, 14

*In re Canvass of  Nov. 4, 2003 General Election*, 843 A.2d 1223 (Pa. 2004)............................ 11

*In re Gen. Election-1985*, 531 A.2d 836 (Pa. Commw. Ct.  1987). ........................................... 12

*In re Nov. 3, 2020 Gen. Election*, 240 A.3d 591 (Pa. 2020)...................................................... 13

*McKay v. Altobello.*, CIVIL ACTION NO. 96-3458 SECTION: E/4,
   1996 U.S. Dist. LEXIS 16651 (E.D. La. Oct. 31, 1996)............................................................ 6

*McLinko v. Commonwealth*, No. 14 MAP 2022 (Pa. 2022) .......................................... 4

*Ne. Ohio Coal. for the Homeless v. Husted*, 837 F.3d 612 (6th Cir. 2016) ..................................... 5

*Patriot Party v. Allegheny Cty. Dep't of Elections*, 95 F.3d 253 (3d Cir. 1996) ........................... 9

*Pa. Democratic Party v. Boockvar*, 238 A.3d 345 (Pa. 2020)...................................................... 12

*Ritter v. Lehigh Cty. Bd. of Elections*, No. 1322 C.D. 2021,
   2022 Pa. Commw. Unpub. LEXIS 1 (Pa. Commw. Ct. Jan. 3, 2022) ............................. 4, 7, 12

*Rosario v. Rockefeller*, 410 U.S. 752 (1973) ............................................................. 10

*Schwier v. Cox*, 340 F.3d 1284 (11th Cir. 2003) ..................................................... 5, 6, 7

*Weber v. Shelley*, 347 F.3d 1101 (9th Cir. 2003)................................................... 12, 15

**Constitutional and Statutory Authorities**

U.S. Constitution Art. I, Section 4 ...................................................................... 1, 3

U.S. Constitution Amend. 1 ................................................................................ 8. 9

U.S. Constitution Amend. 14 .............................................................................. 8. 9

25 P.S. § 3031.12 ............................................................................................... 4

25 P.S. § 3146.1 .............................................................................................. 3, 4

25 P.S. § 3146.6 .............................................................................................. 3, 4

25 P.S. § 3150.16 ............................................................................................... 4

52 U.S.C. § 10101 ....................................................................................... 5, 6, 7, 8

**Other Authorities**

Act No. 37, Session of 1963, Pub. L. No. 707 § 22................................................. 3, 4

## INTEREST OF AMICI CURIAE[1]

Bryan Cutler, Speaker of the Pennsylvania House of Representatives; Kerry Benninghoff, Majority Leader of the Pennsylvania House of Representatives; Jake Corman, President Pro Tempore of the Pennsylvania Senate; and Kim Ward, Majority Leader of the Pennsylvania Senate, bring this brief as *Amici Curiae* in support of their authority as leaders of a state legislative body under the U.S. Constitution. The Pennsylvania Senate and the Pennsylvania House of Representatives together comprise the General Assembly of the Commonwealth of Pennsylvania (the "General Assembly"), which, as the state legislature of Pennsylvania, is given authority to prescribe the "Times, Places, and Manner of holding elections" by Article I, § 4, cl. 1 of the U.S. Constitution.

*Amici* present the following arguments in support of the Defendants' respective motions for summary judgment and respectfully request they be heard in support of the General Assembly's authority to enact election regulations pursuant to the U.S. Constitution's plain text. Because the issues raised in this action directly pertain to the General Assembly's power under the U.S. Constitution, *Amici* have a significant interest in this case.

## INTRODUCTION AND SUMMARY OF ARGUMENT

While numerous procedural failings ultimately doom the Plaintiffs' Complaint—as ably noted by the Defendant and the Intervenor-Defendant—*Amici* respectfully submit this *Amici Curiae* brief to offer context for the challenged provisions should this Court need to decide this case on the merits.

The Elections Clause of Article I, § IV of the U.S. Constitution delegates to state legislatures in the first instance, and Congress in the second, the authority to enact regulations for

---

[1] No party's counsel authored this brief in whole or in part, and no one other than *Amici* and their counsel contributed money to fund the brief's preparation or submission.

federal elections. Pursuant to these constitutional powers, the General Assembly has adopted a comprehensive election framework to govern the Commonwealth's elections.

Here, pursuant to the grant of authority under the Elections Clause, the General Assembly unambiguously mandated that mail-in ballots' envelopes must bear the date on which the voter signed the voter declaration. Despite Plaintiffs' claims to the contrary, this statutory requirement neither violates the Materiality Provision of the Voting Rights Act nor the U.S. Constitution.

Count I of the Complaint, concerning the Materiality Provision, can be quickly discarded, since, as numerous courts have held, the Materiality Provision governs discriminatory tactics preventing voter registration. The statutory provision at issue in the present case is neither discriminatory nor does it relate to voter registration.   As such, Count I of the Complaint necessarily fails.

Count II of the Complaint alleges that the date and sign requirement is an unconstitutional burden on the right to vote, thereby requiring this Court to conduct *Anderson-Burdick* analysis of the statute. As Plaintiffs concede, the requirement to fully complete the voter declaration is a minimal burden on those desiring to vote by mail in the Commonwealth.  On the other side of the equation, the Commonwealth has a weighty interest in proper election administration and ensuring that elections are conducted freely and fairly. To remove this important election administration provision—upheld by numerous Pennsylvania courts—would disturb those election administration protections and violate the General Assembly's sole power to make the policy choices to protect the Commonwealth's elections.

As such, the Defendants' motions for summary judgment should be granted, and this matter should be dismissed with prejudice.

2

**ARGUMENT**

I.    **The Legislative History of the Statutes in Question Demonstrates a Clear Commitment by the General Assembly to Free, Equal, and Fair Elections**

In the present case, the challenged statutory provisions are straightforward sections of the Election Code implemented by the General Assembly pursuant to its constitutional powers under the Elections Clause of Article I, § IV of the U.S. Constitution. By the plain meaning of both the Election Code and the decisions of Pennsylvania courts, it is unequivocal that Pennsylvania law requires both a signature and date on a legally cast mail-in ballot.

While originally absentee voting was limited to military voters, absentee voting was extended to the general public in 1963. *See* Act No. 37, Session of 1963, Pub. L. No. 707, § 22 (amending Section 1306 of the Election Code (25 P.S. § 3146.6) to apply beyond military voters). Even then, Pennsylvania law only allowed absentee voting by those with a statutorily defined excuse to do so, such as physical disability or absence from their municipality on Election Day. *See* 25 P.S. § 3146.1. For someone to vote absentee, the voter would have had to provide a permissible reason to do so, and the voter would have been provided with an absentee ballot that would have had to be returned by the voter no later than 5:00 p.m. on the Friday before the election. *Id*.

And since that 1963 enactment, the procedure for marking an absentee ballot has remained constant. A Pennsylvania absentee voter, after marking his or her ballot, shall:

> then fold the ballot, enclose and securely seal the same in the envelope on which is printed, stamped or endorsed 'Official Election Ballot.' This envelope shall then be placed in the second one, on which is printed the form of declaration of the elector, and the address of the elector's county board of election and the local election district of the elector. **The elector *shall* then fill out, date and sign the declaration printed on such envelope**. Such envelope shall then be securely sealed and the elector shall send same by mail, postage prepaid, except where franked, or deliver it in person to said county board of election.

3

25 P.S. § 3146.6(a)(emphasis added); *see also* Act No. 37, Session of 1963, Pub. L. No. 707, § 22 (amending Section 1306 of the Election Code (25 P.S. § 3146.6) to apply beyond military voters) ("The elector shall then fill out, date[,] and sign the declaration printed on such envelope.").

In 2019, when the General Assembly expanded the ability to vote by mail by creating a new category of "no excuse" mail-in voting through Act 77[2], that identical procedure of filling out, dating, and signing the envelope was applied to mail-in voters. *See* 25 P.S. § 3150.16(a).

Moreover, the traditional voting options remain available—voters may still choose to request an absentee ballot if they have a statutorily permitted reason for doing so, or vote in-person on Election Day. *See* 25 P.S. § 3146.1; 25 P.S. § 3031.12.

## II.     The Requirement to Date and Sign Absentee and Mail-In Ballots Serves a Clear Purpose as a part of the General Assembly's Comprehensive Election Code

The requirement that electors date and sign their absentee or mail-in ballot return envelope serves a variety of important election administration purposes. "The date on the ballot envelope provides proof of when the 'elector actually executed the ballot in full, ensuring their desire to cast it in lieu of appearing in person at a polling place. The presence of the date also establishes a point in time against which to measure the elector's eligibility to cast the ballot[.]' The date also ensures the elector completed the ballot within the proper time frame and prevents the tabulation of potentially fraudulent back-dated votes." *In re Canvass of Nov. 3, 2020 Gen. Election*, 241 A.3d at 1079 (Dougherty, J., concurring and dissenting) (*quoting In re 2,349 Ballots in the 2020 Gen. Election*, 241 A.3d 694 (Pa. Commw. Ct. 2020) (memorandum); *Ritter v. Lehigh Cty. Bd. of*

---

[2] Act 77, itself, is currently the subject of litigation pending in the Supreme Court of Pennsylvania. *See McLinko v. Commonwealth*, No. 14 MAP 2022 (Pa. 2022); *Bonner v. Commonwealth*, No. 15 MAP 2022 (Pa. 2022).

*Elections*, No. 1322 C.D. 2021, 2022 Pa. Commw. Unpub. LEXIS 1, at *10-11 (Pa. Commw. Ct. Jan. 3, 2022) (same).

Therefore, given the General Assembly's constitutional power to prescribe the time, place, and manner of the Commonwealth's elections, the clear legislative mandate of what is required of the elector, and the election-administration purposes of the statute, the statute in question must be upheld in the present case, given that the Plaintiffs have not demonstrated a constitutional infirmity.

## III.   The Statutes are Constitutional
### A.  The Statutes Do Not Violate the Materiality Provision

Plaintiffs incorrectly seek relief under the Materiality Provision of the Voting Rights Act, a civil rights statute dealing with discrimination pertaining to voter registration that has no applicability to a non-discriminatory election administration statute.

As ably discussed by both the Lehigh County Board of Elections and David Ritter in their respective motions for summary judgment, it is, at best, unclear as to whether there is a private right of action in seeking relief under the statute in question, a*s there is a circuit split on that issue. See Ne. Ohio Coal. for the Homeless v. Husted,* 837 F.3d 612, 630 (6th Cir. 2016) (holding that no private right of action exists); *but see Schwier v. Cox*, 340 F.3d 1284 (11th Cir. 2003). But even should this Court need to address the merits of the Plaintiffs' claims, the Materiality Provision has no application to the matters at hand.

Pursuant to 52 U.S.C. § 10101(a)(2), "[n]o person acting under color of law shall . . . deny the right of any individual to vote in any election because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or

omission is not material in determining whether such individual is **qualified under State law to vote** in such election." (emphasis added).

Also known as the "materiality provision" of the Voting Rights Act ("VRA"), this "provision was intended to address the practice of requiring unnecessary information for **voter registration** with the intent that such requirements would increase the number of errors or omissions on the application forms, thus providing an excuse to disqualify potential voters." *Schwier v. Cox*, 340 F.3d 1284, 1294 (11th Cir. 2003) (emphasis added). "This [provision] was necessary to sweep away such tactics as disqualifying an applicant who failed to list the exact number of months and days in his age." *Condon v. Reno*, 913 F. Supp. 946, 950 (D.S.C. 1995). It is "an anti-discrimination statute, designed to eliminate discriminatory practices of registrars through arbitrary enforcement of registration requirements, and it did not address the intentional refusal to provide required information." *McKay v. Altobello*, CIVIL ACTION NO. 96-3458 SECTION: E/4, 1996 U.S. Dist. LEXIS 16651, at *1 (E.D. La. Oct. 31, 1996).

"There are two types of non-material omissions possible under the VRA: 1) failure to provide information, such as race or social security number, that is not directly relevant to the question of eligibility; and 2) failure to follow needlessly technical instructions, such as the color of ink to use in filling out the form." *Diaz v. Cobb*, 435 F. Supp. 2d 1206, 1213 (S.D. Fla. 2006).

Said statutory "section . . . provides specifically for protections against denials based on errors or omissions on 'records or papers' that are immaterial to the determination of an individual's qualification to vote." *Friedman v. Snipes*, 345 F. Supp. 2d 1356, 1372 (S.D. Fla. 2004). Such "error and omission" . . .[must] pertain to determining eligibility to vote." *Id*.

Accordingly, the challenged statutory language in this case is far afield from the types of provisions that have been held to be violative of the Materiality Provision, as the date and sign

statute has a clear administrative purpose, only constitutes a limited burden to all absentee and

mail-in voters, and has no application to voter registration. *Compare Diaz*, 435 F.Supp. 2d at 1213;

*see also Schwier v. Cox*, 439 F.3d 1285 (11th Cir. 2006) (affirming District Court decision holding

that requirement to mandate disclosure of social security numbers is immaterial for purposes of

the VRA, when required disclosure of such information is otherwise prohibited by federal law).

Moreover, despite the longstanding enaction of the materiality provision, it has seldom been the

subject of litigation in Pennsylvania state[3] or federal courts.[4]

Indeed, the Commonwealth Court dismissed this very challenge last month when it

correctly concluded "that section 10101(a)(2)(B) is inapplicable because section 1306-D(a) of the

Election Code dictates the validity of a mail-in vote that has been cast by an elector who is

otherwise qualified to vote, and does not, in any way, relate to the whether that elector has met the

qualifications necessary to vote in the first place." *Ritter v. Lehigh Cty. Bd. Of Elections*, No. 1322

---

[3] In the 2020 canvassing case, both the OAJC and the concurring opinion of Justice Wecht reference in footnotes a party's contention that certain provisions of the Election Code could potentially violate 52 U.S.C. § 10101(a)(2). *See In re Canvass of Nov. 3, 2020 Gen. Election*, 241 A.3d at fn. 5 (OAJC) and fn. 54 (Wecht, J., concurring). Neither opinion, however, gives countenance to this argument beyond noting it. Moreover, it would seem that a more natural reading of Justice Wecht's reference than that taken by the court below is that Justice Wecht believes that 52 U.S.C. § 10101(a)(2) *could be* implicated by *future* revisions to the Election Code by the General Assembly as he references it in a footnote to his expressed wish that "the General Assembly might clarify and streamline the form and function of the declaration, perhaps prescribing its form to advance clarity and uniformity across the Commonwealth." *Id*. at 1089 (Wecht, J., concurring). Indeed, in that same footnote, he makes this clear by stating: "...I certainly would expect the General Assembly to bear that binding provision [relating to section 10101(a)(2) of the Voting Rights Act] in mind when it reviews our Election Code." *Id*.

[4] Other than the dicta in the 2020 canvassing case and the state court litigation concerning the present case, *Amici Curiae* only identified one case where a court has ever addressed whether a Pennsylvania statute violated the provision in question. In *Green Party of Pennsylvania v. Aichele*, this Court rejected an argument that the Election Code's requirements for the nomination papers violated 52 U.S.C. § 10101. *See Green Party of Pa. v. Aichele*, 89 F.Supp. 3d 723, 753 (E.D. Pa. 2015).

C.D. 2021, 2022 Pa. Commw. Unpub. LEXIS 1, at *26 (Pa. Commw. Ct. Jan. 3, 2022) (*citing Friedman v. Snipes*, 345 F.Supp.2d 1356, 1371 (S.D. Fla. 2004).

The Materiality Provision has never been held to invalidate a provision of the Pennsylvania Election Code and is completely inapplicable to the present circumstances. Accordingly, this Court should grant the Defendants' motions for summary judgment and dismiss Count I of the Complaint.

### B.  The Statutes Do Not Unduly Burden the Right to Vote

In Count II of the Complaint, the Plaintiffs also errantly allege that the statutory provisions in question pose an undue burden on the right to vote, and therefore violate the First and Fourteenth Amendments to the U.S. Constitution. *See* Complaint (ECF #1) at p. 15.

"Because states must have freedom to regulate elections if some sort of order, rather than chaos, is to accompany the democratic processes, such regulation is generally insulated from the stringent requirements of strict scrutiny." *Donald J. Trump for President, Inc. v. Boockvar*, 502 F. Supp. 3d 899, 919 (M.D. Pa. 2020) (citations omitted).

"Instead, state regulation that burdens voting rights is normally subject to the *Anderson-Burdick* balancing test, which requires that a court 'weigh the asserted injury to the right to vote against the 'precise interests put forward by the State as justifications for the burden imposed by its rule.'" *Id.* (*quoting Crawford v. Marion County Election Bd.*, 553 U.S. 181, 190 (2008) (quoting *Burdick v. Takushi*, 504 U.S. 428, 434 (1992))).

In considering such a claim, pursuant to the *Anderson-Burdick* analysis, this Court must:

> first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests; it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing

court in a position to decide whether the challenged provision is unconstitutional." *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983).

"If the law does burden protected rights, we must gauge the character and magnitude of the burden on the plaintiff and weigh it against the importance of the interests that the state proffers to justify the burden." *Patriot Party v. Allegheny Cty. Dep't of Elections*, 95 F.3d 253, 258 (3d Cir. 1996).

"The *Anderson-Burdick* balancing test operates on a sliding scale. Thus, more restrictive laws are subject to greater scrutiny. Conversely, 'minimally burdensome and nondiscriminatory' regulations are subject to 'a level of scrutiny 'closer to rational basis.''" *Donald J. Trump for President, Inc.*, 502 F. Supp. 3d at 919 (*quoting Donald J. Trump for President, Inc. v. Boockvar*, 493 F. Supp. 3d 331, 384 (W.D. Pa. 2020) (*quoting Ohio Council 8 Am. Fed'n of State v. Husted*, 814 F.3d 329, 335 (6th Cir. 2016))).

"[W]hen a state election law provision imposes only 'reasonable, nondiscriminatory restrictions' upon the First and Fourteenth Amendment rights of voters, 'the State's important regulatory interests are generally sufficient to justify' the restrictions." *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (quoting *Anderson*, 460 U.S. at 788). "Election Code provisions and regulations operate as part of a single, complex organism balancing many competing interests, all of which are 'important' for purposes of the *Anderson-Burdick* analysis." *Donald J. Trump for President, Inc.*, 493 F. Supp. 3d at 393.

Here, while the statutes in question admittedly affect the right to vote, the burden on voters is, at most, quite minimal, as the only burden to the elector is to read the instructions contained on the mail-in ballot and return envelope, follow those instructions, and then to submit a completed ballot to the elector's county board of elections. As the Ninth Circuit has recently opined, "[t]he election-day deadline for submitting a completed ballot imposes, at most, a minimal burden." *Ariz.*

*Democratic Party v. Hobbs*, ___ F.4th ___, Nos. 20-16759, 20-16766, 2021 U.S. App. LEXIS 36129, at *20 (9th Cir. Dec. 8, 2021).

Indeed, it is through the electors' "own negligence only" that the electors have failed to sign and date the ballot return envelope "and thereby fail[ed] to comply with . . . [the Commonwealth's] laws for submitting a completed ballot. Most forms of voter negligence have no remedy. For example, a voter who accidentally votes for a candidate other than the voter's preferred candidate or who forgets to show up at the polls on election day cannot correct those mistakes." *Id.* at *21-22; *see also Democratic Nat'l Comm. v. Wis. State Legis.*, 141 S. Ct. 28, 33 (2020) (*citing Burdick*, 504 U.S. at 438) ("the right to vote is not substantially burdened by a requirement that voters 'act in a timely fashion if they wish to express their views in the voting booth.'"); *id.* (*citing Rosario* v. *Rockefeller*, 410 U.S. 752, 758 (1973)) ("A deadline is not unconstitutional merely because of voters' 'own failure to take timely steps' to ensure their franchise.").

Indeed, the Plaintiffs themselves characterize the burden imposed by this requirement as "slight." Complaint (ECF #1) at ¶ 52. In addition, it is "[i]mportant to [this Court's] analysis . . . that Plaintiffs' claim does not contain an equal-protection component. Laws that 'place[] a particular burden on an identifiable segment' of voters are more likely to raise constitutional concerns." *Ariz. Democratic Party*, 2021 U.S. App. LEXIS 36129, at *25-26.[5]

Here, one of the key tradeoffs with voting by mail is that it is intrinsically a very independent process. "In this respect absentee voting is to voting in person as a take-home exam

---

[5] Plaintiffs do make a stray reference characterizing themselves as "Plaintiffs and 252 other Lehigh County voters, a disproportionate number of whom are elderly." Plaintiffs do not, however, offer any factual support for this argument or otherwise argue that the statutory requirements constitute an equal protection violation. Nor could they.

is to a proctored one. Absentee voters also are more prone to cast invalid ballots than voters who, being present at the polling place, may be able to get assistance from the election judges if they have a problem with the ballot." *Griffin v. Roupas*, 385 F.3d 1128, 1131 (7th Cir. 2004). That independence, however, is one of the bedrocks of absentee and mail-in voting as it "limits the number of third persons who unnecessarily come in contact with the ballot and thus provides some safeguard that the ballot was filled out by the actual voter, and not by a perpetrator of fraud, and that once the ballot has been marked by the actual voter in secret, no other person has the opportunity to tamper with it, or even to destroy it." *In re Canvass of Absentee Ballots of Nov. 4, 2003 Gen. Election*, 843 A.2d 1223, 1232 (Pa. 2004).

On the other side of the *Anderson-Burdick* balancing equation, the date and sign requirement "operate[s] as part of a single, complex organism balancing many competing interests, all of which are 'important' for purposes of the *Anderson-Burdick* analysis." *Donald J. Trump for President, Inc.*, 493 F. Supp. 3d at 393. Indeed, numerous Pennsylvania courts have analyzed this issue and concluded that "[t]he date on the ballot envelope provides proof of when the 'elector actually executed the ballot in full, ensuring their desire to cast it in lieu of appearing in person at a polling place. The presence of the date also establishes a point in time against which to measure the elector's eligibility to cast the ballot[.]' The date also ensures the elector completed the ballot within the proper time frame and prevents the tabulation of potentially fraudulent back-dated votes." *In re Canvass of Nov. 3, 2020 Gen. Election*, 241 A.3d at 1079 (Dougherty, J., concurring and dissenting) (*quoting In re 2,349 Ballots in the 2020 Gen. Election*, 241 A.3d 694 (Pa. Commw.

Ct. 2020) (memorandum); *Ritter v. Lehigh Cty. Bd. of Elections*, No. 1322 C.D. 2021, 2022 Pa. Commw. Unpub. LEXIS 1, at *10-11 (Pa. Commw. Ct. Jan. 3, 2022) (same).[6]

These governmental interests are more than enough to outweigh whatever slight burden may result from electors being required to follow the clear and simple instructions and to fully fill out the voter declaration.

As the District Court for the Western District of Pennsylvania observed, "the Pennsylvania legislature 'weigh[ed] the pros and cons,' and adopted a broader system of 'no excuse' mail-in voting as part of the Commonwealth's Election Code." *Donald J. Trump for President, Inc.*, 493 F. Supp. 3d at 395 (*citing Weber v. Shelley*, 347 F.3d 1101, 1107 (9th Cir. 2003)). "And the key point is that the legislature made that judgment in the context of erecting a broader election scheme that authorizes other forms of voting and has many . . . safeguards in place to catch or deter fraud and other illegal voting practices." *Id.* at 396. "In this larger context, the Court cannot say that the balance Pennsylvania struck across the Election Code was unreasonable, illegitimate, or otherwise not 'sufficiently weighty to justify . . .'" *Id.* Accordingly, it would be inappropriate for this Court to set aside this election administration statute, given its "sufficiently weighty" purpose." *Id.*

The Ninth Circuit's recent decision in *Arizona Democratic Party v. Hobbs* addressed a very similar fact pattern to the present case. *Ariz. Democratic Party v. Hobbs*, ___ F.4th ___, Nos. 20-16759, 20-16766, 2021 U.S. App. LEXIS 36129 (9th Cir. Dec. 8, 2021). While the details in

---

[6] Moreover, as recently as 2020, Pennsylvania courts have changed the received-by deadline for absentee and mail-in ballots. *See Pa. Democratic Party v. Boockvar*, 238 A.3d 345, 397 (Pa. 2020) (extending the received-by deadline for absentee and mail-in ballots until three (3) days after Election Day); *see also In re Gen. Election-1985*, 531 A.2d 836 (Pa. Commw. Ct. 1987) (Commonwealth Court affirmed two-week delay for an election due to severe flooding). Given that recent uncertainty about the received-by deadline, the date requirement could have additional election administration purposes in similarly situated elections.

*Arizona Democratic Party* differ slightly from those of the present case,[7] that Court's analysis is directly on point for purposes of the *Anderson-Burdick* analysis in the present case.

In *Arizona Democratic Party*, the Ninth Circuit considered a challenge to an Arizona statute that required mail-in voters to sign the accompanying affidavit when returning their mail-in ballots in order for those ballots to be counted. *Id*. The plaintiffs in that case alleged that the requirement to submit a completed voter declaration (in the form of an affidavit) constituted an unconstitutional burden on their right to vote. *Id*. at *14.

In upholding the statute, the Ninth Circuit applied the *Anderson-Burdick* balancing test and first concluded that the requirement to fully complete the voter affidavit constituted a minimal burden on voters, noting that "'[i]f the burden imposed by a challenged law were measured by the consequence of noncompliance, then every voting prerequisite would impose the same burden and therefore would be subject to the same degree of scrutiny.'" *Id*. at *23 (*quoting Ariz. Democratic Party v. Hobbs*, 485 F.Supp. 3d 1073, 1087-88 (D. Ariz. 2021)).

In reviewing the record, the Ninth Circuit therefore concluded that "there is nothing generally or inherently difficult about signing an envelope by Election Day" and that the statutory requirement "imposes only minimal burdens." *Id*. at *21.

---

[7] The principal difference between the two cases is that the Arizona case concerned the requirement that electors sign rather than date the accompanying ballot declaration, *Id*. In addition, Arizona has a statutory provision that allows electors to correct an insufficient declaration following the casting of a mail-in ballot that is not a component of Pennsylvania law. *Id*.; *see also In re Nov. 3, 2020 Gen. Election*, 240 A.3d 591, 608 (Pa. 2020) (holding that the Pennsylvania Election Code does not provide for the opportunity to cure defective declarations). Ultimately, this difference in election administration federalism is immaterial in comparing the two cases, as the Ninth Circuit's analysis of the ballot-curing issue centered on the burden that such a provision constituted on election administrators, one that is not implicated here. Moreover, while the Plaintiffs' Complaint initially sought the ability to cure defective mail-in ballots (ECF #1), they later abandoned that Count of their Complaint. *See* Stipulation of Partial Dismissal (ECF # 26).

Then, as also required here, the Ninth Circuit considered the state's interest in having such a provision, including, *inter alia*, "fraud prevention" and the "orderly administration of elections", which parallel the purposes of the statute in the present case. *Id*. at *22; *compare In re Canvass of Nov. 3, 2020 Gen. Election*, 241 A.3d at 1079 (Dougherty, J., concurring and dissenting) (*quoting In re 2,349 Ballots in the 2020 Gen. Election*, 241 A.3d 694 (Pa. Commw. Ct. 2020) (memorandum) ("The date on the ballot envelope provides proof of when the 'elector actually executed the ballot in full, ensuring their desire to cast it in lieu of appearing in person at a polling place. The presence of the date also establishes a point in time against which to measure the elector's eligibility to cast the ballot[.]' The date also ensures the elector completed the ballot within the proper time frame and prevents the tabulation of potentially fraudulent back-dated votes."). Therefore, based on their analysis, the Ninth Circuit upheld the validity of Arizona's statute, due to the minimal burden imposed and the weightiness of the state's interests. *Ariz. Democratic Party*, 2021 U.S. App. LEXIS 36129 at *37.

Similarly here, this "Court [should] fin[d] that the Commonwealth['s] . . . interests in administering a comprehensive county-based mail-in ballot plan, while both promoting voting and minimizing fraud, are sufficiently 'weighty,' reasonable, and justified." *Donald J. Trump for President, Inc.*, 493 F.Supp. 3d at 396 (citations omitted).

Given those weighty interests and the minimal burden imposed on mail-in voters, combined with the alternative voting options available to them, the Legislative Leaders respectfully ask this Court to uphold the validity of the statute and dismiss Count II of the Complaint.

**CONCLUSION**

"The striking of the balance between discouraging fraud and other abuses and encouraging turnout is quintessentially a legislative judgment with which we judges should not interfere unless strongly convinced that the legislative judgment is grossly awry." *Griffin*, 385 F.3d at 1131.

Accordingly, *Amici Curiae* respectfully request that this Court uphold the General Assembly's constitutional power and responsibility as the Commonwealth's "democratically-elected representatives to weigh the pros and cons of various balloting systems." *Weber*, 347 F.3d at 1106. Here, the General Assembly "'weigh[ed] the pros and cons,' and adopted a broader system of 'no excuse' mail-in voting as part of the Commonwealth's Election Code." *Donald J. Trump for President, Inc.*, 493 F. Supp. 3d at 395 (*citing Weber*, 347 F.3d at 1107). "And the key point is that the legislature made that judgment in the context of erecting a broader election scheme that authorizes other forms of voting and has many . . . safeguards in place to catch or deter fraud and other illegal voting practices." *Id*. at 396. "In this larger context, the Court cannot say that the balance Pennsylvania struck across the Election Code was unreasonable, illegitimate, or otherwise not 'sufficiently weighty to justify . . .'" *Id*.

Accordingly, *Amici Curiae* respectfully request that this Court grant the motions for summary judgment of the Defendant and the Intervenor-Defendant and dismiss this action with prejudice.

Respectfully submitted,

Dated: February 15, 2022

*/s/ Zachary M. Wallen*
Zachary M. Wallen
Pennsylvania Bar No. 309176
CHALMERS & ADAMS LLC
301 South Hills Village Drive
Suite LL200-420
Pittsburgh, PA 15241
(412) 200-0842
(412) 235-5001 (*facsimile*)
zwallen@chalmersadams.com

*Counsel for Amici Curiae*
*Bryan Cutler, Speaker of the Pa. House of*
*Representatives, Kerry Benninghoff, Pa. House*
*Majority Leader, Jake Corman, Pa. Senate President*
*Pro Tempore, and Kim Ward, Pa. Senate Majority*
*Leader*