# EXHIBIT

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LINDA MIGLIORI, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> LEHIGH COUNTY BOARD OF ELECTIONS, <br><br> Defendant. | No. 5:22-cv-00397 |

**AMICUS BRIEF OF THE COMMONWEALTH OF PENNSYLVANIA IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

JOSH SHAPIRO
Attorney General
Commonwealth of Pennsylvania

MICHAEL J. FISCHER
Chief Counsel and Executive Deputy
Attorney General
JACOB B. BOYER
Deputy Attorney General
Office of Attorney General
1600 Arch Street, Suite 300
Philadelphia, PA 19103
(215) 560-2171
mfischer@attorneygeneral.gov

February 17, 2022

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

STATEMENT OF INTEREST .............................................................................................. 1

BACKGROUND ..................................................................................................................... 2

SUMMARY OF ARGUMENT ............................................................................................. 6

ARGUMENT ........................................................................................................................... 7

    I.   The Date Rule Is Not Material to Determining a Voter's Qualifications
        under Pennsylvania Law ........................................................................................... 7

    II.  The Commonwealth Court Wrongly Concluded that Its Order Would Not
        Require Lehigh County to Violate the Materiality Provision ........................... 12

CONCLUSION ...................................................................................................................... 15

# TABLE OF AUTHORITIES

## Cases

*Common Cause v. Thomsen*, 19-323, 2021 WL 5833971 (W.D. Wis. Dec. 9, 2021) ..................................................................................................... 14

*Duncan v. Walker*, 533 U.S. 167 (2001) .................................................................... 13

*Dunn v. Blumstein*, 405 U.S. 330 (1972) .................................................................... 2

*Fla. State Conf. of NAACP v. Browning*, 522 F.3d 1153 (11th Cir. 2008) ............ 7, 8, 9

*Friedman v. Snipes*, 345 F. Supp. 2d 1356 (S.D. Fla. 2004) ................................... 13

*In re Canvass of Absentee & Mail-in Ballots of Nov. 3, 2020 Gen. Election*, 241 A.3d 1058 (Pa. 2020) ...................................................................................... passim

*In re Election in Region 4 for Downingtown Sch. Bd. Precinct Uwchlan 1*, 1381 CD 2021, 2022 WL 96156 (Pa. Commw. Ct. Jan. 10, 2022) .................................. 5

*League of Women Voters of Arkansas v. Thurston*, 20-5174, 2021 WL 5312640 (W.D. Ark. Nov. 15, 2021) ..................................................................................... 14

*Martin v. Crittenden*, 347 F. Supp. 3d 1302 (N.D. Ga. 2018) ............................. 10, 14

*McLinko v. Commonwealth*, 244 MD 2021, 2022 WL 257659 (Pa. Commw. Ct. Jan. 28, 2022) ........................................................................................................ 2

*McLinko v. Commonwealth*, 14 MAP 2022 (Pa. Jan. 28, 2022) .................................. 2

*Mixon v. Commonwealth*, 759 A.2d 442 (Pa. Commw. Ct. 2000) ............................... 2

*Montgomery Cnty. Bd. of Elections v. Chapman*, 339 MD 2021 (Oct. 1, 2021 Pa. Commw. Ct.)........................................................................................................... 5

*Murphy v. NCAA*, 138 S. Ct. 1461 (2018) ................................................................... 7

*Ritter v. Lehigh Cnty. Bd. of Elections*, 1322 CD 2021, 2022 WL 16577 (Pa. Commw. Ct. Jan. 3, 2022) ............................................................................... passim

*Schwier v. Cox*, 412 F. Supp. 2d 1266 (N.D. Ga. 2005) ............................................ 10

*Washington Ass'n of Churches v. Reed*, 492 F. Supp. 2d 1264 (W.D. Wash. 2006) .................. 10

## Constitutional Provisions

Pa. Const. art. VII, § 1 ........................................................................................... 2, 8

Pa. Const. art. VII, § 14 ................................................................................ 2, 3

U.S. Const. amend. XXVI ................................................................................ 2

U.S. Const. art. VI, cl. 2 ................................................................................. 7

**Statutes**

25 P.S. § 2602 ................................................................................................. 3

25 P.S. § 2811 .............................................................................................. 2, 8

25 P.S. § 3050 ............................................................................................... 11

25 P.S. § 3146.1 .......................................................................................... 2, 3

25 P.S. § 3146.2 .............................................................................................. 3

25 P.S. § 3146.2a ............................................................................................ 3

25 P.S. § 3146.2b ................................................................................... 3, 9, 11

25 P.S. § 3146.5 .............................................................................................. 3

25 P.S. § 3146.6 ..................................................................................... passim

25 P.S. § 3146.8 .............................................................................................. 4

25 P.S. § 3150.11 ......................................................................................... 2, 3

25 P.S. § 3150.12 ............................................................................................ 3

25 P.S. § 3150.12a .......................................................................................... 3

25 P.S. § 3150.12b ................................................................................. 3, 9, 11

25 P.S. § 3150.15 ............................................................................................ 3

25 P.S. § 3150.16 ................................................................................... passim

25 Pa.C.S. § 1301 ..................................................................................... 2, 8, 11

25 Pa.C.S. § 1328 ..................................................................................... 2, 9, 11

25 Pa.C.S. §§ 3501–3519 ............................................................................... 4

25 Pa.C.S. § 3508 ........................................................................................... 3

52 U.S.C. § 10101(a)(2)(B) ..................................................................... passim

Civil Rights Act of 1964, Pub. L. No. 88-352, § 101, 78 Stat. 241 (1964) .................................. 7

Voting Rights Act of 1965, Pub. L. No. 89-110, 79 Stat. 437 (1965) ........................................... 7

**Other Authorities**

1972 Op. Atty. Gen. No. 121 ........................................................................................................ 2

Email from Jonathan Marks, Deputy Secretary for Elections & Commissions,
  Dep't of State, to County Election Officials (June 1, 2021) ................................................ 6, 9

Pa. Dep't of State, *Election Ballot Status* ........................................................................... 4

Pa. Dep't of State, *Guidance Concerning Examination of Absentee and Mail-in
  Ballot Return Envelopes* ............................................................................... 4, 9, 12

## INTRODUCTION

Pennsylvania's Commonwealth Court has ordered the Lehigh County Board of Elections not to include in its 2021 general election results the 257 ballots at issue in this case. *Ritter v. Lehigh Cnty. Bd. of Elections*, 1322 CD 2021, 2022 WL 16577 (Pa. Commw. Ct. Jan. 3, 2022). That court did so after concluding in a nonprecedential opinion that Pennsylvania's Election Code does not permit counties to count absentee and mail-in ballots cast by individuals qualified to vote under Pennsylvania law if the voter failed to date the ballot's return envelope—so-called "undated ballots." Regardless of whether the Commonwealth Court correctly interpreted Pennsylvania's Election Code, Lehigh County cannot comply with that court's order without violating those 257 voters' rights under federal law. The "Materiality Provision" of the Civil Rights Act of 1964 prohibits counties from disenfranchising any qualified voter "because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting if such error or omission is not material in determining whether such individual is qualified under State law." 52 U.S.C. § 10101(a)(2)(B). The date written on an absentee or mail-in ballot's return envelope is immaterial to determining the voter's eligibility under Pennsylvania law. As a result, federal law requires that the 257 ballots be counted.

## STATEMENT OF INTEREST

The Commonwealth of Pennsylvania files this amicus brief in support of plaintiffs' motion for summary judgment. The Commonwealth of Pennsylvania has an interest in properly resolving whether undated ballots should be counted and included in a county's election results. That interest derives from the Commonwealth's interest in seeing that all its political subdivisions lawfully exercise their authority. Similarly, the Commonwealth has an interest in

ensuring that the declared winner of any election is the candidate who receives the most lawfully cast votes.

## BACKGROUND

Citizens of Pennsylvania are qualified to vote if they: (1) are at least 18 years old on the day of the election; (2) have been a U.S. citizen for at least one month prior to the election; (3) have lived in Pennsylvania and in their election district for at least thirty days prior to the election; and (4) are not imprisoned for a felony conviction. Pa. Const. art. VII, § 1; 25 P.S. § 2811; 25 Pa.C.S. § 1301(a).[1] Each county assesses compliance with these conditions when an individual submits a voter registration application. 25 Pa.C.S. § 1328. The county approves an application to register only if the applicant meets all the eligibility criteria. *Id.* § 1328(b).

A qualified, registered voter may cast a ballot in a primary, municipal or general election in person, as an "absentee elector," or as a "mail-in elector." 25 P.S. §§ 3146.1, 3150.11.[2] A registered voter may vote as an absentee elector only if they satisfy any of several specified conditions, including current military service or absence on Election Day for business reasons.

---

[1] *See also Mixon v. Commonwealth*, 759 A.2d 442, 451 (Pa. Commw. Ct. 2000), *aff'd*, 783 A.2d 763 (2001) (holding that individuals with felony convictions, other than those currently incarcerated, may register to vote); 1972 Op. Atty. Gen. No. 121 (concluding that *Dunn v. Blumstein*, 405 U.S. 330 (1972), prohibits the enforcement of certain durational residency requirements longer than 30 days); U.S. Const. amend. XXVI (prohibiting denial of right to vote to citizens 18 years of age or older on account of age).

[2] Although Pennsylvania's Commonwealth Court recently declared the statute that created mail-in voting unconstitutional, *McLinko v. Commonwealth*, 244 MD 2021, 2022 WL 257659 (Pa. Commw. Ct. Jan. 28, 2022), that decision has no bearing here. First, petitioners in *McLinko* sought only prospective relief, so the decision does not apply to the 2021 election. Second, the Commonwealth of Pennsylvania has appealed the Commonwealth Court's decision to the Pennsylvania Supreme Court. *McLinko v. Commonwealth*, 14 MAP 2022 (Pa. Jan. 28, 2022). Third, *McLinko* does not apply to absentee voting, which is constitutionally compelled in Pennsylvania. Pa. Const. art. VII, § 14.

Pa. Const. art. VII, § 14; 25 P.S. § 3146.1. Any registered voter may vote as a mail-in elector if they apply and are approved to do so. 25 P.S. § 3150.11(b); *see also id.* § 2602(t).

Voters apply with their county board of elections to cast a ballot as an absentee or mail-in elector under procedures set forth in the Pennsylvania Election Code. 25 P.S. §§ 3146.2, 3150.12. County boards of elections must confirm that the applicant meets Pennsylvania's criteria for voter eligibility before approving any application. *Id.* §§ 3146.2b, 3150.12b. The deadline to apply to vote in any primary or general election as an absentee or mail-in elector is 5 p.m. on the Tuesday before the relevant election. *Id.* §§ 3146.2a(a), 3150.12a(a).

County boards of elections must commence mailing ballots to approved absentee and mail-in electors no later than 14 days before the election. 25 P.S. §§ 3146.5(b)(1), 3150.15.[3] For eligible absentee and mail-in electors who submit applications after that date, counties must mail ballots within 48 hours of receiving the application. *Id.* As a result, all absentee and mail-in ballots are to be mailed to voters no later than 48 hours after the application deadline—meaning by 5 p.m. on the Thursday before an election. *Id.*

Functionally identical procedures govern how voters complete and return both absentee and mail-in ballots. At any time between receiving the official ballot and 8 p.m. on Election Day, the voter secretly marks their ballot, places the ballot in a secrecy envelope marked "Official Election Ballot," and then places the secrecy envelope in an outer return envelope. *Id.* §§ 3146.6(a), 3150.16(a). The return envelope has a printed declaration that the voter "shall then fill out, date and sign." *Id.* In addition, the return envelope contains a unique barcode associated with the voter that allows the ballot to be tracked through the Statewide Uniform Registry of

---

[3] Earlier deadlines apply to certain categories of voters, such as voters serving in the military overseas. 25 P.S. § 3146.5(a); 25 Pa.C.S. § 3508(a)(1).

Electors (SURE) System. Pa. Dep't of State, *Guidance Concerning Examination of Absentee and Mail-in Ballot Return Envelopes* ("Sept. 2020 Guidance") (Sept. 11, 2020).[4] After sealing the return envelope, the voter delivers the entire package by mail or by hand to their county board of elections. 25 P.S. §§ 3146.6(a), 3150.16(a).

An absentee or mail-in ballot is timely if received by the voter's county board of elections by 8 p.m. on Election Day. *Id.* §§ 3146.6(c), 3150.16(c).[5] To track when a mailed ballots has been received, Department of State Guidance directs counties to "scan the correspondence ID barcode on the outside of the envelope." *See* Sept. 2020 Guidance. Scanning the barcode automatically generates a date stamp that is recorded in the "Date Received" field in the SURE System. *Id.* Voters can use the Department's website to track when their ballot was received. *See* Pa. Dep't of State, *Election Ballot Status*.[6] Timely absentee and mail-in ballots that county boards of elections have verified consistent with the procedures set forth in 25 P.S. § 3146.8(g)(3), that have not been challenged, and for which there is not due proof that the voter has died prior to Election Day, are counted and included with the election results. 25 P.S. § 3146.8(d), (g)(4).

In the last two general elections, thousands of voters have returned an absentee or mail-in ballot without applying a date to the outer return envelope. For the 2020 general election, the Pennsylvania Supreme Court ruled that, as a matter of Pennsylvania law, absentee and mail-in ballots returned without the elector having dated the declaration on the outer mailing envelope

---

[4] Available at: https://www.dos.pa.gov/VotingElections/OtherServicesEvents/ Documents/Examination%20of%20Absentee%20and%20Mail-In%20Ballot%20Return%20 Envelopes.pdf.

[5] Separate rules govern uniform military and overseas electors. 25 Pa.C.S. §§ 3501–3519.

[6] Available at: https://www.pavoterservices.pa.gov/Pages/BallotTracking.aspx.

would be counted. *In re Canvass of Absentee & Mail-in Ballots of Nov. 3, 2020 Gen. Election*, 241 A.3d 1058, 1079 (Pa. 2020) (opinion announcing judgment of the Court). The Court did not, however, produce a majority opinion. Three Justices concluded that undated ballots should not result in disqualification because "a signed but undated declaration is sufficient and does not implicate any weighty interest." *Id.* at 1078 (opinion announcing judgment of the Court). One Justice, in a concurring opinion, wrote that the requirement to date the outer envelope's declaration is mandatory, but agreed that undated ballots should be counted in 2020 because even diligent electors would not have known the consequence of omitting the date. *Id.* at 1089 (Wecht, J., concurring and dissenting). Three other Justices wrote that undated ballots should not be counted, even for the 2020 election. *Id.* at 1090–91 (Dougherty, J., concurring and dissenting).

In the same case, four Justices observed that voiding undated ballots may conflict with 52 U.S.C. § 10101(a)(2)(B). *Id.* at 1074 n.5 (opinion announcing judgment of the Court); *id.* at 1089 n.54 (Wecht, J., concurring and dissenting). The opinion announcing the judgment of the Court described one party as having argued with "persuasive force" that there would be a conflict. *Id.* at 1074 n.5.

Questions about what to do with undated ballots have persisted since the Pennsylvania Supreme Court's 2020 decision in *In re Absentee & Mail-in Ballots*. In 2021, three cases were filed raising whether Pennsylvania's Election Code permits counties to count undated ballots. *In re Election in Region 4 for Downingtown Sch. Bd. Precinct Uwchlan 1*, 1381 CD 2021, 2022 WL 96156 (Pa. Commw. Ct. Jan. 10, 2022); *Ritter*, 2022 WL 16577; *Montgomery Cnty. Bd. of Elections v. Chapman*, 339 MD 2021 (Oct. 1, 2021 Pa. Commw. Ct.). In a case pertaining to the ballots at issue here, a divided panel of the Commonwealth Court, in a nonprecedential decision,

5

ruled that Lehigh County may not count the ballots, and ordered Lehigh County to void those ballots. *Ritter*, 2022 WL 16577 at *10. The order to disqualify these 257 ballots prompted this action.

## SUMMARY OF ARGUMENT

The date written on the outer envelope of a mail-in or absentee ballot is immaterial to the determination of a voter's eligibility to vote under Pennsylvania law. Nor does the date written assist in determining whether the vote was cast in a timely fashion, as Pennsylvania law provides that the timeliness of a mail-in or absentee vote depends on whether it is *received* by a county board of elections before the prescribed deadline. 25 P.S. §§ 3146.6(c), 3150.16(c). Likewise, the date written serves no useful purpose in limiting fraud. Indeed, ballots with dates that are "wrong" are counted; it is only those on which the voter has neglected to write the date that, under the Commonwealth Court's decision, are to be excluded.[7]

A straightforward application of the Materiality Provision of the Civil Rights Act therefore dictates that the ballots at issue here be counted. Filling out the outer envelope is an "act requisite to voting," and failure to include the date is "an error or omission on any record or paper." 52 U.S.C. § 10101(a)(2)(B). And because the written date is "not material in determining whether such individual is qualified under State law to vote," *id.*, the refusal to count undated ballots violates the Materiality Provision.

---

[7] Email from Jonathan Marks, Deputy Secretary for Elections & Commissions, Dep't of State, to County Election Officials (June 1, 2021), Exh. 6 to Plfs.' Compl. (ECF No. 1-8) ("Marks Email") ("[T]here is no basis to reject a ballot for putting the 'wrong' date on the envelope.").

## ARGUMENT

Lehigh County cannot comply with the Pennsylvania Commonwealth Court's order to disqualify all undated ballots without violating 257 voters' rights under federal law. Relevant here, the Materiality Provision of the Civil Rights Act of 1964 provides:

> No person acting under color of law shall . . . deny the right of any individual to vote in any election because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election.

52 U.S.C. § 10101(a)(2)(B).[8] That provision was enacted to end trivial requirements that "served no purpose other than as a means of inducing voter-generated errors that could be used to justify" denying the right to vote. *Fla. State Conf. of NAACP v. Browning*, 522 F.3d 1153, 1173 (11th Cir. 2008). Whether or not the Commonwealth Court correctly determined that Pennsylvania's Election Code requires disqualifying undated ballots, denying a qualified Pennsylvania voter's right to vote merely because the voter failed to date the envelope used to return an absentee or mail-in ballot violates the Materiality Provision. Because federal law preempts any conflicting state law directives, U.S. Const. art. VI, cl. 2 (Supremacy Clause); *Murphy v. NCAA*, 138 S. Ct. 1461, 1480 (2018) (describing conflict preemption), undated ballots must be counted.

## I. The Date Rule Is Not Material to Determining a Voter's Qualifications under Pennsylvania Law

The Election Code's instruction that a voter "shall … date" the return envelope of a mail-in or absentee ballot (the "date rule"), 25 P.S. §§ 3146.6(a), 3150.16(a), does not in any way

---

[8] When initially passed in 1964, the statute read "No person acting under color of law shall . . . deny the right of any individual to vote in any *Federal* election . . . ." Civil Rights Act of 1964, Pub. L. No. 88-352, § 101, 78 Stat. 241 (1964) (emphasis added). In 1965, Congress amended the provision to delete "Federal." Voting Rights Act of 1965, Pub. L. No. 89-110, § 15, 79 Stat. 437 (1965). The Materiality Provision therefore governs federal and state elections.

assist in determining a voter's qualifications to vote under Pennsylvania law. Therefore, non-compliance with that rule is not "material" and cannot be used to disenfranchise any Pennsylvania voter.

Materiality is a familiar legal standard, but it takes on different meanings in different contexts. For the Materiality Provision, "material" could mean something "similar to minimal relevance" or, alternatively, something "closer to outcome-determinative." *NAACP*, 522 F.3d at 1174. Under either definition, requiring a voter to identify the date on which they completed an absentee or mail-in ballot is immaterial to determining whether that person is eligible to vote in Pennsylvania.

A person may vote in Pennsylvania if they are 18 years old, have been a citizen for at least a month, have lived in Pennsylvania and in their election district for at least thirty days, and are not imprisoned for a felony conviction. Pa. Const. art. VII, § 1; 25 P.S. § 2811; 25 Pa.C.S. § 1301; *see also supra* note 1. Voters may cast an absentee ballot under some circumstances, or a mail-in ballot if they choose. Under the Election Code, an absentee or mail-in voter can complete their ballot "at any time after" receiving it and anytime "before eight o'clock p.m. the day of the primary or election." 25 P.S. §§ 3146.6(a), 3150.16(a).

In its recent, nonprecedential decision ordering Lehigh to count the undated ballots, the Commonwealth Court majority—while otherwise reaching an incorrect legal conclusion—explained that the date rule "does not, in any way, relate to whether that elector has met the qualifications necessary to vote in the first place." *Ritter*, 2022 WL 16577, at *19. This statement is correct; by the time a voter has returned an absentee or mail-in ballot, the voter's qualifications have already been reviewed. County boards of elections are required to confirm a person satisfies the qualifications to vote both when the person registers and when the person applies to vote

absentee or by mail-in ballot. 25 P.S. §§ 3146.2b, 3150.12b; 25 Pa.C.S. § 1328(b). Therefore, compliance with the date rule is not "material in determining whether such individual is qualified under State law to vote in such election." 52 U.S.C. § 10101(a)(2)(B).

More than that, the date rule does not in any way assist in separating timely cast absentee or mail-in ballots from those cast outside the statutory window. By law, voters may complete their absentee or mail-in ballot as soon as they receive it. 25 P.S. §§ 3146.6(a), 3150.16(a). As a practical reality, no voter can fill out a ballot before receiving it. And because the deadline to complete a ballot and the deadline to return a ballot are both 8 p.m. on Election Day, *id.* §§ 3146.6(c), 3150.16(c), any ballot received by the county board of elections by 8 p.m. on Election Day will necessarily have been completed within the statutorily prescribed time period. Furthermore, counties log when ballots are received in the SURE system. Sept. 2020 Guidance; *see also In re Absentee & Mail-in Ballots*, 241 A.3d at 1077 ("[U]pon receipt of the ballot, the county board stamps the date of receipt on the ballot-return and records the date the ballot is received in the SURE system"). That logging of ballots in the statewide system, as a plurality of the Pennsylvania Supreme Court has noted, provides "a clear and objective indicator of [a ballot's] timeliness, making any handwritten date unnecessary and, indeed, superfluous." *In re Absentee & Mail-in Ballots,* 241 A.3d at 1077 (opinion announcing judgment of the court).

The Department of State's most recent guidance to counties on undated ballots further illustrates why the date rule is not "material" for purposes of federal law. As that guidance indicates, under Pennsylvania law "there is no basis to reject a ballot for putting the 'wrong' date on the envelope." Marks Email, *supra* note 7. Because the relevant inquiry under the Materiality Provision focuses on the importance of the solicited information, *NAACP*, 522 F.3d at 1174–75,

treating errors, such as the "wrong" date, differently from omissions underscores that the underlying information is unimportant.

Federal courts assess alleged violations of the Materiality Provision by comparing the incorrect or omitted information against the state's voter criteria to determine if the mistake interferes with determining the voter's qualifications. For instance, a district court in Georgia concluded that rejecting mailed ballots for failing to include a birth year on the return envelope violated the Materiality Provision. *Martin v. Crittenden*, 347 F. Supp. 3d 1302, 1308–09 (N.D. Ga. 2018). Even though Georgia had a minimum age requirement for voting, any voter who was casting an absentee ballot already would have confirmed their age when they applied to vote absentee, making the requirement to repeat the birth year on the return envelope entirely superfluous. *Id.* at 1309.

Other courts have held that voter registration applications cannot be denied because a prospective voter would not disclose a full social security number. *Schwier v. Cox*, 412 F. Supp. 2d 1266, 1276 (N.D. Ga. 2005), *aff'd*, 439 F.3d 1285 (11th Cir. 2006); *Washington Ass'n of Churches v. Reed*, 492 F. Supp. 2d 1264, 1270–71 (W.D. Wash. 2006). In each case, the court reviewed the state's voter criteria and concluded that failing to provide a complete social security number did not bear on the state's ability to assess compliance with those criteria. *Id.*

Many of the arguments for treating the date rule as material rest on language from the dissenting opinion in *In re Absentee & Mail-in Ballots*, which expressed the view that the absence of a date is not "a mere technical insufficiency we may overlook," 241 A.3d at 1090 (Dougherty, J., concurring and dissenting). But the assertions in the dissenting opinion about the relevance of the written date are not correct.

10

First, the date on a mailed ballot does not confirm, as the dissenting Justice wrote, a voter's "desire to cast it in lieu of appearing in person at a polling place." *Contra id.* A date on the return envelope is not any more confirmation of a voter's intent to vote absentee or by mail-in ballot than is the act of completing, signing, and returning the ballot. Furthermore, whether someone who cast an absentee or mail-in ballot has misgivings about having done so is irrelevant. Election district registers show which voters have requested an absentee or mail-in ballot; those voters may not vote in person unless they either return their blank absentee or mail-in ballot to their polling place or cast a provisional ballot. 25 P.S. §§ 3146.6(b)(1)-(3), 3150.16(b)(1)-(3).[9]

Second, the date does not "establish[] a point in time against which to measure the elector's eligibility to cast the ballot." *Contra In re Absentee & Mail-in Ballots*, 241 A.3d at 1090 (Dougherty, J., concurring and dissenting). The date rule does not usefully establish a point in time to determine a voter's eligibility, because a person may vote if they are 18 years old and satisfy the residency requirements by the day of the election. *See supra* 2. County election boards confirm a voter satisfies those criteria before mailing them a ballot. 25 P.S. §§ 3146.2b, 3150.12b; 25 Pa.C.S. § 1328(b). The date a voter fills out a mail-in ballot has no bearing on that voter's eligibility.

Third, the written date does not "ensure[] the elector completed the ballot within the proper time frame and prevents the tabulation of potentially fraudulent back-dated votes." *Contra In re Absentee & Mail-in Ballots* 241 A.3d at 1090 (Dougherty, J., concurring and dissenting). By law, ballots received by 8 p.m. on Election Day may be counted. Any ballot

---

[9] If a voter returns an absentee or mail-in ballot before the deadline and also casts a provisional ballot at a polling place, then only the absentee or mail-in ballot is counted, regardless of the date written on it. 25 P.S. § 3050(a.4)(5)(ii)(F).

received by that time necessarily will have been completed sometime after the voter received the official ballot and before 8 p.m. on Election Day, which is all the Election Code requires. 25 P.S. §§ 3146.6(a), 3150.16(a). And counties independently log when mailed ballots are received into the SURE System. *See* Sept. 2020 Guidance; *see also In re Absentee & Mail-in Ballots*, 241 A.3d at 1077 ("[U]pon receipt of the ballot, the county board stamps the date of receipt on the ballot-return and records the date the ballot is received in the SURE system"). As a result, the date written by the voter on the outer envelope is not a useful tool in preventing fraud.

At bottom, voiding an otherwise timely received ballot from a qualified, registered voter because of non-compliance with the date rule is a denial of the right to vote based on an omission that does not in any way interfere with determining the voter's qualifications.

## II.   The Commonwealth Court Wrongly Concluded that Its Order Would Not Require Lehigh County to Violate the Materiality Provision

The Materiality Provision forbids "deny[ing] the right of any individual to vote in any election because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting." 52 U.S.C. § 10101(a)(2)(B). Without dispute, a mailing envelope is a "record or paper." Filling out the envelope is an "act requisite to voting"— specifically, the act of casting a ballot and having it counted. And voiding a ballot denies the right of an individual to vote. The Materiality Provision thus applies to denying someone's right to vote because of an immaterial error they made on the envelope used to return an absentee or mail-in ballot.

Nevertheless, when the Commonwealth Court ordered Lehigh County to void 257 ballots because the ballots' return envelopes were undated, the Commonwealth Court concluded—with minimal analysis—that its order would not require Lehigh County to violate the Materiality Provision. *See* 1322 CD 2021, 2022 WL 16577, at *19. The Commonwealth Court, relying

12

entirely on one district court decision that denied a motion for a temporary restraining order, incorrectly concluded that the Materiality Provision applies only to laws governing voter registration. *Id.* (citing *Friedman v. Snipes*, 345 F. Supp. 2d 1356 (S.D. Fla. 2004)). The error at issue in *Friedman*, however, was that the ballot was received after Florida's deadline. 345 F. Supp. 2d at 1371. That, the district court reasoned, was not an error made on a "record or paper," a necessary condition for the Materiality Provision to apply. *Id.* at 1371-72. So, the court concluded, even if Congress was "concerned about denials of the right to vote at all stages and components of the voting process—from application to registration to casting to counting," the Materiality Provision "provides specifically for protections against denials based on errors or omissions on '*records or papers*' that are immaterial to the determination of an individual's qualification to vote." *Id.* (emphasis added). The issue that animated the court's reasoning in *Friedman* does not apply here, as envelopes used to return a ballot are indisputably "records or papers."

Beyond that critical distinction, limiting the Materiality Provision to voter registration is irreconcilable with the statute's text. The statute applies to "an error or omission on any record or paper relating to any application, registration, or *other act requisite to voting*." 52 U.S.C. § 10101(a)(2)(B). If the statute is limited to records or papers related to an application or voter registration then "other act requisite to voting" has no meaning. Federal statutes should not be interpreted to make certain language superfluous. *See, e.g., Duncan v. Walker*, 533 U.S. 167, 174 (2001). The phrase "other act requisite to voting" therefore captures a category of actions distinct from applying and registering to vote.

As it is, Congress defined the category of "act[s] requisite to voting" by supplying a statutory definition for what it means to "vote." As used in the Materiality Provision, to "vote"

13

"includes all action necessary to make a vote effective including, but not limited to, registration or other action required by State law prerequisite to voting, *casting a ballot*, *and having such ballot counted* and included in the appropriate totals of votes cast with respect to candidates for public office and propositions for which votes are received in an election." 52 U.S.C. § 10101(e) (emphasis added); *see also id.* § 10101(a)(3)(A) ("For purposes of this subsection . . . the term 'vote' shall have the same meaning as in subsection (e) of this section."). An act requisite to voting, then, includes an act necessary for casting your ballot and having it counted.

This text communicates, as one court recently wrote, that the Materiality Provision "isn't limited to . . . voter registration." *Common Cause v. Thomsen*, 19-323, 2021 WL 5833971, at *3 (W.D. Wis. Dec. 9, 2021). Other courts have likewise applied the Materiality Provision beyond voter registration, including to denials of the right to vote because of errors made on an absentee ballot envelope. *League of Women Voters of Arkansas v. Thurston*, 20-5174, 2021 WL 5312640, at *4 (W.D. Ark. Nov. 15, 2021) (denying motion to dismiss claim challenging signature match performed on absentee ballot envelopes); *Martin*, 347 F. Supp. 3d at 1308–09 (enjoining counties from voiding ballots based on date of birth errors made on an absentee ballot envelope).

As a result, filling out the return envelope for an absentee or mail-in ballot is an "act requisite" to "casting a ballot, and having such ballot counted." Indeed, the effect of the Commonwealth Court's order in *Ritter* is to make dating the return envelope a necessary condition of the voters' ballots being counted. Because filling out the return envelope is an "act requisite to voting," the omission of the date from the envelope falls within the scope of the Materiality Provision.

14

**CONCLUSION**

For the reasons above, plaintiffs' motion for summary judgment should be granted on

Count One.


February 17, 2022                              Respectfully submitted,

                                               JOSH SHAPIRO
                                               Attorney General
                                               Commonwealth of Pennsylvania

                                               /s/ *Michael J. Fischer*
                                               _____
                                               MICHAEL J. FISCHER
                                               Chief Counsel and Executive Deputy
                                               Attorney General
                                               JACOB B. BOYER
                                               Deputy Attorney General
                                               Office of Attorney General
                                               1600 Arch Street, Suite 300
                                               Philadelphia, PA 19103
                                               (215) 560-2171
                                               mfischer@attorneygeneral.gov