## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LINDA MIGLIORI, ET AL., | : | No. 5:22-cv-00397-JFL |
| Plaintiffs, | : | |
| and | : | |
| ZACHARY COHEN, | : | |
| Intervenor-Plaintiff. | : | |
| v. | : | |
| LEHIGH COUNTY BOARD OF ELECTIONS, | : | |
| Defendant, | : | |
| and | : | |
| DAVID RITTER, | : | |
| Intervenor-Defendant. | : | |

## INTERVENOR DEFENDANT DAVID RITTER'S BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Joshua J. Voss (No. 306853)
Shohin H. Vance (No. 323551)
James G. Gorman (No. 328376)
Samantha G. Zimmer (No. 325650)
Francis G. Notarianni (No. 327461)
KLEINBARD LLC
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Ph: (215) 568-2000
Fax: (215) 568-0140
Eml: jvoss@kleinbard.com
svance@kleinbard.com
jgorman@kleinbard.com
szimmer@kleinbard.com
fnotarianni@kleinbard.com
*Attorneys for Intervenor Defendant David Ritter*

## TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................1

II.   STATEMENT OF FACTS .......................................................................................1

III.  STATEMENT OF QUESTIONS INVOLVED....................................................1

IV.  SUMMARY OF ARGUMENT ...............................................................................2

V.   ARGUMENT .............................................................................................................3

    A.  Plaintiffs' Count I Materiality Provision claim fails procedurally and substantively. ....... 3

       1.  Plaintiffs are not entitled to relief under the Materiality Provision because the United States Attorney General has the exclusive authority to enforce Section 101 of the Civil Rights Act and because they have not alleged discriminatory intent or effect.... 3

       2.  Plaintiffs' Civil Rights Act claim fails on its merits because the Materiality Provision applies only to voter registration applications and other similar papers and records... 4

          (a)  Plaintiffs' broad reading of the Materiality Provision violates central tenets of statutory construction. ............................................................... 5

          (b)  Assuming *arguendo* the Materiality Provision applies, Plaintiffs' claim is without merit, since a dated voter declaration *is* material in ascertaining a voter's qualification. ................................................ 7

       3.  The state officials' statements regarding whether the date on a voter declaration needs to be correct are not entitled to deference................................. 13

    B.  Plaintiffs are not entitled to judgment as a matter of law on Count II because important state interests justify the small burden of the dated declaration requirement. ................. 16

    C.  Plaintiffs are in privity with and seek the same relief as the state court parties; thus, their claims are barred. ........................................................................... 19

VI.  CONCLUSION........................................................................................................20

VII. PROPOSED ORDER.............................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Borough of Pottstown v. Pennsylvania Mun. Ret. Bd.*, 712 A.2d 741 (Pa. 1998) ........................ 15

*Case of Fry*, 71 Pa. 302 (1872) ............................................................................................... 9

*Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001) ......................................................... 5

*Com. v. Bobbino*, 18 A.2d 458 (Pa. Super. 1941) .................................................................. 12

*Com. v. Petrillo*, 386 A.2d 590 (Pa. Super. 1978) ................................................................. 12

*Condon v. Reno*, 913 F. Supp. 946 (D.S.C. 1995) ................................................................... 4

*Dolan v. U.S. Postal Serv.*, 546 U.S. 481 (2006) ..................................................................... 5

*Ford v. Tennessee Senate*, No. 06-2031 D V, 2006 WL 8435145 (W.D. Tenn. Feb. 1, 2006) ...... 7

*Friedman v. Snipes*, 345 F. Supp. 2d 1356 (S.D. Fla. 2004) ................................................... 4

*Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008) .................................................. 6

*Howlette v. City of Richmond, Va.*, 485 F. Supp. 17 (E.D. Va. 1978) ...................................... 13

*In re Canvass of Absentee & Mail-in Ballots of Nov. 3, 2020 Gen. Election*, 241 A.3d 1058 (Pa. 2020) ................................................................................................................. 8, 11, 15

*In re Soto*, 221 B.R. 343 (Bankr. E.D. Pa. 1998) .................................................................... 19

*In re Stabile*, 36 A.2d 451 (Pa. 1944) ..................................................................................... 9

*Jones v. Jessup*, 615 S.E.2d 529 (Ga. 2005) ......................................................................... 11

*Maier v. Patterson*, 511 F. Supp. 436 (E.D. Pa. 1981) ............................................................ 6

*Martin v. Crittenden*, 347 F. Supp. 3d 1302 (N.D. Ga. 2018) ................................................. 11

*McKay v. Altobello*, Civ.A.No. 96–3458, 1996 WL 635987 (E.D.La. Oct. 31, 1996) .................. 4

*McLinko v. Dep't of State*, No. 244 M.D. 2021, 2022 WL 257659 (Pa. Cmwlth. Jan. 28, 2022) .... ................................................................................................................................. 14

*Mixon v. Commonwealth*, 759 A.2d 442 (Pa. Cmwlth. 2000) .................................................. 10

*Northeast Ohio Coal. for the Homeless v. Husted*, 837 F.3d 612 (6th Cir. 2016)............. 3, 17, 18

*Northwestern Youth Services, Inc. v. Comm., Dept. of Public Welfare*, 66 A.3d 301 (Pa. 2013) ....
.................................................................................................................................................. 14, 15

*Off. Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*,
330 F.3d 548 (3d Cir. 2003) ........................................................................................................... 5

*Pennsylvania Democratic Party v. Boockvar*, 238 A.3d 345 (Pa. 2020).............................. 15, 16

*Perrotta v. Com., Dep't of Transp., Bureau of Driver Licensing*, 110 A.3d 255 (Pa. Cmwlth.
2015) ............................................................................................................................................. 14

*PHRC v. Uniontown Area Sch. Dist.*, 313 A.2d 156 (Pa. 1973)................................................... 15

*Ritter v. Lehigh Cty. Bd. of Elections*, No. 1322 C.D. 2021, 2022 WL 16577 (Pa. Cmwlth. Jan. 3,
2022) ............................................................................................................................................. 11

*Schwier v. Cox*, 340 F.3d 1284 (11th Cir. 2003) ....................................................................... 3, 4

*Singh v. Uber Techs. Inc.*, 939 F.3d 210 (3d Cir. 2019) ............................................................... 6

*Taylor v. Sturgell*, 553 U.S. 880 (2008)...................................................................................... 20

*Thrasher v. Illinois Republican Party*, No. 4:12-CV-4071-SLD-JAG, 2013 WL 442832 (C.D. Ill.
Feb. 5, 2013) ................................................................................................................................... 4

*Turner v. Crawford Square Apartments II, L.P.*, 449 F.3d 542 (3d Cir. 2006) ........................... 20

**Statutes**

25 P.S. § 2602(w)......................................................................................................................... 10

25 P.S. § 2811 ............................................................................................................................. 8, 9

25 P.S. § 3146.6(a)......................................................................................................................... 3

25 P.S. § 3150.14 ........................................................................................................................... 8

25 P.S. § 3150.16(a)................................................................................................................... 3, 15

25 P.S. § 3552 ............................................................................................................................... 12

25 P.S. § 3553 ........................................................................................................................... 8, 12

28 U.S.C. § 1746........................................................................................................................... 18

52 U.S.C. § 10101(a)(2)(B) ................................................................. 3, 5, 7

52 U.S.C. § 10101(a)(3)(A) ..................................................................... 7

52 U.S.C. § 10101(e) .............................................................................. 7

**Other Authorities**

*Ejusdem generis*, 2A Sutherland Statutory Construction § 47:17 (7th ed.) ................................... 6

Robert A. Anthony, Commentary, A Taxonomy of Federal Agency Rules, 52 ADMIN. L.REV. 1045 (2000) ..................................................................... 14

*Voting by Untried Prisoners and Misdemeanants*, 67 Pa. D. & C.2d 449 (Op. Pa. Atty. Gen. 1974) ..................................................................... 10

I.      **INTRODUCTION**

Because this case is proceeding on cross-motions for summary judgment, Intervenor Defendant David Ritter incorporates by reference the entirety of his Motion for Summary Judgment and Brief in Support (ECF 34), and sets forth here only a few short rejoinders to arguments raised in Plaintiffs' simultaneously filed Motion and Brief (ECF 33).

II.     **STATEMENT OF FACTS**

Ritter hereby incorporates by reference the Statement of Facts Section (Section II) contained in his Brief, as though fully set forth herein. (ECF 34-1, § II.)

III.    **STATEMENT OF QUESTIONS INVOLVED**

1.      Should the Court deny Plaintiffs' Motion as to Count I because (1) the Materiality Provision does not allow for or provide a private right of action and Plaintiffs have failed to otherwise allege discriminatory intent or effect; and (2) Plaintiffs have otherwise failed to state a claim under the Materiality Provision? *Suggested Answer*: Yes.

2.      Should the Court deny Plaintiffs' Motion as to Count II because the statutory requirement that voters date their absentee or mail-in ballot declaration is a minimal burden that is justified by important state regulatory interests, namely, preventing fraud, improving voter confidence, and ensuring efficient administration of elections? *Suggested Answer*: Yes.

3.      Should the Court deny Plaintiffs' Motion as to all claims because Plaintiffs' claims are barred by res judicata as a result of the shared identity of causes of action and parties in the prior state court proceedings and the adequate representation of their interests there? *Suggested Answer*: Yes.[1]

---

[1] Plaintiffs' claims are also entirely barred by the doctrine of laches, as set forth in Ritter's Motion and Brief. *See* Ritter Br. at 16-22. But Plaintiffs' moving papers did not address this argument; thus, no further briefing on that issue is set forth in this Brief in Opposition.

**IV.     SUMMARY OF ARGUMENT**

This Court should deny Plaintiffs' Motion for Summary Judgment because there are no genuine issues of material fact and Plaintiffs' claims fail as a matter of law. Plaintiffs' Count I asserts a claim under Materiality Provision of the Civil Rights Act, but that statute does not allow for or provide a private right of action and, thus, this Court cannot consider it. Further, Plaintiffs are not entitled to relief under the Materiality Provision because they have not alleged discriminatory intent or effect.

But even if this Court is inclined to reach the merits of this claim, Plaintiffs are not entitled to relief because: (1) the Materiality Provision does not apply outside the context of voter registration schemes; (2) Plaintiffs' broad reading of the Materiality Provision violates central tenets of statutory construction; and (3) the dating requirement relative to Voter Declarations is material to determining the voter's eligibility. Moreover, Plaintiffs' reliance on statements from local and state officials regarding the importance of the correct date on the voter declaration is misplaced, since those statement are not entitled to deference.

Plaintiffs' Count II asserts a claim for undue burden on the right to vote under the First and Fourteenth Amendments; however, any burden on Plaintiffs' right to vote by the Board's enforcement of the statutory requirement that voters date their absentee or mail-in ballot declarations is minimal, at best, and advances important regulatory interests in preventing fraud and ensuring orderly administration of elections.

Lastly, Plaintiffs' claims are barred by res judicata as a result of the shared identity of causes of action and the parties in the prior state court proceedings and the adequate representation of Plaintiffs' interests in those matters.

## V.     ARGUMENT

### A.     Plaintiffs' Count I Materiality Provision claim fails procedurally and substantively.

In their lead request for relief, Plaintiffs seek an order from this Court invalidating a statutory mandate, set forth in Sections 3146.6(a) and 3150.16(a) of the Pennsylvania Election Code, 25 P.S. §§ 3146.6(a), 3150.16(a), requiring mail-in and absentee ballots to be accompanied by a Voter Declaration that is signed and dated. Specifically, they maintain that continued enforcement of this law would violate Section 101(a)(2)(B) of the Civil Rights Act (the "Materiality Provision"). *See* Pl. Br. at 9-14. But as explained in Ritter's Brief and developed in greater detail below, Plaintiffs' reliance on the Materiality Provision is misplaced on a number of levels.

### 1.     Plaintiffs are not entitled to relief under the Materiality Provision because the United States Attorney General has the exclusive authority to enforce Section 101 of the Civil Rights Act and because they have not alleged discriminatory intent or effect.

Although Plaintiffs proceed directly to their merits analysis, arguing that requiring voters to submit a ***dated*** declaration "is not material in determining whether such individual is qualified under State law to vote in such election," 52 U.S.C. § 10101(a)(2)(B), they fail to meet at least two threshold requirements for invoking this provision.

*First*, as set forth in Ritter's Brief, based on its plain language, Section 101 may be enforced only by the United States Attorney General. *See* Ritter Br. at 27-32. This reading is consistent with the conclusion reached by a number of courts, including the Sixth Circuit Court of Appeals in *Northeast Ohio Coal. for the Homeless v. Husted*, 837 F.3d 612, 630 (6th Cir. 2016)—a decision on which Plaintiffs rely extensively in support of their Equal Protection claim (Count II), *see* Pl. Br. at 15-16. Indeed, with the exception of *Schwier v. Cox*, 340 F.3d 1284 (11th Cir. 2003), which, in any event, is predicated on obsolete authority, *see* Ritter Br. at 31,

3

none of the authorities Plaintiffs cite have expressly recognized a private right of action to enforce the Materiality Provision.

*Second*, as detailed in Ritter's Brief, *see* Ritter Br. at 32-34, the Civil Rights Act does not apply outside the context of discrimination—and, more specifically, racial discrimination. Yet, Plaintiffs have neither alleged nor proven discrimination of any variety.

These two threshold issues, without more, foreclose summary judgment for Plaintiffs on Count I.

> **2.    Plaintiffs' Civil Rights Act claim fails on its merits because the Materiality Provision applies only to voter registration applications and other similar papers and records.**

To the extent this Court is inclined to overlook the above gating issues, Plaintiffs claim fares no better on the merits. Initially, the Materiality Provision pertains to voter registration applications and other similar papers or records—not, as Plaintiffs suggest, every conceivable submission related to the voting process.[2] *See* Pl. Br. at 13-14. But even if Plaintiffs' broad

---

[2] *See, e.g.*, *Schwier v. Cox*, 340 F.3d 1284, 1297 (11th Cir. 2003) ("[T]he statute forbids a person acting under color of law to disqualify a potential voter because of his or her failure to provide unnecessary information on a voting application."); *Thrasher v. Illinois Republican Party*, No. 4:12-CV-4071-SLD-JAG, 2013 WL 442832, at *3 (C.D. Ill. Feb. 5, 2013) (explaining the Materiality Provision "specifically targets the practice of requiring unnecessary information on voter registration forms with the intent that such requirements would increase the number of errors or omissions on the application forms, thus providing an excuse to disqualify potential minority voters" and "seeks to correct iniquities in the voter registration process"); *Friedman v. Snipes*, 345 F. Supp. 2d 1356, 1370-71 (S.D. Fla. 2004) (explaining that Section 101 "was designed to eliminate practices that could encumber an individual's ability to register to vote" and "[n]othing in [the Court's] review of the case law in this jurisdiction or in other jurisdictions indicates that section [101] was intended to apply to the counting of ballots by individuals already deemed qualified to vote" (emphasis in original)); *McKay v. Altobello*, Civ.A.No. 96–3458, 1996 WL 635987, at *1 (E.D.La. Oct. 31, 1996) ("[Section 101(a)(2)(B)] is an anti-discrimination statute designed to eliminate the discriminatory practices of registrars through arbitrary enforcement of registration requirements."); *Condon v. Reno*, 913 F. Supp. 946, 950 (D.S.C. 1995) (explaining that "the 1964 Civil Rights Act provided that no one could be denied registration because of errors that were not material in determining eligibility[,]" which "was necessary to sweep away such tactics as disqualifying an applicant who failed to list the exact number of months and days in his age").

4

interpretation of the Materiality Provision were legally sustainable, their argument would lack merit because a dated voter declaration is material to determining an individual's eligibility to vote.

> **(a)      Plaintiffs' broad reading of the Materiality Provision violates central tenets of statutory construction.**

In terms of the statute's scope, Plaintiffs insist that they are entitled to relief because failing to submit a dated voter declaration is "clearly an 'error or omission on any record or paper related to any … act requisite to voting[.]'" Pl. Br. at 14 (quoting 52 U.S.C. § 10101(a)(2)(B)). This argument, however, is predicated on a fundamental misunderstanding of the types of "records or papers" that fall within the ambit of the provision.

In this regard, because "[i]nterpretation of a word or phrase depends upon reading *the whole statutory text*, considering the purpose and *context* of the statute," *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006) (emphasis added), it is important to carefully examine the relevant passage in its entirety. Specifically, Section 101(a)(2)(B) prohibits denial of "the right of any individual to vote in any election because of an error or omission on ***any record or paper relating to any application, registration, or other act requisite to voting***," 52 U.S.C. § 10101(a)(2)(B) (emphasis added), unless the error is material in determining the individual's right to vote. While Plaintiffs interpret the catchall term "other act requisite to voting" broadly and without reference to the preceding words, under the *ejusdem generis* principle of statutory construction, "where general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *Off. Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 562 (3d Cir. 2003) (quoting *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 114-15 (2001)); *see also Singh v. Uber Techs. Inc.*, 939 F.3d 210,

220 n.3 (3d Cir. 2019) ("[W]hen a statute sets out a series of specific items ending with a general

term, [the] general term is confined to covering subjects comparable to the specifics it follows."

(quoting *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 586 (2008)). Furthermore, Section

101's use of the phrase "other" makes the application of this precept to the present statute

particularly apt because it confirms Congress's intent to refer back to the preceding series of

words. *Accord Maier v. Patterson*, 511 F. Supp. 436, 444 (E.D. Pa. 1981) ("By the principle of

*ejusdem generis*, the general expression 'otherwise disciplined' connotes action similar to the

specific acts of fining, suspending, or expelling."). Accordingly, properly understood, the

Materiality Provision prohibits denial of an individual's right to vote based on mistakes on

records or papers that are related to applications, registrations, or other acts requisite to voting

that are similar to applications or registrations.[3]

---

[3] The doctrine of *ejusdem generis* is a critical tool of statutory construction, as it seeks to
reconcile several competing principles of interpretation—namely that (1) all words in a statute
are to be given effect, if possible; (2) all parts of a statute are to be construed together; and
(3) and that the legislature should not be presumed to have used superfluous language. As
explained in the leading treatise on statutory construction:

> If the general words are given their full and natural abstract meaning, they would
> include the objects designated by the specific words, making the latter
> superfluous. If, on the other hand, the series of specific words is given its full and
> natural meaning, the general words are partially redundant. The rule accomplishes
> the purpose of giving effect to both the particular and the general words, by
> treating the particular words as indicating the class, and the general words as
> extending the provisions of the statute to everything embraced in that class,
> though not specifically named by the particular words. The resolution of this
> conflict by ascribing to the series its natural meaning and by restricting the
> meaning of the general words to things *ejusdem generis* with the series is justified
> on the ground that, had a legislature intended the general words to be used in their
> unrestricted sense, it would have made no mention of the particular words, but
> would have used only one compendious expression.

*Ejusdem generis*, 2A Sutherland Statutory Construction § 47:17 (7th ed.) (footnotes omitted)
(collecting cases).

Against this backdrop, Plaintiffs' claim lacks merit, since a voter declaration accompanying a completed mail-in ballot is in no way similar to an application or registration paper. And to the extent Plaintiffs rely on the broad definition of the term "vote" in Section 101(e), 52 U.S.C. §§ 10101(a)(3)(A) & (e), to avoid this conclusion, that argument is unsustainable because it would lead to a circular and meaningless statutory construct. Indeed, Plaintiffs' proposed formulation would result in a tautology, whereby the phrase "other act requisite to voting[,]" 52 U.S.C. § 10101(a)(2)(B), would mean any "action required by State law prerequisite to voting[.]" *Id.* at § 10101(e). Such a reading is unintelligible and confuses, rather than clarifies, the statutory meaning.

Moreover, as detailed in Ritter's Brief, the construct offered by him is consistent with the interpretation of most other courts. Indeed, based on a review of the authorities offered by Plaintiffs and an independent comprehensive survey of the caselaw, it appears that only one court has ***expressly*** held that the Materiality Provision applies outside the context of voter registration laws. *See Ford v. Tennessee Senate*, No. 06-2031 D V, 2006 WL 8435145, at *11 (W.D. Tenn. Feb. 1, 2006); *see* Pl. Br. at 13-14 (citing *Ford*).[4] Containing limited analysis, however, this unpublished out-of-circuit decision is entitled to little weight—particularly given that it is plainly an outlier.

        **(b)**      **Assuming *arguendo* the Materiality Provision applies, Plaintiffs' claim is without merit, since a dated voter declaration *is* material in ascertaining a voter's qualification.**

Setting aside the fact that Plaintiffs' sweeping interpretation of the Materiality Provision is inconsistent with the statutory context, and assuming, *arguendo*, that "other act requisite to

---

[4] While there are a handful of decisions applying this provision more broadly, *Ford* appears to be the only decision explicitly addressing the scope of the Materiality Provision and holding that it applies beyond the limited context of materials related to voter registration.

voting" includes the voter declarations, Plaintiffs claim nevertheless still fails. At the outset, it is important to reiterate that the dating requirement Plaintiffs challenge does not apply to *a ballot* as such, but rather, *a signed voter declaration*, attesting, on pain of criminal penalty,[5] that the elector, *inter alia*, (1) is qualified to vote from the stated address; (2) has not already voted in the election; and (3) is qualified to vote the enclosed ballot. *See In re Canvass of Absentee & Mail-in Ballots of Nov. 3, 2020 Gen. Election*, 241 A.3d 1058, 1065 (Pa. 2020) (citing 25 P.S. § 3150.14). Accordingly, while Plaintiffs repeatedly suggest that their ballots were rejected because they lacked "a handwritten date on outer return envelopes," *see, e.g.*, Pl. Br. at 11, this imprecise characterization obfuscates the statutory scheme. As developed below, the specific date on which any one of these three representations are made is material in determining whether an individual is qualified under Pennsylvania law to vote. Each of the three representations made on a voter declaration are addressed *seriatim*.

Turning, initially, to the first attestation on the declaration—*i.e.*, that the elector is qualified to vote from the stated address—under the Election Code, a person is qualified to vote "in the election district where he or she ... offer[s] to vote" if "[h]e or she shall have resided" there at least thirty days immediately preceding the election. 25 P.S. § 2811. Residence, under the Election Code, does not depend on mere registration status; rather, it "means the place where the elector makes his permanent or true home, his principal place of business, and his family

---

[5] *See* 25 P.S. § 3553 ("If any person shall sign an application for absentee ballot, mail-in ballot or declaration of elector on the forms prescribed knowing any matter declared therein to be false, or shall vote any ballot other than one properly issued to the person, or vote or attempt to vote more than once in any election for which an absentee ballot or mail-in ballot shall have been issued to the person, or shall violate any other provisions of Article XIII-1 or Article XIII-D-2 of this act, the person shall be guilty of a misdemeanor of the third degree, and, upon conviction, shall be sentenced to pay a fine not exceeding two thousand five hundred dollars ($2,500), or be imprisoned for a term not exceeding (2) years, or both, at the discretion of the court.").

residence, if he have one.'" *In re Stabile*, 36 A.2d 451, 453 (Pa. 1944) (quoting *Case of Fry*, 71 Pa. 302, 307 (1872)); *see also In re Stabile*, 36 A.2d at 453 (further cautioning that "[*t*]*he fact* of any person's residence, for any legal purpose, whether for voting, or for holding office, or for taxation, has never been determined merely by that person's 'say so'" and, instead "[i]n determining that question the state brushes aside all colorable pretences and finds the reality behind the guise" (emphasis in original)). It is self-evident, therefore, that whether a person resides at a specific address—and, therefore, is qualified to vote from there—may change in a matter of days. And the truthfulness of an elector's representation in this regard may change based on the date on which it is made.

To illustrate, consider a hypothetical voter who received a mail-in ballot forty-five days before the 2021 general election, which is the latest point at which each county ***must*** commence delivery of such ballots,[6] but on October 3, 2021 discovered that he must unexpectedly relocate to a different state and on October 19, 2021 (two weeks before the election) completed his move. If the voter signed the voter declaration on October 1, 2021, he truthfully attested to being a qualified voter and, indeed, would have had no reason to know that his residence would change. However, if the voter signed the voter declaration on October 20, 2021, he plainly made a false representation and is guilty of fraud. Absent a dated declaration, under such circumstances, whether the elector had been truthful would be difficult, if not impossible to establish.

---

[6] *See* 25 P.S. § 2811 (providing that a "county board of elections upon receipt and approval of an application filed by any elector qualified in accordance with the provisions [of the Election Code], shall … not later than forty-five days prior to the day of the primary or election commence to deliver or mail to all other such electors").

Similarly, an elector's representation that he has not yet voted in the election may be true or false depending on the date on which the attestation is made, which does not require a hypothetical to imagine.

As for the general representation that the elector is qualified to vote the enclosed ballot, in addition to relocation, other factors also bearing on an individual's qualification to vote can change with time. Again, consider a hypothetical elector who has been charged with a felony, but is not convicted until October 25, 2021. If that voter's absentee ballot voter declaration is signed at any point before October 25, 2021, the elector has been entirely truthful in representing himself as a qualified voter. *See Voting by Untried Prisoners and Misdemeanants*, 67 Pa. D. & C.2d 449 (Op. Pa. Atty. Gen. 1974) ("It is our opinion, and you are hereby advised, that untried pretrial detainees and convicted misdemeanants must be afforded the right to register and vote by officials responsible for administration of the election laws in the Commonwealth of Pennsylvania."). If, however, he signs the declaration after that date, the attestation is false, since a convicted felon is not qualified to vote under the Election Code. *See* 25 P.S. § 2602(w) (excluding incarcerated felons from the statutory definition of "qualified absentee elector"); *Mixon v. Commonwealth*, 759 A.2d 442, 450 (Pa. Cmwlth. 2000) ("Under the laws enacted within this Commonwealth, we again hold, as we did in *Martin v. Haggerty* and our State Supreme Court did in *Ray v. Commonwealth*, that incarcerated felons are not qualified absentee electors."), *aff'd*, 783 A.2d 763 (Pa. 2001).

In short, a dated voter declaration is, in fact, material to determining whether an elector has the right to have his or her ballot canvassed; *i.e.*, whether the elector is "qualified to vote."

That was the conclusion reached by the Pennsylvania Supreme Court,[7] as reiterated by the Commonwealth Court in the State Court proceedings. These decisions, while not binding on this Court, further elucidate and confirm the materiality of a dated voter declaration. *See Martin v. Crittenden*, 347 F. Supp. 3d 1302, 1309 (N.D. Ga. 2018) ("This Court's conclusion that year of birth information on the absentee ballot envelope is immaterial is only strengthened by the Georgia Supreme Court's explicit recognition that Georgia law 'does not mandate the automatic rejection of any absentee ballot lacking the elector's place and/or date of birth.' (quoting *Jones v. Jessup*, 615 S.E.2d 529, 531 n.5 (Ga. 2005))).[8] Plaintiffs, for their part, fail to advance any cogent argument that would undermine this conclusion.

---

[7] *See Ritter v. Lehigh Cty. Bd. of Elections*, No. 1322 C.D. 2021, 2022 WL 16577, at *4 (Pa. Cmwlth. Jan. 3, 2022) ("The presence of the date also establishes a point in time against which to measure the elector's eligibility to cast the ballot[.]" (quoting *In re Canvass of Absentee & Mail-in Ballots of Nov. 3, 2020 Gen. Election*, 241 A.3d 1058, 1090 (Pa. 2020) (Dougherty, J., concurring and dissenting))), *appeal denied*, No. 9 MAL 2022, 2022 WL 244122 (Pa. Jan. 27, 2022).

[8] In this regard, it bears noting that Plaintiffs suggest that *Martin* somehow aids their claim. But as a closer examination of *Martin* demonstrates, Plaintiffs' reliance on that decision is misplaced. Specifically, that case dealt with a Georgia statute that required absentee and mail-in voters, whose qualification to vote had already been established, to include a handwritten date of birth on the envelope in which their ballots were enclosed. Unlike the date on which a signature is affixed, however, an elector's date of birth does not change and cannot be used in assessing the veracity of a representation made on a declaration. Moreover, in holding that a date of birth was immaterial, the Court attached significance to two facts not present here: *first*, "the Georgia Supreme Court's explicit recognition that Georgia law does not mandate the automatic rejection of any absentee ballot lacking the elector's place and/or date of birth[;]" *Martin*, 347 F. Supp. at 1309 (internal quotation marks and citations omitted); and *second*, the fact that rejection of such ballots was not a uniformly-adopted practice among the counties. *See id.* ("Gwinnett County's procedure for rejecting absentee ballots entirely on the basis of a missing or incorrect birth year is particularly problematic in light of the fact that other Georgia counties do not require absentee voters to furnish such information *at all*." (emphasis in original)). Here, on the other hand, the Pennsylvania State Supreme Court has held that Pennsylvania law **does** "mandate the automatic rejection of any absentee [or mail-in] ballot lacking" a dated signature on the accompanying voter declaration. *Id.* In addition, there is no evidence that any county—at least since November 2021—has ignored this clear statutory mandate.

Moreover, in addition to its materiality in determining an elector right to have his or her ballot canvassed in the specific election for which the ballot is offered (*i.e.*, whether the elector is "qualified to vote"), a dated voter declaration is also material in determining an elector's qualification to vote in ***future*** elections. Specifically, under the Election Code, any person who signs a voter declaration "knowing any matter declared therein to be false," 25 P.S. § 3553, is not only guilty of a misdemeanor, but is also automatically "deprived of the right of suffrage absolutely for a term of four years from the date of his conviction[.]" 25 P.S. § 3552;[9] *Com. v. Petrillo*, 386 A.2d 590, 593 (Pa. Super. 1978) (holding that a four-year period of disenfranchisement is "mandatory upon conviction"). As the above examples illustrate, the date on which an attestation is made is material—indeed, arguably determinative—in establishing whether an individual who is not qualified to vote has ***knowingly*** made a false representation, such that he is guilty of a criminal offense and must be disqualified from voting for four years, or merely acted carelessly in failing to inform the board of elections of the change in circumstances. *See generally Com. v. Bobbino*, 18 A.2d 458, 460 (Pa. Super. 1941) (mere carelessness in ascertaining one's own qualification to vote is insufficient to demonstrate that an individual who was not qualified to vote acted knowingly in casting a ballot). Accordingly, a dated voter

---

[9] Section 3552, provides, as follows:

Any person convicted of the willful violation of any provision of this act shall, in addition to any of the penalties herein provided for, be deprived of the right of suffrage absolutely for a term of four years from the date of his conviction, and it shall be the duty of the proper registration commission to cause one of its members at the request of the trial judge to produce in court at the time of sentence the district register containing the registration card of such convicted person, which registration card shall thereupon be forthwith cancelled in open court in the presence of the convicted person by a member of the registration commission, who shall promptly also cancel the registration card of such convicted person in the general register.

25 P.S. § 3552.

12

declaration is material to determining a voter's qualification to vote in both present and future elections.

Finally, as the above rendition shows, requiring a dated voter declaration also serves a significant fraud-deterrent function, which, in of itself, satisfies Section 101's materiality requirement. *See Howlette v. City of Richmond, Va*., 485 F. Supp. 17, 22-23 (E.D. Va. 1978) (holding a statute requiring each signature on a referendum petition to be notarized does not violate the Materiality Provision), *aff'd*, 580 F.2d 704 (4th Cir. 1978) (affirming based on the opinion of the District Court). Like the statutory mandate in *Howlett*, requiring voters to submit a dated voter declaration along with their mail-in or absentee ballot "impresses upon the signers of the [declaration] the seriousness of the act of signing" a declaration and "dissuades non-qualified persons" from voting "by subjecting those who take the oath to potential criminal liability for perjury because of their fraud-deterrent function." *Id.* Accordingly, aside from the materiality of a dated voter declaration in ascertaining a elector's qualification to vote, the statute's safeguard against fraud is, without more, sufficient to overcome any challenge under Section 101.

### 3. The state officials' statements regarding whether the date on a voter declaration needs to be correct are not entitled to deference.

One of the flaws in Plaintiffs' arguments is that they imply deference should be afforded wholesale to Lehigh County Chief Clerk Tim Benyo's testimony before the Board (Ex. F. at 61:5-62:14) and a Department of State email from Jonathan Marks (Ex. E) regarding the purported lack of importance of correctly dating voter declarations. *See* Pl. Br. at 12, 16. In actuality, neither of these opinions holds any value as a matter of Pennsylvania law as they are contrary to Act 77 and the binding precedent that interprets it.[10]

---

[10] Mail-in voting under Act 77 was recently found to be unconstitutional by the Pennsylvania Commonwealth Court. *See McLinko v. Dep't of State*, No. 244 M.D. 2021, 2022

13

To illuminate, the two cited statements certainly do not express actual regulations issued pursuant to the Commonwealth Documents Law, the Regulatory Review Act, and the Commonwealth Attorneys Act. They are merely opinions of two individuals who work for Lehigh County and the Department of State, respectively. Just because a government official says something does not entitle it to any deference as a matter of Pennsylvania law. *See, e.g.*, *Perrotta v. Com., Dep't of Transp., Bureau of Driver Licensing*, 110 A.3d 255, 259 (Pa. Cmwlth. 2015) (holding that deference is not given to agency interpretations which are erroneous or which frustrate legislative intent). Nonetheless, even if treated as guidance documents or statements of policy, as a matter of law, these opinions should be disregarded because they are contrary to legislative intent and contrary to actual law promulgated by the highest courts in the Commonwealth.

To explain, as interpreted by the Pennsylvania Supreme Court, "guidance documents" compose a lesser category of agency pronouncements recognized in administrative law practice. *Northwestern Youth Services, Inc. v. Comm., Dept. of Public Welfare*, 66 A.3d 301, 310 (Pa. 2013). "These 'come in an abundance of formats with a diversity of names, including guidances, manuals, interpretive memoranda, staff instructions, policy statements, circulars, bulletins, advisories, press releases and others.'" *Id*. at 311 (citing Robert A. Anthony, Commentary, A Taxonomy of Federal Agency Rules, 52 ADMIN. L.REV. 1045, 1046 (2000)). When guidance documents fairly may be said to merely explain or offer specific and conforming content to existing statutes or regulations within the agency's purview, they are regarded as "interpretive rules." *See id*. (citing *Borough of Pottstown v. Pennsylvania Mun. Ret. Bd.*, 712 A.2d 741, 743

---

WL 257659 (Pa. Cmwlth. Jan. 28, 2022). The matter has been appealed to the Pennsylvania Supreme Court.

(Pa. 1998)). Additionally, "statements of policy," or agency pronouncements which are not intended to bind the public and agency personnel, but rather, merely express an agency's tentative, future intentions, are a separate recognized category of guidance documents. *See id.* (citation omitted).

For deference purposes, because guidance documents often do not rest on legislatively-conferred rulemaking powers (and, correspondingly, do not abide notice-and-comment and regulatory review processes), the validity of such a rule depends upon the willingness of a reviewing court to say that it in fact tracks the meaning of the statute it interprets. *Northwestern*, 66 A.3d at 311-12 (citations omitted). "Thus, a lesser quantum of deference is accorded, and interpretive rules outside the realm of an agency's delegated lawmaking authority may be disregarded, when a court is 'convinced that the interpretative regulation adopted by an administrative agency is unwise or violative of legislative intent[.]'" *Id.* at 312 (quoting *PHRC v. Uniontown Area Sch. Dist.*, 313 A.2d 156, 169 (Pa. 1973)).

Here, both Benyo and Marks stated that correct voter declaration dates are not important. *See* Pl. Br. at 12, 16. Act 77, however, expressly requires a date on the voter declaration, and by clear inference, a *correct* date. *See* 25 P.S. § 3150.16(a). The decision in *In re Canvass* is in accord in requiring a date, and by inference, a correct date. *See* 241 A.3d at 1087 (Wecht, J., concurring and dissenting in part). Finally, the decision in *Ritter* is in further accord. *See* 2022 WL 16577, at *9. Accordingly, Benyo's and Marks' statements are "unwise," and entitled to no deference because they contradict established law. *Northwestern*, 66 A.3d at 312.

Notably, in *Pennsylvania Democratic Party v. Boockvar*, 238 A.3d 345 (Pa. 2020), the Pennsylvania Supreme Court gave no deference to another piece of Mr. Marks' guidance, also regarding Act 77. In that case, Mr. Marks, on behalf of the Pennsylvania Department of State,

advised county election officials that there was no authority to set aside so-called "naked ballots" (*i.e.*, absentee and mail-in ballots returned without the secrecy envelope). *Boockvar*, 238 A.3d at 376 n.29. The Supreme Court looked at this position and ignored it because it was wrong on its face when compared to the statute. *Cf. id.* at 378. In other words, just because the Department of State said something in a guidance document did not mean the Pennsylvania Supreme Court found it correct or binding in any way.

This Court should do the same here. It should compare, on one hand, *In re Canvass*, *Ritter*, and Act 77 to, on the other hand, the Marks email and the Benyo testimony and find that the latter are violative of law and scan be ignored wholesale as they concern the importance of a properly dated voter declaration. In turn, to the extent Plaintiffs' arguments depend on those officials' opinions, the Court can conclude those arguments are without support.

**B.     Plaintiffs are not entitled to judgment as a matter of law on Count II because important state interests justify the small burden of the dated declaration requirement.**

Regarding Count II (Undue Burden on the Right to Vote Under the First and Fourteenth Amendment), Plaintiffs and Ritter agree that dating a declaration is a small burden on the right to vote. *See* Plaintiffs' Br. at 16 (referring to the dated declaration requirement as a "relatively small burden on the fundamental right to vote"). Therefore, the only legal issue that remains regarding Plaintiffs' claims in Count II is whether this minimal burden is justified by important state regulatory interests. As set forth in Ritter's Brief, dated declarations serve an anti-fraud purpose, improve voter confidence, and ensure efficient administration of elections. *See* Ritter Br. at 39-41. Plaintiffs' argument otherwise is centered upon their characterizations that (a) the dated declaration requirement is superfluous, and (b) the state has *zero* regulatory interest in it. Neither is true.

16

Relying primarily upon *Northeast Ohio Coalition for the Homeless v. Husted*, 837 F.3d 612 (6th Cir. 2016)—which, as noted above regarding Count I, holds that no private right of action exists under the Materiality Provision, *id.* at 630—Plaintiffs seek to compare the dated declaration requirement to a small technicality. However, the challenged requirement in *Husted* and the Court's analysis thereof cannot be meaningfully compared to the dated declaration requirement.

The plaintiffs in *Husted* challenged certain provisional ballot and absentee ballot voting regulations, asserting that they violated, *inter alia*, the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. *Id.* at 621. In relevant part, the plaintiffs specifically challenged the requirement that boards of election reject ballots where the voters did not accurately fill in their birthdate and/or address on the provisional ballot affirmation or on the absentee ballot identification envelope. *Id.* at 631. First, with regard to the provisional ballots, the Sixth Circuit determined the state had demonstrated its interests for the requirement in this context because an address and birthdate are necessary for identifying provisional voters, particularly where the affirmation form is also used to register unregistered voters. *Id.* at 632. Second, the Sixth Circuit held that the state had not provided any specificity of its interests or even "'offer[ed] combatting voter fraud' as a relevant interest" to justify this requirement for absentee ballots. *Id.* at 632-33. Importantly, the absentee voting scheme in Ohio also required voters applying for absentee ballots to first complete applications including this same information: the signature, registration address, date of birth, and a form of identification. *Id.* at 619. The statute authorized and the Secretary of State had even advised boards of election to complete this same information on the identification envelopes before providing them to voters so that ballots were not thrown out for failure to comply with the challenged requirement. *Id.* at

17

619. In light of this, the Court reasoned that the state's interest was implicating the rare instance

where a fraudulent voter could swipe the ballot of a registered absentee voter, forge the

signature, return the ballot with a copy of identification, and "would have gotten away scot free

but for the troublesome birthdate requirement." *Id.* Given these circumstances and the lack of

evidence produced by the state, a requirement like that in *Husted* was considered a superfluous

technicality without an important state interest to justify it. The dated declaration requirement

that Plaintiffs challenge here cannot be considered the same.

Far from a redundant technicality, the date is a critical component of a sworn declaration

that accompanies the ballot. *See supra* § V.A.2.b. Sworn declarations are regularly used as a

mechanism for verifying the veracity of information. *See* 28 U.S.C. § 1746; *see also* Compl. at

Exhibits 1 through 5 (ECF 1-3 to 1-7) (Plaintiffs' signed *and dated* declarations under 28 U.S.C.

§ 1746). There is no other mechanism than through the signed and dated declaration by which

mail-in voters verify that they are qualified to vote, have not already voted in the current

election, and marked their ballots in secret. *See supra* § V.A.2.b. Unlike in *Husted*, it is not

redundant to require that the declaration be properly executed in every respect in order for the

ballot to be counted.

Moreover, in light of the fact that dated declaration requirement is not a minor

technicality, the important state interests in preventing fraud are evident. Signed *and* dated

declarations ensure integrity through the election process. Plaintiffs overlook the fraud interest

that is served by the dated declaration requirement solely because the parties agree that none of

the Disputed Ballots are the known subject of fraud. Pl. Br. at 18; Joint Stip. ¶ 26. Regardless of

whether the current Disputed Ballots are the known subject of fraud, Plaintiffs' challenge is to

the dated declaration requirement in its entirety. *See* Compl. Wherefore Clause. On the whole,

the dated declaration requirement serves an anti-fraud purpose, as all properly executed affidavits do.

### C.     Plaintiffs are in privity with and seek the same relief as the state court parties; thus, their claims are barred.

Arguing that the Commonwealth Court's interpretation of the Materiality Provision is incorrect and non-binding, Plaintiffs incorrectly imply that both Ritter and Cohen were the *only* parties to the state court proceedings and that Plaintiffs were not in privity with Ritter and Cohen. *See* Pl. Br. at 13 n.7 (stating, *inter alia*, state court case was litigated "by intervenors Ritter and Cohen"). Neither assertion is correct.

Initially, Ritter and the Cohen were **not** the only parties to the state court litigation. Ritter appealed the Board's decision to the trial court and the trial court's order to the Commonwealth Court; the Board was the defendant in each of those proceedings and Cohen fully participated. *See* Stip. Facts at ¶¶ 35-44; Exhibits H-I. When Cohen sought discretionary review before the Supreme Court, the Board joined him in soliciting that Court to count the Disputed Ballots, basing its argument, in part, on the Materiality Provision. *See* Exhibit 1 attached hereto at 12-19 (Board answer to Cohen petition for allowance of appeal in PA Supreme Court).[11] In other words, at each stage of the state court proceedings, Cohen ***and the*** Board advocated for the exact same relief that Plaintiffs seek now: for the Disputed Ballots to be counted. Stip. Facts at ¶¶ 33, 45. Cohen even called one of the named Plaintiffs, Richard Richards, to testify before the trial court for the purpose of establishing that the voters who cast the Disputed Ballots wanted their ballots counted. Exhibit G at 59:4-63:20. Moreover, in seeking the same relief Plaintiffs seek now, the Board and Cohen argued before the state tribunals that the dated declaration

---

[11] *In re Soto*, 221 B.R. 343, 347 (Bankr. E.D. Pa. 1998) (citing various cases for proposition that court can take judicial notice of documents from state court litigation).

requirement violates the Materiality Clause. *See* Exhibit G at 98:14-101:14 (trial court hearing, showing extensive discussion of Materiality Clause); *see also* Exhibit I at 18-19 (Commonwealth Court opinion, analyzing Materiality Clause). Because Cohen and the Board both advocated in the state courts the same legal arguments that Plaintiffs now assert, Plaintiffs are in privity with the parties to the state court proceedings.

Next, as set forth in Ritter's Brief, privity exists between the state court parties and Plaintiffs because the state court parties adequately represented Plaintiff's interests in the state court proceedings. *See Taylor v. Sturgell*, 553 U.S. 880, 893-96 (2008) (explaining that claims may be barred by preclusion where s party's interests were adequately represented by a party to the prior suit with the same interests). Further, where the parties are in privity and there is also a shared identity of things sued for, causes of action, and capacity of the parties sued in both state and federal proceedings, the federal claims are barred by res judicata. *Turner v. Crawford Square Apartments II, L.P.*, 449 F.3d 542, 548 (3d Cir. 2006). Here, along with privity, there is a shared identity in the basis of the suit, the relief sought, and the arguments and interests advanced in state and federal court. Because Plaintiffs are in privity with the state court parties, their claims are barred by res judicata and their contention that the Commonwealth Court's decision is not binding is erroneous.

**VI.    CONCLUSION**

For the foregoing reasons, and for those set forth in his initial Brief, Intervenor Defendant Ritter respectfully requests that this Court deny Plaintiffs' Motion for Summary Judgment and instead enter judgment in Ritter's favor.

**VII.   PROPOSED ORDER**

Ritter submitted a proposed order with his initial moving papers (ECF 34-2), and respectfully requests that the Court adopt that Order.

Respectfully submitted,

Dated: February 22, 2022

/s/ Joshua J. Voss
Joshua J. Voss (No. 306853)
Shohin H. Vance (No. 323551)
James G. Gorman (No. 328376)
Samantha G. Zimmer (No. 325650)
Francis G. Notarianni (No. 327461)
KLEINBARD LLC
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Ph: (215) 568-2000
Fax: (215) 568-0140
Eml: jvoss@kleinbard.com
svance@kleinbard.com
jgorman@kleinbard.com
szimmer@kleinbard.com
fnotarianni@kleinbard.com

*Attorneys for Intervenor Defendant David Ritter*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 22, 2022, I served the Brief in Opposition to Plaintiffs'

Motion for Summary Judgment on all parties via the Court's CM/ECF system.

Dated: February 22, 2022

/s/ Joshua J. Voss
Joshua J. Voss (No. 306853)
KLEINBARD LLC
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Ph: (215) 568-2000
Fax: (215) 568-0140
Eml: jvoss@kleinbard.com

*Attorneys for Intervenor Defendant David Ritter*