# Exhibit 1

Received 1/12/2022 10:23:50 AM Supreme Court Middle District

Filed 1/12/2022 10:23:00 AM Supreme Court Middle District
9 MAL 2022

## IN THE SUPREME COURT OF PENNSYLVANIA

### *David D. Ritter,*

### *v.*

### *Lehigh County Board of Elections,*

### *Petition of Zac Cohen*

### No. 9 MAL 2022

## ANSWER TO PETITION FOR ALLOWANCE OF APPEAL OF
## LEHIGH COUNTY BOARD OF ELECTIONS

Petition for Allowance of Appeal from the January 3, 2022 Order of the Commonwealth Court, No. 1322 CD 2021, reversing the November 30, 2021 Order of the Court of Common Pleas of Lehigh County, No. 2021-C-2805

**Lehigh County Department of Law**
Joshua S. Mazin, Esq.
Pa. I.D. No. 87680
17 South Seventh Street, Room 440
Allentown, Pa. 18101
*Attorney for Appellee Lehigh County Board of Elections*

DATED: January 12, 2022

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES …………………………………………………………..……………ii

COUNTER-STATEMENT OF FACTS …………………………………………………………… 1

REPONSE TO PETITION FOR ALLOWANCE OF APPEAL ……………...   ………...…….. 4

CONCLUSION…………………………………………………………………………………...20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Appeal of Gallagher*, 351 Pa. 451, 41 A.2d 630, 632 (1945) ..................................6

*Appeal of Zentner* [626 A.2d 146 (Pa. 1994)] .......................................................9,10

*Applewhite v. Commonwealth*, 2014 WL 184988 (Pa. Cmwlth., No. 330 M.D. 2013, filed January 17, 2014).......................................................................................17

*City Council of City of Bethlehem v. Marcincin*, [515 A.2d 1320, 1323 (Pa. 1986).............17

*Fla. State Conf. of NAACP v. Browning*, 522 F.3d 1153, 1173 (11th Cir. 2008)................ 14

*In re 1991 Pa. Legislative Reapportionment Comm'n*, [609 A.2d 132, 142 (Pa. 1992)........ 16

*In re Canvass of Absentee and Mail-in Ballots of November 3, 2020 General Election*, 241 A.3d 1058 (Pa. 2020)....................................................................................3,19

*In re Luzerne Cty. Return Bd.*, 290 A.2d 108, 109 (Pa. 1972)....................................5

*In re Nader*, [858 A.2d 1167, 1181 (Pa. 2004)].....................................................17

*Jubelirer v. Singel*, 638 A.2d 352 (Pa. Cmwlth. 1994).............................................17

*Martin v. Crittenden*, 347 F.Supp.3d 1302 (N.D. Ga. 2018).............................13,14,15,18

*Norwood Election Contest Case*, [116 A.2d 552, 553 (Pa. 1955)].................................. 17

*Pa. Democratic Party v. Boockvar* ("*PDP*"), 238 A.3d 345, 360-61 (Pa. 2020)................... 5

*Schwier v. Cox*, 340 F.3d 1284 (11th Cir. 2003)..........................................13,14,15,18

*Shambach v. Bickhart*, 845 A.2d 793, 798 (Pa. 2004)............................................5,6

*Washington Ass'n of Churches v. Reed*, 492 F.Supp.2d 1264 (W.D. Wash. 2006)..............13

**Statutes**

25 P.S. §§2601-3591.........................................................................................1

25 P.S. §3150.16(a)...........................................................................................5

42 U.S.C. § 1971(a)(2)(B)...................................................................................2

52 U.S.C. §10101(a)(2).....................................................................................12

52 U.S.C. § 10101(a)(2)(B)..............................................................................13,14

O.C.G.A. §21-2-381(b)(1)................................................................................15

## COUNTER-STATEMENT OF FACTS

The 2021 Municipal Election was held on November 2, 2021.  Among other contests in that Election, six candidates vied for three open seats on the Court of Common Pleas of Lehigh County.

The County's Office of Voter Registration and Elections received approximately 22,000 mail-in ballots for the 2021 Municipal Election.  Of those ballots, 261 were deemed invalid by the Chief Clerk to the Lehigh County Board of Elections ("Board") because they lacked a date or contained an improperly placed date on the elector's declaration on the outside envelope of the ballots.  The Chief Clerk determined the Pennsylvania Election Code ("Election Code"),[1] Pennsylvania court decisions, and guidance from the Pennsylvania Department of State required voters to include dates on the elector's declarations on the outside envelopes of the ballots, and that the failure to include the date rendered the ballot invalid.

On November 15, 2021, the Board held hearings on two unrelated matters involving the validity of 21 provisional ballots cast in the 2021 Municipal Election based on the failure of electors to affix two required signatures to their provisional ballots.  The first hearing concerned the Chief Clerk decision to count and canvass 18 provisional ballots.  That challenge was brought by Jarrett Coleman, Republican candidate for Parkland School Board.  The Board sustained that challenge and set aside the 18 provisional ballots at issue.  The second hearing, which concerned a challenge to the Chief Clerk's decision not to count and canvass three other provisional ballots also based on the lack of two required signatures, was made by Mr. Zachary Cohen, Democratic candidate for Judge of the Court of Common Pleas of Lehigh County.  In light of the Board's vote on the first challenge, which was to set aside the 18 ballots that lacked two required signatures, however, Mr. Cohen withdrew his challenge during the second Board hearing.

---

[1] Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. §§2601-3591.

Following these two hearings, Mr. Cohen challenged the Chief Clerk's decision to set aside 261 mail-in ballots that either lacked dates or contained improperly placed dates on the elector's declaration on the outside envelopes of the ballots.  The Chief Clerk testified before the Board regarding his reasons for setting aside these ballots.  Additionally, David Ritter, Republican candidate for the Office of Judge of the Court of Common Pleas of Lehigh County, opposed Mr. Cohen's challenge to the Chief Clerk's decision to set aside the ballots at issue.  At the conclusion of the hearing, the Board voted 3-0 to count the 261 mail-in ballots.

Two days later, on November 17, 2021, Mr. Ritter filed an appeal from the Board's decision to the Court of Common Pleas of Lehigh County ("trial court").  The parties submitted briefs in support of their respective positions, and the trial court held a hearing during which it heard testimony from the Chief Clerk and a voter who cast one of the mail-in ballots at issue.  During the hearing, the trial court raised, among other things, the issue of whether a decision not to count the 261 mail-in ballots would violate the "materiality provision" set forth in Section 1971(a)(2)(B) of the federal Voting Rights Act of 1870, 42 U.S.C. § 1971(a)(2)(B).  After the hearing, the Judge permitted the parties to submit supplemental briefs on this issue and a procedural issue raised by Mr. Ritter, which they did.

Thereafter, on November 30, 2021, the trial court issued an opinion and order that denied Mr. Ritter's appeal and affirmed the Board's decision to count the 261 mail-in ballots at issue.  Mr. Ritter appealed.

In an unreported, split panel decision, the Commonwealth Court reversed, determining 257 of the mail-in ballots at issue that did not contain a date on the elector's declaration on the outside envelopes of the ballots should not be counted.[2]  The dissent disagreed, reasoning the absence of a date should not invalidate the ballots under the Pennsylvania Election Code or this Court's

---

[2] The Commonwealth Court declined to determine the validity or invalidity of 4 mail-in ballots, which contained a date in an improper location, on the ground a decision to count (or not to count) those votes would not alter the results of the election.

reasoning in *In re Canvass of Absentee and Mail-in Ballots of November 3, 2020 General Election*, 241 A.3d 1058 (Pa. 2020).

## LEHIGH COUNTY BOARD OF ELECTIONS' RESPONSE TO PETITION FOR ALLOWANCE OF APPEAL

### A. INTRODUCTION

The primary issue before this Court is whether 261 mail-in ballots, which contain no date or an improperly placed date on the elector's declaration on the outside envelope should be counted. Both the Court of Common Pleas of Lehigh County and the Lehigh County Board of Elections determined these ballots should be counted. The Commonwealth Court of Pennsylvania reversed in an unreported split panel decision. Contrary to the Commonwealth Court's majority opinion, the Board asserts the ballots at issue should be counted for two primary reasons.

First, as recognized in the Opinion Announcing the Judgment of the Court in *In re Canvass*, the obligation to include a date on the elector's declaration on the outside envelope of a mail-in ballot does not implicate any "weighty interests" such as ensuring election integrity, preventing fraud, or protecting ballot confidentiality. Thus, the failure to include a date (or the improper placement of the date) should not result in the disenfranchisement of hundreds of otherwise qualified electors. This is particularly true where, as here: (1) there is no evidence of fraud; (2) there is no dispute the electors at issue were qualified to vote and otherwise expressed their intent to cast the mail-in ballots; and (3) there is no dispute the mail-in ballots were timely received.

In addition, a decision that the failure to include a date on the elector's declaration on the outside envelope results in the invalidation of an otherwise duly cast ballot would conflict with the federal Voting Rights Act, which prohibits any person acting under color of law from denying any individual the right to vote in any election based on an error or omission on any record or paper relating to any act requisite to voting, where such error or omission is not material to determining whether the individual is qualified to vote in such election under Pennsylvania law.

## B. ARGUMENT

The issue presented, which involves the proper interpretation of the Election Code, presents a question of law, and thus the Court's standard of review is *de novo*, and its scope of review is plenary.  *In re Canvass*.

In construing the Election Code, this Court remains "mindful of the 'longstanding and overriding policy in this Commonwealth to protect the elective franchise.'"  *Pa. Democratic Party v. Boockvar* ("*PDP*"), 238 A.3d 345, 360-61 (Pa. 2020) (quoting *Shambach v. Bickhart*, 845 A.2d 793, 798 (Pa. 2004)).  Further, "although election laws must be strictly construed to prevent fraud, they ordinarily will be construed liberally in favor of the right to vote."  *Id.*  Thus, the goal of a reviewing tribunal "must be to enfranchise and not to disenfranchise [the electorate]."  *Id.* (citing *In re Luzerne Cty. Return Bd.*, 290 A.2d 108, 109 (Pa. 1972)).

Section 1306-D(a) of the Election Code governs voting by mail-in ballot.  It states, in relevant part:

> **(a) General rule.--**At any time after receiving an official mail-in ballot, but on or before eight o'clock P.M. the day of the … election, the mail-in elector shall, in secret, proceed to mark the ballot … enclose and securely seal the [ballot] in the envelope on which is printed, stamped or endorsed 'Official Election Ballot.' This envelope shall then be placed in the second one, on which is printed the form of declaration of the elector, and the address of the elector's county board of election and the local election district of the elector. The elector shall then fill out, date and sign the declaration printed on such envelope. Such envelope shall then be securely sealed and the elector shall send same by mail, postage prepaid … or deliver it in person to said county board of election.

25 P.S. §3150.16(a).

One year ago, in *In re Canvass*, this Court considered whether the date on the elector's declaration on the outside envelope of a mail-in ballot is a mandatory requirement for purposes of Section 1306-D(a) of the Election Code.  A divided Court issued three opinions on this issue.

More particularly, in an Opinion Announcing the Judgment of the Court ("OAJC"), Justice Donahue, joined by Justice Todd and now-Chief Justice Baer, determined undated mail-in ballots should be canvassed because an undated signature on an elector declaration constituted a minor irregularity that did not warrant invalidation of the ballots.  In so doing, Justice Donahue stated:

> The date that the declaration is signed is irrelevant to a board of elections' comparison of the voter declaration to the applicable voter list, and a board can reasonably determine that a voter's declaration is sufficient even without the date of signature.  Every one of the … ballots challenged [in these matters], were received by the boards of elections by 8:00 p.m. on Election Day, so there is no danger that any of these ballots was untimely or fraudulently back-dated. Moreover, in all cases, the receipt date of the ballots is verifiable, as upon receipt of the ballot, the county board stamps the date of receipt on the ballot-return and records the date the ballot is received in the SURE system. The date stamp and the SURE system provide a clear and objective indicator of timeliness, making any handwritten date unnecessary and, indeed, superfluous.
>
> [In our prior decision,] [w]e did not address … whether a county board of elections could find a declaration as sufficient even though it was undated. That question requires an entirely different analysis that depends in significant part on whether dating was a mandatory, as opposed to a directive, requirement. We have conducted that analysis here and we hold that a signed but undated declaration is sufficient and does not implicate any weighty interest.  Hence, the lack of a handwritten date cannot result in vote disqualification. …
>
> [W]e conclude that while failure[] to include a … date in the voter declaration on the back of the outer envelope, while constituting [a] technical violation[] of the Election Code, do[es] not warrant the wholesale disenfranchisement of thousands of Pennsylvania voters. As we acknowledged in *Shambach*, 'ballots containing mere minor irregularities should only be stricken for compelling reasons.' *Shambach*, 845 A.2d at 799; *see also Appeal of Gallagher*, 351 Pa. 451, 41 A.2d 630, 632 (1945) ("[T]he power to throw out a ballot for minor irregularities ... must be exercised very sparingly and with the idea in mind that either an individual voter or a group of voters are not to be disfranchised at an election except for compelling

6

> reasons."). Having found no compelling reasons to do so, we decline
> to intercede in the counting of the votes at issue in these appeals.

*Id.* at 1078.  Thus, three of the Justices of this Court determined the lack of a date on the elector's

declaration on the outside envelope did not justify invalidation of mail-in ballots.

In contrast, Justice Dougherty, in a concurring and dissenting opinion joined by Justices

Saylor and Mundy disagreed concluding, "the statutory language expressly requires that the elector

provide [a date]."  *Id.* at 1090 (Pa. 2020) (Dougherty, J., concurring and dissenting).  Thus, three

of the Justices of this Court determined the lack of a date on the elector's declaration on the outside

envelope of a mail-in ballot rendered that ballot invalid.

Consequently, six Justices of this Court were equally split on the issue of whether an

elector's failure to date the elector's declaration on the outside envelope was fatal to the elector's

ballot.  However, Justice Wecht, authored a concurring and dissenting opinion in which he opined:

> I part ways with the conclusion reflected in the [OAJC] … that
> a voter's failure to comply with the statutory requirement that voters
> date the voter declaration should be overlooked as a 'minor
> irregularity.'  This requirement is stated in unambiguously
> mandatory terms, and nothing in the Election Code suggests that the
> legislature intended that courts should construe its mandatory
> language as directory.  Thus, in future elections, I would treat the
> date … requirement as mandatory in both particulars, with the
> omission of [the date] sufficient without more to invalidate the ballot
> in question.  However, under the circumstances in which the issue
> has arisen, I would apply my interpretation only prospectively.  So
> despite my reservations about the OAJC's analysis, I concur in its
> disposition of these consolidated cases. …
>
> The only practical and principled alternative is to read 'shall' as
> mandatory.  Only by doing so may we restore to the legislature the
> onus for making policy judgments about what requirements are
> necessary to ensure the security of our elections against fraud and
> avoid inconsistent application of the law, especially given the
> certainty of disparate views of what constitute 'minor irregularities'
> and countervailing 'weighty interests.'

I do not dispute that colorable arguments may be mounted to challenge the necessity of the date requirement, and the OAJC recites just such arguments. But colorable arguments also suggest its importance, as detailed in Judge Brobson's opinion [below] as well as Justice Dougherty's Concurring and Dissenting Opinion. And even to indulge these arguments requires the court to referee a tug of war in which unambiguous statutory language serves as the rope. That reasonable arguments may be mounted for and against a mandatory reading only illustrates precisely why we have no business doing so.

Ultimately, I agree with Judge Brobson's description of the greatest risk that arises from questioning the intended effect of mandatory language on a case-by-case basis:

> While we realize that our decision in this case means that some votes will not be counted, the decision is grounded in law. It ensures that the votes will not be counted because the votes are invalid as a matter of law. Such adherence to the law ensures equal elections throughout the Commonwealth, on terms set by the General Assembly. The danger to our democracy is not that electors who failed to follow the law in casting their ballots will have their ballots set aside due to their own error; rather, the real danger is leaving it to each county board of election to decide what laws must be followed (mandatory) and what laws are optional (directory), providing a patchwork of unwritten and arbitrary rules that will have some defective ballots counted and others discarded, depending on the county in which a voter resides. Such a patchwork system does not guarantee voters an 'equal' election, particularly where the election involves inter-county and statewide offices. We do not enfranchise voters by absolving them of their responsibility to execute their ballots in accordance with law.

We must prefer the sometimes-unsatisfying clarity of interpreting mandatory language as such over the burden of seeking The Good in its subtext. Substantive perfection is the ever-elusive concern of the legislature. Ours must be consistency of interpretive method without fear or favor, a goal that recedes each time a court takes liberties with statutory language in furtherance of salutary abstractions. Because the OAJC favors a more intrusive and ambitious inquiry, I respectfully dissent.

But just because I disagree with the OAJC's interpretation of the date … requirement does not inexorably lead me to the conclusion that the votes at issue in this case must be disqualified. While it is axiomatic that *ignorantia legis neminem excusat* (ignorance of the law excuses no one), this Court may elect to apply only prospectively a ruling that overturns pre-existing law or issues a ruling of first impression not foreshadowed by existing law.  Indeed, we have done so in at least one case under the Election Code.  In *Appeal of Zentner* [626 A.2d 146 (Pa. 1994)], we confronted a statute governing candidates' obligation to submit statements of financial interests by a time certain that had been revised specifically to correct our previously fluid interpretations of the predecessor statute.  We were forced to consider whether our newly strict construal of the revised statute should result in the invalidation of entire ballots already cast because they included one or more candidates who had failed to satisfy the statutory disclosures. We held, as the legislature clearly intended, that a candidate's 'failure to file the requisite financial interests statement within the prescribed time shall be fatal to a candidacy.'  But we also concluded that to 'void the results of an election where all candidates were submitted to the voters, with late but nonetheless filed financial statements which left adequate time for study by the electorate, would be an unnecessary disenfranchisement.'  Thus we determined that our holding should apply prospectively but not to the election at issue.

It goes without saying that 2020 has been an historically tumultuous year.  In October of 2019, the legislature enacted Act 77, introducing no-excuse mail-in voting with no inkling that a looming pandemic would motivate millions of people to avail themselves of the opportunity to cast their ballots from home in the very first year that the law applied.  Soon thereafter, Act 12, introduced and enacted with unprecedented alacrity in response to the pandemic, further amended the Election Code to address emergent concerns prompted by the looming public health crisis. While aspects of the new provisions that are relevant to this case were not wholly novel to the Code, as such—for example, the provisions that authorized no-excuse mail-in voting by and large just expanded the pool of voters to whom the rules that long had governed absentee balloting applied—the massive expansion of mail-in voting nonetheless presented tremendous challenges to everyone involved in the administration of elections, from local poll workers to the Secretary of the Commonwealth.  Importantly, it transformed the incentives of probing the mail-in balloting provisions for vulnerabilities in

furtherance of invalidating votes.  For the first time, a successful challenge arising from a given technical violation of statutory requirements might result in the invalidation of many thousands of no-excuse mail-in ballots rather than scores or hundreds of absentee ballots.

In advance of the 2020 election, neither this Court nor the Commonwealth Court had occasion to issue a precedential ruling directly implicating the … date … requirement.  Moreover, as the OAJC highlights in multiple connections, the Secretary issued confusing, even contradictory guidance on the subject.  Thus, local election officials and voters alike lacked clear information regarding the consequence of, *e.g.*, failing to handwrite one's address on an envelope that already contained preprinted text with that exact address or record the date beside the voter's declaration signature.

I have returned throughout this opinion to our decision in *PDP*, and I do so once more. I maintained in that case that the Election Code should be interpreted with unstinting fidelity to its terms, and that election officials should disqualify ballots that do not comply with unambiguous statutory requirements, when determining noncompliance requires no exercise of subjective judgment by election officials.  The date requirement here presents such a case. But I also emphasized that disqualification is appropriate '[s]o long as the Secretary and county boards of elections provide electors with adequate instructions for completing the declaration of the elector— including conspicuous warnings regarding the consequences for failing strictly to adhere' to those requirements.  I cannot say with any confidence that even diligent electors were adequately informed as to what was required to avoid the consequence of disqualification in this case. As in *Zentner*, it would be unfair to punish voters for the incidents of systemic growing pains.

In case after case involving the Election Code, especially this year, we have been reminded how important it is that the General Assembly provide unambiguous guidance for the administration of the election process. But it is imperative that we recognize when the legislature has done precisely that, and resolve not to question the legislature's chosen language when it has done so. And perhaps it is a silver lining that many of the problems that we have encountered this year, in which a substantially overhauled electoral system has been forced to make its maiden run in stormy seas, are now clear enough that the legislature and Department of State have notice of

what statutory refinements are most needful.  It is my sincere hope that the General Assembly sees fit to refine and clarify the Election Code scrupulously in the light of lived experience. In particular, because this is the second time this Court has been called upon to address the declaration requirement, it seems clear that the General Assembly might clarify and streamline the form and function of the declaration, perhaps prescribing its form to advance clarity and uniformity across the Commonwealth.

*Id.* at 1079-89 (Wecht, J., concurring and dissenting) (footnotes omitted).

Here, the obligation to include a date on the elector's declaration on the outside envelope of a mail-in ballot does not implicate any "weighty interests" such as ensuring election integrity, preventing fraud, or protecting ballot confidentiality.  Thus, *under the facts presented here*, the failure to include a date (or the improper placement of the date) on the elector's declaration on the outside envelope should not result in the disenfranchisement of hundreds of otherwise duly qualified electors where, as here: (1) there is no evidence of fraud; (2) there is no dispute the electors at issue were qualified to vote and otherwise expressed their intent to cast the mail-in ballots; and (3) there is no dispute the mail-in ballots were timely received.

Indeed, as Judge Wojcik observed, in his dissenting opinion below:

There is no dispute that the voters who cast the questioned 261 ballots were qualified, registered electors. Moreover, there is no allegation that any of the 261 voters in question had voted more than once. Importantly, there is no allegation that the subject 261 ballots were not received by the Board prior to the deadline for receipt on Municipal Election Day. In fact, it is beyond dispute that each challenged ballot was received by the Board by 8:00 p.m. on Municipal Election Day. The only sin that would lead these votes to be discarded is that the qualified, registered voters failed to either enter a date, or properly enter a date, on the declaration portion of the ballot's outer envelope. I would agree that an entirely blank declaration properly would be discarded, as there would be no confirmation that the ballot is genuinely that of the registered elector. This result would ameliorate purported voter fraud, which is not at issue here. …

11

> I would not blithely disenfranchise those 261 voters who merely neglected to properly enter a date on the declaration of an otherwise properly executed and timely-submitted ballot.

*Ritter v. Lehigh Cty. Bd. of Elections* (Pa. Cmwlth., No. 1922 C.D. 2021, filed January 3, 2022), Dissenting Slip Op. at 4-5. Further, this reasoning is particularly persuasive where the General Assembly has not acted to clarify and streamline the form and function of the declaration as suggested by Justice Wecht.

In addition, and of significant import here, in a footnote in his concurring and dissenting opinion in *In re Canvass*, Justice Wecht also stated (with emphasis added):

> The [Opinion Announcing the Judgment of the Court ('OAJC')] observes that the Democratic National Committee [('DNC')] 'argues, with some persuasive force, that the Campaign's requested interpretation of Pennsylvania's Election Code could lead to a violation of [the federal Voting Rights Act] by asking the state to deny the right to vote for immaterial reasons.' OAJC at 1074 n.5; *see* 52 U.S.C. §10101(a)(2) ('No person acting under color of law shall ... (B) deny the right of any individual to vote in any election *because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election* ....'). The OAJC does not pursue this argument, except to acknowledge a handful of cases that might be read to suggest that the name and address, and perhaps even the date requirement could qualify as 'not material in determining whether such individual is qualified under State law to vote.' Given the complexity of the question, I would not reach it without the benefit of thorough advocacy. But I certainly would expect the General Assembly to bear that binding provision in mind when it reviews our Election Code. It is inconsistent with protecting the right to vote to insert more impediments to its exercise than considerations of fraud, election security, and voter qualifications require.

*Id.* at 1089 n.54. In turn, the footnote in the OAJC referred to by Justice Wecht states:

> The DNC argues, with some persuasive force, that the [c]ampaign's requested interpretation of [the Election Code] could

lead to a violation of federal law by asking the state to deny the right to vote for immaterial reasons. Nobody acting under color of state law may deny anyone the right to vote 'in any election because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election.' 52 U.S.C. § 10101(a)(2)(B).

> Under this section, the so-called 'materiality provision' of the Voting Rights Act, federal courts have barred the enforcement of similar administrative requirements to disqualify electors. See, e.g., Schwier v. Cox, 340 F.3d 1284 (11th Cir. 2003) (disclosure of voter's social security number is not 'material' in determining whether a person is qualified to vote under Georgia law for purposes of the Voting Rights Act); Washington Ass'n of Churches v. Reed, 492 F.Supp.2d 1264 (W.D. Wash. 2006) (enjoining enforcement of 'matching' statute, requiring state to match potential voter's name to Social Security Administration or Department of Licensing database, because failure to match applicant's information was not material to determining qualification to vote); Martin v. Crittenden, 347 F.Supp.3d 1302 (N.D. Ga. 2018), reconsideration denied, 1:18-CV-4776-LMM, 2018 WL 9943564 (N.D. Ga. Nov. 15, 2018) (voter's ability to correctly recite his or her year of birth on absentee ballot envelope was not material to determining said voter's qualifications).

Id. at 1074 n.5 (emphasis added).

Applying the "materiality provision" of the federal Voting Rights Act and the cases cited by the OAJC here, supports a determination that invalidation of the 261 mail-in ballots at issue for failure to include dates or improper placement of dates on the elector's declarations on the outside envelopes of the ballots would be at odds with the federal Voting Rights Act.

By way of example, in Schwier, the Eleventh Circuit considered "'whether the disclosure of a potential voter's social security number [('SSN')] is 'material' in determining whether he or she is qualified to vote under Georgia law for purposes of section 1971 of the Voting Rights Act.'" Id. at 1286 (citation omitted). The Eleventh Circuit held "Georgia cannot mandate disclosure of

SSNs because such information is not 'material' to a voter registration system under § 1971(a)(2)(B) of the Voting Rights Act." *Id.*

Following *Schwier*, the federal trial court in *Martin* explained:

> Plaintiffs and Intervenors (hereinafter 'Plaintiffs') have met their burden in showing a substantial likelihood of success on the merits with respect to their claim that Gwinnett County's practice of rejecting absentee ballots based solely on an omitted or erroneous birth year violates … 52 U.S.C. § 10101(a)(2)(B). …

> Section 10101(a)(2)(B) of the [Voting] Rights Act forbids the practice of disqualifying voters 'because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election.' 52 U.S.C. § 10101(a)(2)(B). This particular addition to federal law was 'intended to address the practice of requiring unnecessary information for voter registration with the intent that such requirements would increase the number of errors or omissions on the application forms, thus providing an excuse to disqualify potential voters.' [*Schwier*, 340 F.3d at 1294 (11th Cir. 2003); *see also Fla. State Conf. of NAACP v. Browning*, 522 F.3d 1153, 1173 (11th Cir. 2008). In interpreting 52 U.S.C. § 10101(a)(2) (B), the Eleventh Circuit has explained that this provision asks 'whether, accepting the error as true and correct, the information contained in the error is material to determining the eligibility of the applicant.' *Browning*, 522 F.3d at 1175.

> Here, Plaintiffs have demonstrated that an elector's year of birth is not material to determining the eligibility of an absentee voter. To begin, 'the only qualifications for voting in Georgia are U.S. Citizenship, Georgia residency, being at least eighteen years of age, not having been adjudged incompetent, and not having been convicted of a felony.' *Schwie*r, 340 F.3d at 1297 (citing O.C.G.A. § 21-2-216 (1998)) (emphasis in original). Accordingly, a voter's ability to correctly recite his or her year of birth on the absentee ballot envelope is not material to determining said voter's qualifications under Georgia law. Indeed, Defendants acknowledged in a prior briefing that Georgia law only requires that a 'county election official can confirm the identity of the voter with the information that is provided.' Dkt. No. [36] at 3 (emphasis in

original).  And, with respect to the absentee ballots rejected solely on a year of birth error or omission in Gwinnett County, the qualifications of the absentee voters are not at issue because Gwinnett County elections officials have already confirmed such voters' eligibility through the absentee ballot application process. *See* Dkt No. [42-1] at 4; *see also* O.C.G.A. §21-2-381(b)(1)('Upon receipt of a timely application for an absentee ballot .... The registrar or absentee ballot clerk shall determine, in accordance with the provisions of this chapter, if the applicant is eligible to vote in the primary or election involved.') (emphasis added). …

In light of the foregoing, the Court finds that Plaintiffs have established a substantial likelihood of success on the merits on their claim that Gwinnett County violated the [Voting] Rights Act in rejecting absentee ballots solely on the basis of a missing or incorrect year of birth.

*Martin*, 347 F.Supp.3d 1302, 1308-09 (N.D. Ga. 2018).

As in *Schwier* and *Martin*, in the instant case, the Court should hold that, invalidating 261 mail-in ballots on the ground that the ballots failed to include dates on the elector's declarations on the outside envelope or contained improperly placed dates, would conflict with the federal Voting Rights Act as the date requirement is not material to determining whether electors are qualified to vote under Pennsylvania law.  More particularly, as recognized by the OAJC in *In re Canvass*, the date that the declaration is signed is irrelevant to a board of elections' comparison of the voter declaration to the applicable voter list, and the Board can reasonably determine that a voter's declaration is sufficient even without the date of signature.  There is no dispute that the ballots at issue here were received by the boards of elections by 8:00 p.m. on Election Day, so there is no danger that any of these ballots was untimely or fraudulently backdated. *Id.*  Moreover, the receipt date of the ballots is verifiable, as upon receipt of the ballot, the Board stamps the date of receipt on the ballot-return and records the date the ballot is received in the SURE system.  *Id.* The date stamp and the SURE system provide a clear and objective indicator of timeliness, making any handwritten date unnecessary and, indeed, superfluous.  *Id.*

To the extent Mr. Ritter argues that this issue is waived, that argument fails for two reasons. First and foremost, at the hearing before the trial court, the trial court discussed footnote 54 of Justice Wecht's concurring and dissenting opinion, *see* Tr. Ct. Hr'g, 11/22/21, Notes of Testimony, at 71-74, and the trial court permitted the parties to submit supplemental briefing on this issue. Mr. Ritter raised no objection to allowing supplemental briefing on this issue; in fact, he briefed the issue below. Nor did he raise an objection to consideration of this issue when the trial court raised it at the hearing. Additionally, this Court's decision in *In re Canvass,* and, specifically, Justice Wecht's concurring and dissenting opinion in that case were addressed extensively both before the Board and the trial court here. Therefore, this issue cannot be deemed waived.

In addition, as the trial court recognized in its opinion here, the right to vote is a fundamental one in Pennsylvania. Indeed, the Commonwealth Court, citing this Court's precedent, explains (with emphasis added):

> Pursuant to our state Constitution: '[e]ections shall be free and equal; and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage.' PA. CONST. art. I, § 5. Our Supreme Court has repeatedly held elections are free and equal under our Constitution:
>
> • when they are public and open to all qualified electors alike ... [;]
>
> • when every voter has the same right as any other voter;
>
> • *when each voter under the law has the right to cast his ballot and have it honestly counted*;
>
> • *when the regulation of the right to exercise the franchise does not deny the franchise itself*[;] ... and[,]
>
> • *when no constitutional right of the qualified elector is subverted or denied....*
>
> *In re 1991 Pa. Legislative Reapportionment Comm'n*, [609 A.2d 132, 142 (Pa. 1992)] (quoting *City Council of City of Bethlehem v.*

> *Marcincin*, [515 A.2d 1320, 1323 (Pa. 1986))] (emphasis added). This Court defined the 'right to vote guaranteed by the Pennsylvania Constitution [as] the right of suffrage to elect one's representatives.' *Jubelirer v. Singel*, 638 A.2d 352 (Pa. Cmwlth. 1994).

> *In Pennsylvania, the right of qualified electors to vote is a fundamental one.  In re Nader*, [858 A.2d 1167, 1181 (Pa. 2004)] ("where the fundamental right to vote is at issue, a strong state interest must be demonstrated.").  At our democratic core, 'the right of suffrage is the most treasured prerogative of citizenship' through which other rights flow, it 'may not be impaired or infringed upon in any way except through the fault of the voter himself.'" *Norwood Election Contest Case*, [116 A.2d 552, 553 (Pa. 1955)].

*Applewhite v. Commonwealth*, 2014 WL 184988 (Pa. Cmwlth., No. 330 M.D. 2013, filed January 17, 2014).[3]

Further, Article VII, Section 1 of the Pennsylvania Constitution, entitled "Qualifications of electors," provides:

> Every citizen twenty-one years of age [lowered to 18 years of age by the twenty-sixth amendment to the U.S. Constitution], possessing the following qualifications, shall be entitled to vote at all elections subject, however, to such laws requiring and regulating the registration of electors as the General Assembly may enact.

> 1. He or she shall have been a citizen of the United States at least one month.

> 2. He or she shall have resided in the State ninety (90) days immediately preceding the election.

> 3. He or she shall have resided in the election district where he or she shall offer to vote at least sixty (60) days immediately preceding the election, except that if qualified to vote in an election district prior to removal of residence, he or she may, if a resident of Pennsylvania, vote in the election district from which he or she

---

[3] The Commonwealth Court's unreported memorandum opinions may be cited for their persuasive value. 69 Pa. Code § 69.414.

removed his or her residence within sixty (60) days preceding the
election.

PA. CONST. art. VII, § 1.

Thus, to be a qualified elector in Pennsylvania, an individual must: (1) be 18 years of age;
(2) be a U.S. citizen; (3) reside in Pennsylvania for at least 90 days prior to the election; and (4)
reside in their election district for 60 days immediately prior to the election.  The date on an
elector's declaration on the outside envelope of a mail-in is not material to whether an individual
is qualified to vote in Pennsylvania.  *Schwier*; *Martin*.  Indeed, as this Court observed at the hearing
in this matter, inclusion of the date is no more material than inclusion of an elector's vaccination
status or credit score.  As such, enforcement of the date requirement in a manner that would
invalidate otherwise timely received and properly completed ballots would conflict with the
materiality provision of the federal Voting Rights Act in that it would add a non-material
impediment to the electors' fundamental right to vote, which would result in disenfranchisement
of qualified electors.

This is particularly true where, as here: (1) there is no evidence of fraud; (2) there is no
dispute the voters at issue expressed their intent to cast the mail-in ballots; and (3) there is no
dispute the mail-in ballots at issue were both timely completed and timely received by the Lehigh
County Office of Voter Registration and Elections.  Thus, although the failure to include a date in
the elector declaration on the outside envelope constitutes a technical violation of the Election
Code, it is insufficient to warrant disenfranchisement of hundreds of Lehigh County voters.
Indeed, the fact that a date was omitted or incorrectly placed on an elector's declaration on the
outside envelope does not constitute a compelling reason to invalidate the ballots.

Further support for these determinations is found by reference to the June 1, 2021 guidance
from the Department of State, which was issued through its Deputy Secretary of Elections and
Commissions, and which states (with emphasis added):

Since the Municipal Primary on May 18, [2021] the department has seen several news articles suggesting that some counties are continuing to accept and count ballots that do not contain … a date on the voter's declaration.

As you know, the department updated the content and the instructions on the declaration envelope to ensure that voters know they must sign and date the envelope for their ballot to be counted. Furthermore, our updated guidance is consistent with the Supreme Court's ruling last September in *In Re: Canvass of Absentee and Mail-in Ballots of November 3, 2020 General Election*, wherein the Court held that in future elections a voter's declaration envelope must be … dated for the ballot to count. Though we share your desire to prevent the disenfranchisement of any voter, particularly when it occurs because of a voter's inadvertent error, we must strongly urge all counties to abide by the Court's interpretation of this statutory requirement.

*We also believe that it is prudent to again remind you of our previous clarification of 10/25/2020. As noted in that communication, there is no basis to reject a ballot for putting the 'wrong' date on the envelope, nor is the date written used to determine the eligibility of the voter. You should process these ballots normally.*

This guidance from the Department of State appears to contain an inconsistency: on one hand, the guidance states where a mail-in ballot does not include a date with the elector declaration that ballot should not count, while on the other hand, the guidance then goes on to state that where the elector declaration contains the wrong date the ballot should count.  Application of this uneven guidance leads to an absurd result, namely, that, while undated ballots do not count, ballots with inaccurate dates count.  Further, application of this guidance shows why the date requirement is immaterial.  To that end, because an elector can include an incorrect date and have her ballot counted, it becomes clear that the date requirement is simply not material to determining an elector's eligibility to vote and therefore the failure to include a date should be not be used as a basis upon which to invalidate the vote.

**CONCLUSION**

      For the foregoing reasons, and contrary to the decision of the Commonwealth Court, the Board asserts the 261 mail-in ballots at issue should be counted.


                                      Respectfully Submitted,

                                      Lehigh County Department of Law


Date: <u>January 12, 2022</u>                        By: <u>*Joshua S. Mazin*</u>

                                      Joshua S. Mazin, Esq.
                                      Assistant County Solicitor
                                      Pa. ID. No. 87680
                                      17 South Seventh Street, Room 440
                                      Allentown, Pa. 18101
                                      *Attorney for Appellee Lehigh County Board of Elections*

20

## IN THE SUPREME COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| **David Ritter** | : | |
| | : | |
| | : | |
| | : | |
| **v.** | : | **No. 9 MAL 2022** |
| | : | |
| **Lehigh County Board of Elections** | : | |
| | : | |
| | : | |
| | : | |

## CERTIFICATE OF SERVICE

I, Joshua S. Mazin, Esq. hereby certify a true and correct copy of the foregoing Brief of Intervenor was served on the following parties electronically by email and through the PACFile System:

Joshua J. Voss
Kleinbard LLC
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
jvoss@kleinbard.com

Adam C. Bonin
The Law Office of Adam C. Bonin
121 S. Broad Street, Suite 400
Philadelphia, PA  19107
adam@boninlaw.com

DATE:   <u>January 12, 2022</u>          By:   *Joshua S. Mazin*
                                              Joshua S. Mazin, Esq.
                                              Pa. I.D. No. 87680
                                              17 South Seventh Street,
                                              Room 440
                                              Allentown, Pa. 18101
                                              *Attorney for Appellee Lehigh*
                                              *County Board of Elections*

# IN THE SUPREME COURT OF PENNSYLVANIA

| David Ritter | : | |
| | : | |
| | : | |
| | : | |
| v. | : | No. 9 MAL 2022 |
| | : | |
| Lehigh County Board of Elections | : | |
| | : | |
| | : | |
| | : | |

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the Case Records Public Access Policy of the Unified Judicial System of Pennsylvania that require filing confidential information and documents differently than non-confidential information and documents.

By: *Joshua S. Mazin*

Joshua S. Mazin, Esq.
Pa. I.D. No. 87680
17 South Seventh Street,
Room 440
Allentown, Pa. 18101
*Attorney for Appellee Lehigh County Board of Elections*