**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LINDA MIGLIORI, FRANCIS J. FOX, RICHARD E. RICHARDS, KENNETH RINGER, and SERGIO RIVAS, | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 5:22-cv-00397-JFL |
| and | ) ) | |
| ZACHARY COHEN, | ) ) | |
| Intervenor-Plaintiff, | ) ) | |
| v. | ) ) | |
| LEHIGH COUNTY BOARD OF ELECTIONS, | ) ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| DAVID RITTER, | ) ) | |
| Intervenor-Defendant. | ) ) | |

**PLAINTIFFS' MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

Stephen A. Loney, Jr.  (No. 202535)
Marian K. Schneider (No. 50337)
ACLU OF PENNSYLVANIA
P.O. Box 60173
Philadelphia, PA 19102
P: 215-592-1513
sloney@aclupa.org
mschneider@aclupa.org

Witold Walczak (No. 62976)
Richard Ting (No. 200438)
Connor Hayes (No. 330447)
ACLU OF PENNSYLVANIA
P.O. Box 23058
Pittsburgh, PA 15222
P: 412-681-7864
vwalczak@aclupa.org
rting@aclupa.org
chayes@aclupa.org

*Counsel for Plaintiffs*

**TABLE OF CONTENTS**

I.   INTRODUCTION ............................................................................................... 1

II.  STATEMENT OF FACTS ................................................................................. 1

III. STATEMENT OF QUESTIONS INVOLVED .................................................. 3

IV.  SUMMARY OF ARGUMENT .......................................................................... 4

V.   ARGUMENT ...................................................................................................... 6

   A.  Ritter Cannot Prevail on the Affirmative Defense of Laches. ....................... 6

     1.  Ritter, as an intervenor, may not assert the personal defense of laches. ...................... 6

     2.  Ritter's laches arguments fail on the merits. ................................ 8

   B.  Res Judicata Is Inapplicable. ...................................................................... 11

   C.  The CRA's Materiality Provision Prohibits Rejection of Timely Ballots
     Submitted in Signed but Undated Return Envelopes. ................................... 15

     1.  The Pennsylvania Agencies Responsible for Administering Elections
       Have Conceded Immateriality. .......................................... 16

     2.  Defendants Cannot Explain Why the Date on the Outer Envelope Is
       Material. ........................................................................ 18

     3.  Defendants Can Point to No Authority to Support a Finding of
       Materiality. ................................................................... 22

     4.  Defendants' Arguments to Evade Application of the Materiality
       Provision Are Without Merit. ........................................... 25

     a)  Voters have standing to protect their fundamental right to vote against
       disenfranchisement due to minor technicalities. .................... 25

     b)  The Materiality Provision does not require proof of racial or other
       discrimination. ............................................................. 30

     c)  The Materiality Provision is not limited to errors and omissions in
       voter registration paperwork. ........................................... 33

   D.  Ritter and the Board Identify No Precise Government Interest Served by
     the Date Requirement ................................................................. 35

VI.  CONCLUSION .............................................................................................. 39

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*A.C. Aukerman Co. v. R.L. Chaides Construction Co.*,
  960 F.2d 1020 (Fed. Cir. 1992) ........................................................................ 7

*Alexander v. Sandoval,* 532 U.S. 275 (2001) ................................................. 26, 28-29

*Allen v. State Bd. of Elections,* 393 U.S. 544 (1969) ...................................... 26, 28-29

*Anderson v. Celebrezze*, 460 U.S. 780 (1983) ....................................................... 35-36

*Ballas v. Symm*, 351 F. Supp. 876 (S.D. Tex. 1972) ................................................ 30

*Bearoff v. Bearoff Bros., Inc.*, 327 A.2d 72 (Pa. 1974) .......................................... 11

*Bell v. Southwell*, 376 F.2d 659 (5th Cir. 1967) ..................................................... 27

*Blessing v. Freestone,* 520 U.S. 329 (1997) .......................................................... 25

*Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321 (2021) ............................. 21, 22

*Burdick v. Takushi*, 504 U.S. 428 (1992) ................................................. 6, 35, 36, 39

*Cannon v. University of Chicago*, 441 U.S. 677 (1979) ........................................ 25, 28

*Cartagena v. Crew*,
  No. 96 Civ. 3399, 1996 WL 524394 (E.D.N.Y. Sept. 5, 1996) ........................... 29

*CBS Inc. v. PrimeTime 24 Joint Venture*,
  245 F.3d 1217 (11th Cir.2001) .......................................................................... 31

*City of Philadelphia v. Sessions*,
  280 F. Supp. 3d 579 (E.D. Pa. 2017) ................................................................. 31

*Coalition for Educ. in Dist. One v. Bd. of Elections*,
  495 F.2d 1090 (2d Cir. 1974) ............................................................................ 27

*Collins v. E.I. DuPont de Nemours & Co*.,
  34 F.3d 172 (3d Cir. 1994) ................................................................................ 12

*Common Cause v. Thomsen*,
  No. 19-CV-323, 2021 WL 5833971 (W.D. Wis. Dec. 9, 2021) .............. 22, 23, 32, 34

*Common Cause/Ga. v. Billups*,
  406 F. Supp. 2d 1326 (N.D. Ga. 2005) ............................................................... 27

*Condon v. Reno*, 913 F. Supp. 946 (D.S.C. 1995) .................................................. 31

*Crookston v. Johnson*, 841 F.3d 396 (6th Cir. 2016) ............................................ 10

*Cruz v. Bd. of Elections of New York*,
  396 F. Supp. 2d 354 (S.D.N.Y. 2005) ................................................................. 14

*Davis v. Comwlth. Election Comm'n*,
  Case No. 1-14-CV-00002, 2014 WL 2111065 (D. N. Mar. I. May 20, 2014)......................... 27

*Delegates to the Republican Nat'l Convention v. Republican Nat'l Comm.*,
  Case No. SACV 12-00927, 2012 WL 3239903 (C.D. Cal. Aug. 7, 2012) ............................. 27

*Diaz v. Cobb*, 435 F. Supp. 2d 1206 (S.D. Fla. 2006) ...................................................... 22, 23, 32

*Donald J. Trump for President, Inc. v. Sec'y of Pa.*,
  830 F. App'x 377 (3d Cir. 2020)................................................................................... 21

*EEOC v. World's Finest Chocolate Inc.*,
  701 F. Supp. 637 (N.D. Ill. 1988) ................................................................................ 38

*Fishman v. Schaffer*, 429 U.S. 1325 (1976)................................................................... 2)10

*Florida State Conference of the NAACP v. Browning*,
  522 F.3d 1153 (11th Cir. 2008)........................................................................... 20, 31, 32

*Ford v. Tenn. Senate*,
  No. 06-2031-DV, 2006 WL 8435145 (W.D. Tenn. Feb. 1, 2006)......................... 24, 33, 34, 35

*Friedman v. Snipes*, 345 F. Supp. 2d 1356 (S.D. Fla. 2004) ............................................ 35

*Gilmore v. Amityville Union Free Sch. Dist.*,
  305 F. Supp. 2d 271 (E.D.N.Y. 2004)............................................................................29

*Gonzaga Univ. v. Doe,* 536 U.S. 273 (2002) ...................................................................25

*Good v. Roy*, 459 F. Supp. 403 (D. Kan. 1978) ............................................................... 29

*Gov't Employees Retirement Sys. of Virgin Islands v. Gov't of Virgin Islands*,
  995 F.3d 66 (3d Cir. 2021)........................................................................................8, 10-11

*Hoblock v. Albany Cty. Bd. of Elections*,
  422 F.3d 77 (2d Cir. 2005) ......................................................................................... 14

*Howlette v. City of Richmond*, 485 F. Supp. 17 (E.D. Va. 1978) ................................... 23

*Hoyle v. Priest*, 265 F.3d 699 (8th Cir. 2001)................................................................ 23

*In re 2,349 Ballots in 2020 Gen. Election*,
  241 A.3d 694 (Pa. Cmwlth. 2020) ............................................................................... 37

*In re Canvass of Absentee and Mail-In Ballots of Nov. 3, 2020 General Election*,
  241 A.3d 1058 (Pa. 2020) .................................................................................. *passim*

*In re Kane*, 628 F.3d 631 (3d Cir. 2010) ....................................................................... 17

*Indiana Democratic Party v. Rokita*,
  458 F. Supp. 2d 775 (S.D. Ind. 2006) ............................................................... 30, 32, 35

*Kelly v. Commonwealth*, 240 A.3d 1255 (Table) (Pa. 2020)........................................... 10

*King v. Whitmer*, 505 F. Supp. 3d 720 (E.D. Mich. 2020) ........................................... 10

*Krystal Cadillac–Oldsmobile GMC Truck, Inc. v. General Motors Corp.*,
337 F.3d 314 (3d Cir.2003) .................................................................................. 17

*Lake Tahoe Watercraft Recreation Ass'n v. Tahoe Reg'l Planning Agency*,
24 F. Supp. 2d 1062 (E.D. Cal. 1998) ..................................................................... 7

*Lawrence v. Bd. of Election Comm'rs of City of Chicago*,
524 F. Supp. 2d 1011 (N.D. Ill. 2007) ................................................................... 14

*League of Women Voters of Ark. v. Thurston*,
No. 5:20-CV-05174, 2021 WL 5312640 (W.D. Ark. Nov. 15, 2021) ......................... 24, 32, 34

*Malinou v. Bd. of Elections*, 271 A.2d 798 (R.I. 1970) .............................................. 30

*Martin v. Crittenden*, 347 F. Supp. 3d 1302 (N.D. Ga. 2018) ......................... 23, 32, 34

*Martin v. Wilks*, 490 U.S. 755 (1989) ....................................................................... 7

*McDonald v. Bd. of Election Comm'rs of Chicago*,
394 U.S. 802 (1969) .............................................................................................. 16

*McKay v. Altobello*,
No. CIV. A. 96-3458, 1996 WL 635987 (E.D. La. Oct. 31, 1996) ............................ 29

*McKay v. Thompson*, 226 F.3d 752 (6th Cir. 2000) .................................................. 29

*Morse v. Republican Party of Va.*, 517 U.S. 186 (1996) ................................... 26, 28-29

*Nader v. Keith*, 385 F.3d 729 (7th Cir. 2004) .......................................................... 10

*Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*,
571 F.3d 299 (3d Cir. 2009) ............................................................................. 12, 13

*Northeast Ohio Coalition for the Homeless v. Husted* ("*NEOCH*"),
837 F.3d 612 (6th Cir. 2016) ................................................................................. 29

*Pa. Democratic Party v. Republican Party of Pa.*,
16-cv-5664, 2016 WL 6582659 (E.D. Pa. Nov. 7, 2016) ........................................... 10

*Peters v. Lincoln Electric Co.*, 285 F.3d 456 (6th Cir. 2002) ..................................... 38

*Reddix v. Lucky*, 252 F.2d 930 (5th Cir. 1958) ......................................................... 27

*Richards v. Jefferson Cty., Ala.*, 517 U.S. 793 (1996) ............................................. 12

*Russello v. U.S.*, 464 U.S. 16 (1983) ....................................................................... 31

*Salem Engineering Co. v. Nat'l Supply Co.*, 75 F. Supp. 993 (W.D. Pa. 1948) ............ 7

*SCA Hygiene Products Aktiebolag v. First Quality Baby Prods., LLC*,
137 S. Ct. 954 (2017) ............................................................................................ 7

*Schwier v. Cox*, 340 F.3d 1284 (11th Cir. 2003) ....................................... 26, 27, 28, 29

*Schwier v. Cox*, 439 F.3d 1285 (11th Cir. 2006) ............................................... 23, 32

*Sixth Dist. of Afr. Methodist Episcopal Church v. Kemp*,
   No. 1:21-CV-01284-JPB, 2021 WL 6495360 (N.D. Ga. Dec. 9, 2021) ................................. 23

*Society Hill Civic Ass'n v. Harris*, 632 F.2d 1045 (3d Cir. 1980) ................................................ 7

*South Central Bell Telephone Co. v. Alabama*,
   526 U.S. 160 (1999) ......................................................................................................... 13

*Sw. Pa. Growth Alliance v. Browner*,
   121 F.3d 106 (3d Cir. 1997) .............................................................................................. 6

*Stein v. Cortés*, 223 F. Supp. 3d 423 (E.D. Pa. 2016) ..................................................... 9

*Sweetheart Plastics, Inc. v. Detroit Forming, Inc.*,
   743 F.2d 1039 (4th Cir. 1984) ........................................................................................... 7

*Synovus Fin. Corp. v. Bd. of Governors*,
   952 F.2d 426 (D.C. Cir. 1991) .......................................................................................... 6

*Taylor v. Howe*, 225 F.3d 993 (8th Cir. 2000) ................................................................ 27

*Taylor v. Sturgell*, 553 U.S. 880 (2008) ................................................................. 12, 13

*Tex. Democratic Party v. Hughs*,
   474 F. Supp. 3d 849 (W.D. Tex 2020),
   *rev'd*, 860 F. App'x 874 (5th Cir. 2021) ........................................................................ 26

*Towns v. Cowen*, 786 F. Supp. 699 (N.D. Ill. 1992) ...................................................... 14

*Turner v. Crawford Square Apartments III, L.P.*,
   449 F.3d 542 (3d Cir. 2006) ............................................................................................ 11

*United States v. Alabama*, 778 F.3d 926 (11th Cir. 2015) ............................................ 31

*United States v. Alaska*, 521 U.S. 1 (1997) ................................................................... 33

*United States v. Metro. St. Louis Sewer Dist. (MSD)*,
   952 F.2d 1040 (8th Cir. 1992) ........................................................................................... 7

*Vinson v. Washington Gas Light Co.*, 321 U.S. 489 (1944) ............................................ 6

*Wash. Ass'n of Churches v. Reed*,
   492 F. Supp. 2d 1264 (W.D. Wash. 2006) ................................................................ 24, 33

*Willing v. Lake Orion Community Sch. Bd. of Trustees*,
   924 F. Supp. 815 (E.D. Mich. 1996) ............................................................................... 29

*Wright v. Roanoke Redevelopment and Housing Authority*,
   479 U.S. 418, 423 (1987) ................................................................................................ 25

**Statutes**

25 Pa.C.S.A. § 1327 ........................................................................................................ 16

25 P.S. § 1301 ......................................................................................................... 21

25 P.S. § 1328 ......................................................................................................... 21

25 P.S. § 2811 ......................................................................................................... 21

25 P.S. § 3146.2b ..................................................................................................... 21

25 P.S. § 3146.4 ....................................................................................................... 17

25 P.S. § 3146.6 ................................................................................................. 20, 33

25 P.S. § 3150.12b ................................................................................................... 21

25 P.S. § 3150.14 ..................................................................................................... 17

25 P.S. § 3150.16 ..................................................................................................... 20

25 P.S. § 3263 ......................................................................................................... 10

25 P.S. § 3313 ......................................................................................................... 10

25 P.S. § 3456 ......................................................................................................... 10

25 P.S. § 3553 ..................................................................................................... 37, 38

25 P.S. § 3555 ......................................................................................................... 16

25 Pa.C.S.A. § 1327 ................................................................................................. 16

25 Pa.C.S.A. § 1801 ................................................................................................. 16

28 U.S.C. 1746 ......................................................................................................... 37

42 U.S.C. § 1971 ................................................................................................ *passim*

42 U.S.C. § 1983 ..................................................................................................... 27

52 U.S.C. § 10101 .............................................................................................. *passim*

42 U.S.C. § 2000d–128 ............................................................................................. 28

**Rules**

Fed. R. Civ. P. 8 ......................................................................................................... 6

**Constitutional Provisions**

Pa. Const. Art. VII, § 1 ............................................................................................. 18

## I.      <u>INTRODUCTION</u>

Plaintiffs' mail-in ballots must be counted because omission of a handwritten date on the signed envelopes used to return those ballots is immaterial to the voters' qualifications to vote, and discarding their ballots would violate their fundamental constitutional rights.  Defendant Lehigh County Board of Elections ("the Board") and Defendant-Intervenor David Ritter (together, "Defendants") would prefer not to address Plaintiffs' rights under the Civil Rights Act ("CRA") and U.S. Constitution.  But none of the various procedural arguments and technicalities raised in Defendants' motions can justify ignoring Plaintiffs' rights and disenfranchising several hundred Lehigh County voters.  The Court should deny Defendants' motions for summary judgment and grant Plaintiffs' cross-motion (ECF No. 33).

## II.      <u>STATEMENT OF FACTS</u>

The material facts are straightforward and undisputed.[1]  Each Plaintiff, and 252 other Lehigh County residents, are eligible, registered voters in Lehigh County.  *See* Joint Stipulations of Facts (ECF No. 27) ¶¶ 25, 55, 64, 71, 79, 88.  Most of the 257 voters are senior citizens who applied for and received an absentee or mail-in ballot from the Board, marked their ballot, signed the declaration on the outer envelope, and timely submitted the package to Lehigh County.  *Id.* ¶¶ 23-26. These voters comprise more than 1 out of every 100 voters who cast an absentee or mail-in ballot for the 2021 municipal election in Lehigh County.  *See id.* ¶ 21 (approximately 22,000 ballots were cast by absentee or mail-in ballot).

The voters fulfilled all material requirements to return a ballot.  Their one omission was that they did not handwrite a date on the signed outer envelope containing their ballot.  *Id.*  Each

---

[1]     Plaintiffs incorporate by reference the factual background provided in their previous Memorandum of Law in support of their motion for summary judgment, ECF No. 33-1, and the parties' Joint Stipulation of Facts, ECF. No. 27.

Plaintiff believed that their timely-submitted ballots would be counted, and none of them knew their votes were in jeopardy of being discarded until *after* the November 2021 Election Day.  *Id*. ¶¶ 61, 69, 74, 77, 86, 93.[2]

Defendant Lehigh County Board of Elections convened a hearing on November 15, 2021 to discuss the disputed ballots.  *Id*. ¶¶ 30.  The Board voted 3-0 to count the 257 voters' disputed ballots, after hearing testimony from the Board's Chief Clerk that envelopes with clearly erroneous dates would be counted.  *Id*. ¶ 34; *see also* ECF No. 27-6, at 61:5 – 62:18.

Intervenor-Defendant Ritter subsequently challenged the Board's decision in state court. *Id*. ¶ 35.  After the Court of Common Pleas affirmed the Board's vote, the Commonwealth Court reversed on state statutory grounds.  *See* ECF No. 27-9.  Neither Plaintiffs, Intervenor-Plaintiff Cohen (Ritter's opponent for judge), nor any of the remaining 257 voters were a party to the state court proceedings.  The state court litigation also did not substantively address the federal statutory or constitutional issues raised in this case.[3]

Immediately after the Supreme Court denied review of the Commonwealth Court's ruling, ECF No. 27-10, the Board prepared not to count the 257 ballots lacking a date.  *See* ECF No. 27, ¶ 48; ECF No. 27-11.  Plaintiffs filed the present action *four days* after the Supreme Court's denial to preserve their fundamental right to vote and have their ballots counted.  *See id*.

---

[2]    One Plaintiff received a cryptic email three days before Election Day notifying her that "Your Ballot Has Been Received." ECF No. 27-13. It further stated, "Your ballot status has been updated to cancelled [*sic.*] because it cannot be counted due to voting at the polling place."  *Id*.

[3] The Commonwealth Court's *unpublished* decision largely analyzed the Pennsylvania Supreme Court's fractured decision in *In re Canvass of Absentee and Mail-In Ballots of Nov. 3, 2020 General Election*, 241 A.3d 1058 (Pa. 2020) ["*In re 2020 Canvass*"].  *In re 2020 Canvass* allowed ballots with undated return envelopes to be counted for the 2020 general election, but did not garner a majority.  Notably, however, a majority of justices (four) observed that voiding undated ballots may conflict with the CRA's "materiality provision," 52 U.S.C. § 10101(a)(2)(B), but did not fully examine that conflict or rule on it.  241 A.3d at 1074 n.5 (opinion announcing judgment); *id.* at 1089 n.54 (Wecht, J., concurring and dissenting).

¶ 53.  The Board stipulated to postponement of final election results until this case is resolved. *See id.* ¶ 52.

The two candidates in the one outstanding contest, Cohen and Ritter, moved to intervene, stating that Plaintiffs and the Board "have no direct stake as to which candidate wins the judicial seat," and therefore could not "adequately represent" their interests.  Ritter Br. in Support of Mot. to Intervene (ECF No. 14-3) at 6; Cohen Br. in Support of Mot. to Intervene (ECF No. 28-1) at 5.  Additionally, the Commonwealth of Pennsylvania filed an *amicus* brief confirming that the "[t]he date written on an absentee or mail-in ballot's return envelope is immaterial to determining the voter's eligibility under Pennsylvania law," and that "federal law requires that the 257 ballots be counted.:  ECF No. 40, at 6.

III.   **STATEMENT OF QUESTIONS INVOLVED**

1.   Whether Plaintiffs' claims are barred by the doctrine of laches?

SUGGESTED ANSWER: No.

2.   Whether Plaintiffs' claims are barred by the doctrine of res judicata?

SUGGESTED ANSWER: No.

3.   Whether cancellation of a voter's mail-in ballot for omitting a handwritten date on the outer envelope violates the CRA's prohibition on denying the right to vote based on an error or omission that is "not material in determining whether such individual is qualified under State law to vote in such election," 52 U.S.C. § 10101(a)(2)(B)?

SUGGESTED ANSWER: Yes.

4.   Whether the CRA Materiality Provision may be enforced by private parties?

SUGGESTED ANSWER: Yes.

5.   Whether the Materiality Provision imposes a racial animus element?

SUGGESTED ANSWER: No.

6.      Whether the Materiality Provision is limited to errors or omissions in paperwork related to voter registration?

SUGGESTED ANSWER: No.

7.      Whether cancellation of a mail-in ballot for an individual's omission of handwritten date violates the First and Fourteenth Amendments to the U.S. Constitution by imposing a burden on voters that serves no government interest?

SUGGESTED ANSWER: Yes.

## IV.   **<u>SUMMARY OF ARGUMENT</u>**

The Court should deny Defendants' motions for summary judgment, and grant Plaintiffs' cross-motion (ECF No. 33), because disenfranchising these voters based solely on missing dates on their mail-in ballot return envelopes would violate the CRA and Plaintiffs' fundamental right to vote under the First and Fourteenth Amendments.  Unable to defend the merits of a decision to disenfranchise several hundred Pennsylvanians based on such an immaterial technicality, Defendants' motions trot out even more technicalities.  They make flawed laches and res judicata arguments and ask the Court to read into the CRA limitations on the Materiality Provision that are unsupported by the text of 52 U.S.C. § 10101(a)(2)(B).  Each of the Defendants' arguments fails.

First, the affirmative defense of laches is unavailable to Ritter because he enters this case as an intervenor and cannot assert personal affirmative defenses not raised by the principal defendant.  Moreover, the laches defense would fail as a matter of law because Plaintiffs' filing of this suit within two business days of learning of their impending disenfranchisement does not

4

constitute "inexcusable delay," and Ritter cannot identify any prejudice based on the timing of Plaintiffs' action.

Second, res judicata cannot apply to bar Plaintiffs' claims because they were not parties to the previous suit—*Ritter v. Lehigh Cnty. Bd. of Elections,* No. 1322 C.D. 2021 (Pa. Commw. Ct.)—and none of them is alleged to have any special relationship with the parties to that case. Indeed, Intervenors Ritter and Cohen have been permitted to join this case based on the premise that the Intervenors and Plaintiffs here do not adequately represent each other's interests.

Third, applying the plain language of the Materiality Provision, discarding Plaintiffs' ballots based on the missing dates violates the CRA because that minor omission has no conceivable bearing on these individuals' qualifications to vote under Pennsylvania law. Defendants stipulate that all of the disputed ballots were submitted by eligible voters who signed the outer return envelopes and timely submitted their ballots before Election Day.  ECF No. 27 ¶¶ 23-26.  And the very Pennsylvania agencies charged with administering elections and establishing procedures for determining voting qualifications have conceded the Plaintiffs' omission was immaterial under these circumstances.  Meanwhile, Defendants cannot identify how any interest relevant to determining voter qualifications is served by requiring mail-in voters to hand-write the date when signing the outer envelope used to return their ballots.

Fourth, Plaintiffs have the right to vindicate their rights under the CRA Materiality Provision in federal court.  The CRA and its predecessors have always permitted private citizens to protect their right to vote.  Defendants' arguments to the contrary would upend, based on incomplete and inaccurate readings of outlier cases, more than 150 years of jurisprudence recognizing the right of voters to enforce the CRA.

Fifth, there is no basis in the Materiality Provision or the CRA more broadly to support Defendants' arguments that §10101(a)(2)(B) is limited to situations involving racial discrimination in the voter registration process. Defendants' position ignores both the plain language of the statute and the federal cases demonstrating that courts routinely apply the Materiality Provision to voting requirements impacting ballots (not just registration paperwork) in cases that do not involve allegations of racial discrimination.

Finally, Defendants' inability to explain how the date requirement advances any legitimate state interest is fatal to their constitutional arguments. To justify deprivation of Plaintiffs' right to vote, Defendants must at a minimum explain "the extent to which [their asserted] interests make it necessary to burden the plaintiff's rights," *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (citation omitted). Because they cannot do that, Plaintiffs prevail on their claim under the First and Fourteenth Amendments.

## V.   ARGUMENT

### A. Ritter Cannot Prevail on the Affirmative Defense of Laches.

#### 1. *Ritter, as an intervenor, may not assert the personal defense of laches.*

At the outset, Ritter cannot raise the affirmative defense of laches because Plaintiffs asserted no claims against Ritter and the Board did not raise it. *See* Board Ans. (ECF No. 31) at 10; *see also* Fed. R. Civ. P. 8(c) (identifying laches as an affirmative defense that must be included in a responsive pleading). "It is a general rule that an intervenor may argue only the issues raised by the principal parties and may not enlarge those issues." *Sw. Pa. Growth Alliance v. Browner*, 121 F.3d 106, 121 (3d Cir. 1997) (citing *Vinson v. Washington Gas Light Co.*, 321 U.S. 489, 498 (1944); *Synovus Fin. Corp. v. Bd. of Governors*, 952 F.2d 426, 433 (D.C. Cir. 1991)). An intervenor, therefore, may not raise affirmative defenses not asserted by the principal

defendant.  *See United States v. Metro. St. Louis Sewer Dist. (MSD)*, 952 F.2d 1040, 1043 (8th

Cir. 1992) (intervenors may not raise affirmative defense of res judicata on behalf of defendant

who chooses not to raise it); *Lake Tahoe Watercraft Recreation Ass'n v. Tahoe Reg'l Planning

Agency*, 24 F. Supp. 2d 1062, 1067 (E.D. Cal. 1998) (intervenor not permitted to raise statute of

limitations defense not raised by the defendant); *see also Society Hill Civic Ass'n v. Harris*, 632

F.2d 1045, 1060 (3d Cir. 1980) (explaining that a party not charged with substantive liabilities

may not invoke the res judicata defense on behalf of a defendant who chose to forgo the

defense), *abrogated on other grounds by Martin v. Wilks*, 490 U.S. 755 (1989).

Because "[l]aches is a personal defense which flows from the relationship of the parties,"

an intervenor asserting laches is particularly inappropriate.  *Salem Eng'g Co. v. Nat'l Supply Co.*,

75 F. Supp. 993, 1000 (W.D. Pa. 1948) (striking intervenor's affirmative defense of laches

because defendant could not have asserted it); *see also A.C. Aukerman Co. v. R.L. Chaides

Construction Co.*, 960 F.2d 1020, 1032 (Fed. Cir. 1992) ("The defense [of laches], being

personal to the particular party and equitable in nature, must have flexibility in its application."),

*abrogated on other grounds by SCA Hygiene Products Aktiebolag v. First Quality Baby

Products, LLC*, 137 S. Ct. 954 (2017); *Sweetheart Plastics, Inc. v. Detroit Forming, Inc.*, 743

F.2d 1039, 1046 (4th Cir. 1984) ("[L]aches or acquiescence is a personal defense which merely

results in a loss of rights as against one defendant.").  Ritter can rely only on his interests, which

are not relevant to Plaintiffs' claims against the Board.  Ritter intervened in this action to protect

his "interest in his elected position" and "rightful position as an elected judge."  ECF No. 14-3

(Ritter Br. in Support of Mot. to Intervene) at 5-6.  According to Ritter, "Plaintiffs and Defendant

do not adequately represent Ritter's interests because they have no direct stake as to which

candidate wins the judicial seat."  *Id.* at 6.  Ritter's stake in "which candidate wins the judicial

seat" is not relevant to equitable consideration of whether laches should bar Plaintiffs' claims against *the Board*. Resolution of Plaintiffs' claims require the Court to examine voters' interests and the government's interests, not any interest in "which candidate wins the judicial seat."[4] Indeed, it is unknown how a ruling in Plaintiffs' favor will affect which candidate wins. *See* ECF No. 27, ¶ 51.

### 2. *Ritter's laches arguments fail on the merits.*

Even if Ritter could assert a laches defense, Ritter's argument fails for at least three reasons. First, Ritter has not satisfied the elements of a laches defense. Laches is an equitable defense that requires a defendant to establish (1) an inexcusable delay in bringing the action, and (2) prejudice to the defendant. *Gov't Employees Retirement Sys. of Virgin Islands v. Gov't of Virgin Islands*, 995 F.3d 66, 92 (3d Cir. 2021). Plaintiffs here did not delay at all; they filed suit two business days after learning that their votes would not be counted. Indeed, the intervening delay in certifying the final Lehigh County election results is largely due to Ritter's actions in seeking to invalidate Plaintiffs' votes based on the immaterial envelope-dating requirement.

On November 15, 2021, the Board determined that it would count Plaintiffs' ballots. Ritter then challenged that determination, and his challenge in the Pennsylvania Court of Common Pleas was initially unsuccessful. Thus, between November 15, 2021, when the Board voted to count undated ballots, ECF No. 27, ¶¶ 31-34, and January 3, 2022, when the

---

[4]    Among the types of prejudice identified by Ritter are delayed certification of Ritter as the winner of the November 2021 municipal election, which has delayed his ability "to pursue his public service on behalf of the citizens of Lehigh County, who face a significant civil case back-log," and prejudice to candidates when there is indefinite delay in the Commonwealth's interest in holding "orderly elections." ECF No. 34-1 at 28-29. But Ritter cannot assert a personal laches defense based on prejudice to *other* parties (e.g., the Commonwealth and the "citizens of Lehigh County"), and any delay in filling a judicial vacancy and final disposition of the 2021 municipal election is the result of Ritter's own decision to challenge the Board's November 15, 2021 decision. Ritter directly opposed the government's position in the state court litigation, and cannot now assert laches based on prejudice to the government's interests in filling a judicial vacancy and final resolution of elections. Ritter also alleges he has been prejudiced due to lost evidence regarding notification to Plaintiffs that their ballots would not be counted, ECF No. 34-1 at 29, but that evidence is not relevant to the merits of Plaintiffs' legal claims.

Commonwealth Court reversed the Court of Common Pleas, there was nothing for Plaintiffs to challenge because undated ballots were to be counted.  Even if Plaintiffs could have intervened in the state court litigation in the middle of the appellate process (and Ritter himself suggests they could not)[5] that would not have brought things to a close any quicker.  The state court litigation over Plaintiffs' ballots, which Ritter initiated and pursued, did not conclude until January 27, 2022, when the Pennsylvania Supreme Court denied a petition for review in *Ritter v. Lehigh Bd. of Elections* and the Court of Common Pleas entered an order directing the Board to *not* count the 257 ballots.  *See id.* ¶¶ 35-49.  Plaintiffs then filed this case four days later, which included an intervening weekend.  Plaintiffs did not delay at all, much less inexcusably, in seeking to vindicate their rights in federal court.

Ritter cites *Stein v. Cortés*, 223 F. Supp. 3d 423, 436 (E.D. Pa. 2016), for the proposition that federal courts should not grant relief that would "nullify" Pennsylvania Election Code deadlines for various types of post-election challenges.  ECF No. 34-1 at 25.  Ritter asserts that the two-day deadline for "any person aggrieved" to challenge a county board decision is the appropriate reference point for assessing delay in this case.  *Id.* (citing 25 P.S. § 3157).  But Plaintiffs were not "aggrieved" by the Board's decision—after all, the Board determined it would count their votes.  Meanwhile, the other types of post-election challenges in Pennsylvania law are even less relevant here (and similarly would not have been available because there was nothing for Plaintiffs to challenge).  *See Stein*, 223 F. Supp. 3d at 427-28 (describing different

---

[5]    In asserting res judicata in this case, Ritter suggests Plaintiffs' intervention in the state court litigation would have been inappropriate.  *See* ECF No. 34-1 at 32-33 (arguing that Plaintiffs' interests were adequately represented in the state court litigation and noting that Pennsylvania Rule of Civil Procedure 2329 permits refusal of intervention when a proposed intervenor's interest is already adequately represented).

types of post-election challenges available under Pennsylvania Election Code).[6]  Plaintiffs'

request to have their ballots counted would not nullify any of the Pennsylvania Election Code

deadlines because those deadlines are inapposite here.

　　　The other authority cited by Ritter is also inapposite.[7]  One set of cases involves pre-

election suits where requested injunctive relief would disrupt an upcoming, imminent election.[8]

The remaining cases are post-election lawsuits seeking injunctions that would disenfranchise

millions of voters.[9]  Plaintiffs' injunctive relief seeks neither to disrupt an imminent election nor

to disenfranchise voters.  Rather, Plaintiffs seek to prevent disenfranchisement—their own and

that of 252 similarly situated voters—by requiring the counting of already-cast ballots.[10]

　　　Finally, the court should not apply laches because it "would undermine the public's

interests in resolution of the affected claim."  *Gov't Employees Retirement Sys. of Virgin Islands*,

---

[6]　　In addition to the two-day deadline to challenge a county board decision, Ritter cites 25 P.S. § 3456 regarding election contests asserting an election was "illegal," 25 P.S. § 3313 regarding contested nominations and elections of Governor and Lieutenant Governor, and 25 P.S. § 3263 regarding petitions to open a ballot box or recanvass votes on a voting machine or electronic voting system.  ECF No. 34-1 at 25-26.

[7]　　Most of the election cases cited by Ritter do not address the common law affirmative defense of laches, but instead relate to this general principle regarding emergency injunctive relief.

[8]　　*See* ECF No. 34-1 at 24-25 (citing *Crookston v. Johnson*, 841 F.3d 396 (6th Cir. 2016) (staying preliminary injunction where plaintiff provided no explanation for delay, and last-minute changes to election policy would lead to confusion for voters and poll workers); *Pa. Democratic Party v. Republican Party of Pa.*, 16-cv-5664, 2016 WL 6582659 (E.D. Pa. Nov. 7, 2016) (denying emergency injunction regarding upcoming election where plaintiffs provided no explanation for why they waited until two days before election to request injunction); *Fishman v. Schaffer*, 429 U.S. 1325 (1976) (denying application for injunction to place minor party candidate names on ballot, where ballots were already printed and plaintiffs could have brought suit earlier); *Nader v. Keith*, 385 F.3d 729, 736-37 (7th Cir. 2004) (holding it would be inequitable to grant injunction where candidate's delay "created a situation in which any remedial order would throw the state's preparations for the election into turmoil")).

[9]　　*See* ECF No. 34-1 at 24-25 (citing *King v. Whitmer*, 505 F. Supp. 3d 720 (E.D. Mich. 2020) (laches barred suit alleging widespread voter fraud, where claims could have been brought prior to election and delaying until after election meant requested relief would disenfranchise almost 3 million voters); *Stein v. Cortés*, 223 F. Supp. 3d 423 (E.D. Pa. 2016) (denying emergency injunction where plaintiff could have asserted claims prior to election and requested injunction would disenfranchise all 6 million Pennsylvania voters); *Kelly v. Commonwealth*, 240 A.3d 1255 (Table) (Pa. 2020) (vacating injunction in challenge to mail-in voting law, where plaintiffs could have challenged law prior to election and injunction would have disenfranchised millions of voters who voted by mail)).

[10]　　An emergency injunction is no longer necessary.  The Board, with Ritter's consent, agreed not to take any further steps to officially certify 2021 election returns, unless and until the Board is authorized to proceed to final certification by further order of this Court.  *See* ECF No. 24, ¶ 8; ECF No. 13, ¶ 4.

995 F.3d at 94.  Laches is an equitable remedy, requiring consideration of the public interest.  *Id.*

Here, Plaintiffs' claims implicate the fundamental right to vote.  The Commonwealth has

asserted that resolution of this case will serve the public's interests in properly resolving whether

ballots with undated outer envelopes should be counted, ensuring that all of the

Commonwealth's political subdivisions lawfully exercise their authority, and ensuring that the

declared winner of any election is the candidate who receives the most lawfully cast votes.  ECF

No. 40 at 1-2.  Because resolution of Plaintiffs' claims on the merits will serve the public

interest, laches should not apply.

### B.  Res Judicata Is Inapplicable.

Defendants assert that Plaintiffs' claims are barred by res judicata because they had

notice of the earlier litigation and could have intervened there. ECF No. 32 at 15–22; ECF No.

34 at 22–26.  But a non-party's mere notice of prior litigation and the opportunity to seek

intervention is nowhere near enough to support the application of res judicata against them. Nor

is there any special relationship between the Board and the Plaintiffs to conclude Plaintiffs'

interests were adequately represented.

Federal courts apply the principles of res judicata from "the state in which the judgment

was entered." *Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 548 (3d Cir.

2006).  Pennsylvania courts only grant preclusive effect where the two actions share the

following four elements: "(1) the thing sued upon or for; (2) the cause of action; (3) the persons

and parties to the action; and (4) the capacity of the parties to sue or be sued." *Id.* (citing *Bearoff*

*v. Bearoff Bros., Inc.*, 327 A.2d 72, 74 (Pa. 1974)).  As Ritter notes, federal precedent is

persuasive because Pennsylvania preclusion law "is 'not inconsistent' with federal decisions."

ECF No. 34 at 22 (citing *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 310 (3d Cir. 2009)).

Res judicata does not apply because Plaintiffs were not parties to the state court case. Claim preclusion generally cannot apply to someone not a party to the previous suit, because doing so "runs up against the 'deep-rooted historic tradition that everyone should have his own day in court.'"  *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (quoting *Richards v. Jefferson Cty., Ala.*, 517 U.S. 793, 798 (1996)).  A party who did not participate in a previous suit "generally has not had a 'full and fair opportunity to litigate'" their claims.  *Taylor*, 553 U.S. at 892.

Defendants are correct that federal courts have broadened slightly this standard rule against nonparty preclusion, but the expansion is limited to a small number of narrow exceptions. *See Taylor*, 553 U.S. at 893–96; *Collins v. E.I. DuPont de Nemours & Co*., 34 F.3d 172, 176 (3d Cir. 1994).  Defendants suggest that claim preclusion applies here because Plaintiffs were somehow in "privity" with the parties to the earlier state court litigation.  However, the U.S. Supreme Court has specifically rejected this broad notion of "privity" in the absence of any formal legal relationship as a potential justification for nonparty preclusion.  *See Taylor*, 553 U.S. at 894 n.8.  Because there was no such relationship between Plaintiffs and the state court parties here, the concept of "privity" is inapposite. *See also Collins*, 34 F.3d at 176 ("The scope of privity, while largely freed from the very constrictive common law mutuality anchor, remains small").  The only exception that even could conceivably apply here is that a nonparty may, in certain limited circumstances, be bound by a prior judgment where they were "adequately represented by someone with the same interests who was a party.'" *Taylor*, 553 U.S. at 894 (quoting *Richards*, 517 U.S., at 798).

Here, Plaintiffs were ***not*** "adequately represented" by any of the parties in the previous state court proceedings.  Courts have "carefully circumscribed" the adequate-representation exception.  *See, e.g.*, *Nationwide*, 571 F.3d 299 at 313.  The exception requires that the previous litigation involved either (1) "special procedural protections" for the nonparties; or (2) an understanding among the parties that the first suit was brought in a representative capacity.  *Id.*; *see also Taylor*, 553 U.S. at 897.  The exception only applies in limited circumstances, including situations like "properly conducted class actions" and "suits brought by trustees, guardians, and other fiduciaries."  *Taylor*, 553 U.S. at 894.  There was no understanding in the state-court litigation—explicit, implicit or otherwise—that the Board or candidate Ritter were representatives for Plaintiffs or the other 252 affected voters.  Nor were there any special procedures to protect the Plaintiffs' interests or permit them to intervene in the litigation.[11]

The mere fact that one out of the five plaintiffs may have been "on notice" about the previous case cannot trigger preclusion.  Indeed, the Supreme Court has rejected that proposition, holding that even where a party had notice of the original suit and hired one of the lawyers involved in the prior case, there was "no special representational relationship between the earlier and later plaintiffs."  *South Central Bell Telephone Co. v. Alabama*, 526 U.S. 160, 167–68 (1999).  Thus, even if Plaintiff Richards was "on notice" of the previous litigation, ECF No. 34 at 24–25, that would not be a basis to preclude his claims (let alone those of four other plaintiffs who are not alleged to have been on any such notice).

Finally, the cases cited by Ritter suggesting that "candidates and voters often have the

---

[11]   Ritter claims Plaintiffs may have been represented by Mr. Cohen in the state court proceedings.  Ritter has conceded, however, that "the trial court denied Mr. Cohen's petition to intervene and Mr. Cohen did not seek leave to intervene before the Commonwealth Court."  ECF No. 34, at 24 n.7.  Even if Cohen were considered a party to the previous litigation for res judicata purposes, there was no understanding or indication that Cohen was acting as the Plaintiffs' representative.

same legal interests" are easily distinguishable.  All four involved lawsuits by voters working together with, or in some instances at the behest of, the candidates.  Three cases involved voter plaintiffs who signed a candidate's nominating petition and later sued in federal court to force their candidate onto the ballot. *See Lawrence v. Bd. of Election Comm'rs of City of Chicago*, 524 F. Supp. 2d 1011 (N.D. Ill. 2007); *Cruz v. Bd. of Elections of New York*, 396 F. Supp. 2d 354 (S.D.N.Y. 2005); *Towns v. Cowen*, 786 F. Supp. 699 (N.D. Ill. 1992).  The close representational relationship between the candidates and the voters in all three cases was plainly apparent. Indeed, in all three the voters filed their federal cases jointly with the candidate who litigated the prior state court proceeding.  *Lawrence*, 524 F. Supp. 2d at 1013–14; *Cruz*, 296 F. Supp. 2d at 354–55; *Towns*, 786 F. Supp. at 700.  The fourth case advanced by Ritter involved plaintiffs who were likely "the candidates' pawns."  *See Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 91 (2d Cir. 2005).  The plaintiffs challenged the discarding of absentee ballots, but *only* those discarded ballots presumed to support their preferred candidates.  *See id.* at 91–92.  The court noted that so long as the plaintiffs sought to count *all* similarly situated ballots, claim preclusion would not apply because the voters would have distinct interests from the candidates.  *Id*. at 96.

Unlike the foregoing cases, Plaintiffs here are a bipartisan group of voters who seek to protect the rights of *all* similarly situated voters.  They are not acting as "pawns" or "puppets" of any party or candidate involved in the earlier state court proceedings.  As Ritter emphasized in his motion to intervene, Plaintiffs "have no direct stake as to which candidate wins the judicial seat," such that they cannot "adequately represent" his interests as a candidate. ECF No. 14-3 at 6.  Ritter's acknowledgment that Plaintiffs here have a unique set of interests directly undercuts his reliance on cases where candidates and voters interests were directly aligned.

14

In short, Defendants can point to no special relationship between Plaintiffs and the Board, Ritter or Cohen to warrant a finding that they were adequately represented in the earlier state court proceedings.

### C. The CRA's Materiality Provision Prohibits Rejection of Timely Ballots Submitted in Signed but Undated Return Envelopes.

The Court should reject Defendants' invitation to misinterpret the CRA's Materiality Provision to impose unsupported technical limitations on the statute's reach.  First, Defendants wrongly argue that *voters* cannot enforce the Materiality Provision, *i.e.*, the statute contains no private right of action. Second, Ritter asks the Court to inject a racial-discrimination requirement into the statute where none exists in the text.  And finally, Defendants incorrectly assert that the Materiality Provision pertains only to errors or omissions in voter-registration paperwork.  The plain language of the statute, however, refutes all three arguments:

> [N]o person acting under color of state law shall . . . deny the right of any individual to vote in any election because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election.

52 U.S.C. § 10101(a)(2)(B).  The provision does not limit private enforcement, contains no discrimination requirement, and expressly extends beyond registration to "act[s] requisite to voting."

Setting these misguided arguments to the side, the merits here are crystal clear. Defendants never explain precisely *how* an eligible voter's failure to hand-write a date when signing the outer mail-in ballot envelope is "material in determining whether such individual is qualified" to vote.  Defendants stipulate that all of the disputed ballots were submitted by eligible voters who signed the outer return envelopes and timely submitted their ballots before Election Day.  ECF No. 27 ¶¶ 23-26.  And Defendants concede that none of these ballots are the subject

of known or suspected fraud.  *Id.* ¶ 26.  Under these circumstances, the omission of a handwritten date on the outer envelope has no conceivable bearing on these individuals' qualifications to vote.  Defendants' motions should be denied and summary judgment granted in *Plaintiffs'* favor instead.

      **1.**   ***The Pennsylvania Agencies Responsible for Administering Elections Have Conceded Immateriality.***

The question presented here is whether a missing date on an outer mail-in ballot return envelope is "material in determining whether [the voter] is qualified under state law to vote[.]" 52 U.S.C. § 10101(a)(2)(B).  As Defendants acknowledge, it is up to the state in the first instance to establish the criteria for voter qualifications, within constitutional limits.  *See* ECF No. 32 at 26 (quoting *McDonald v. Bd. of Election Comm'rs of Chicago*, 394 U.S. 802, 807 (1969)).

In Pennsylvania, the state constitution sets forth the "qualifications" needed in order to "be entitled to vote at all elections."  Pa. Const. Art. VII, § 1. Namely, each individual must be a U.S. citizen and Pennsylvania resident over the age of 18, residing in the election district in which the person offers to vote. *Id.*  And the Pennsylvania agencies charged with administering elections in Lehigh County, and state-wide, have conceded that a handwritten date on the outer envelope used to return mail-in ballots serves no purpose in determining voter qualifications under Pennsylvania law.

First, the Commonwealth, speaking through the Attorney General's Office,[12] agrees that the date on the outer envelope is immaterial.  Its *Amicus Curiae* brief stresses that "[t]he date

---

[12]   The Attorney General's Office is one of two Commonwealth agencies with delegated authority over key aspects of election administration in Pennsylvania: the Secretary of the Commonwealth has authority for developing procedures for registering voters and determining eligibility under 25 Pa.C.S.A. § 1327; and the Attorney General has enforcement authority for violations of the Election Code under 25 P.S. § 3555 and 25 Pa.C.S.A. § 1801.

written on an absentee or mail-in ballot's return envelope is immaterial to determining the

voter's eligibility under Pennsylvania Law."  ECF No. 40 at 1.

Second, the Pennsylvania Department of State—the Commonwealth agency designated

with the authority for prescribing the form and content of the absentee and mail-in voting

envelopes, *see* 25 P.S. §§ 3146.4, 3150.14(b)—instructed county boards of election in 2021 that

"there is no basis to reject a ballot for putting the 'wrong' date on the envelope, ***nor is the date***

***written used to determine the eligibility of the voter.***"  ECF No. 27-5 (emphasis added).

Accordingly, the Department of State admits the date written on the outer envelope is

immaterial.  *Id.*  Lehigh County followed that guidance and has counted ballots where voters

wrote their birth dates.  *See* ECF No. 27-6 at 61:5-62:14.

Third, even the Defendant Board agreed with Plaintiffs' immateriality argument, before it

inexplicably reversed that position in this case.[13]  In the *Ritter* state court litigation, the Board

argued as follows:

> Applying the "materiality provision" of the federal Voting Rights Act and the
> cases cited by [*In re 2020 Canvass*] supports a determination that invalidation of
> the 261 mail-in ballots at issue for failure to include dates or improper placement
> of dates on the elector's declarations on the outside envelopes of the ballots would
> be at odds with the federal Voting Rights Act.[14]

---

[13]   The Board should be judicially estopped from taking these diametrically opposed positions.  *See In re Kane*,
628 F.3d 631, 638 (3d Cir. 2010) ("the basic principle of judicial estoppel . . . is that absent any good explanation, a
party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent
advantage by pursuing an incompatible theory") (quoting *Krystal Cadillac–Oldsmobile GMC Truck, Inc. v. General
Motors Corp.,* 337 F.3d 314, 319 (3d Cir.2003)).  To the extent that judicial estoppel does not apply because the
Board did not leverage its prior inconsistent position to victory, the Court should still give little weight to newfound
materiality arguments that contradict the positions the Board has taken in court over the past three months.  If
anything, this Court should credit the Board's prior pronouncements to the Commonwealth Court—in an action that
the Board argues should have preclusive effect on everyone else—where it agreed that the handwritten date
provision is immaterial.  Unlike the contrary position it takes here, the Board's previous position on materiality was
consistent with the Commonwealth's views (*see* ECF No. 40) and the Pennsylvania Department of State's
instruction to count ballots with incorrect dates (*see* ECF No. 27-5).  Before now, only political candidates with a
self-interest in seeing these votes thrown out have disagreed.

[14]   Different parties here have referred at different points to the Materiality Provision as part of the Civil Rights Act
and the Voting Rights Act.  The relevant provision was originally enacted as part of the 1964 CRA, and Congress

12/8/21 Br. of. Appellee Lehigh Cty. Bd. of Elections at 13, *Ritter v. Lehigh Cnty. Bd. of Elections,* No. 1322 C.D. 2021, (Pa. Commw. Ct.).[15]   The Board went on to state:

> In the instant case, the obligation to include a date on the elector's declaration on the outside envelope of a mail-in ballot does not implicate any "weighty interests" such as ensuring election integrity, preventing fraud, or protecting ballot confidentiality. Thus, under the facts presented here, the failure to include a date (or the improper placement of the date) on the elector's declaration on the outside envelope should not result in the disenfranchisement of hundreds of otherwise duly qualified electors where, as here: (1) there is no evidence of fraud; (2) there is no dispute the electors at issue were qualified to vote and otherwise expressed their intent to cast the mail-in ballots; and (3) there is no dispute the mail-in ballots were timely received.

Appx. 1 at 11.  While the Board suddenly takes the opposite position, Defendants' inability to articulate how the handwritten date requirement relates to voter qualifications confirms that the Board was right the first time.

### 2. *Defendants Cannot Explain Why the Date on the Outer Envelope Is Material.*

The plain language of the CRA forbids denying Plaintiffs' fundamental right to vote based on an immaterial oversight.  As discussed in Plaintiffs' opening brief, *see* ECF No. 33-1 at 9-14, the date requirement is irrelevant to ascertaining voter eligibility.

In their Motions, Defendants do not attempt to explain how the date on which an eligible voter completed and signed a mail-in ballot relates to any of the criteria for voter qualification set forth at Article VII, Section 1 of the Pennsylvania Constitution.  Instead, they simply parrot a short discussion from a dissenting opinion in *In re 2020 Canvass* about so-called "weighty interests" under state election law.  *See* ECF No. 32 at 30-31; ECF No. 34-1 at 35.  Defendants'

---

amended the provision as part of the Voting Rights Act of 1965.  Whichever label applies here, all parties are arguing about the same Materiality Provision, now codified at 52 U.S.C. § 10101(a)(2)(B).

[15]   A true and correct copy of the Board's December 8, 2021 brief, filed as Appellee before the Pennsylvania Commonwealth Court, is attached hereto at "Appendix 1."

entire argument as to materiality of Plaintiffs' failure to write a date on the outer envelope boils

down to one conclusory statement from that dissent pondering "weighty interests":

> [T]he date on the ballot envelope provides proof of when the "elector actually
> executed the ballot in full, ensuring their desire to cast it in lieu of appearing in
> person at a polling place. The presence of the date also establishes a point in time
> against which to measure the elector's eligibility to cast the ballot[.]

*In re 2020 Canvass*, 241 A.3d at 1090-91 (Dougherty, J., concurring and dissenting) (quoting *In*

*re 2,349 Ballots in the 2020 General Election*, No. 1162 C.D. 2020, 2020 WL 6820816 at *6 (Pa.

Commw. Ct. Nov. 19, 2020)). But Defendants' reliance on this passage does not carry weight.

For one, Justice Dougherty was writing for a minority (three) of the Pennsylvania

Supreme Court justices. Defendants' reliance on his dissent ignores the actual holding of *In re*

*2020 Canvass*, which concluded the date did not advance "weighty interests" under state law.

*See id.* at 1076-77.[16] Three Pennsylvania Justices expressly concluded that there were no

"weighty interests" underlying the date requirement, *id.*, and a fourth separately argued in

concurrence that the "weighty interest" question had no place in analyzing the Pennsylvania

Election Code, *id.* at 1085-86 (Wecht, J., concurring and dissenting). The Supreme Court's

holding, therefore, directed that undated mail-in ballots in the 2020 election would count. *Id.*

---

[16]   The Board's Brief mischaracterizes Justice Dougherty's dissenting opinion as the "holding" of the Pennsylvania Supreme Court, ECF No. 32 at 30 (citing *In re 2020 Canvass*, 241 A.3d at 1091), and then misrepresents that the state court "concluded" (at pp. 1076-77 of the Atlantic Reporter cite) that the date requirement "served 'weighty interests'." ECF No. 32 at 30 (citing *In re 2020 Canvass*, 241 A.3d at 1076-77). In fact, the cited portion of the Pennsylvania Supreme Court's opinion "concluded" the exact opposite:

> The date that the declaration is signed is irrelevant to a board of elections' comparison of the voter declaration to the applicable voter list, and a board can reasonably determine that a voter's declaration is sufficient even without the date of signature. Every one of the 8,329 ballots challenged in Philadelphia County, as well as all of the 2,349 ballots at issue in Allegheny County, were received by the boards of elections by 8:00 p.m. on Election Day, so there is no danger that any of these ballots was untimely or fraudulently back-dated. Moreover, in all cases, the receipt date of the ballots is verifiable, as upon receipt of the ballot, the county board stamps the date of receipt on the ballot-return and records the date the ballot is received in the SURE system. The date stamp and the SURE system provide a clear and objective indicator of timeliness, making any handwritten date unnecessary and, indeed, superflous.

*In re 2020 Canvass*, 241 A.3d at 1076-77 (opinion announcing judgment).

Second, the discussion of "weighty interests" in *In re 2020 Canvass* did not address the CRA's Materiality Provision. Rather, the concept of "weighty interests" arose when analyzing the Pennsylvania Election Code's statement that mail-in voters "shall . . . date" the outer envelope, and whether that provision was supported by sufficiently important interests to deem it a mandatory requirement *as a matter of state law*. By contrast, when the Justices did briefly reference the CRA, a majority (four) observed that concluding that the envelope-dating requirement was mandatory and required voiding undated ballots might nevertheless conflict with the CRA's Materiality Provision. *In re 2020 Canvass*, 241 A.3d at 1074 n.5 (opinion announcing judgment); *id.* at 1089 n.54 (Wecht, J., concurring and dissenting).

The Commonwealth's *amicus* brief explains why the dissenting opinion's proclamation of supposed interests in the handwritten date provision cannot be sustained. ECF No. 40 at 11-12.[17] Critically absent from the dissent's (and Defendants') discussion is any explanation of *how* throwing out timely-received ballots for failure to hand-write a date next to the voter's signature on the outer envelope advances any of the dissent's purported "weighty interests." For the handwritten date requirement to be material under the CRA, it must relate to a factor impacting the voter's qualifications.[18] As the Commonwealth explains, inclusion or omission of a handwritten date has no impact on the question of whether the voter has adequately expressed a "desire" to vote by mail "in lieu of appearing in person." ECF No. 40 at 11 (citing 25 P.S. §§ 3146.6(b)(1)-(3), 3150.16(b)(1)-(3)).

---

[17]   Plaintiffs join in the materiality arguments submitted by the Commonwealth of Pennsylvania and incorporate by reference the substantive argument sections of the Commonwealth's *Amicus Curiae* Brief, ECF No. 40 at 7-14.

[18]   Courts have not established a clear standard for materiality under the CRA. In *Florida State Conference of the NAACP v. Browning*, 522 F.3d 1153 (11th Cir. 2008), the 11th Circuit explained that there are "two kinds of 'materiality,'" in federal law, "one similar to minimal relevance and the other closer to outcome-determinative." *Id.* at 1174. Plaintiffs prevail under either standard, however, as a handwritten date on the outer envelope used to send a mail-in ballot is utterly irrelevant to any eligibility criteria under Pennsylvania law.

Nor does the handwritten date on the outer envelope do anything under the Pennsylvania Election Code to establish the "point in time against which to measure the elector's eligibility." The Election Code separately establishes Election Day as the relevant date against which to measure eligibility, (*id.*; *see also id.* at 11; Pa. Const. Art. VIII, §1; 25 P.S. §§ 1301(a), 2811)), and the Board determines eligibility to vote before even sending the ballot package to the voter, 25 P.S. §§ 3146.2b, 3150.12b, 1328(b).   In other words, Pennsylvania already has established Election Day as the "point in time against which to measure the elector's eligibility," rendering a handwritten date on the outer envelope completely irrelevant.

Unable to articulate how these alleged "weighty interests" they cite are impacted by the date's omission, Ritter resorts to a vague fraud-prevention interests.  *See* ECF No. 34-1 at 36 (citing *Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2348 (2021)).   But a fraud consideration does not apply on these undisputed facts, because Defendants have stipulated that these ballots do not raise any fraud concerns.   ECF No. 27 at ¶ 26.   Ritter should not now be heard to stoke unfounded fears of non-specific voter fraud to justify disenfranchising Lehigh County voters.  *See Donald J. Trump for President, Inc. v. Sec'y of Pa.*, 830 F. App'x 377, 381 (3d Cir. 2020) ("Charges of unfairness are serious.   But calling an election unfair does not make it so. Charges require specific allegations and then proof. We have neither here.").   Ritter's attempt to elevate generalized concerns about voter fraud, even in "the absence of any specific allegations of fraud" (ECF No. 34-1 at 36), is also directly at odds with the individualized language of the Materiality Provision.   The statute specifically prohibits denying "*any individual*" the right to vote based on errors or omissions that are immaterial "in determining whether *such individual* is qualified" to vote.   52 U.S.C. § 10101(a)(2)(B) (emphasis added).   Thus, the core question before the Court is whether the Plaintiffs' failure to date *their* signatures

on their outer envelopes raises any question about their qualifications to vote.  Sweeping statements about unspecified "risk that accompanies mail-in voting," ECF No. 34-1 at 36 (quoting *Brnovich*, 141 S. Ct. at 2348), cannot be used to disenfranchise voters who have committed no fraud and have done nothing to raise questions about their qualifications as voters.

And even if it were relevant, Ritter also fails to explain *how* the handwritten date requirement helps prevent fraud, especially in light of the signature requirement and the undisputed facts that: (a) the Board confirms a voter's eligibility to cast mail-in ballots before the Board sends the voter a blank ballot, and (b) the ballots must be submitted and received by 8 p.m. on Election Day.  Even if general fraud prevention were a valid state interest relating to voter qualifications, Defendants remain unable to offer a rational basis for concluding that the inclusion of a handwritten date next to mail-in voters' signatures is *material to* fraud considerations.  Moreover, given the state's practice of counting timely ballots from voters who wrote *any* date—even clearly wrong and nonsensical dates—on the outer envelope, it clearly does not view the specific date on which a voter signed the outer envelope as material to determining qualification to cast the vote.  *See* ECF No. 27-5 (Department of State instruction to election boards not to reject ballots with "the 'wrong' date on the envelope).

### 3. *Defendants Can Point to No Authority to Support a Finding of Materiality.*

Ritter points to two cases—*Diaz v. Cobb*, 435 F. Supp. 2d 1206 (S.D. Fla. 2006), and *Common Cause v. Thomsen*, No. 19-CV-323, 2021 WL 5833971 (W.D. Wis. Dec. 9, 2021)—for the general proposition that "reasonable regulations" do not implicate the Materiality Provision. ECF No. 34-1 at 35-36.  While the Materiality Provision does not provide for a "reasonableness" exception, it obviously does not invalidate requirements under election laws that are actually material to determining voter qualifications.  The fact that Defendants have found examples of

election regulations that *did* pass the materiality test does not make Pennsylvania's handwritten envelope-dating requirement any more material.

In *Diaz*, the court was presented with questions on voter registration applications that tracked the specific voter eligibility criteria under Florida law (citizenship, absence of felony convictions and mental competence).  435 F. Supp. 2d at 1213.  Similarly, in *Thomsen*, the court dealt with identification requirements for voter registration that Wisconsin law specifically made prerequisite to determining voter qualifications.  2021 WL 5833971 at *3-4.  And the Eastern District of Virginia in *Howlette v. City of Richmond*, the lone Materiality Provision case cited by the Board,[19] provided a detailed recitation of the ways in which the prerequisites for eligible voters to sign referendum petitions were material to determining the petitioners' qualifications. 485 F. Supp. 17, 22-23 (E.D. Va. 1978).  But no case supports the conclusion that the regulation here—requiring voters to write a date next to their signatures on the outer envelopes containing mail-in ballots—is material to voter qualifications under Pennsylvania law.

Meanwhile, Defendants do not account for the many cases that have applied the Materiality Provision to invalidate restrictions on voting and registration that are more similar to the handwritten date requirement.  For example:

- In *Schwier v. Cox*, 439 F.3d 1285, 1286 (11th Cir. 2006), for example, the Eleventh Circuit held that a ***Social Security number*** is not "material" in determining whether a resident is qualified to vote.

- The District Courts in *Martin v. Crittenden*, 347 F. Supp. 3d 1302, 1308–09 (N.D. Ga. 2018), and *Sixth Dist. of Afr. Methodist Episcopal Church v. Kemp*, No. 1:21-CV-01284-JPB, 2021 WL 6495360, at *14 (N.D. Ga. Dec. 9, 2021), applied the

---

[19]    The Board's brief also references *Hoyle v. Priest*, 265 F.3d 699 (8th Cir. 2001).  But the court in that case simply brushed aside the suggestion that the Material Provision even applied to an Arkansas law that only permitted registered voters to sign ballot initiative petitions.  The court observed that such a law did not operate to deny any individual the right to vote based on any error or omission relating to registration or other act requisite to voting. *Id.* at 704-705.

Materiality Provision to requirements that voters submit ***birth date information*** with their mail-in ballots.

- In *League of Women Voters of Ark. v. Thurston*, No. 5:20-CV-05174, 2021 WL 5312640, at *4 (W.D. Ark. Nov. 15, 2021), the District Court allowed a CRA materiality claim to proceed as to a state law requiring absentee voters to submit unnecessarily ***duplicative proofs of name, address, date of birth, and registration status*** when applying for ballots and again when casting ballots.

- In *Ford v. Tenn. Senate*, No. 06-2031-DV, 2006 WL 8435145, at *11 (W.D. Tenn. Feb. 1, 2006), the District Court granted declaratory relief that the Materiality Provision precluded a requirement that voters ***sign both a ballot and a poll book*** in order to vote. [20]

- The District Court in *Wash. Ass'n of Churches v. Reed*, 492 F. Supp. 2d 1264 (W.D. Wash. 2006), enjoined enforcement of a ***"matching" statute***, which required the state to match a potential voter's name to Social Security Administration or Department of Licensing database, because an applicant's failure to provide exactly matching information was not material to determining qualification to vote.

Ultimately, the handwritten date provision in this case is much more akin to birth date, Social Security number and ink color requirements that federal courts have deemed immaterial than it is to those requirements deemed material in other districts. The Board determined eligibility to vote before sending Plaintiffs their ballots, and it is undisputed that they signed and submitted their ballots within the time required by law. Thus, the requirement to hand-write the date of signature does nothing to help determine the voter's qualifications under Pennsylvania law to submit those ballots.

---

[20]   The Board makes insufficient attempts at distinguishing *Ford* and *League of Women Voters*, completely ignoring the other materiality cases. *See* ECF No. 32 at 29. However, the Board's argument as to *Ford* incorrectly assumes that case related solely to voter registrations and qualifications, ignoring the aspects of that decision that applied to immaterial requirements in casting ballots. *See Ford*, 2006 WL 8435145, at *11. As for *League of Women Voters*, the Board simply asserts that the district court should have ruled the Materiality Provision applies only to voter registration issues, ECF No. 32 at 29, again overlooking the court's application of the Materiality Provision to requirements for casting ballots, 2021 WL 5312640, at *4.

### 4. *Defendants' Arguments to Evade Application of the Materiality Provision Are Without Merit.*

#### a) *Voters have standing to protect their fundamental right to vote against disenfranchisement due to minor technicalities.*

The CRA and its predecessors have always permitted private citizens to protect their right to vote. Despite this, Defendants seek to upend more than 150 years of jurisprudence recognizing the right of voters to enforce the Civil Rights Act. Defendants urge this court to follow an outlier circuit court decision and deprive voters of one of the last remaining tools to enforce federal protections for the right to vote. Defendants' analysis is incomplete and wrong.

The plain language of the Materiality Provision demonstrates that a private right of action exists to enforce its provisions. To bring a private suit under a federal statute, a §1983 plaintiff must show that "Congress *intended to create a federal right*," and this right must be "unambiguously conferred." *Gonzaga Univ. v. Doe,* 536 U.S. 273, 283 (2002*)* (emphasis in original). The statute at issue must be phrased "in terms of the persons benefited." *Cannon v. University of Chicago*, 441 U.S. 677, 692 n. 13 (1979), "with an unmistakable focus on the benefited class." *Id.* at 691 Once the plaintiff demonstrates that a statute confers an individual right, the right is presumptively enforceable under section 1983. *Gonzaga*, 536 U.S. at 284. Defendants may rebut the presumption of enforceability under section 1983 by showing that Congress expressly or impliedly "shut the door to private enforcement." *Id.* at 284 n.4. Such a showing requires "specific evidence from the statute itself," *Wright v. Roanoke Redevelopment and Housing Authority*, 479 U.S. 418, 423 (1987), or proof that Congress "creat[ed] a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983." *Blessing v. Freestone,* 520 U.S. 329, 341 (1997).

Even a cursory examination of the Materiality Provisions compels the conclusion that a private right of action exists to enforce an individual's right to vote. The Materiality Provision expressly recognizes "the right of any individual to vote in any election" despite "an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election." 52 U.S.C. § 10101(a)(2)(B).  Congress thus specifically prohibited state policies that would deny a person's fundamental right to vote on immaterial grounds, clearly identifying the persons benefitted by the federal right.  *v. Cox*, 340 F.3d 1284, 1296-97 (11th Cir. 2003) (explaining, with respect to the Materiality Provision, that "the focus of the text" is "the protection of each individual's right to vote"); *Tex. Democratic Party v. Hughs*, 474 F. Supp. 3d 849, 858-9, (W.D. Tex 2020)*, rev'd on other grounds*, 860 F. App'x 874 (5th Cir. 2021). That Congress *also* authorized the Attorney General to file civil lawsuits changes nothing.  Defendants admit that "the Attorney General's enforcement authority is not made exclusive" by the statute's terms, ECF 34-1 at 29, and they otherwise do nothing to demonstrate that Congress "shut the door" on private enforcement by granting the Attorney General such concurrent authority.  *Cf. Alexander v. Sandoval,* 532 U.S. 275 (2001) (acknowledging that § 601 of Title VI is privately enforceable and can co-exist with separate enforcement process for funding recipients).

Nor could they.  Indeed, the Supreme Court and other courts have repeatedly held that a private right of action can co-exist with Attorney General enforcement authority especially in the voting rights context.  *See e.g., Morse v. Republican Party of Va.*, 517 U.S. 186 (1996) (holding that private litigants could sue to enforce the Voting Rights Act prohibition against imposition of poll taxes); *Allen v. State Bd. of Elections,* 393 U.S. 544, 557 (1969) (holding that private

26

litigants were permitted to bring suit for a declaration that a new enactment was subject to Section 5 pre-clearance); *Schwier*, 340 F.3d at 1296 (holding that private litigants could sue to enforce the CRA's materiality provision).

Contrary to Ritter's assertion, there is overwhelming authority for private enforceability of the Materiality Provision. The Second, Fifth, Eighth, and Eleventh Circuits have all resolved private claims under Section 10101 on the merits. *See, e.g., Schwier*, 340 F.3d at 1296; *Taylor v. Howe*, 225 F.3d 993, 996 (8th Cir. 2000); *Coalition for Educ. in Dist. One v. Bd. of Election*s, 495 F.2d 1090 (2d Cir. 1974); *Bell v. Southwell*, 376 F.2d 659 (5th Cir. 1967); *Reddix v. Lucky*, 252 F.2d 930, 934 (5th Cir. 1958).  Several district courts also have permitted private suits to proceed.  *See, e.g., Davis v. Comwlth. Election Comm'n*, Case No. 1-14-CV-00002, 2014 WL 2111065, *9-10 (D. N. Mar. I. May 20, 2014); *Delegates to the Republican Nat'l Convention v. Republican Nat'l Comm.*, Case No. SACV 12-00927, 2012 WL 3239903, *5 n.3 (C.D. Cal. Aug. 7, 2012); *Common Cause/Ga. v. Billups*, 406 F. Supp. 2d 1326, 1371 (N.D. Ga. 2005).

By far the most extensive analysis of the issue is in *Schwier*, a case directly on point. There, the Eleventh Circuit applied Supreme Court authority to hold that the Materiality Clause is privately enforceable.  340 F.3d at 1296.  In so doing, the circuit court reversed a district court's decision holding that Congress intended to foreclose a private right of action when it added civil enforcement authority for the Attorney General in 1957.  *Id*.  In addition to textual analysis of the Materiality Provision's rights-creating language, the Eleventh Circuit pointed to the long history of private enforcement, beginning in 1870 with the passage of 42 U.S.C. § 1983, through the 1957 amendment authorizing civil enforcement suits by the Attorney General, during which "plaintiffs could and did enforce the provisions of [the predecessor to §10101] under § 1983."  *Id.* at 1295 (citations omitted).  The court found that the 1957 amendment's legislative

history provided no support for eliminating this private right of action; to the contrary, the bill's purpose was "'to provide means of *further* securing and protecting the civil rights of persons within the jurisdiction of the United States.'" *Schwier*, 340 F.3d at 1295 (quoting H.R. Rep. No. 85-291 (1957)) (emphasis in original). Moreover, because the 1957 amendments eliminated exhaustion of administrative remedies, the court agreed with appellants that this language was meant "to remove [ ] roadblocks for the previously authorized private rights of action" 340 F. 3d at 1296. On these bases, the Eleventh Circuit held that "neither § 1971's provision for enforcement by the Attorney General nor Congress's failure to provide for a private right of action expressly in § 1971 *require* the conclusion that Congress did not intend such a right to exist." 340 F.3d at 1296 (emphasis in original).

Ritter fails to distinguish *Schwier*. Ritter argues that *Schwier* relied on outdated precedent because it referenced two Supreme Court cases that predated *Alexander v. Sandoval*.[21] ECF No. 34-1 at 31. But the court in *Schwier* clearly applied the modern-day, presently applicable test for determining the existence of a private right of action in reaching its conclusion, concluding as a matter of both text and purpose that Congress had specifically intended to provide individual persons with enforceable rights in the Materiality Provision. 340 F.3d at 1295-97. The fact that *Schwier* also cited *Allen* and *Morse* for the uncontroversial proposition that a private right of action may co-exist with attorney-general-enforcement authority in the voting rights act context, 340 F.3d at 1284 (citing *Allen,* 393 U.S. 544; *Morse,*

---

[21] In any event, *Sandoval* actually supports finding a private right of action under Section 10101(a)(2)(B). While the Court found no implied private right of action under 42 U.S.C. § 2000d–1 (§ 602 of Title VI of the CRA), it also took "as given" that "private individuals may sue to enforce § 601" of Title VI and obtain both injunctive relief and damages. *Id*. at 279; *see also Cannon v. Univ. of Chi.*, 441 U.S. 677, 717 (1979) (finding § 601 conferred private right of action). The rights-creating text of § 601 is functionally identical to the Materiality Provision in its protection of individual rights, and the Materiality Provision in no way resembles § 602.

517 U.S. 186, is irrelevant.  Indeed, *Sandoval* confirms that that privately enforceable rights can coexist with other governmental enforcement schemes. 532 U.S. at 279-80.

Other than unsuccessfully attacking *Schweier*, Defendants cite no well-reasoned authority holding that a private right of action is foreclosed under Section 10101.  Instead, they cite Sixth Circuit authority holding, without analysis, that inclusion of the Attorney General's enforcement authority in §10101(c) means there is no private right of action in Section 10101.  *See Northeast Ohio Coalition for the Homeless v. Husted*, 837 F.3d 612 (6th Cir. 2016) ("*NEOCH*").  The *NEOCH* court claimed to be bound by an earlier Sixth Circuit decision, *McKay v. Thompson*, whose analysis in turn consisted of two summary sentences: "The district court correctly dismissed this claim for lack of standing. Section 1971 is enforceable by the Attorney General not by private citizens."  226 F.3d 752, 756 (6th Cir. 2000).  The district court decisions relied upon in *McKay*, and cited by Defendants, provide equally cursory analysis. *See* ECF No 34-1 at 30.[22]  In contrast, the *Schwier* court specifically rejected the Sixth Circuit line of authority cited in *McKay v. Thompson* and noted the dearth of any legal analysis supporting the *McKay* court's holding.  340 F.3d at 1294.

*Schweier*'s extensive consideration of the issue is far more persuasive—and far more consistent with the actual practice of civil rights law in the federal courts.  Federal courts, including the U.S. Supreme Court on many occasions, decided private-citizen cases under the Civil Rights Act for over 150 years.  The 1957 amendment adding Section 10101 merely conferred additional enforcement authority on the Attorney General.  A handful of wayward

---

[22]    None of the district cases cited by Defendants apply the requisite analysis. *See Gilmore v. Amityville Union Free Sch. Dist*., 305 F. Supp. 2d 271, 279 (E.D.N.Y. 2004); *Willing v. Lake Orion Community Sch. Bd. of Trustees*, 924 F. Supp. 815, 820 (E.D. Mich. 1996); *Good v. Roy*, 459 F. Supp. 403, 405 (D. Kan. 1978); *McKay v. Altobello*, No. CIV. A. 96-3458, 1996 WL 635987, at *2 (E.D. La. Oct. 31, 1996); *Cartagena v. Crew*, No. 96 Civ. 3399, 1996 WL 524394, at *3 n.8 (E.D.N.Y. Sept. 5, 1996).

decision containing scant reasoning do not support neutering important voting rights protections as Congress crafted them. Congress intended to permit private citizens to enforce their fundamental right to vote under Section 10101 and this court should follow *Schwier's* well-reasoned holding.

      b) *The Materiality Provision does not require proof of racial or other discrimination.*

Ritter's contention that the Materiality Provision only applies to invalidate state election laws that discriminate based on race, ECF No. 34-1 at 32, is also without merit. And his claim that federal courts "*uniformly acknowledge* that an allegation of discrimination . . . is a prerequisite to applying Section 101," *id.* at 33 (emphasis added), is demonstrably wrong.[23] This assertion ignores recent authority from federal courts adjudicating materiality claims under the CRA in particular cases where racial discrimination is not at issue.

Nothing in the text of the Materiality Provision suggests that it applies only to immaterial voting requirements that are motivated by racial discrimination. *See* 52 U.S.C. § 10101(a)(2)(B). Indeed, the context of Section 10101 more broadly indicates a legislative intent *not* to include a racial discrimination element in Subsection (a)(2)(B). Of the statute's multiple subsections, only Subsection (a)(1) mentions racial discrimination. 52 U.S.C. § 10101(a)(1). Under the interpretive principle of *expressio unius est exclusio alterius*, "when 'Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely' in its exclusion." *United*

---

[23]    Ritter points to a selection of outlier cases, mainly decided in the 1970s, that incorrectly read a racial animus element into every subsection of § 10101. *See* ECF No. 34-1 at 33 (citing *Ballas v. Symm*, 351 F. Supp. 876 (S.D. Tex. 1972), *aff'd* 494 F.2d 1167 (5th Cir. 1974); *Malinou v. Bd. of Elections*, 271 A.2d 798 (R.I. 1970)). The one more recent case Ritter cites for this point, *Indiana Democratic Party v. Rokita*, relied exclusively on cases decided between 1966 and 1981, which in turn simply discussed the goal of § 10101 generally (formerly 42 U.S.C. § 1971) to eradicate racial discrimination in voting, without addressing subsection (a)(2)(B) specifically. 458 F. Supp. 2d 775, 839 & n.106 (S.D. Ind. 2006) (collecting cases).

*States v. Alabama*, 778 F.3d 926, 933 (11th Cir. 2015) (quoting *CBS Inc. v. PrimeTime 24 Joint Venture,* 245 F.3d 1217, 1225–26 (11th Cir.2001)); *see also*, *e.g.*, *City of Philadelphia v. Sessions*, 280 F. Supp. 3d 579, 617 (E.D. Pa. 2017) (quoting *Russello v. U.S.*, 464 U.S. 16, 23 (1983)).  Congress knew how to make racial discrimination an element of CRA violations and did so only with respect to Subsection (a)(1).  That it chose not to do so in connection with the Materiality Provision set forth at Subsection (a)(2)(B) means that Congress did not intend to limit this provision's application to cases involving racial animus.

The reference to "[r]ace, color, or previous condition" in the title of Section 10101 only bolsters this conclusion. The multi-part statutory title also references "uniform standards for voting qualifications," "errors or omissions from papers," and "literacy tests," with each piece separated by a semicolon.  Each part to the section title corresponds with a distinct subsection to Section 10101, with "errors and omissions from papers" corresponding to the only subsection that is relevant here: (a)(2)(B).  Similarly, the first part of the section title ("race, color or previous condition not to affect right to vote") corresponds with subsection (a)(1), which is specifically aimed at ensuring the right "to vote at all . . . elections, without distinction of race, color, or previous condition of servitude."  52 U.S.C. § 10101(a)(1).  Plaintiffs' claim here does not implicate Subsection (a)(1) and therefore does not require proof of racial discrimination.

Several cases Defendants cite throughout their motions also support this conclusion.  For example, the Eleventh Circuit in *Fla. State Conference of the NAACP* noted that while the CRA was originally motivated by a desire "to counteract state and local government tactics of using, among other things, burdensome registration requirements to disenfranchise African-Americans," 522 F.3d at 1173 (citing *Condon v. Reno*, 913 F. Supp. 946, 949-50 (D.S.C. 1995)), the terms of the Materiality Provision are not so limited to this particular motivating factor.

31

Rather, the court observed, "Congress in combating specific evils might choose a broader remedy." *Id.* Thus, "[t]he text of the resulting statute, and not the historically motivating examples of intentional and overt racial discrimination is . . . the appropriate starting point of inquiry. . . ." *Id.* Similarly, the Wisconsin District Court in *Common Cause v. Thomsen* considered and rejected the argument that claims under § 10101(a)(2)(B) require proof of racial discrimination. *See* 2021 WL 5833971 at *3. Recognizing that "other courts" had noted that the CRA was enacted "for the purpose of eliminating racial discrimination in voting requirements," *id.* (quoting *Rokita*, 458 F. Supp. 2d at 839), the court nonetheless held:

> But the text of § 10101(a)(2)(B) isn't limited to race discrimination or voter registration. The court concludes that § 10101(a)(2)(B) is not direct[ed] solely to cases of dirty tricks motivated by race discrimination.

*Id.*; *see also Diaz*, 435 F. Supp. 2d at 1213 (noting that "non-material omissions" under the Materiality Provision may include race-based information, *or* other information "not directly relevant to the question of eligibility" such as "social security number," *or* failure to follow other "needlessly technical instructions, such as the color of ink to use in filling out the form").

Accordingly, far from "uniformly" applying a racial discrimination element, federal courts have more recently applied the Materiality Provision to analyze procedural voting requirements without regard for a discriminatory element. In *Schwier*, the Eleventh Circuit applied the Materiality Provision without any discussion of race to invalidate a facially neutral requirement that applicants provide Social Security numbers on voter registration forms. 439 F.3d 1285. Similarly, the District Court in *Martin* ruled that a facially neutral birth date requirement violated the Materiality Provision without mentioning racial discrimination. 347 F. Supp. 3d 1302. *See also*, *e.g.*, *League of Women Voters v. Thurston*, 2021 WL 5312640 (permitting Materiality Provision claim to proceed without requiring allegation of racial

discrimination); *Ford*, 2006 WL 8435145 (finding violation of Materiality Provision without discussion of racial discrimination); *Wash. Ass'n of Churches*, 492 F. Supp. 2d 1264 (same). This Court should heed the plain language of the Materiality Provision and the weight of recent authority and reject Ritter's effort to evade this important voting rights protection.

        c)  *The Materiality Provision is not limited to errors and omissions in voter registration paperwork.*

Despite clear, expansive statutory language, Defendants argue the Materiality Provision "applies exclusively to voter registration laws."  ECF No. 34-1 at 34; *see also* ECF No. 32 at 41. Here again, Defendants seek to impose a limitation without support in the statutory text.  The statute prohibits denial of the right to vote based not only on "an error or omission on any record or paper relating to any application [or] registration," but also such errors or omissions relating to any "other act requisite to voting."  52 U.S.C. § 10101(a)(2)(B).  Defendants' pinched construction would render meaningless the phrase "other act requisite to voting."  The Board acknowledges that courts must "avoid an interpretation of a statute that 'renders some words altogether redundant.'"  ECF No. 32 at 28 (quoting *United States v. Alaska*, 521 U.S. 1 (1997) (internal citation omitted)).

The outer envelope used to return mail-in ballots is a "record or paper."  Completion of the declaration form on that envelope is an act that the Pennsylvania Election Code makes "requisite to voting" by mail.  *See* 25 P.S. § 3146.6(a).[24]  Accordingly, Plaintiffs' omission of the handwritten date next to the signature on this paper fits the plain definition of "an error or

---

[24]    The Board's argument to the contrary is based on the false premise that "the error and omission here. . . is in relation to their actual ballots."  ECF No. 32 at 28.  Not so.  The actual ballot is sealed in a secrecy envelope inside the outer envelope that each Plaintiff signed.  The relevant omission being litigated here is on that outer envelope, and nobody knows what is on the "actual ballots."  *See* ECF No. 27 ¶¶ 4, 51.

omission on any record or paper relating to any . . . other act requisite to voting."  52 U.S.C. § 10101(a)(2)(B).

Moreover, the statute directs that "vote" in this context means "*all action necessary to make a vote effective including*, but not limited to, registration or other action required by State law prerequisite to voting, *casting a ballot, and having such ballot counted and included in the appropriate totals of votes cast* with respect to candidates for public office and propositions for which votes are received in an election." 52 U.S.C. §§ 10101(a)(3)(A), 10101(e) (emphases added).  Therefore, the statute "by definition includes not only the registration and eligibility to vote, but also the right to have that vote counted" and "prohibits officials from disqualifying votes for immaterial errors and omissions."  *Ford*, 2006 WL 8435145, at *11; *see also Common Cause v. Thomsen*, 2021 WL 5833971 at *3 ("[T]he text of § 10101(a)(2)(B) isn't limited to race discrimination *or voter registration*."  (emphasis added)).

The Department of Justice, which has non-exclusive statutory authority to institute civil actions for violations of the Materiality Provision, agrees that the statute extends beyond registration.  The DOJ Justice Manual states that the Materiality Provision "prohibits any person acting under color of law from denying eligible persons the right to vote or failing *or refusing to count their votes*."  U.S. Dep't of Justice, Just. Manual § 8-2.271 (2018), https://www.justice.gov/jm/jm-8-2000-enforcement-civil-rights-civilstatutes#8-2.271 (emphasis added).  Contrary to Defendants' claims, federal courts have repeatedly applied the Materiality Provision to administrative difficulties faced by voters in seeking to have their ballots properly counted, without reading into the statute an unwritten limitation to voter registration paperwork. *See, e.g.*, *Martin*, 347 F. Supp. 3d 1302 (birth year requirement on returned mail ballots); *League of Women Voters of Ark.*, 2021 WL 5312640 (requirement that absentee voters provide

34

duplicative name, address, and date of birth with absentee ballots); *Ford*, 2006 WL 8435145

(requirement to sign both a ballot and a poll book in order to vote).[25]

### D. Ritter and the Board Identify No Precise Government Interest Served by the Date Requirement

Neither Defendant explains precisely why it is necessary to require handwritten dates on

the outer envelopes used to return mail-in ballots.  The Board vaguely asserts that it is "justified

by Pennsylvania's weighty interests in fraud prevention and ensuring the integrity of its

elections."  ECF No. 32 at 38.  Ritter claims the date is "supported by the important state

regulatory interests of preventing fraud, promoting voter confidence, and ensuring orderly

administration of elections."  ECF No. 40 at 39.  But neither attempts to explain *how* the

handwritten-date requirement prevents fraud or ensures election integrity, especially where, as

here, there is no dispute that the 257 ballots at issue were timely received and are otherwise

valid.  *See infra*, pp. 18-22.

In order to burden the fundamental right to vote, the Constitution requires more than

simply *identifying* a supposed governmental interest.  "A court considering a challenge to a state

election law must weigh 'the character and magnitude of the asserted injury to the rights

protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate' against

'the *precise interests put forward by the State* as justifications for the burden imposed by its

rule,' taking into consideration 'the extent to which those interests make it necessary to burden

the plaintiff's rights.'"  *Burdick*, 504 U.S. at 434 (emphasis added) (quoting *Anderson v.*

---

[25]   Defendants' argument that Section 10101(a)(2)(B) pertains only to voter registration relies heavily on *Friedman v. Snipes*, 345 F. Supp. 2d 1356 (S.D. Fla. 2004).  As the Commonwealth detailed in its *Amicus Curiae* brief, this outlier case is distinguishable.  *See* ECF No. 40 at 12-13.  Critically, the District Court in that case reasoned that a voter's attempt to vote after the deadline was not an error made on a "record or paper" requisite to voting. *Friedman*, 345 F. Supp. 2d at 1371-72.  Similarly, in *Rokita*—the only other authority Defendants cite on this point—the District Court concluded that the act of presenting identification at the polls does not implicate concerns over errors or omissions in a "record or paper" requisite to voting.  458 F. Supp. 2d at 841.

*Celebrezze*, 460 U.S. 780, 789 (1983)).  Accordingly, Defendants must explain "'the extent to which those [precise] interests make it necessary to burden the plaintiff's rights.'"  *Burdick*, 504 U.S. at 434 (citation omitted).

Both Defendants have stipulated that none of the 257 disputed ballots are the subject of known or suspected fraud.  ECF No. 27, ¶ 26. If the presence or absence of a handwritten date serves no purpose, as Plaintiffs have argued in their opening brief and in the foregoing materiality section, the lack of a handwritten date on a ballot's outer envelope cannot be an indicator of fraud. The Commonwealth reaffirms in their *amicus* brief that, "the date written serves no useful purpose in limiting fraud." *See* Commw. Br. 6, ECF No. 40 at 11.

The Board's own practice, and prior arguments in *Ritter*, undermine their claim that the date serves a fraud-prevention, or any other, interest.  The Board has followed the Commonwealth's guidance to consider the date requirement satisfied so long as *any* date is written in the designated place on the outer envelope.  *See* Pls.' Br. 5-6, ECF No. 33-1 at 9-10; Commw. Br. 6, ECF No. 40 at 11 ("Indeed, ballots with dates that are 'wrong' are counted; it is only those on which the voter has neglected to write the date that, under the Commonwealth Court's decision, are to be excluded.").  If the Board accepts any date, even one that plainly does not reflect when the voter signed the declaration, the date serves no functional purpose, including fraud prevention.

Moreover, the Board in the *Ritter* litigation argued that disqualifying the 257 disputed ballots was not justified by any government interest.  *See* Appx. 1 at 11.  On November 15, 2021, the Board voted to count the 257 disputed ballots, and thereafter defended its decision throughout Ritter's state court challenge.  *Id*.  The Board's previous, considered determination to count Plaintiffs' votes despite the lack of a date on the envelope, undercuts that body's

36

unexplained reversal and its bare assertion in this litigation that the date serves some unsubstantiated fraud-prevention interest.

Mr. Ritter's arguments fare no better. Ritter, who does not represent the government, also asserts that the handwritten date requirement serves state interests in preventing fraud.[26] *See* Ritter Br. 39-41, ECF No. 34-1 at 47-49. Like the Board, Ritter relies on the same language from the *In re 2020 Canvass* dissent that they unsuccessfully cite in support of their flawed materiality argument. *See* Ritter Br at 39-40, ECF No. 34-1 (quoting *In re Canvass*, 241 A.3d at 1091 (Dougherty, J., concurring); *In re 2,349 Ballots in 2020 Gen. Election*, 241 A.3d 694 (Pa. Commw. Ct. 2020)). However, as previously explained (*see infra*, pp. 18-22), because the date on the envelope need not be the date the voter executed the ballot, it is meaningless, and the signature and return of the ballot are the best and only evidence of timeliness and the person's intent to vote by mail.

Ritter also asserts again that the handwritten date requirement serves government interests in promoting voter confidence and orderly administration of elections, but provides no explanation for how the handwritten date requirement promotes voter confidence or orderly administration of elections (other than the unsubstantiated anti-fraud rationales already discussed, *infra* at pp. 21-22). If anything, disqualifying more than 1% of mail-in ballots when there is no known or suspected fraud will only undermine voter confidence.

Finally, Ritter refers to a federal statute regarding the form of unsworn declarations under penalty of perjury, 28 U.S.C. § 1746, mentions that submitting a false voter declaration is subject to criminal penalties, 25 P.S. § 3553, and states that the handwritten date requirement is "a

---

[26] Ritter intervened in this action to protect his "interest in his elected position" because "Plaintiffs and Defendant do not adequately represent Ritter's interests because they have no direct stake as to which candidate wins the judicial seat." Br. in Support of Mot. to Intervene 5-6, ECF No. 14-3.

security measure that preserves integrity."  Ritter Br. 39-40, ECF No. 34-1 at 47-48.  These statutes do not support the notion that a date requirement somehow is a "security measure that preserves integrity."  As to § 1746, "courts have held that the absence of a date on such documents does not render them invalid if extrinsic evidence could demonstrate the period when the document was signed."  *Peters v. Lincoln Electric Co.*, 285 F.3d 456, 475-76 (6th Cir. 2002) (finding no error in reliance on undated declaration in granting summary judgment, where "situation bears more than sufficient evidence to demonstrate the 'period' in which [the declarant] signed the document"); *see also EEOC v. World's Finest Chocolate Inc.*, 701 F. Supp. 637, 639 (N.D. Ill. 1988) (refusing to find signed but undated EEOC charge invalid, where it was clear that the charge was signed between September 12 and 24).  The court in *World's Finest Chocolate* explained that the signature, not the date is the crucial aspect of a declaration:

> While . . . the date of the statement is crucial to any perjury charge, because a statement may be true if made on one date but perjurious if made on another, it does not follow that the signor must write the date.  Rather, it is simply essential that the date or approximate date (depending on the situation) be demonstrable, as is the case here.

*Id.*  Similarly here, the date a voter signed the voter declaration is known to be between the date the county sent the ballot to the voter and the date the county received the completed ballot back.  The Election Code provision cited by Ritter, 25 P.S. § 3553, confirms that the declaration's legal effect occurs when the declarant signs the declaration, regardless of whether a date is written.   That provision makes it a misdemeanor "[i]f any person *shall sign* [a] . . . declaration of elector on the forms prescribed knowing any matter *declared therein* to be false," without regard to whether the signor wrote a date.  25 P.S. § 3553 (emphases added).  An undated declaration is valid, and Ritter has not articulated how requiring a handwritten date provides additional security.

Because Defendants are utterly unable to explain "the extent to which [their asserted] interests make it necessary to burden the plaintiff's rights," *Burdick*, 504 U.S. at 434 (citation omitted), discarding the 257 disputed ballots would violate Plaintiffs' fundamental right to vote.

## VI.   <u>CONCLUSION</u>

For the foregoing reasons, as well as those set forth in Plaintiffs' February 11, 2022 Motion for Summary Judgment (ECF No. 33), Plaintiffs respectfully request that the Court deny Defendants' Motions for Summary Judgment, grant Plaintiffs' Motion for Summary Judgment, and enter judgment in Plaintiffs' favor.

<div style="margin-left: 50%;">

Respectfully submitted,

</div>

Dated: February 22, 2022

<div style="margin-left: 50%;">

s/ Stephen A. Loney, Jr.

Witold Walczak (No. 62976)
Richard Ting (No. 200438)
Connor Hayes (No. 330447)
ACLU OF PENNSYLVANIA
P.O. Box 23058
Pittsburgh, PA 15222
P: 412-681-7864
vwalczak@aclupa.org
rting@aclupa.org
chayes@aclupa.org

Stephen A. Loney, Jr.  (No. 202535)
Marian K. Schneider (No. 50337)
ACLU OF PENNSYLVANIA
P.O. Box 60173
Philadelphia, PA 19102
P: 215-592-1513
sloney@aclupa.org
mschneider@aclupa.org

*Counsel for Plaintiffs*

</div>

**CERTIFICATE OF SERVICE**

I, Stephen A. Loney, Jr., hereby certify that on the date set forth below, I caused the foregoing

Opposition to Defendants' Motions for Summary Judgment to be served, together with all papers in

support thereof, on all parties of record via the Court's CM/ECF system.

Dated:  February 22, 2022                    s/ Stephen A. Loney, Jr.
                                             Stephen A. Loney, Jr.