## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LINDA MIGLIORI, ET AL.,<br><br>   Plaintiffs,<br><br>and<br><br>ZACHARY COHEN,<br><br>   Intervenor-Plaintiff.<br><br>  v.<br><br>LEHIGH COUNTY BOARD OF ELECTIONS,<br><br>   Defendant,<br><br>and<br><br>DAVID RITTER,<br><br>   Intervenor-Defendant. | No. 5:22-cv-00397-JFL |

**INTERVENOR DEFENDANT DAVID RITTER'S REPLY BRIEF
IN FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT**
Joshua J. Voss (No. 306853)
Shohin H. Vance (No. 323551)
James G. Gorman (No. 328376)
Samantha G. Zimmer (No. 325650)
Francis G. Notarianni (No. 327461)
KLEINBARD LLC
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Ph: (215) 568-2000
Fax: (215) 568-0140
Eml: jvoss@kleinbard.com
svance@kleinbard.com
jgorman@kleinbard.com
szimmer@kleinbard.com
fnotarianni@kleinbard.com
*Attorneys for Intervenor Defendant David Ritter*

**TABLE OF CONTENTS**

I.  ARGUMENT ........................................................................................................................1

    A. Ritter's affirmative defense of laches is properly before the Court. .................................. 1

    B. Plaintiffs' claims are barred by laches. ............................................................................... 3

    C. Plaintiffs claims are barred by res judicata because, among other reasons, they are in privity with the Board. ...................................................................................................... 4

    D. Plaintiffs are unable to offer any persuasive basis for allowing a private right of action under the Materiality Provision. ......................................................................................... 4

    E. Plaintiffs' argument that the Materiality Provision has been violated fails. ........................ 8

II. CONCLUSION ...................................................................................................................10

**TABLE OF AUTHORITIES**

**Cases**

*Alexander v. Sandoval*, 532 U.S. 275 (2001) .................................................................. 5, 7

*Allen v. State Bd. of Elections*, 393 U.S. 544 (1969) ........................................................ 6

*Arkansas State Conference NAACP v. Arkansas Board Of Apportionment*, No. 21-cv-01239, 2022 WL 496908 (E.D. Ark. Feb. 17, 2022) ............................................................... 6

*Beltran Carrero v. Barr*, No. 20-cv-05522, 2021 WL 1164768 (N.D. Cal. March 26, 2021) ....... 9

*C.F. v. Capistrano Unified Sch. Dist.*, 656 F. Supp. 2d 1190 (C.D. Cal. 2009) .............................. 1

*Cartagena v. Crew*, No. 96-cv-3399, 1996 WL 524394 (E.D.N.Y. Sept. 5, 1996) ........................ 7

*Cawthorn v. Cirosta*, No. 22-cv-00050, 2022 WL 511027 (E.D. N.C. Feb. 21, 2022) .................. 4

*Chandler & Price Co. v. Brandtjen & Kluge, Inc.*, 296 U.S. 53 (1935) ......................................... 3

*Common Cause/Ga. v. Billups*, 406 F. Supp. 2d 1326 (N.D. Ga. 2005) ....................................... 6

*Davis v. Comwlth. Election Comm'n*, Case No. 14-cv-00002, 2014 WL 2111065 (D. N. Mar. I. May 20, 2014) .............................................................................................................. 6

*Delegates to the Republican Nat'l Convention v Republican Nat'l Comm.*, No. 12-cv-00927, 2012 WL 3239903 (C.D. Cal. Aug. 7, 2012) ............................................................... 6

*Distillers Co. v. Standard Oil Co.*, No. 63-cv-745, 1964 WL 8167 (N.D. Ohio 1964) .................. 1

*Downingtown Sch. Bd. Precinct Uwchlan 1*, No. 1381-1385, 1395-1399 & 1403 CD 2021, 2022 WL 96156 (Pa. Cmwlth. Jan. 10, 2022), *allocatur denied*, No. 20-24 MAL 2022, 2022 WL 536196 (Pa. Feb. 23, 2022) .................................................................................... 8

*EEOC v. World's Finest Chocolate, Inc.*, 701 F. Supp. 637 (N.D. Ill. 1988) ............................. 8, 9

*Evans v. United Parcel Serv., Inc.*, No. 19-cv-4818, 2022 WL 212346 (N.D. Ill. Jan. 21, 2022) . 9

*Genentech, Inc. v. Bowen*, 676 F. Supp. 301 (D.D.C. 1987) ......................................................... 1

*Gilmore v. Amityville Union Free Sch. Dist.*, 305 F. Supp. 2d 271 (E.D.N.Y. 2004) ................... 7

*Gonzaga Univ. v. Doe,* 536 U.S. 273 (2002) ................................................................................. 5

*Hetherington v. McHale*, 311 A.2d 162 (Pa. Cmwlth. 1973) ....................................................... 9

*In re Canvass of Absentee and Mail-In Ballots of Nov. 3, 2020 Gen. Election*, 41 A.3d 1058 (Pa. 2020) .................................................................................................................................. 8

*Kleisser v. U.S. Forest Serv.*, 157 F.3d 964 (3d Cir. 1998) ............................................................ 4

*Lake Tahoe Watercraft Recreation Ass'n v. Tahoe Reg'l Planning Agency*, 24 F. Supp. 2d 1062 (E.D. Cal. 1998) ........................................................................................................................ 3

*McGovern v. City of Philadelphia*, 554 F.3d 114 (3d Cir. 2009) .................................................. 4

*McKay v. Altobello*, No. 96-cv-3458, 1996 WL 635987 (E.D. La. Oct. 31, 1996) ....................... 7

*McKlinko v. Com., Dep't of State*, No. 14, 15, 17, 18 & 19 MAP 2022 (Pa.) ............................... 9

*Morse v. Republican Party of Virginia*, 517 U.S. 186 (1996) ...................................................... 6

*Peters v. Lincoln Electric Co.*, 285 F.3d 456 (6th Cir. 2002) ........................................................ 8

*Ritter v. Lehigh County Board of Elections*, No. 1322 CD 2021, 2022 WL 16577 (Pa. Cmwlth. Jan. 3, 2022), *allocatur denied*, No. 9 MAL 2022, 2022 WL 244122 (Pa. Jan. 27, 2022) ........ 8

*Salem Eng'g Co. v. Nat'l Supply Co.*, 75 F. Supp. 993 (W.D. Pa. 1948) ...................................... 3

*Schwier v. Cox*, 439 F.3d 1285 (11th Cir. 2006) ...................................................................... 6, 7

*Society Hill Civic Ass'n v. Harris*, 632 F.2d 1045 (3d Cir. 1980) ................................................ 2

*Southwestern Pennsylvania Growth Alliance v. Browner*, 121 F.3d 106 (3d Cir. 1997) ............. 2

*Spangler v. United States*, 415 F.2d 1242 (9th Cir. 1969) ............................................................ 1

*Stein v. Boockvar*, No. 16-cv-6287, 2020 WL 2063470 (E.D.Pa. Apr. 29, 2020) ........................ 3

*Stein v. Cortes*, 223 F. Supp. 3d 423 (E.D. Pa. 2016) ............................................................... 3, 4

*Stewart-Warner Corp. v. Westinghouse Elec. Corp.*, 325 F.2d 822 (2d Cir. 1963) ............... 1, 2, 3

*U.S .v. Kouevi*, 698 F.3d 126 (3d Cir. 2012) .................................................................................. 5

*U.S. v. Root*, 585 F.3d 145 (3d Cir. 2009) .................................................................................... 5

*U.S. v. Territory of Virgin Islands*, 748 F.3d 514 (3d Cir. 3014) .................................................. 4

*United States v. Metro. St. Louis Sewer Dist. (MSD)*, 952 F.2d 1040 (8th Cir. 1992) .................. 2

*Williams v. Keisler*, No. 07-cv-503, 2007 WL 9723294 (E.D.N.Y. Oct. 30, 2007) ...................... 9

*Wisniewski v. Rodale, Inc.*, 510 F.3d 294 (3d Cir. 2007) ............................................................... 5

*Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017) ....................................................................................... 6

**Statutes**

25 P.S. § 3154(f) ............................................................................................................................. 3

28 U.S.C. § 1746 ......................................................................................................................... 8, 9

**Rules**

FRCP 19(a)(1) ................................................................................................................................. 2

FRCP 24 .......................................................................................................................................... 1

Pa.R.A.P. 1114(b)(2) ...................................................................................................................... 8

**Other Authorities**

7C Fed. Prac. & Proc. Civ. § 1921 (3d ed.) ................................................................................. 2, 3

U.S. Dep't of Justice, Just. Manual § 8-2.271 (2018) ..................................................................... 5

David Ritter presents these points in further support of his pending Motion (ECF 34).

## I. ARGUMENT

### A. Ritter's affirmative defense of laches is properly before the Court.

Plaintiffs' argument that Ritter is unable to raise a laches defense in this matter because the Board also did not raise laches, *see* Pl. Resp. Br. at 6-8 (ECF 44), is without merit and undercuts the Federal Rules of Civil Procedure, including Rule 24. Indeed, Plaintiffs' exact argument is sharply refuted by the Second Circuit (and many other courts) as follows:

> The whole tenor and framework of the Rules of Civil Procedure ***preclude application of a standard which strictly limits the intervenor to those defenses and counterclaims which the original defendant could himself have interposed***. Where there exists a sufficiently close relationship between the claims and defenses of the intervenor and those of the original defendant to permit adjudication of all claims in one forum and in one suit without unnecessary delay—and to avoid as well the delay and waste of judicial resources attendant upon requiring separate trials—***the district court is without discretion to deny the intervenor the opportunity to advance such claims***.

*Stewart-Warner Corp. v. Westinghouse Elec. Corp.*, 325 F.2d 822, 827 (2d Cir. 1963) (emphasis added); *see also Spangler v. United States*, 415 F.2d 1242, 1245 (9th Cir. 1969) (citing *Stewart-Warner*); *C.F. v. Capistrano Unified Sch. Dist.*, 656 F. Supp. 2d 1190, 1201-02 (C.D. Cal. 2009) (same); *Genentech, Inc. v. Bowen*, 676 F. Supp. 301, 308 n.20 (D.D.C. 1987) (same); *Distillers Co. v. Standard Oil Co.*, No. 63-cv-745, 1964 WL 8167, at *6-7 (N.D. Ohio 1964) (same).

Plaintiffs' argument otherwise, taken to its logical conclusion, renders Rule 24 superfluous. After all, intervention would serve no purpose if defendant intervenors were wholly boxed in by the arguments and defenses of the original defendants. *See Genentech*, 676 F. Supp. at 308 n.20; *see also Spangler*, 415 F.2d at 1245. This is especially true because by granting Ritter intervention of right, *see infra*, this Court determined his interests were not adequately represented, thus providing Ritter the ability to lodge proper arguments, including laches. *See* FRCP 24; *see also* Order (Feb. 2, 2022) (ECF 18). Further, Ritter's laches defense focuses on the

timeliness of the filing of this action and is "an integral part of the chronological background which underlies all aspects" of this matter. *Stewart-Warner*, 325 F.2d at 827. It is not some extraneous defense that is wholly afield. Accordingly, the defense is properly asserted.

Furthermore, the cases on which Plaintiffs rely for their argument that Ritter cannot invoke laches do not support their position. Before turning to them, however, it is critical to observe that Ritter moved to intervene as *of right*, seeking permissive intervention only in the alternative. *See* Ritter Interv. Br. at 3-6 (ECF 14-3). That motion was unopposed, *see* Motion to Intervene at 1 (ECF 14), and was granted by the Court. *See* Order (Feb. 2, 2022) (ECF 18). Thus, Ritter is a party **as of right**, and not of grace; indeed, had he not intervened, the Court may well have been unable to proceed due to the absence of an indispensable party. *See* FRCP 19(a)(1). This substantially changes the lens through which the Court should examine his rights. *Cf.* 7C Fed. Prac. & Proc. Civ. § 1921 (3d ed.) ("Assertion of Additional Claims by Intervenor") (noting intervenors of right "must be allowed" to assert compulsory counterclaims; also stating "[i]t also should be held that one who intervenes of right may assert a permissive counterclaim").

So oriented, one can observe the cases Plaintiffs principally relied upon are immaterial because (1) they do not indicate whether the intervenor was of right, and (2) they concern either:

- **an intervenor on an administrative appeal, who did not participate before the administrative agency**, *see Southwestern Pennsylvania Growth Alliance v. Browner*, 121 F.3d 106, 122 (3d Cir. 1997); Pl. Resp. Br. at 6;

- **an intervenor with a lack of standing to assert the affirmative defense**,[1] *see United States v. Metro. St. Louis Sewer Dist. (MSD)*, 952 F.2d 1040, 1043 (8th Cir. 1992); *Society Hill Civic Ass'n v. Harris*, 632 F.2d 1045, 1060 (3d Cir. 1980); Pl. Resp. Br. at 7; or

---

[1] Plaintiffs imply Ritter is solely claiming injuries to others. *See* Pl. Resp. Br. at 7-8. This is not so. Ritter is injured in at least three ways by Plaintiffs' unreasonable delay. One, he is the presumptive winner of the election, and should already receive the salary and benefits of the elected position. Two, as a citizen of Lehigh County, he shares in the injury suffered from an under-staffed Common Pleas bench. Third, as a member of the public, he shares in the injury the public suffers when elections are not administered swiftly. *See* Ritter Br. at 21-22 (ECF 34-1).

- **rely upon Supreme Court precedent based on the since-replaced Rules of Equity**. *See Lake Tahoe Watercraft Rec. Ass'n v. Tahoe Reg'l Planning Agency*, 24 F. Supp. 2d 1062, 1067 (E.D. Cal. 1998) (relying on *Chandler & Price Co. v. Brandtjen & Kluge, Inc.*, 296 U.S. 53, 58 (1935)); *Salem Eng'g Co. v. Nat'l Supply Co.*, 75 F. Supp. 993, 1000 (W.D. Pa. 1948) (relying on *Chandler*); Pl. Resp. Br. at 7; *see generally Stewart-Warner*, 325 F.2d at 827 ("[T]he decision in [*Chandler*] was rendered prior to the Supreme Court's enactment in 1938 of the Federal Rules."); 7C Fed. Prac. & Proc. Civ. § 1921 ("The *Chandler* case, of course, can be limited to its facts, involving as they did a permissive intervenor who wished to assert what may have been, in today's terminology, a permissive counterclaim.").

### B. Plaintiffs' claims are barred by laches.

Plaintiffs misconstrue the nature of the laches argument. *See* Pl. Resp. Br. at 8-11. As recognized in *Stein v. Cortes*, 223 F. Supp. 3d 423 (E.D. Pa. 2016), challenges to election processes should be critically examined for timeliness by Federal courts because granting relief risks undermining the vital State interest in the orderly and swift completion of elections. *See* 223 F. Supp. 3d at 427-28, 436-37; *see also Stein v. Boockvar*, No. 16-cv-6287, 2020 WL 2063470, at *20 (E.D. Pa. Apr. 29, 2020). And this sentiment precisely captures Ritter's argument here. Specifically, he advocated that Plaintiffs' delay for several months to apparently even inquire if their ballot had been received,[2] let alone tallied,[3] when *all of that information* was available *before* Election Day, *see* Stip. Facts at ¶¶ 28-29, evidences a delay that is undue in the shadow of the short deadlines in the Election Code. *See, e.g.*, 25 P.S. § 3154(f) (requiring county

---

[2] *See* Stip. Facts at ¶¶ 55-94 (showing only that Plaintiffs Migliori and Richards received emails about receipt of their ballot, but showing no inquiries by the other Plaintiffs about receipt of their ballots). *Compare* Compl. at ¶ 22 (describing website Department of State maintained to show voters whether their ballot had been received), *with* Exhibits 1-5 to Compl. (Plaintiffs' declarations; none attesting they visited the website).

[3] Plaintiff Migliori received an email on October 29, 2021 advising that her ballot had been cancelled. *See* Stip. Facts at ¶¶ 61-62; Exhibit M. Also, of note, no later than November 20, 2021, the identity of all of the undated-declaration electors had been compiled into a list, showing such information was publicly available. *See* Stip. Facts at ¶ 25. Finally, Plaintiff Richards was on express notice of an issue with his ballot no later than November 22, 2021, when he was called to testify in the state trial court. *See* Stip. Facts at ¶¶ 36-37; Exhibit G.

boards, absent challenges, to certify election results within **five days** of unofficial certification).[4]

## C. Plaintiffs claims are barred by res judicata because, among other reasons, they are in privity with the Board.

Plaintiffs' contention that they are not in privity with the state court parties overlooks that the Board, a government body charged with administering elections for voters, adequately represented their interests. *See* Pl. Resp. Br. at 12-13. Boards of Elections are statutorily created for the purpose of carrying out the provisions of the Election Code. 25 P.S. § 2642. It is presumed that a government entity charged by law with representing a policy is adequate to do so. *U.S. v. Territory of Virgin Islands*, 748 F.3d 514, 520 (3d Cir. 3014); *Kleisser v. U.S. Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998). Accordingly, boards of election are presumed to adequately represent interests for election-related challenges. *See Cawthorn v. Cirosta*, No. 22-cv-00050, 2022 WL 511027 (E.D. N.C. Feb. 21, 2022). Plaintiffs have an interest in having their votes counted in an efficient and uniform process. The Board, which is charged with computing voters' ballots, has that same interest and adequately represented that interest below.

## D. Plaintiffs are unable to offer any persuasive basis for allowing a private right of action under the Materiality Provision.

Plaintiffs do not—and cannot—dispute that they are entitled to seek relief *only* if the Materiality Provision creates both a private right and a private remedy. *See McGovern v. City of Philadelphia*, 554 F.3d 114, 119 (3d Cir. 2009). And, as accurately relayed by Plaintiffs, the Materiality Provision is couched in prohibitory terms—*i.e.*, "Congress thus specifically

---

[4] Plaintiffs suggest they only delayed four days. *See* Pl. Resp. Br. at 9. Not so. *At worst*, Plaintiffs should have known no later than January 3, 2022—the day of the Commonwealth Court opinion—that their ballots were not going to be tallied. The notion that they could wait until the Pennsylvania Supreme Court weighed in on the *discretionary* appeal request to first act, if adopted, would lead to the type of extended delays the Election Code is designed to eliminate, which, in turn, would cause this Court to "effectively … nullify the Pennsylvania Election Code provisions applied by the State Courts and Boards[.]" *See Stein*, 223 F. Supp. 3d at 436.

4

prohibited state policies that would deny a person's fundamental right to vote on immaterial grounds[.]" Pl. Resp. Br. at 26. But that is precisely the type of statutory language that reflects an intent to *not* create a personal right. Similarly insufficient for a finding of a private right is a statute merely "identifying the persons benefitted by the federal right[,]" which, according to Plaintiffs, is the operative thrust of the Materiality Provision. *Compare* Pl. Resp. Br. at 26, *with Gonzaga Univ. v. Doe,* 536 U.S. 273, 283 (2002).[5]

As for the second inquiry, Plaintiffs' argument that the Materiality Provision provides a private remedy is similarly unmoored from both text and precedent. First, aside from offering their say-so that the express grant of enforcement authority to the Attorney General "changes nothing[,]" Pl. Resp. Br. at 26, Plaintiffs ignore the "strong presumption" against an implied private rights of action that is created when the Attorney General is vested with the power to bring an action under a statute. *See Wisniewski v. Rodale, Inc.*, 510 F.3d 294, 305 (3d Cir. 2007) ("[A]gency enforcement creates a strong presumption against implied private rights of action that must be overcome.") (citing *Alexander v. Sandoval*, 532 U.S. 275, 290 (2001)). Their failure to

---

[5] Plaintiffs' representation that the Department of Justice Manual "states that the Materiality Provision 'prohibits any person acting under color of law from denying eligible persons the right to vote or failing or refusing to count their votes'" is a gross mischaracterization. Pl. Resp. Br. at 34 (quoting U.S. Dep't of Justice, Just. Manual § 8-2.271 (2018)). That section of the Manual provides, in relevant part, as follows: "*[t]he Voting Rights Act* of 1965 contains a number of protections of the right to vote, 52 U.S.C. §§ 10301 to 10702, as do the earlier [ ] Civil Rights Acts, 52 U.S.C. §§ 10101, 20701 to 20706. Specifically, *the Voting Rights Act* … prohibits any person acting under color of law from denying eligible persons the right to vote or failing or refusing to count their votes[.]" Manual § 8-2.271 (emphasis added). Given that the Manual expressly distinguishes the Voting Rights Act from the Civil Rights Act, identifies the Materiality Provision as part of the Civil Rights Act, and then proceeds to discuss only those rights afforded under the *Voting Rights Act*, the suggestion that the above statement applies to any provision of the Civil Rights Act is baseless. Plaintiffs are fully aware of the distinction. *See* Pl. Resp. Br. 17-18 n.14. In any event, the Manual is not controlling on this Court. *See U.S .v. Kouevi*, 698 F.3d 126, 138 (3d Cir. 2012); *U.S. v. Root*, 585 F.3d 145, 152-53 (3d Cir. 2009).

even address this strong presumption is alone sufficient to find absence of a private right of action.[6]

Plaintiffs also argue that "there is overwhelming authority" for private enforcement here because "[t]he Second, Fifth, Eighth, and Eleventh Circuits have all resolved private claims under Section 10101 on the merits."[7] Setting aside that the decisions they cite pre-date *Sandoval* and, thus, are of limited precedential value, *see Ziglar*, 127 S.Ct. at 1855, none of them offer a discussion of whether a private right of action exists. Plaintiffs' argument is particularly untenable in light of district court decisions from both the Second and Fifth Circuit expressly holding that Section 101 is ***not*** privately enforceable, meaning Plaintiffs' argument necessarily depends on the assumption of a concerted disregard for precedent in the lower courts of those circuits. *See Gilmore v. Amityville Union Free Sch. Dist.*, 305 F. Supp. 2d 271, 279 (E.D.N.Y.

---

[6] Plaintiffs also posit that "[t]he Supreme Court and other courts have repeatedly held that a private right of action can co-exist with Attorney General enforcement authority especially in the voting rights context." Pl. Resp. Br. at 26-27 (citing *Allen v. State Bd. of Elections*, 393 U.S. 544 (1969), *Morse v. Republican Party of Virginia*, 517 U.S. 186 (1996), and *Schwier v. Cox*, 439 F.3d 1285 (11th Cir. 2006)). None of the cases they cite are of much use. *Allen*, as explained in Ritter's opening Brief, is part of the "*ancien regime*" of private right of action jurisprudence that has long been abrogated. *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017). Similarly, *Morse* was predicated almost entirely on *Allen* and, thus, "[m]uch like *Allen* itself, the *Morse* approach to the private-right-of-action analysis does not survive Sandoval and its progeny." *Arkansas State Conference NAACP v. Arkansas Board Of Apportionment*, No. 21-cv-01239, 2022 WL 496908 (E.D. Ark. Feb. 17, 2022) (explaining that *Allen* has been relegated to the "dustbin of history"). And given that *Schweir* relies entirely on *Allen* and *Morse*, it is unhelpful.

[7] The district court decisions Plaintiffs cite also do not alter the calculus. First, since Georgia is in the Eleventh Circuit, which is the only circuit to recognize a private right of action, it is unsurprising that a federal court in that state would hold the Materiality Provision could be enforced by private action. *Common Cause/Ga. v. Billups*, 406 F. Supp. 2d 1326, 1371 (N.D. Ga. 2005). Second, while the district court for the Northern Mariana Islands adopted *Schwier*'s construct, it does not offer any additional analysis and it appears that the court's construct has never been adopted elsewhere. *See Davis v. Comwlth. Election Comm'n*, Case No. 14-cv-00002, 2014 WL 2111065, *at 9-10 (D. N. Mar. I. May 20, 2014). Third, *Delegates to the Republican Nat'l Convention v Republican Nat'l Comm.*, No. 12-cv-00927, 2012 WL 3239903, at *5 n.3 (C.D. Cal. Aug. 7, 2012), involved the Voting Rights Act, which, Plaintiffs acknowledge, is a distinct statutory scheme from the Civil Rights Act. *See* Pl. Resp. Br. at 17 n.14.

6

2004); *Cartagena v. Crew*, No. 96-cv-3399, 1996 WL 524394, at *3 n.8 (E.D.N.Y. Sept. 5, 1996); *McKay v. Altobello*, No. 96-cv-3458, 1996 WL 635987, at *2 (E.D. La. Oct. 31, 1996).

Next, Plaintiffs urge this Court to adopt the holding in *Schwier v. Cox*, 439 F.3d 1285 (11th Cir. 2006), because—unlike the numerous decisions refusing to permit private enforcement of the Materiality Provision—*Schwier* traced the "long history of private enforcement[]" and is squarely grounded in extensive analysis of "legislative history" of the 1957 amendment to the Civil Rights Act. Pl. Resp. Br. at 27-28. Yet again, it is precisely **because** *Schwier* employed this outmoded analytical approach that it is at odds with recent Supreme Court precedent. Specifically, in holding that a private right of action may be found only if clearly conferred by statute, *Sandoval* cautioned against ascribing undue weight to the "contemporary legal context" surrounding a statute's enactment. *Sandoval*, 532 U.S. at 287-88. Such considerations, the Court admonished "matter[] only to the extent [they] clarify text." *Id.* at 288. Along these same lines, Plaintiffs' maintain that the *Schwier* Court did not, in fact, ground its decision on *Allen* and *Morse*, but rather, "applied the modern-day, presently applicable test for determining the existence of a private right of action …." Pl. Resp. Br. at 28. Yet, a review of the relevant parts of *Schwier* confirms the Court did not engage in the textual analysis mandated in *Sandoval*.

Finally, aside from deriding the authority concluding the Materiality Provision may **not** be enforced by private action as nothing more than "[a] handful of wayward decision," Plaintiffs do not—and cannot—argue the holdings in Ritter's cited cases do not comport with *Sandoval*. Pl. Resp. Br. at 29-30. Plaintiffs may be correct those decisions "contain[] scant reasoning[;]" Pl. Resp. Br. at 30; but, unlike *Schwier* they are in accord with controlling jurisprudence.[8]

---

[8] Plaintiffs make an attempt to square their insistence on an implied right of action with prevailing jurisprudence, arguing "*Sandoval* actually supports finding a private right of action under [the Materiality Provision,]" because Section 101 is "functionally identical" to Section 601

7

**E.      Plaintiffs' argument that the Materiality Provision has been violated fails.**

Even if this Court reaches the merits of the Materiality Provision claim, Plaintiffs rejoinder in this regard does not undermine the conclusion that the challenged provisions of the Election Code are, in fact, material to assessing an elector's qualifications to vote.[9] As a preliminary matter, however, it bears emphasizing that Plaintiffs continue to obfuscate the statutory requirement at issue, which requires a ballot to be accompanied by ***a voter declaration*** signed and dated by the elector—not, as Plaintiffs repeatedly suggest, merely an "envelope." The fact that the voter declaration is affixed to the outer envelope in which the ballot is enclosed, does not change the fact that, in the end, it constitutes an attestation to the truth of certain facts.[10]

---

of the Civil Rights Act, which the Court agreed may be enforced by private individuals. Pl. Resp. Br. at 28 n.21. This contention is without merit. Section 601's phraseology is directed at the specific class of persons whose rights are protected, while the Materiality Provision focuses on the persons regulated. This distinction is central to a *Sandoval* analysis. *See* 532 U.S. at 289.

[9] Plaintiffs and Cohen imply the decision on how to treat undated declarations on mail-in and absentee ballots in *Ritter v. Lehigh County Board of Elections*, No. 1322 CD 2021, 2022 WL 16577 (Pa. Cmwlth. Jan. 3, 2022), *allocatur denied*, No. 9 MAL 2022, 2022 WL 244122 (Pa. Jan. 27, 2022), does not reflect a proper interpretation of *In re Canvass of Absentee and Mail-In Ballots of Nov. 3, 2020 Gen. Election*, 41 A.3d 1058 (Pa. 2020). *See* Pl. Resp. Br. at 18-20; Cohen Resp. Br. at 1 (ECF 45). This is not so. First, the Pennsylvania Supreme Court *refused* to review *Ritter*, *see* 2022 WL 244122 (Pa. Jan. 27, 2022), signaling the decision does not "conflict[] with a holding of the Pennsylvania Supreme Court[.]" *See* Pa.R.A.P. 1114(b)(2). Second, since the decision in *Ritter*, the Commonwealth Court has *again* refused to permit the counting of a ballot with an undated voter declaration, and then—**just two days ago**—the Supreme Court refused to review that decision. *See In re Election in Region 4 for Downingtown Sch. Bd. Precinct Uwchlan 1*, No. 1381-1385, 1395-1399 & 1403 CD 2021, 2022 WL 96156, at *3 (Pa. Cmwlth. Jan. 10, 2022) (plurality), *allocatur denied*, No. 20-24 MAL 2022, 2022 WL 536196 (Pa. Feb. 23, 2022). Thus, Plaintiffs' and Cohen's suggestion that a dated voter declaration is unimportant—or unresolved—under Pennsylvania caselaw is without support.

[10] Plaintiffs mistakenly assert that the dated declaration requirement is not a security measure, suggesting as such because in a somewhat related context, undated declarations under 28 U.S.C. § 1746 are not always invalid. *See* Pl. Resp. Br. at 38. For this proposition, Plaintiffs rely upon two cases in which courts held the date of execution of the undated declaration could be approximated. *See Peters v. Lincoln Electric Co.*, 285 F.3d 456 (6th Cir. 2002); *EEOC v. World's Finest Chocolate, Inc.*, 701 F. Supp. 637 (N.D. Ill. 1988). However, in *Peters*, the Court merely held that the undated declaration could be relied upon in granting summary judgment. 285 F.3d at 475-76. Further, in *World's Finest Chocolate*, the Court held that an undated EEOC charge was not invalid where it was challenged two years after the fact and the date of execution

8

In terms of the substance of Plaintiffs' response, three points bear emphasizing. First, Plaintiffs rely heavily on the amicus brief from Pennsylvania Attorney General Josh Shapiro, supporting invalidation of a Pennsylvania law. His views, however, should not be given any weight or credence. Under Pennsylvania law, "the Attorney General is without power or authority, even though he is of the opinion that a statute is unconstitutional, to implement his opinion in such a manner as to effectively abrogate or suspend such statute which is presumptively constitutional until declared otherwise by the Judiciary." *Hetherington v. McHale*, 311 A.2d 162, 168 (Pa. Cmwlth. 1973), *rev'd on other grounds*, 329 A.2d 250 (Pa. 1974). As *Hetherington* explained, "[i]f the Attorney General in his opinion believes that a statute is unconstitutional, he has the right and indeed the duty to either cause to be initiated an action in the courts of this Commonwealth and thus obtain judicial determination of the issue or he may prepare, for submission to the General Assembly, such revision of the statute as he may deem advisable." *Id.* at 167. Attorney General Shapiro has done neither and, in fact, is currently defending the constitutionality of Act 77 in a matter pending in the Pennsylvania Supreme Court. *See McKlinko v. Com., Dep't of State*, No. 14, 15, 17, 18 & 19 MAP 2022 (Pa.).[11]

Second, Plaintiffs' explanation of how an individual's eligibility to vote is assessed

---

could be approximated in a two-week period. 701 F. Supp. at 639; *see also id.* ("the date of the statement is crucial to any perjury charge, because a statement may be true if made on one date but perjurious if made on another[.]"). Neither *Peters* nor *World's Finest Chocolate* can be extrapolated to contend a date is not necessary or not a security measure in the present context. First, undated, unsworn declarations under 28 U.S.C. § 1746 can be and often are invalidated where a date is missing. *See, e.g.*, *Evans v. United Parcel Serv., Inc.*, No. 19-cv-4818, 2022 WL 212346, at *2 (N.D. Ill. Jan. 21, 2022); *Beltran Carrero v. Barr*, No. 20-cv-05522-DMR, 2021 WL 1164768, at *7 (N.D. Cal. March 26, 2021); *Williams v. Keisler*, No. 07-cv-503, 2007 WL 9723294, at * 4 (E.D.N.Y. Oct. 30, 2007). Second, an approximation of the date is insufficient for canvassing and counting ballots: the exact date ensures the voter is qualified to vote when the ballot is completed. *See* Ritter Br. at 35-36, 39-41; Ritter Br. in Opposition at 9-13, 16-18.

[11] Filings from *McKlinko* are available online: https://www.pacourts.us/news-and-statistics/cases-of-public-interest/doug-mclinko-v-commonwealth-of-pennsylvania-dept-of-state.

9

illustrates why a dated voter declaration is necessary. They correctly note "the Board determines eligibility to vote before even sending the ballot package to the voter[,]" Pl. Resp. Br. at 21, but in the very next sentence explain, "Pennsylvania already has established *Election Day* as the point in time against which to measure the elector's eligibility[.]" *Id.* It is precisely because "[t]he Election Code separately establishes Election Day as the relevant date against which to measure eligibility[,]" that the initial determination of eligibility made by the boards are provisional, in that whether a voter is qualified depends on the state of affairs on election day.

Turning to Plaintiffs' next point—that the fraud-prevention interests are insufficient to justify the minimal burden of placing a date next to a signature—this assertion is without merit. Contrary to this suggestion, the fraud-prevention interest is not "vague," Pl. Resp. Br. at 21, as explained in detailed submissions to this Court outlining the attestations contained in a voter declaration and relevance of the date on which they are made. Equally baseless is the suggestion that Ritter's defense of the validity of his election—after all challenges in state court have been resolved in his favor—somehow "stoke[s] unfounded fears of non-specific voter fraud …." *Id.* There are countless barriers to entry in the election system, most of which are designed to protect the integrity of the election system and prevent fraud. Mounting a defense against an attempt to strike strictures that have been enacted by the General Assembly and survived *several rounds* of state-court litigation is a far cry from stoking unfounded fears.

## II.     CONCLUSION

Intervenor Defendant Ritter respectfully requests that this Court grant his Motion for Summary Judgment (ECF 34), deny Plaintiffs' Motion, and enter judgment in his favor.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: February 22, 2022 | /s/ Joshua J. Voss<br>Joshua J. Voss (No. 306853)<br>Shohin H. Vance (No. 323551)<br>James G. Gorman (No. 328376)<br>Samantha G. Zimmer (No. 325650)<br>Francis G. Notarianni (No. 327461)<br>KLEINBARD LLC<br>Three Logan Square<br>1717 Arch Street, 5th Floor<br>Philadelphia, PA 19103<br>Ph: (215) 568-2000<br>Fax: (215) 568-0140<br>Eml: jvoss@kleinbard.com<br>svance@kleinbard.com<br>jgorman@kleinbard.com<br>szimmer@kleinbard.com<br>fnotarianni@kleinbard.com<br><br>*Attorneys for Intervenor Defendant David Ritter* |

## CERTIFICATE OF SERVICE

      I hereby certify that on February 25, 2022, I served the Reply Brief in Further Support of Motion for Summary Judgment on all parties via the Court's CM/ECF system.

| | |
|---|---|
| Dated: February 25, 2022 | /s/ Joshua J. Voss<br>Joshua J. Voss (No. 306853)<br>KLEINBARD LLC<br>Three Logan Square<br>1717 Arch Street, 5th Floor<br>Philadelphia, PA 19103<br>Ph: (215) 568-2000<br>Fax: (215) 568-0140<br>Eml: jvoss@kleinbard.com<br><br>*Attorneys for Intervenor Defendant David Ritter* |