**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LINDA MIGLIORI, FRANCIS J. FOX, RICHARD E. RICHARDS, KENNETH RINGER, and SERGIO RIVAS, | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 5:22-cv-00397-JFL |
| and | ) ) | |
| ZACHARY COHEN, | ) ) | |
| Intervenor-Plaintiff, | ) ) | |
| v. | ) ) | |
| LEHIGH COUNTY BOARD OF ELECTIONS, | ) ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| DAVID RITTER, | ) ) | |
| Intervenor-Defendant. | ) | |

**REPLY BRIEF IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Stephen A. Loney, Jr.  (No. 202535)
Marian K. Schneider (No. 50337)
ACLU OF PENNSYLVANIA
P.O. Box 60173
Philadelphia, PA 19102
P: 215-592-1513
sloney@aclupa.org
mschneider@aclupa.org

Witold Walczak (No. 62976)
Richard Ting (No. 200438)
Connor Hayes (No. 330447)
ACLU OF PENNSYLVANIA
P.O. Box 23058
Pittsburgh, PA 15222
P: 412-681-7864
vwalczak@aclupa.org
rting@aclupa.org
chayes@aclupa.org

*Counsel for Plaintiffs*

Plaintiffs respectfully submit this Reply in further support of their Motion for Summary Judgment to address issues raised in Intervenor-Defendant David Ritter's Brief in Opposition to Plaintiffs' Motion for Summary Judgment.[1]  ECF No. 43.  Plaintiffs have already demonstrated why most of Ritter's arguments are without merit in their Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment, ECF No. 33-1, and in Plaintiffs' Memorandum of Law in Opposition to Defendants' Motions for Summary Judgment, ECF No. 44.  Those briefs are incorporated by reference, and here we address only new points raised in Ritter's Opposition.

## I.      ARGUMENT

### A.   Ritter's *Ejusdem Generis* Argument Ignores the Materiality Provision's Unambiguous Language That Applies to Records Containing Declarations Made Requisite to Voting.

Ritter's new-found reliance on the interpretive principle of *ejusdem generis* is misguided. That principle does not apply to alter the unambiguous meaning of statutory text.  Rather, the statute is "most consistent and coherent" when a general term "is read to mean what it literally says."  *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 227-28 (2008).  Here, the Materiality Provision's plain language applies to "any record or paper relating to *any application, registration, or other act requisite to voting*," 52 U.S.C. § 10101(a)(2)(B) (emphasis added). Ignoring this language, Ritter initially argued that "Section 101 applies *only* to voter registration laws and regulations."  ECF No. 34-1, at 34 (emphasis added).  Unable to support such a sweeping statement, which would read the phrase "other act requisite to voting" out of the

---

[1]   The principal Defendant, Lehigh County Board of Elections ("the Board") did not respond in kind to Plaintiffs' motion. While the Board labeled its February 11, 2022 brief as a memorandum of law both in support of its own cross-motion for summary judgment and in opposition to Plaintiffs' motion, ECF No. 32, that brief was filed *before* Plaintiffs' motion, ECF No. 33.  The Board has therefore failed to satisfy its burden in opposition to summary judgment pursuant to the burden-shifting framework of *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

statute, Ritter substantially narrows his argument in response to Plaintiffs' motion.  He now argues that the principle of *ejusdem generis* limits the meaning of "other act requisite to voting" to exclude the envelope-dating requirement.  ECF No. 43 at 6-7.  Neither his initial argument nor the creative statutory interpretation narrowing the statute's reach is consistent with the CRA's plain language.

*Ejusdem generis* is "the principle that 'when a general term follows a specific one, the general term should be understood as a reference to subjects akin to the one with specific enumeration.'"  *Ali*, 552 U.S. at 223 (quoting *Norfolk & W. Ry. Co. v. Train Dispatchers*, 499 U.S. 117, 129 (1991)).  But this principle cannot be used to alter statutory language that is clear on its face.  *Id.* at 227-28.

As more fully explained in Plaintiffs' prior briefs, ECF No. 33-1, at 13-14; ECF No. 44, at 33-35, and in the Commonwealth's *Amicus Curiae* brief, ECF No. 40, at 12-14, the Materiality Provision unambiguously applies to "any . . . act requisite to voting."  Applying the statute as written to cover the declaration form on the outer mail-in ballot envelope squarely fits this definition.  The statute already is limited to "records and papers" in connection with acts "requisite to voting," and there is no apparent further limiting characteristic that can be discerned from the reference to "application" and "registration."  *See Ali*, 552 U.S. at 225-26 (holding *ejusdem generis* cannot apply when "it is not apparent what common attribute connects the specific items" in the statute).

Ritter tellingly identifies no limiting common characteristic of "application" and "registration," and simply makes the conclusory statement that "a voter declaration accompanying a completed mail-in ballot is in no way similar to an application or registration paper."  ECF No. 43, at 7.  While Ritter now concedes, as he must, that inclusion of the phrase

2

"other act requisite to voting" adds *something* beyond applications and registrations, he does not explain *what* this phrase would mean under his pinched interpretation.  Meanwhile, Ritter's own motion asks the Court to read this phrase out of the CRA entirely.  *See* ECF No. 34-1, at 34 (arguing, without qualification, that the Materiality Provision "applies exclusively to voter registration laws").  In neither case does Ritter adequately explain how completing a form that must be completed or else risk disenfranchisement is anything other than an "act requisite to voting." Under any rational reading of this phrase, the state law directive that voters "fill out, date and sign" the outer envelope under 25 P.S. § 3150.16(a) qualifies.

This debate must be resolved by interpreting the language used by Congress "to mean what it literally says."  *Ali*, 552 U.S at 227-28.  The Court should decline Ritter's invitation to replace the clear statutory phrase "any application, registration, or other act requisite to voting" (52 U.S.C. § 10101(a)(2)(B)) with "voter registration applications and other similar papers and records," (ECF No. 43, at 4), under the guise of *ejusdem generis*.  The latter phrase is pure fiction.

Moreover, Ritter cannot point to a single case adopting such a pinched reading of the Materiality Provision, by applying *ejusdem generis* or any other method of statutory construction.  *Friedman v. Snipes*, the case on which Defendants primarily rely, involved a *deadline* to submit ballots, *not* an error or omission "on any record or paper."  345 F. Supp. 2d 1356, 1371-72 (S.D. Fla. 2004); *see also* ECF No. 40, at 12-13 (distinguishing *Friedman*).  And *Condon v. Reno*, 913 F. Supp. 946 (D.S.C. 1995), did not address the Materiality Provision under § 10101(a)(2)(B) at all.  The other cases Ritter references, *see* ECF No. 43, at 4 n.2, simply recite that the CRA was originally aimed at eliminating discriminatory practices in the voter registration process.  "But the text of § 10101(a)(2)(B) isn't limited to race discrimination or

3

voter registration," *Common Cause v. Thomsen*, No. 19-CV-323, 2021 WL 5833971, at *3 (W.D. Wis. Dec. 9, 2021), and none of the cases Ritter cites held otherwise.[2]  Ritter's statutory interpretation is unsupported by case law or plain statutory language.

**B.  State Agency Pronouncements about State Interests Outweigh Candidate-Intervenor Ritter's State Interest Musings.**

Ritter argues in the alternative that, if the Materiality Provision applies, omission of a date on a ballot outer envelope is material within the meaning of the CRA.  In so doing, Ritter presents new theories of why the envelope-dating requirement should matter to the state, asking the Court to credit his own musings about the state's interests, while simultaneously asking this Court to ignore state officials' pronouncements about the Commonwealth's lack of interest in this provision.  ECF No. 43, at 13-16.  Remarkably, Ritter—a self-interested political candidate who holds no authority in the state—wants to be the lone voice defining the state's interests in this area.  Meanwhile, the people and agencies charged with administering elections have disclaimed any state interest in using handwritten dates on the outer envelope to determine voter qualifications.  *See* ECF No. 44, at 16-18 (outlining materiality concessions by state agencies).

Leaving Ritter's audacity aside, he fails to account for the Commonwealth's pronouncements that undercut his argument.  Ritter goes to great lengths in his Opposition to argue why the Court should ignore a guidance document from Johnathan Marks of the

---

[2]    Plaintiffs, on the other hand, have pointed to several instances where federal courts applied the Materiality Provision outside the context of voter registrations. *See*, *e.g.*, *Thomsen*, 2021 WL 5833971, at *3; *Ford v. Tenn. Senate*, No. 06-2031, 2006 WL 8435145, at *11 (W.D. Tenn. Feb. 1, 2006) (finding that the statute "by definition includes not only the registration and eligibility to vote, but also the right to have that vote counted").  Ritter's only response is to misrepresent that *Ford* is the only case to reach this conclusion. In addition to ignoring *Thomsen*, a case Ritter previously cited in his cross-motion, this argument fails to deal with the fact that other courts have applied the Materiality Provision to papers and records requisite to submitting mail-in or absentee ballots.  *See*, *e.g.*, *League of Women Voters of Ark. v. Thurson*, No. 20-cv-5174, 2021 WL 5312640 (W.D. Ark. Nov. 15, 2021) (requirement that absentee voters provide duplicative name, address and birthdate with absentee ballots); *Martin v. Crittenden*, 347 F. Supp. 3d 1302 (N.D. Ga. 2018) (birth year requirement on returned mail ballots).

Department of State, ECF No. 27-5, and testimony from Lehigh County Chief Clerk Tim Benyo, ECF No. 27-6, at 61:5-62:14.  But notably absent from Ritter's Opposition is any argument dealing with **the Commonwealth itself** in this case specifically disclaiming any utility of the envelope-dating requirement.[3]  *See* ECF No. 40, at 12 ("the date written by the voter on the outer envelope is not a useful tool in preventing fraud").

The authorities Ritter cites in support of ignoring Marks' and Benyo's statements are inapposite because the Court need not give deference to any legal analysis underlying their statements to conclude that the dates written on mail-in ballot outer envelopes are not material. Marks' and Benyo's statements establish how the envelope-dating requirement is actually enforced.  Because it is undisputed that the state will accept *any* date on the outer envelope, even clearly incorrect dates, it is indisputable that the date is not material to verifying voter eligibility or anything else.[4]

### C. Omission of a Handwritten Date is Not Material in Determining Whether an Individual is Qualified to Vote.

Even if the Court were inclined to ignore the word of relevant state agencies and consider self-serving arguments from a single political candidate, Ritter remains unable to articulate a legitimate basis for finding materiality.  With little support for the so-called "weighty interests"

---

[3]    The Commonwealth's position is presented here by the Pennsylvania Attorney General's Office, one of two Commonwealth agencies with delegated authority over key aspects of election administration in Pennsylvania: the Secretary of the Commonwealth has authority for developing procedures for registering voters and determining eligibility under 25 Pa.C.S.A. § 1327; and the Attorney General has enforcement authority for violations of the Election Code under 25 P.S. § 3555 and 25 Pa.C.S.A. § 1801.

[4]    Ritter's interpretation of the Election Code would effectively require voters to write a *correct* date, *see* ECF No. 43 at 15, contrary to the approach actually taken in the Commonwealth.  Such an approach would be impossible to enforce.  And even if county election boards *could* determine whether voters are actually signing their envelopes on the precise date written next to their signatures, this approach would lead to disenfranchisement of even more voters.  Ritter's interpretation only highlights the immateriality of the date requirement and the unjustified, harsh outcome of strictly applying it.

that formed the basis of the materiality argument in Defendants' opening briefs, *see* ECF No. 40, at 10-12 (refuting "weighty interests"); ECF No. 44, at 18-21 (same), Ritter has now conceived three hypothetical scenarios that he wrongly contends support a finding of materiality.  None of them supports a materiality finding here or justifies the infringement on Plaintiffs' fundamental right to vote.[5]  Ritter's theories about how fraud *might* occur is insufficient to deny the rights of the voters whose right to vote is at stake *in this case*.  All parties here agree there is no evidence of actual or suspected fraud with the 257 disputed ballots.  ECF No. 27, at ¶ 26.  The Materiality Provision prohibits denying "the right of *any individual* to vote" based on an error or omission that is not material in determining if that individual is qualified to vote, 52 U.S.C. § 10101(a)(2)(B) (emphasis added), and Ritter has not made any arguments that the omitted date is material with respect to any of the *actual* voters who cast the 257 disputed ballots in this case.

Further, Ritter's hypothetical scenarios are fatally flawed.  First, Ritter imagines a voter who received a mail in ballot and between the time of receipt and Election Day, the voter permanently moved out of Pennsylvania.[6]  Second, Ritter posits an absurdly unlikely scenario involving an eligible incarcerated voter who is convicted of a felony in the precise and extremely short window between the submission of the signed and dated declaration and Election Day.[7]

---

[5]   Ritter uses the same theoretical fraud risk under these hypothetical scenarios to argue that state interests in enforcing the envelope-dating requirement justify infringement on Plaintiffs' fundamental constitutional right to vote.  *See* ECF No. 43, at 18.  These imaginary fraud scenarios fail to support Ritter's summary judgment arguments as to Plaintiffs' constitutional claim for the same reasons that they fail under the CRA materiality analysis.

[6]   Ritter incorrectly cites the Election Code and erroneously states that counties must send ballots out by the 45th day before the election.  ECF No. 43 at 8.  Ritter confuses the longer deadline that applies to absentee voters under the Uniformed and Overseas Citizens Absentee Voting Act (UOCAVA) with the much tighter 2-week deadline for civilian, domestic mail ballots. 25 P.S. §§ 3146.5, 3150.15.  In reality, the amount of time a voter would have to conceive of a permanent move and execute it is much shorter, and makes Ritter's hypothetical practically impossible.

[7]   This ignores the reality that eligible voters in prison have an extremely hard time voting.  A 2021 study found that out of 25,000 individuals incarcerated in county jails who were eligible to vote in the

Finally, Ritter suggests that a voter could lie about whether he voted already in the election but offers no hypothetical in support of that improbable scenario.[8]  In each instance, Ritter ignores that the only question presented here is whether voters should be disenfranchised where the **only** issue is omission of a date with the voter's signature on the outer envelope.  Each of Ritter's scenarios posits the occurrence of a disqualifying event unrelated to whether a voter writes a date on their ballot outer envelope.  And in each scenario, inclusion of an omitted date on the outer envelope would not change whether the disqualifying event occurred.

Ritter could only articulate two possible farfetched scenarios in which the precise timing when the voter signed the voter declaration *might theoretically* be relevant to whether the declaration is truthful.  But each scenario involves an occurrence of the disqualifying event (*e.g.*, the change in residence or felony conviction) and ***not*** inclusion or omission of a handwritten date that could even potentially be relevant to eligibility.  Once disqualified, it does not matter when they signed the declaration or whether the declarant includes or omits that date. Whether a voter wrote an accurate date, a wrong date, or no date is not indicative of whether one of those hypothetical disqualifying events has occurred.  And as explained in Plaintiffs' prior briefing, that disqualification is measured on Election Day, not on the date the voter purportedly signed the declaration.  *See* ECF No. 44, at 21 (citing Pa. Const. art. VIII, § 1; 25 P.S. §§ 1301(a), 2811).

---

entire state of Pennsylvania in the 2020 election, only 52 were actually able to request a ballot.  *See* All Voting is Local, Committee of Seventy, Common Cause, *Ballots for All: Holding Pennsylvania County Jails Accountable for Providing Ballot Access*, at 3, Sep. 2021 available at https://allvotingislocal.org/media/ballots-for-all-holding-pennsylvania-county-jails-accountable-for-providing-ballot-access/.

[8]   The extraordinarily unlikely nature of these hypotheticals is demonstrated by the stipulated facts here, which establish that none of these scenarios applies to any of the 257 disputed ballots.  ECF No. 27, at ¶ 26.  In a case where 1% of Lehigh County's mail-in voters did not date their signatures, Defendants agree that ***none*** of them committed any of the forms of fraud Ritter posits.

Finally, Ritter's suggestion that a voter could lie about whether they already voted is simply wrong because the Election Code and the county election procedures are designed to prevent double voting. *See* 25 P.S. §§ 3146.2b, 3150.12b.  An individual voter would not be able to receive more than one absentee ballot in their own name because the county would either reject a subsequent application or cancel the first ballot during the application approval process to prevent double voting. *See id.*  Even if a voter somehow receives two mail-in ballots, the county would quickly recognize the attempt to vote twice upon receipt of the second ballot. Again, the inclusion or omission of a handwritten date on the outer envelope would have no significance in alerting the county to the voter's attempt to double vote.

Similarly, a voter who applied for an absentee or mail-in ballot would be unable, by law, to vote at the polling place without surrendering her ballot.  25 P.S. § 3150.16(b)(3).  Failure to surrender a ballot requires a voter to vote a provisional ballot if the voter has not returned the mail-in ballot to the county.  25 P.S. § 3150.16(b)(2).  The provisional ballot will not be counted when the county confirms receipt of the previously submitted mail ballot.  In short, there is no plausible scenario in which a voter can vote more than once.  Ritter's suggestion that a false date-dependent statement about whether the voter already voted almost certainly can never happen.

Ultimately, Ritter's highly unlikely hypotheticals cannot possibly justify the far larger disenfranchisement of ballots missing dates on envelopes, especially because inclusion of a date would not change whether a disqualifying event occurred. Categorically discarding all ballots with no handwritten date, without regard to whether a disqualifying event has occurred results in disenfranchising eligible voters for an error that is unrelated to whether the voter is qualified, precisely the harm the Materiality Provision was enacted to prevent.

8

### D.   Plaintiffs Have Previously Refuted All of Ritter's Remaining Arguments.

The remaining issues in this case have been well-briefed and need not be repeated here.

In particular, Plaintiffs note that their prior briefing fully establish the following:

- Plaintiffs have a right of action under the CRA to protect their fundamental right to vote against disenfranchisement due to minor technicalities.  *See* ECF No. 44, at 25-30.

- The CRA's Materiality Provision does not require proof of racial discrimination.  *See id.*, at 30-33.

- Courts have not limited application of the Materiality Provision to errors and omissions in voter registration paperwork.  *See id.*, at 33-35.

- Defendants' original arguments in favor of finding that the envelope-dating requirement is material to voter qualifications give undue weight to a dissenting opinion from *In re Canvass of Absentee and Mail-in Ballots of Nov. 3, 2020 Gen'l Election*, 241 A.3d 1058 (Pa. 2020), which does not explain why omission of the date from the outer envelope has any impact on the purported interests outlined therein.  *See id.* at 18-25; *see also* ECF No. 33-1, at 17-18.

- Omission of a date from a signed declaration does not automatically render it invalid where, as here, there is no dispute that the declaration was signed within the required period.  *See* ECF No. 44, at 37-38.

- Defendants have yet to come forward with any constitutionally significant state interests to support denial of Plaintiffs' First and Fourteenth Amendment rights.  *See id.*, at 35-39; *see also* ECF No. 33-1, at 14-19.

- Res judicata has no place here, as Plaintiffs were not party to the state court litigation involving Ritter and Cohen, and there is no allegation of any formal relationship between Plaintiffs and any party to the prior litigation that would support a finding of privity.  *See* ECF No. 44, at 11-15.

Ritter's Opposition does nothing to overcome Plaintiffs' prior arguments on these points or to refute Plaintiffs' sound arguments for entering summary judgment in their favor and requiring the Board to count their votes.

## II.   <u>CONCLUSION</u>

For the foregoing reasons and the reasons set forth in Plaintiffs' prior briefs, ECF Nos. 33-1 and 44, Plaintiffs respectfully request that the Court deny Defendants' Motions for

Summary Judgment, grant Plaintiffs' Motion for Summary Judgment, and enter judgment in Plaintiffs' favor.

Respectfully submitted,

Dated: February 25, 2022                         s/Stephen A. Loney, Jr.

Witold Walczak (No. 62976)
Richard Ting (No. 200438)
Connor Hayes (No. 330447)
ACLU OF PENNSYLVANIA
P.O. Box 23058
Pittsburgh, PA 15222
P: 412-681-7864
vwalczak@aclupa.org
rting@aclupa.org
chayes@aclupa.org

Stephen A. Loney, Jr.  (No. 202535)
Marian K. Schneider (No. 50337)
ACLU OF PENNSYLVANIA
P.O. Box 60173
Philadelphia, PA 19102
P: 215-592-1513
sloney@aclupa.org
mschneider@aclupa.org

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I, Stephen A. Loney, Jr., hereby certify that on the date set forth below, I caused the

foregoing Reply Brief in Support of Plaintiffs' Motion for Summary Judgment to be served on

all parties of record via the Court's CM/ECF system.

Dated: February 25, 2022                    s/ Stephen A. Loney, Jr.
                                            Stephen A. Loney, Jr.

1