**IN THE UNITED STATES DISTRCIT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LINDA MIGLIORI, FRANCIS J. FOX, RICHARD E. RICHARDS, KENNETH RINGER, and SERGIO RIVAS, | : : : : | No. 5:22-cv-00397-JFL |
| Plaintiffs, | : : | |
| and | : : | |
| ZACHARY COHEN, | : : | |
| Intervenor- Plaintiff, | : : | |
| v. | : : | |
| LEHIGH COUNTY BOARD OF ELECTIONS, | : : | |
| Defendant, | : : | |
| and | : : | |
| DAVID RITTER, | : : | |
| Intervenor-Defendant. | : | |

**BRIEF IN OPPOSITION TO PETITION FOR ATTORNEYS' FEES**
**FILED BY LEHIGH COUNTY BOARD OF ELECTIONS**

The Lehigh County Board of Elections, above-captioned Defendant, respectfully submits this Brief in Opposition to Petition for Attorneys' Fees filed by Linda Migliori, Francis J. Fox, Richard E. Richards, Kenneth Ringer, and Sergio Rivas, above-captioned Plaintiffs.  As the aforenamed Plaintiffs are not prevailing parties, nor are the fees sought reasonable, the Petition for Attorneys' Fees must fail as a matter of law.

**I.      STATEMENT OF FACTS**

Linda Migliori, Francis J. Fox, Richard E. Richards, Kenneth Ringer, and Sergio Rivas, above-captioned Plaintiffs (collectively, "Plaintiffs"), filed the instant litigation seeking to have

the Lehigh County Board of Elections ("Board") count their mail-in ballots, which lacked the required date on the ballot-return envelope.  A quick summation of the historical and procedural posture of this matter, in conjunction with the related state litigation is important for purposes of disposition of the request for attorneys' fees.

In the November 2021 Election, Zachary Cohen, intervenor-Plaintiff, was running for a position on the Court of Common Pleas of Lehigh County against David Ritter, intervenor-Defendant, among others. Consistent with the instructions and direction of the Pennsylvania Department of State, coupled with the Pennsylvania Supreme Court Opinion in In re Canvass of Absentee and Mail-in Ballots of November 3, 2020 General Election, 241 A.3d 1058 (Pa. 2020), the Chief Clerk to the Board deemed ballots without a date on the ballot-return envelope invalid.

As the race between Cohen and Ritter was very close in number, Cohen challenged the Chief Clerk's decision to set aside the mail-in ballots.  Of significant import here, following a hearing, the Board voted 3-0 to canvass (count) the mail-in ballots.  Two days later, David Ritter filed an appeal to the Court of Common Pleas of Lehigh County.

Following a hearing and the submission of briefs on all issues raised, including an issue concerning the Materiality Provision of the Civil Rights Act, the Court of Common Pleas issued a decision affirming the Board's decision to count all 261 mail-in ballots.  Ritter then filed an appeal to the Commonwealth Court of Pennsylvania.

Ultimately, the Commonwealth Court reversed the decision of the Court of Common Pleas, concluding the mail-in ballots should not be counted.  In so doing, the Commonwealth Court addressed the Materiality Provision of the Civil Rights Act, and relied upon the Pennsylvania Supreme Court's decision in In re Canvass of Absentee and Mail-in Ballots of November 3, 2020 General Election, 241 A.3d 1058 (Pa. 2020).  Zachary Cohen then filed a petition for allowance of

appeal to the Pennsylvania Supreme Court, which was denied on January 27, 2022. <u>Ritter v. Lehigh County Board of Elections</u>, No. 9 MAL 2022, (Pa. Jan. 27, 2022), 2022 WL 244122.

Following the Pennsylvania Supreme Court's election not to hear the case, the Commonwealth Court's decision on the merits dictated to the Board that the ballots lacking a date were not to be counted by the Board. However, before the election could be certified by the Board, Plaintiffs, with the assistance of the ACLU, filed the instant litigation in this Court. Given the published position of the Department of State and the Commonwealth Court's decision, the Board took the position to this Court that the ballots should not be counted. This Court ultimately granted summary judgment in favor of the Board, and the Third Circuit Court of Appeals reversed that decision concluding the disqualification of the ballots for the missing date violated the Materiality Provision of the Civil Rights Act, 52 U.S.C. §10101(a)(2)(B).

Ritter then appealed that decision to the United States Supreme Court and filed an emergency petition for stay. The Board joined in the appeal, but because the stay was denied by the United States Supreme Court, this Court entered judgment in favor of Plaintiffs in accordance with the instructions from the Third Circuit Court of Appeals, and ordered the ballots be counted. Consistent with that Order, the Board counted the votes and certified the election results.

Thereafter, the United States Supreme Court granted certiorari, vacated the decision of the Third Circuit Court of Appeals, and remanded the matter to the Third Circuit with instructions to dismiss the litigation as moot, which it did post.

## II.     STATEMENT OF QUESTIONS INVOLVED

    A.  Whether Plaintiffs are considered prevailing parties and entitled to an award of attorneys' fees under Federal Law.

    Suggested Answer:          No.

    B.  Whether special circumstances render the award of attorneys' fees improper.

Suggested Answer:          Yes.

   C.  Whether Plaintiff's request for attorneys' fees is reasonable under Federal Law.

Suggested Answer:          No.

## III.    SUMMARY OF ARGUMENT

The Board respectfully submits that Plaintiffs in the instant action must not be considered prevailing parties that would permit an award of attorneys' fees in this matter as a matter of law. The temporary relief obtained by Plaintiffs before the Third Circuit, which was the only court to do so and which was nullified by the Supreme Court vacating that determination, was not sufficiently enduring to qualify Plaintiffs as prevailing parties.

Moreover, the unique nature of the litigation and the stipulated facts of this matter renders any type of attorneys' fees award unjust. Where, as here, special circumstances exist that created new law, saw the law interpreted two different ways, and the action complained of was the result of the express direction of the Department of State and enforceable Court Orders, the Board should not be penalized in the form of an award. As a result, even if Plaintiffs are considered prevailing parties, which is expressly denied, Plaintiffs attorneys' fees must not be imposed on the Board as a matter of law.

Lastly, if an award is deemed to be appropriate, which is also expressly denied, the lodestar considerations are such that any award should be reduced to zero, or at best, a nominal amount. Given the procedural and substantive history of the instant litigation, coupled with an outcome that vacated the temporary relief obtained by Plaintiffs, and which resulted in costs being taxed to Plaintiffs, any award of attorneys' fees is unreasonable, excessive, and unnecessary.

As more fully set forth below, the Board respectfully submits an award of attorneys' fees in this matter is legally improper, factually inappropriate, and equitably unjustifiable.

IV.    ARGUMENT

While the Board admits that Section 1988, 42 U.S.C. § 1988, permits the recovery of reasonable attorney's fees when a plaintiff is considered a prevailing party on a claim or claims brought under Section 1983, 42 U.S.C. § 1983, the Plaintiffs in the instant matter are not considered prevailing parties.  Moreover, even if considered prevailing parties, which is expressly denied, the circumstances of the instant matter preclude such an award.  Finally, even if an award is determined to be appropriate, which is also expressly denied, the fees sought in the instant matter are not reasonable.  Each of these legal issues are addressed in order below.

A.    **Whether Plaintiffs are considered prevailing parties and entitled to an award of attorneys' fees under Federal Law.**

Section 1988, 42 U.S.C. § 1988, provides that in federal civil rights actions "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."  Hensley v. Eckerhart, 461 U.S. 424 (1983) (emphasis added).  Section 1988, however, does not define the term "prevailing party," so we must turn to the caselaw.  Initially, to be eligible for the status of a prevailing party, a plaintiff must have "been awarded some relief by the court."  Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources, 532 U.S. 598, 603 (2001).

"The touchstone of the prevailing party inquiry [is] the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute."  Sole v. Wyner, 551 U.S. 74, 83 (2007); see also Texas State Teachers Assn. v. Garland Independent School Dist., 489 U.S. 782, 792–793, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989).  Cf. Buckhannon Board & Care Home, Inc. (precedent "counsel[s] against holding that the term 'prevailing party' authorizes an award of attorney's fees without a corresponding alteration in the legal relationship of the parties").  "[L]iability on the merits and responsibility for fees go hand in hand; where a

defendant has not been prevailed against, either because of legal immunity or on the merits, Section 1988 does not authorize a fee award against that defendant." Kentucky v. Graham, 473 U.S. 159, 165, 105 S.Ct. 3099, 3104, 87 L.Ed.2d 114 (1985).

Therefore, to qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim. Farrar v. Hobby, 506 U.S. 103, 111. The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought, Hewitt v. Helms, 482 U.S. 755, 760 (1987), or comparable relief through a consent decree or settlement, Maher v. Gagne, 448 U.S. 122, 129, 100 S.Ct. 2570, 2574, 65 L.Ed.2d 653 (1980). In short, a plaintiff "prevails" when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff. Farrer. Where relief is legally imposed on the merits, attorneys' fees can be imposed, within the Court's discretion, unless special circumstances would render such an award unjust. Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400 (1968); Truesdell v. Phila. Hous. Auth., 290 F.3d 159 (3d. Cir. 2022).

However, the settling of the dispute or the judicially obtained relief on the merits obtained cannot be ephemeral. Sole. To qualify as a prevailing party where relief is granted at some prior stage of the litigation, the relief must not have been "reversed, dissolved, or otherwise undone by the final decision in the same case." Sole 551 U.S. at 83. In Sole, the plaintiff obtained a preliminary injunction, but then lost on the merits and a judgment was entered against her. In concluding plaintiff was not a prevailing party, the Supreme Court noted the plaintiff had "won a battle but lost the war." Id. at 86.

Consistent with this position, the Sixth Circuit specifically addressed when injunctive relief was sufficiently enduring to qualify a plaintiff as a prevailing party. In a very recent decision, that

Court held that injunctive relief was not "fleeting", when a "court never vacated or dissolved the injunction [provided to plaintiff]." Tenn. State Conference of the NAACP v. Tre Hargett, et al., ___ WL ____ (6th Cir., November 22, 2022) (No. 21-6024, recommended for publishing). Attached hereto as Exhibit "A". In concluding that the injunctive relief was enduring for purposes of prevailing party status, the Court held, an injunction that, as a practical matter, concludes the litigation in the plaintiff's favor, and is not challenged on appeal is enduring enough to support prevailing party status. Id.

Upon examination of the relief obtained by Plaintiffs in the instant matter, the temporary injunctive relief provided by the Third Circuit Court of Appeals, which was subsequently challenged on appeal and vacated by the United States Supreme Court, can only be said to be fleeting and/or ephemeral. In vacating the decision of the Third Circuit, the Supreme Court expressly, and within its discretion, nullified Plaintiffs' relief.

The Supreme Court could have dismissed this matter as moot without vacating the lower court's judgment, but chose not to do so. Such action by the Court is telling and signals that the Supreme Court did not intend for the relief obtained by Plaintiffs to be enduring. In quoting United States v. Munsingwear, Inc., 340 U.S. 36 (1950) in its Order, the remedy provided by the Supreme Court promotes "fairness" by "expung[ing] and adverse decision" that the Board could not get the Court to review. Camreta v. Greene, 563 U.S. 692, 712 & n.10 (2011). Moreover, the United States Supreme Court specifically taxed the costs against Plaintiffs in its Order, which further demonstrates that Plaintiffs did not receive any relief on the merits. Stated otherwise, the United States Supreme Court deliberately nullified the adverse decision of the Third Circuit Court of Appeals and an no judgment was ever entered against the Board. Where, as here, Plaintiffs failed to obtain any judicial sanctioned relief as a result of the litigation, Plaintiffs must not be

considered prevailing parties.  Specifically, Plaintiffs won a battle, but lost the war, and should not be considered a prevailing party as a matter of law.  Sole.

Plaintiff's express reliance on Bagby v. Beal, 606 F.2d 411 (3d Cir. 1979), is misplaced. There, the defendant refused to provide the plaintiff with a hearing, which the Court determined to be a violation of Due Process and Ordered the defendant to provide plaintiff with a hearing.  On appeal, the Third Circuit Court of Appeals affirmed an award of attorneys' fees to the plaintiff as a prevailing party because she obtained an injunction from the district court requiring the provision of a hearing, even though the provision of the hearing mooted the matter.  The relief obtained in that matter was enduring as it was not vacated on appeal and there was no further litigation that would overturn the relief provided.  Such enduring relief is not present here.

Moreover, unlike in Bagby, the Board did not create or originate the challenged action. More specifically, the Board, before any lawsuit was initiated in State or Federal Court, voted to count the ballots at issue.  As such, the Board, at the time the action was taken, did violate any act, and did not take the action challenged in the instant lawsuit until it was required to do so by an Order issued by the Commonwealth Court of Pennsylvania expressly directing the Board to take the challenged action.   As a result, the instant lawsuit lacks the judicial imprimatur required to conclude the lawsuit resulted in change in the legal status between the parties.  Buckhannon Bd. And Care Home, Inc.

**B.** **Whether special circumstances render the award of attorneys' fees unjust.**

A determination by a Court to award attorneys' fees to a prevailing party does not end with a determination that the party received an enduring change in the legal relationship.  If the Court determines the vacated decision of the Third Circuit Court of Appeals in this matter is legally sufficient to elevate Plaintiffs to the status of prevailing parties, which is expressly denied, this

Court must look to the circumstances surrounding the imposition of that relief to determine if an award of attorneys' fees is just.  <u>Newman</u>.  The Board respectfully submits that the circumstances of the current litigation are special and/or sufficiently unique to render any such award unjust.  The decision in <u>Chastang v. Flynn & Emrich Co.</u>, 541 F.2d 1040 (4th Cir. 1976) is instructive into the types of special considerations this Court should consider in awarding attorneys' fees.

In concluding an award of attorney's fees was unjust in reviewing a claim for discrimination under a retirement fund/plan, the Court weighed the following factors (i) the action at the time it was taken was not illegal; (ii) the company acted with reasonable dispatch as soon as a murky area of the law was clarified to redress its unintentional violation of the Act; (iii) the company had no pecuniary interest in the action and therefore had no economic incentive to violate the act; (iv) it had no right to unilaterally to alter the fund/plan; (v) the company did not originate the discrimination which subsequently became illegal; and, (vi) the discrimination was addressed prior to the commencement of the lawsuit.  <u>Id.</u>  In so doing, the Court noted, at most, the company participated in a passive act of discrimination which became illegal because of a change in the law. <u>Id.</u>

Here, all six of the special circumstances considered by the Court in <u>Chastang</u>, warrant a denial of attorneys' fees.  First, at the time the Board ultimately made the decision to not count the votes, Pennsylvania law, including the express terms of the Pennsylvania Election Code, as well as two Court Orders and/or decisions, one from the Pennsylvania Supreme Court (<u>In re Canvass 2020</u>) and one from the Commonwealth Court (with the Supreme Court declining review of that decision) concerning the exact same ballots required the Board to exclude those ballots from consideration. Moreover, this Court entered an Order in favor of the Board on summary judgment,

and the alleged violation of the Act at issue was unsettled until the Third Circuit Court of Appeals'

decision, which was ultimately vacated by the United States Supreme Court.

Second, once the Third Circuit Court of Appeals reversed the decision of this Court, the

Board took appropriate action consistent with that Order to address the violation of the law as

determined by the Third Circuit.  In addition, the Board's decision to not count the ballots can only

be considered unintentional.  In fact, the Board voted, in the first instance to Count the ballots, and

participated in litigation through a request for review to the Pennsylvania Supreme Court, seeking

to have the ballots counted.  It was only once the Commonwealth Court concluded the ballots

should not be counted and the Pennsylvania Supreme Court denied review, that the Board was

ordered to not count the ballots.

Third, the County had no pecuniary interest and/or gain from not counting the ballots or

having one candidate win.  As a result, the Board received no benefit, pecuniary or otherwise from

the action being challenged in the instant suit.

Fourth, in the absence of the Commonwealth Court Order requiring the exclusion of the

ballots and the Pennsylvania Supreme Court's denial of review, the Board would have counted the

ballots at issue. In addition, the published position of the Department of State specifically directed

the Board not to count the ballots.  Due to the existence of the Commonwealth Court Order and

the express directives from the Department of State, the Board did not possess the unilateral ability

and/or capacity to take any action to remedy the challenged action.  Indeed, despite the Court Order

and the directives from the Department of State, the Board only took action in the instant lawsuit

because the Attorney General of Pennsylvania refused to take any action to defend its own

directives and/or defend Pennsylvania law once the lawsuit was initiated.  Had the Attorney

General's office complied with its legal mandate, Lehigh County would not have taken any action

in the lawsuit.  Further, the only way the Board could take the action sought by Plaintiffs was to clearly ignore an enforceable court order and run the risk of being held in contempt.

Likewise, the fifth consideration is present here as well.  The Board did not create the violation complained of in the lawsuit.  As noted, the Department of State expressly directed the Board to not count the votes prior to the election, the Board initially voted to count the votes anyway, and it was not until the Commonwealth Court's Order, and the subsequent refusal by the Pennsylvania Supreme Court to review the matter, that the Board voted not to count the ballots at issue.  As such, the Board did not originate the violation, sought to avoid the challenged action by counting the ballots, and only took the action complained of once it was specifically ordered to do so by the Commonwealth Court of Pennsylvania.

Lastly, as the Board voted to count the votes before any litigation was instituted in either State or Federal Court, the temporal causation specifies that the instant lawsuit fails to have the causal connection required for the imposition of attorneys' fees to Plaintiffs as prevailing parties. Stated otherwise, because the Board initially voted to count the votes, it cannot be said that Plaintiffs changed the legal relationship necessary for the imposition attorneys' fees.

Here, like in Chastang, at most, the Board participated in a passive violation of an Act, whose perceived violative actions were required by a Court Order, and only became violative once this Court's Order was reversed with a change in the law.  Given the existence of the number and nature of the special circumstances surrounding this matter, the imposition of an award of attorneys' fees in this matter is unjust.  Newman; Chastang.

C.  **Whether Plaintiff's request for attorneys' fees is reasonable under Federal Law.**

The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, authorizes district courts to award a reasonable attorney's fee to prevailing civil rights litigants.  Hensley v. Eckerhart,

461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).  In enacting the statute, Congress directed

that attorney's fees be calculated according to standards currently in use under other fee-shifting

statutes:

> In actions to enforce federal civil rights, § 1988 authorizes a court, "in its discretion," to "allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." The legislative history explains that "a reasonable attorney's fee" is one that is "adequate to attract competent counsel, but ... [that does] not produce windfalls to attorneys."

Id. (internal citations omitted).

The party seeking attorney's fees has the burden to prove its request for attorney's fees is

reasonable.  Rode v. Dellarciprete, 892 F.2d 1177 (3r. Cir. 1990).  To meet its burden, the fee

petitioner must "submit evidence supporting the hours worked and rates claimed." Hensley at 433.

In a statutory fee case, the party opposing the fee award then has the burden to challenge the

reasonableness of the requested fee.  Bell v. United Princeton Properties, Inc., 884 F.2d 713 (3d

Cir.1989).  Once the adverse party raises objections to the fee request, the district court has a great

deal of discretion to adjust the fee award in light of those objections.  Bell, 884 F.2d at 721.  Section

1988's aim is to enforce the covered civil rights statutes, not to provide "a form of economic relief

to improve the financial lot of attorneys."  Pennsylvania v. Delaware Valley Citizens' Council for

Clean Air, 478 U.S. 546 (1986).

A lodestar award is calculated by multiplying the number of hours reasonably worked on

a client's case by a reasonable hourly billing rate for such services based on the given geographical

area, the nature of the services provided, and the experience of the attorneys." In re Rite Aid, 396

F.3d 294 at 305 (3r Cir. 2005).

When examining the hours promulgated by the moving party, the Court should exclude

hours that are not reasonably expended.  Id. Hours are not reasonably expended if they are

excessive, redundant, or otherwise unnecessary.  Id. Further, the court can reduce the hours claimed by the number of hours "spent litigating claims on which the party did not succeed and that were 'distinct in all respects from' claims on which the party did succeed."  Rode (quoting, Hensley, 461 U.S. at 440, 103 S.Ct. at 1943) (internal citation omitted).  The court also can deduct hours when the fee petition inadequately documents the hours claimed.  Hensley, 461 U.S. at 433, 103 S.Ct. at 1939.

Here, Plaintiffs are seeking an award of attorneys' fees totaling approximately $250,000.00, for work performed by four separate attorneys with a combined 106 years of experience.[1]  Between the four attorneys, Plaintiffs indicate the instant matter took 415.7 hours (not including an additional 67 hours not being sought), to litigate to an end that resulted a legal nullity.

As such, the Board contends the hours submitted by Plaintiffs are not reasonable for several reasons.  First, the matter never required a factual hearing, the facts were stipulated to by all parties, and consisted of only legal argument.  Second, having four attorneys, all with 17 plus years of experience, 2 of which have over 35 years of experience, is excessive, redundant, and otherwise unnecessary.  Moreover, a review of the itemized hours presented indicates several of the attorneys were editing the same document and/or participating in the same activities, of which an attorney with the stated amount of experience could have completed or handled on their own.  In addition, hours are submitted in which multiple attorneys were brainstorming, strategizing, and/or conferencing resulting in an effective billable rate of $2,500.00 per hour for internal functions.  In light of the years of experience, there is no reasonable justification that four attorneys were needed to develop the single issue presented to the Court, nor were the hours expended necessary for the

---

[1] We do note that the submission notes five (5) attorneys, but recognize Plaintiffs have unilaterally elected to not seek an award for one of the participating attorneys.

development of the legal work produced.  Coupled with the fact that United States Supreme Court vacated the only relief obtained, and Plaintiffs were not ultimately successful on a single legal claim, this Court should exercise its discretion to reduce the reasonable hours to zero or, at most, a nominal amount. If this Court deems an award of legal fees appropriate, which the Board specifically denies, the Board respectfully requests a hearing to present expert testimony as to the reasonableness of the hours and the manner in which those hours were expended.

After determining the number of hours reasonably expended, the district court must examine whether the requested hourly rate is reasonable.  Rode.  Generally, a reasonable hourly rate is to be calculated according to the prevailing market rates in the relevant community.  Blum v. Stenson, 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984) (emphasis added). Thus, the court should assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.  Blum; Rode.  The lodestar method is intended to produce an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case.  Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542 (2010).

In the instant matter, all four attorneys are billing at $475.00 per hour or more, with two attorneys seeking $750.00 per hour each.  While the Plaintiffs specifically justify these rates based on Philadelphia's geographical area and statistics, the use of such data is legally erroneous.  As this Court is very much aware, the Lehigh Valley, in which this suit was brought and litigated, is not within the geographical area of Philadelphia for consideration of legal fees.  If this Court deems an award of legal fees appropriate, which the Board specifically denies, the Board respectfully

requests a hearing to present expert testimony as to the prevailing rates in the community for similar services.

Once a court determines the reasonable hourly rate, it multiplies that rate by the reasonable hours expended to obtain the lodestar. <u>Rode</u>. The lodestar is presumed to be the reasonable fee. <u>Blum</u>, 465 U.S. at 897, 104 S.Ct. at 1548.  However, the district court has the discretion to make certain adjustments to the lodestar. <u>Rode</u>.  The party seeking adjustment has the burden of proving an adjustment is necessary. <u>Id.</u>

Of significant import here, the court can adjust the lodestar downward if the lodestar is not reasonable in light of the results obtained. <u>Hensley</u>, 461 U.S. at 434–37, 103 S.Ct. at 1940–41. This general reduction accounts for time spent litigating wholly or partially unsuccessful claims that are related to the litigation of the successful claims. <u>Id.</u> at 436, 103 S.Ct. at 1941. This adjustment should be taken independently of the other adjustments and should be the first adjustment applied to the lodestar. <u>Rode</u>; <u>Black Grievance Committee v. Philadelphia Electric Co.</u>, 802 F.2d 648 (3d Cir.1986), <u>vacated on other grounds</u>, 483 U.S. 1015, 107 S.Ct. 3255, 97 L.Ed.2d 754 (1987).

Upon review of the procedural history and the determinations made the applicable Courts, the Board also respectfully submits to this Court that any determination of the lodestar amount should be adjusted to zero or, at best, a nominal amount.  More specifically, this Court ruled in favor of the Board on summary judgment, and while the Third Circuit Court of Appeals reversed that determination, the United States Supreme Court purposefully nullified that determination by electing to vacate the judgment.  The action by the United State Supreme Court, including the taxing of the costs to Plaintiffs, signals the Court's express intention that Plaintiffs did not prevail on a single legal claim.  Given the foregoing, and the lack of actual relief obtained, any lodestar

calculation should be adjusted downward on a general reduction to zero, or, at best to a nominal amount.

## V.     CONCLUSION

Upon review of the stipulated facts of this matter, as well as, the law, the Board respectfully requests this Honorable Court enter an Order denying Plaintiffs' request for Attorneys' Fees pursuant to Section 1988.

Respectfully Submitted,

Repka Mazin, LLC

Date:   December 1, 2022                By: *Lucas J. Repka*

Lucas J. Repka
Pa. I.D. No. 93509
108 East Center Street
Nazareth, Pennsylvania 18064
Phone : (610) 365-2670
Email: Lucas@repkamazinlaw.com
Counsel for The Lehigh County Board of
                Elections, Defendant

Exhibit "A"

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 22a0240p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

TENNESSEE STATE CONFERENCE OF THE NAACP;
DEMOCRACY NASHVILLE-DEMOCRATIC COMMUNITIES;
EQUITY ALLIANCE; ANDREW GOODMAN FOUNDATION;
LEAGUE OF WOMEN VOTERS OF TENNESSEE; LEAGUE
OF WOMEN VOTERS OF TENNESSEE EDUCATION FUND;
AMERICAN MUSLIM ADVISORY COUNCIL; MID-SOUTH
PEACE & JUSTICE CENTER; MEMPHIS Central Labor
COUNCIL; ROCK THE VOTE; HEADCOUNT,

*Plaintiffs-Appellees*,

   *v.*

TRE HARGETT, in his official capacity as Secretary of
State of Tennessee; MARK GOINS; in his official
capacity as Coordinator of Elections for the State of
Tennessee; TENNESSEE STATE ELECTION COMMISSION;
DONNA BARRETT, JUDY BLACKBURN, MIKE
MCDONALD, GREGORY DUCKETT, JIMMY WALLACE,
TOM WHEELER, and KENT YOUNCE, in their official
capacities as members of the State Election
Commission,

*Defendants-Appellants*.

No. 21-6024

---

Appeal from the United States District Court for the Middle District of Tennessee at Nashville.
No. 3:19-cv-00365—Aleta Arthur Trauger, District Judge.

Argued: July 20, 2022

Decided and Filed: November 16, 2022

Before: KETHLEDGE, BUSH, and NALBANDIAN, Circuit Judges.

---

## COUNSEL

**ARGUED:** Matthew D. Cloutier, OFFICE OF THE TENNESSEE ATTORNEY GENERAL, Nashville, Tennessee, for Appellants.  Pooja Chaudhuri, LAWYERS' COMMITTEE FOR

CIVIL RIGHTS UNDER LAW, Washington, D.C., for Appellees Tennessee State Conference of the NAACP, et al.  David M. Rosborough, AMERICAN CIVIL LIBERTIES UNION FOUNDATION, New York, New York, for Appellees League of Women Voters of Tennessee, et al.  **ON BRIEF:**  Matthew D. Cloutier, Janet M. Kleinfelter, Alexander S. Rieger, OFFICE OF THE TENNESSEE ATTORNEY GENERAL, Nashville, Tennessee, for Appellants.  Pooja Chaudhuri, Ezra D. Rosenberg, LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW, Washington, D.C., Ira M. Feinberg, HOGAN LOVELLS US LLP, New York, New York, Taylor A. Cates, BURCH, PORTER & JOHNSON, PLLC, Memphis, Tennessee, Yael Bromberg, BROMBERG LAW LLC, New York, New York, for Appellees Tennessee State Conference of the NAACP, et al.  David M. Rosborough, Sophia Lin Lakin, AMERICAN CIVIL LIBERTIES UNION FOUNDATION, New York, New York, Stella Yarbrough, ACLU FOUNDATION OF TENNESSEE, Nashville, Tennessee, Danielle Lang, Molly E. Danahy, CAMPAIGN LEGAL CENTER, New York, New York, Michelle Kanter Cohen, FAIR ELECTIONS CENTER, Washington, D.C., William H. Harbison, Hunter C. Branstetter, SHERRARD ROE VOIGT & HARBISON, Nashville, Tennessee, for Appellees League of Women Voters of Tennessee, et al.

KETHLEDGE, J., delivered the opinion of the court in which BUSH, J., joined. NALBANDIAN, J. (pp. 8–12), delivered a separate dissenting opinion.

————————

## OPINION

————————

KETHLEDGE, Circuit Judge.  In this case the district court issued a preliminary injunction that, for purposes of litigation in the district court, was final in all but name.  Seven months later, the Tennessee legislature repealed the statutory provisions that the district court had enjoined, thereby rendering the case moot.  We hold that the plaintiffs were prevailing parties under 42 U.S.C. § 1988 and affirm the district court's award of attorneys' fees.

I.

A.

In May 2019, Tennessee enacted a law, H.B. 1079, imposing a raft of new requirements upon persons or organizations conducting voter-registration activities in the State.  Among many other things, the law required such individuals to register with the State; to complete state-administered "training" about "the laws and procedures governing the voter registration process"; to file a "sworn statement" stating that the person or organization "shall obey"

Tennessee's voter-registration laws; and to return "completed" voter-registration forms within 10 days of "the voter registration drive."  Tenn. Code Ann. § 2-2-142 (2019).  Failure to comply with any of these requirements was a misdemeanor.

The plaintiffs promptly challenged the new law in two separate suits in district court. They argued in essence that the law significantly burdened their rights of speech and association, in violation of the First Amendment, and that the law was unconstitutionally vague.  As relief, they sought a declaration that the law was unconstitutional and a permanent injunction against its enforcement.

In August 2019, the plaintiffs moved for a preliminary injunction, as to which the parties filed lengthy briefs with numerous exhibits attached.  The district court granted the motions in September, with a 42-page memorandum explaining the court's reasoning.  (Technically, two groups of plaintiffs filed two motions, as to which the court filed two memos; but the motions and memos for both were substantially the same.)  Most of the court's memorandum addressed the plaintiffs' likelihood of success on the merits of their claims.  The court stated that the plaintiffs had "provided a great deal of evidence" showing how the challenged provisions would burden their speech and associational rights; whereas the defendants had offered "little, if any, evidence" in support of the Act's requirements, "despite having had an opportunity" to present that evidence.  For example, the defendants "offered no evidence of any reason" to require the operator of a voter-registration drive to report its activities to the State.  "Particularly without justification[,]" the court said, was "the requirement that the operators of voter registration drives file sworn statements confirming that they will comply with the law.  The law is the law already; no one has to swear to follow it in order for it to apply." *Tennessee State Conference of NAACP v. Hargett*, 420 F. Supp. 3d 683, 704–05 (M.D. Tenn. 2019).  Hence that requirement, in the court's view, "merely add[ed] an additional regulatory hoop for the operator of a voter registration drive to jump through." *Id*.  The court also held that the plaintiffs were likely to prevail on the merits "for a second reason—namely, the vagueness about the scope and nature of [the Act's] requirements." *Id*. at 705.

After some two-dozen pages in this vein, the court found that H.B. 1079 imposed "an onerous and intrusive regulatory structure for problems that, insofar as they are not wholly speculative, can be addressed with simpler, less burdensome tools." The court thus found that the plaintiffs were likely to succeed on their claims. In a separate document, the court "ordered" the defendants "not to take any steps to implement" or otherwise enforce the challenged provisions of H.B. 1079. The defendants chose not to appeal that order.

Seven months later, the Tennessee General Assembly passed legislation to repeal those same provisions. Governor Lee signed the bill into law in April 2020. With the new law in place, the plaintiffs had no claims left to pursue. Six months later, the district court approved the parties' stipulation to dismiss the case without prejudice.

## B.

The plaintiffs thereafter moved for attorneys' fees under 42 U.S.C. § 1988, which allows for an award of fees to the "prevailing party" in suits like this one. The district court granted the motion, reasoning that, by obtaining the preliminary injunction, the plaintiffs had "prevailed for the purposes of § 1988(b), just as they prevailed in the ordinary sense of the word." But the court reduced the amount of the fee award from the amounts requested—by 39% for one set of plaintiffs and 28% for the other—finding that some of the hourly rates were too high, or some of the time entries too vague, for example. This appeal followed.

## II.

The defendants challenge only the district court's determination that the plaintiffs were prevailing parties under 42 U.S.C. § 1988. We review that decision de novo. *Miller v. Caudill*, 936 F.3d 442, 447 (6th Cir. 2019).

Under § 1988, the "prevailing party" in a federal civil-rights action may recover a "reasonable attorney's fee as part of the costs of litigation." 42 U.S.C. § 1988. The statute does not define "prevailing party," but the caselaw does to some extent. To be eligible for that status, a plaintiff must have "been awarded some relief by the court." *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*, 532 U.S. 598, 603

(2001). That relief must be "material," meaning that it must directly benefit the "plaintiff by modifying the defendant's behavior toward him." *McQueary v. Conway*, 614 F.3d 591, 598 (6th Cir. 2010) (cleaned up). And where (as here) that relief takes the form of a preliminary injunction, that relief must not have been "reversed, dissolved, or otherwise undone by the final decision in the same case." *Sole v. Wyner*, 551 U.S. 74, 83 (2007). Those requirements are undisputedly met here: the district court entered a preliminary injunction that enjoined the defendants from enforcing H.B. 1079 against them; and that injunction was never reversed, dissolved, or even vacated after the plaintiffs' voluntary dismissal of the case.

What the parties do dispute is whether the court's relief was "enduring" enough to support prevailing-party status. *See Sole*, 551 U.S. at 74. The defendants say it was not: in their view, the preliminary injunction provided relief to the plaintiffs for only seven months, until the Tennessee legislature itself repealed the challenged provisions. Thus, they say, the "court-ordered" relief in this case, *Buckannon*, 532 U.S. at 604, was only temporary.

The caselaw includes a spectrum of cases in which injunctive relief was deemed "fleeting" on one end, *Sole*, 551 U.S. 83, and enduring on the other. Injunctive relief proved fleeting in *Sole*, where the district court entered a "hasty" injunction in response to the plaintiff's emergency motion the day after the suit was filed. The court later changed course and entered a final judgment in favor of the defendants. *Id.* at 84. Hence in that case the defendants, rather than the plaintiff, prevailed. *Id.* at 86. In *Miller v. Caudill*, 936 F.3d 442 (6th Cir. 2019), by contrast, the relief afforded by a preliminary injunction was enduring. There, the preliminary injunction required a county clerk to issue marriage licenses to the plaintiffs. 938 F.3d at 446. Although that injunction was soon vacated as moot, the clerk could not revoke the licenses after she issued them. *Id.* at 449. Thus the plaintiffs there were deemed prevailing parties.

The relief the plaintiffs obtained here is distinguishable from the "fleeting" relief in *Sole*. Here, the relief came four months after the suits were filed, after full briefing and an opportunity for each side to present evidence supporting its position; and the court never vacated or dissolved the injunction. Moreover, to a significant extent, the court's relief was "irrevocable" in the same sense that the relief in *Miller* was: as a result of the preliminary injunction in this case, plaintiffs

were able to conduct voter-registration drives for seven months during the runup to the 2020 election, unburdened by the requirements of H.B. 1079.  Those drives, and the voter registrations that resulted from them, are as "irrevocable" as the marriage licenses in *Miller* were.  At least to that extent, therefore, the relief afforded to the plaintiffs was enduring.

The case closest to this one, in our view, is *Green Party of Tennessee v. Hargett*, 767 F.3d 533, 553 (6th Cir. 2014).  There, as here, the plaintiffs challenged certain provisions of a Tennessee election law.  After the district court entered judgment, but while the case was on appeal, the Tennessee legislature amended the provisions at issue.  *Id.* at 541.  Our court said that, "when plaintiffs clearly succeeded in obtaining the relief sought before the district court and an intervening event rendered the case moot on appeal, plaintiffs are still prevailing parties for the purposes of attorney's fees for the district court litigation." *Id*. at 552 (cleaned up).  Thus, we held, "[t]he plaintiffs have *not* been stripped of their prevailing party status by the legislature's decision to amend the relevant statute two months after the district court issued its order but before the appeal was heard." *Id*. at 553.

The principal difference between this case and *Green Party* is that, here—when the Tennessee legislature amended H.B. 1079 so as to render the case moot—the court had not yet entered a judgment in the plaintiffs' favor.  But the decision in *Green Party* was likewise not final—because we had not reviewed it yet.  As to finality, then, the difference between the two cases is one of degree.  Here, the district court's 42-page opinion in support of its injunction was an emphatic and "unambiguous indication of probable success on the merits" of the plaintiffs' claims. *McQueary*, 614 F.3d at 598 (cleaned up).  And the prospect that—as in *Sole*—the court would reverse course, and enter judgment in favor of the defendants, was remote in the extreme.

*Green Party* shows that injunctive relief awarded before the litigation reaches its conclusion can, depending on the circumstances, be deemed enduring for purposes of prevailing-party status under 42 U.S.C. § 1988.  A preliminary injunction that, as a practical matter, concludes the litigation in the plaintiffs' favor in the district court, and that is not challenged on appeal, is—on this record at least—enduring enough to support prevailing-party status under § 1988.  We therefore hold that the plaintiffs were prevailing parties here.

No. 21-6024                    *Tenn. State Conference of the NAACP, et al.*                    Page 7
                                      *v. Tre Hargett, et al.*

\*        \*        \*

The district court's September 28, 2021 order awarding fees is affirmed.

—————————————

## DISSENT

—————————————

NALBANDIAN, Circuit Judge, dissenting.   State-voluntary action mooting a case prevents plaintiffs from prevailing under 42 U.S.C. § 1988(b).  The Supreme Court held this.  We've followed this.  So the grant of attorney's fees here sidesteps § 1988(b)'s guardrails.  Following Supreme Court precedent and this Circuit's framework, I would instead hold that plaintiffs who receive a preliminary injunction against enforcement of a statute aren't "prevailing parties" if a state-defendant voluntarily repeals the statute before a merits decision.  And even if that backstop did not apply (it does), I would hold that the Plaintiffs weren't prevailing parties because they didn't get all the relief they asked for.  For these narrow yet important reasons, I respectfully dissent.

## I.

I don't write on a blank slate.  Several cases have come before us, each relying on *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*, 532 U.S. 598 (2001).  In effect, *Buckhannon* constrained prevailing-party relief by rejecting the so-called "catalyst theory."[1]  532 U.S. at 605.  And in denying that theory, the Supreme Court held that plaintiffs can't get attorney's fees under § 1988(b) when defendants, not the litigation itself, invalidate a challenged law.  *Id.*  Thus, no plaintiff can "prevail[]" when a state-defendant voluntarily voids a challenged law before a court decides a case's merits.  *Id.* at 603, 605 (citation omitted).  So even if plaintiffs obtain the results they "sought to achieve by the lawsuit," "[a] defendant's voluntary change in conduct ... lacks the necessary judicial *imprimatur* on the change."  *Id.* at 605.

And we have incorporated *Buckhannon*'s backstop into our attorney's fees framework for preliminary injunctions.   *McQueary v. Conway*, 614 F.3d 591, 601 (6th Cir. 2010)

---

[1]That theory "posits that a plaintiff is a 'prevailing party' if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct."  *Buckhannon*, 532 U.S. at 601.

("*McQueary I*").  *McQueary I* held that our analysis "will generally counsel against fees in the context of preliminary injunctions."  *Id.*  In reaching that conclusion, we first recognized the "preliminary" nature of the relief.  *Id.*  We also reiterated the limitation imposed by *Buckhannon*: "[A] prevailing-party victory must create a lasting change in the legal relationship between the parties and not merely 'catalyze' the defendant to voluntary action[.]"  *Id.*

Under *McQueary I*, plaintiffs who obtain a preliminary injunction cannot escape *Buckhannon*'s backstop.  That's why we have consistently applied *Buckhannon* in preliminary-injunction cases.  *See, e.g.*, *Planned Parenthood Sw. Ohio Region v. Dewine*, 931 F.3d 530, 539, 542 (6th Cir. 2019) (concluding that a claim was "not precluded from prevailing-party status under *Buckhannon*" because a federal agency, not the state-defendant, mooted the case by repealing a law (citation omitted)); *Green Party of Tenn. v. Hargett*, 767 F.3d 533, 552 (6th Cir. 2014) ("Thus, if a defendant voluntarily changes its conduct during the course of litigation, thereby mooting the plaintiff's case, the plaintiff will not be considered a prevailing party even though he or she may have obtained the relief sought." (citation omitted)); *McQueary v. Conway*, 508 F. App'x 522, 524 (6th Cir. 2012) ("*McQueary II*") (affirming that the state legislature's "voluntary conduct" repealing a statute after plaintiffs obtained a preliminary injunction didn't "by itself serve as the basis for an award of attorney's fees").  So we must deny attorney's fees in preliminary-injunction cases if a defendant's voluntary action moots the case.[2]

Here, Tennessee's voluntary repeal of the challenged provisions bars recovery of § 1988(b) attorney's fees.  What mooted the case was the State-Defendants' own actions.  They repealed the law that the Plaintiffs challenged as unconstitutional.  Granting the fees otherwise promotes the very thing *Buckhannon* cast aside—the catalyst theory.  To faithfully implement *McQueary I*'s framework and *Buckhannon*'s restriction, I would reverse the district court's award of attorney's fees.

---

[2]The district court acknowledged that "it appears" the granting of the Plaintiffs' request for a preliminary injunction "*caused* the repeal[.]"  (R. 116, Memorandum, at 9.)  But the court incorrectly applied *Buckhannon*.  It held that "the repeal is a contextual fact relevant to . . . the question of how much judicial relief was necessary in order for the [P]laintiffs' claim to be considered successful."  (*Id.*)  So in other words, the court treated *Buckhannon* as a consideration instead of what it is—a requirement.  But we cannot ignore *McQueary I*'s framework.  Even after a court awards a preliminary injunction, *Buckhannon*'s backstop against the catalyst theory applies with full force.  *McQueary I*, 614 F.3d at 601.

## II.

Even putting *Buckhannon* aside, the preliminary injunction doesn't satisfy *McQueary I*'s case-specific inquiry. In *McQueary I*, although we noted that there was support for the idea that a preliminary injunction could never be the basis for a fee award, we rejected that hard-and-fast rule. 614 F.3d at 599. Instead, we said that such an approach, while "clear," failed "to account for fact patterns in which the claimant receives everything it asked for in the lawsuit, and all that moots the case is court-ordered success and the passage of time." *Id.* Nevertheless, "when a claimant wins a preliminary injunction and nothing more, that usually will not suffice to obtain fees under § 1988." *Id.* at 604. To obtain § 1988(b) attorney's fees in those rare cases, courts must find that the change caused by a preliminary injunction is court-ordered, material, and enduring in the legal relationship between the parties. *McQueary I*, 614 F.3d at 597–98. Here, the parties only dispute whether the relief was "enduring" enough to support prevailing-party status. I believe it wasn't.

This case is a mirror image of *McQueary I* and *II*. Same law. Same basic facts. A plaintiff challenges a state law to prevent future and reoccurring constitutional violations. A district court grants a preliminary injunction to enjoin the law's enforceability. And the state repeals the challenged provisions before the case's end, thus rendering the case moot. *See id.* at 595–96. In *McQueary II*, we ultimately affirmed that "the circumstances did not justify a fee award." 508 F. App'x at 524.

Aside from denying the catalyst theory, *McQueary II* rejected that "the preliminary injunction granted [McQueary] all the relief he sought." *Id.* That's because the nature of the relief he sought was permanent. *Id.* Like the Plaintiffs here, McQueary wanted to prevent future constitutional violations. *Id.* Rather than *court-ordered permanent* relief, McQueary only received a preliminary injunction. *Id.* That is, until the state-defendant voluntarily repealed its provisions. *Id.* So the preliminary injunction wasn't enduring because it didn't provide everything McQueary asked for. *Id.*

*McQueary I* expressed a simple observation: A preliminary injunction is generally not enough to confer prevailing-party status unless the temporary relief gives the plaintiff

"everything" he asked for.  614 F.3d at 599.  And *McQueary II* applied that logic.  508 F. App'x at 524.[3]  It's not as if the relief sought here was for a single event, thus allowing plaintiffs to obtain their one-time prayer for relief via a preliminary injunction.  *Cf. Miller v. Caudill*, 936 F.3d 442, 450 (6th Cir. 2019) (holding that plaintiffs prevailed when a preliminary injunction granted them their requested relief—"marriage licenses").[4]  To the contrary, the Plaintiffs here sought relief for one upcoming election cycle and permanent relief for all future elections.  That distinction matters.  The district court granted them a preliminary injunction.  And a few months later, the Tennessee legislature, not the court, voluntarily repealed the requirements.

To be sure, the Plaintiffs may have won the battle by avoiding compliance with state-law requirements in their upcoming election.  But they didn't win the war for all future elections, at least not in court.  The Plaintiffs wanted a permanent injunction to enjoin Tennessee from enforcing its statute and a declaration that it was unconstitutional, which they didn't get.  So the preliminary relief wasn't—well—enduring, at least not under § 1988(b).

### III.

Instead of *McQueary I* and *II*, the majority believes that *Green Party of Tennessee* is the "closest" case on point.  (Majority Op. at 6.)  I respectfully disagree because that case didn't deal with a preliminary injunction at all.  The district court granted final injunctive relief based on a merits decision on summary judgment.  *Green Party of Tenn.*, 767 F.3d at 542.  And only after the state-defendants appealed the case did the state legislature amend the provisions at issue.  *Id.* So the basis for awarding § 1988(b) attorney's fees stemmed not from a preliminary injunction, but from the court's merits decision.

Here, no court made a judgment on the validity of Tennessee's election requirements. And the fact that the district court provided an explanation on the *likelihood* of success on the

---

[3]As the Plaintiffs point out, the postures of *McQueary II* and this case are not exactly the same.  *McQueary II* affirmed a district court's fee denial, and here, we are reviewing a district court's fee grant.  But I don't believe that this distinction is material.  Again, the basic facts and legal framework are the same.

[4]The majority reasons that because the Plaintiffs could conduct voter-registration drives for seven months, the benefits here are as "irrevocable" as the marriage licenses in *Miller* were.  But the relief sought wasn't for a one-time event like in *Miller*.  Instead, the Plaintiffs wanted permanent relief for all future elections.

merits before awarding the preliminary injunction doesn't matter.  Likelihood of success on the merits isn't a final determination of success on the merits.  Our case-specific requirements under *McQueary* still stand, as does our rejection of the catalyst theory.  So *Green Party of Tennessee* remains inapposite.

**IV.**

For these reasons, I respectfully dissent.

**IN THE UNITED STATES DISTRCIT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

LINDA MIGLIORI, FRANCIS J. FOX,              :
RICHARD E. RICHARDS, KENNETH              :
RINGER, and SERGIO RIVAS,                        :
                                                                     :        No. 5:22-cv-00397-JFL
                                Plaintiffs,              :
                                                                     :
and                                                               :
                                                                     :
ZACHARY COHEN,                                      :
                                                                     :
                                Intervenor- Plaintiff,      :
                                                                     :
            v.                                                     :
                                                                     :
LEHIGH COUNTY BOARD OF ELECTIONS,      :
                                                                     :
                                Defendant,              :
                                                                     :
and                                                               :
                                                                     :
DAVID RITTER,                                           :
                                                                     :
                                Intervenor-Defendant.      :

---

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Brief in Opposition to Petition for

Attorneys' Fees was served on all parties of record via the Court's CM/ECF system on the date

set forth below.

Date:   December 1, 2022            By: *Lucas J. Repka*

                                                      Lucas J. Repka
                                                      Pa. I.D. No. 93509
                                                      108 East Center Street
                                                      Nazareth, Pennsylvania 18064
                                                      Phone : (610) 365-2670
                                                      Email: Lucas@repkamazinlaw.com
                                                      Counsel for The Lehigh County Board of
                                                                        Elections, Defendant