IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LINDA MIGLIORI, FRANCIS J. FOX, RICHARD E. RICHARDS, KENNETH RINGER, and SERGIO RIVAS, <br><br> Plaintiffs, <br><br> and <br><br> ZACHARY COHEN, <br><br> Intervenor-Plaintiff, <br><br> v. <br><br> LEHIGH COUNTY BOARD OF ELECTIONS, <br><br> Defendants, <br><br> and <br><br> DAVID RITTER, <br><br> Intervenor-Defendant. | No. 5:22-cv-00397-JFL |

**REPLY BRIEF IN SUPPORT OF PLAINTIFFS' PETITION FOR ATTORNEYS' FEES**

Plaintiffs Linda Migliori, Francis J. Fox, Richard E. Richards, Kenneth Ringer, and Sergio Rivas (collectively, "Plaintiff-Voters") respectfully submit this reply in further support of their Petition for Attorneys' Fees (ECF No. 65).

### A. Plaintiff-Voters Are Prevailing Parties

Plaintiff-Voters in this case obtained all the relief they were seeking, namely, a court order compelling the Board to count their ballots cast in the November 2021 municipal election. Plaintiff-Voters obtained this relief after they appealed to the Court of Appeals for the Third

1

Circuit and won *on the merits*. The Supreme Court did not reverse the Court of Appeals' decision *on the merits* – rather, the Supreme Court denied a request for stay that would have prevented the counting of the ballots, allowed the Third Circuit's decision to go into effect, and then vacated the decision *as moot* after the ballots had been counted and the election certified. As such, Plaintiff-Voters are prevailing parties for purposes of a fee award.

*Bagby v. Beal*, 606 F.2d 411 (3d Cir. 1979), is controlling, and the Board misreads it. The Board states that the relief obtained in *Bagby* "was enduring as it was not vacated on appeal." ECF No. 71 at 8. This is incorrect - the Third Circuit in *Bagby* vacated the district court's judgment as moot, and remanded with instructions to dismiss the plaintiff's complaint. *Bagby*, 606 F.2d at 417. The Third Circuit nonetheless affirmed the district court's award of attorneys' fees since the plaintiff successfully obtained the requested relief (an injunction ordering the defendants to provide a hearing to comply with due process) and, therefore, was a prevailing party. *Id.* at 414-15. The Board also ignores relevant case law from other circuits that have held that plaintiffs are prevailing parties when they successfully obtain injunctive relief and the case becomes moot pending appeal. *See* ECF No. 65-1 at 5 n.1.

The Board instead relies on inapplicable case law that does not address the situation in this case, where plaintiffs successfully obtained injunctive relief that was never overturned *on the merits*.[1] The Board's own discussion of the case law interpreting who is a prevailing party

---

[1] The Board relies primarily on *Sole v. Wyner*, 551 U.S. 74 (2007), and *Tennessee State Conference of the NAACP v. Hargett*, No. 21-6024, __ F.4th __, 2022 WL 16960480 (6th Cir. Nov. 16, 2022). ECF No. 71 at 6-7. Unlike this case, where Plaintiff-Voters successfully obtained a final judgment on the merits in their favor, both cases cited by the Board involve plaintiffs who successfully obtained only a *preliminary* injunction. In *Sole*, the plaintiff who obtained a preliminary injunction but later lost on the merits was not a prevailing party. "Of controlling importance" to the Court's decision was "the eventual ruling *on the merits* for defendants." *Sole*, 551 U.S. at 84-85 (emphasis added). The Board did not obtain a favorable decision on the merits. *Sole*, therefore, is inapposite. And

2

supports Plaintiff-Voters' position. This Court's order (ECF No. 59) compelling the Board to count Plaintiff-Voters' votes materially altered the legal relationship of the parties in a way that is irrevocable. ECF No. 71 at 5 (citing *Sole v. Wyner*, 551 U.S. 74, 83 (2007)). Before this Court's order, Plaintiff-Voters' ballots were set aside and the Board announced its intention to certify the election results without those votes included in the totals. After this Court's order, Plaintiff-Voters' ballots were counted and their votes were added to the total. Before Plaintiff-Voters successfully obtained a court order, they were disenfranchised; after obtaining the court order, they were not. Plaintiff-Voters are prevailing parties entitled to an award of attorneys' fees.

### B. The Board Cannot Meet the Heavy Burden to Establish "Special Circumstances" Negating a Fee Award.

The Board next argues that, even if Plaintiff-Voters are prevailing parties under § 1988, the Court should negate their statutory right to fees based on so-called "special circumstances." The argument hinges on a misreading of an inapposite Fourth Circuit decision, and ignores subsequent Supreme Court and Third Circuit cases emphasizing how "extremely limited" the special circumstances exception is. *Ashley v. Atl. Richfield Co.*, 794 F.2d 128, 135 n.9 (3d Cir. 1986); *see also Ward v. Phila. Parking Auth.*, 634 F. App'x. 901, 906 (3d Cir. 2015) (citing *Farrar v. Hobby*, 506 U.S. 103, 118 (1992) (O'Connor, J., concurring)); *see also Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402 (1968); *Truesdell v. Phila. Hous. Auth.*, 290

---

*Tennessee State Conference*, if anything, supports Plaintiff-Voters' position. The plaintiffs in that case successfully obtained a preliminary injunction, then the case became moot after the Tennessee legislature repealed the statutory provisions at issue. Because the preliminary injunction "was final in all but name," the plaintiffs were prevailing parties. Because this case concluded *on the merits* in favor of Plaintiff-Voters, Plaintiff-Voters are prevailing parties.

F.3d 159, 163 (3d Cir. 2002) ("it is well settled 'that a prevailing plaintiff should recover an award of attorney's fees absent special circumstances'" (quoting *Cnty. of Morris v. Nationalist Movement*, 273 F.3d 527, 535 (3d Cir. 2001))).

As applied in this circuit, a prevailing party may be denied a statutory fee award "only in unusual circumstances and then only upon a strong showing by the party asserting it." *Ashley*, 794 F.2d at 135 n.9 (citing *Knights of the Ku Klux Klan v. East Baton Rouge Parish Sch. Bd.,* 643 F.2d 1034, 1041 (5th Cir.1981)). The Board makes no such "strong showing" here. The Board asks this Court to stretch the limited concept of "special circumstances" to an unprecedented extent. In essence, the Board argues that it should be exempted from a statutorily mandated fee award because it was "at most" a "passive" participant in violating Plaintiffs' voting rights. *See* ECF No. 71 at 11. No such exemption is available under the law, and the Board in any event was by no means "passive" in its vehement opposition to Plaintiff Voters' claims. *See*, *e.g.*, ECF No. 32.

The "special circumstances" inquiry is unconcerned with the "defendant's motivations and strategy choices." *Ashley*, 794 F.2d at 135 n.9. The defendant's purported innocence or passivity is irrelevant to whether the plaintiff has established a right to fees under the statute. *See City of Greensboro v. Guilford Cnty. Bd. of Elections*, 921 F.3d 194, 196 (4th Cir. 2019) ("'Innocence' or 'lack of responsibility' for the enactment of an unconstitutional law is . . . not an appropriate criterion to justify denying a fee award against the party responsible for and enjoined from enforcing the unconstitutional law.").

Rather, once the right to fees as a prevailing party is established pursuant to a statutory fee-shifting mandate, courts may only nullify that right in extraordinary cases where *the plaintiff's own conduct* in the litigation would render a reward of fees unjust. While "the

4

Supreme Court has offered little guidance as to what situations qualify" for the special circumstances exception, the limited nature of this concept is clear, applying only in situations where a party's conduct is so extraordinary that "it is clear that the reasonable fee is no fee at all." *Ward*, 634 F. App'x. at 906-907 (quoting *Farrar*, 506 U.S. at 118). These cases "usually point to some conduct by plaintiffs which unnecessarily caused or lengthened the litigation." *Young v. Smith*, 269 F. Supp. 3d 251, 266–67 (M.D. Pa. 2017), *aff'd*, 905 F.3d 229 (3d Cir. 2018) (citations omitted).[2] The Board does not contend that Plaintiff-Voters' conduct would render a fee award unjust. Thus, no special circumstances exist to nullify a fee award.

The Board instead posits a 6-part "special circumstances" test apparently gleaned from *Chastang v. Flynn & Emrich Co.*, 541 F.2d 1040 (4th Cir. 1976). *See* ECF No. 71 at 9. But there is no 6-part test set forth in *Chastang*,[3] none of the "factors" listed in the Board's brief has

---

[2] For example, courts have relied on findings that a plaintiff "exhibited 'obstructive behavior' at trial," *id.* at 273 (citing *Wiercinski v. Mangia 57, Inc.*, 125 F.Supp.3d 445, 447 (E.D.N.Y. 2015)), or engaged in litigation misconduct to burden defense counsel and "disregarded the court's instruction," *id.* (quoting *Mahoney v. Kesery*, 778 F.Supp. 1002, 1004 (E.D. Wis. 1991)). Courts have also found special circumstances where "some conduct by plaintiffs…unnecessarily caused or lengthened the litigation." *Com. v. Loc. 542, Int'l Union of Operating Eng'rs*, No. 71-cv-2698, 1999 WL 54922, at *2 (E.D. Pa. Jan. 19, 1999) (citing *Sobel v. Yeshiva Univ.*, 619 F.Supp. 839, 845 (D.C.N.Y. 1985); *Greenside v. Ariyoshi*, 526 F.Supp. 1194, 1198 (D. Haw. 1981)); *see also, e.g.*, *Shott v. Rush–Presbyterian–St. Luke's Med. Ctr.*, 338 F.3d 736 (7th Cir. 2003) ("plaintiff's unreasonable arguments at the first trial forced the parties to participate in a second proceeding"). And pursuit of meritless claims may support a special circumstances finding. *See Ashley*, 794 F.2d at 135 n.9 ("there may be settlements in which the plaintiff's claim clearly appears to be legally or factually non-meritorious and, accordingly … it appears that the 'some benefit obtained' has been conferred by the defendant *solely* as a means of saving litigation expense." (emphasis in original)).

[3] A cursory reading of *Chastang* reveals that the court there did not, as the Board suggests in its brief, set forth a 6-part formula for use in future cases. The Board's brief picks quotes from a fact-specific discussion in *Chastang* about particular defendants' lack of involvement in establishing an employee benefit plan that, though legal at the time, triggered a gender discrimination violation under the subsequently-passed Title VII. Several of the "factors" listed by the Board have no conceivable application in the very different circumstances

5

been used by any court within the Third Circuit, and even the Fourth Circuit has declined to apply *Chastang*'s reasoning to the circumstances presented here.

When a county elections board in North Carolina recently invoked *Chastang* to make a similar "special circumstances" argument, the Fourth Circuit rejected the attempt based on reasoning that squarely applies here. *City of Greensboro*, 921 F.3d at 198-201. The court held that the county elections board was required to pay attorneys' fees to plaintiffs who prevailed on § 1983 claims, even though the board stayed neutral in the litigation and "was not involved in enacting the Redistricting Act" that violated plaintiffs' voting rights. *Id.* at 198-201. As in this case, the plaintiffs had no choice but to retain counsel for a civil rights action to vindicate their rights, and "[t]he County Board, as the instrumentality charged with the enforcement of the Redistricting Act, was the only necessary defendant . . . and the Citizens prevailed against it, obtaining full relief." *Id.* at 201. Thus, the county elections board was required by statute to pay attorneys' fees despite its neutral position in the litigation. *See also, e.g.*, *Hastert v. Ill. State Bd. of Election Comm'rs*, 28 F.3d 1430, 1444 n.16 (7th Cir. 1993) (for purposes of attorney's fees, it was "of no consequence" that the defendant "played no active role in the proceedings and agreed to enforce whatever plan the district court adopted"). The result makes even more sense here because, far from passively remaining on the sidelines awaiting courts' orders, the Board actively opposed Plaintiff-Voters' claims with contradictory arguments that multiplied litigation burdens, including by forcing Plaintiff-Voters to respond to a 38-page summary judgment brief

---

presented here. The lone "factor" that is even capable of application here—that "the action at the time it was taken was not illegal," ECF No. 71 at 9—would not help the Board in any event. *Chastang* involved a pension plan that originated in 1942, before Title VII was passed. 541 F.2d at 1045. By contrast, the Materiality Provision made it illegal to disenfranchise eligible voters based on meaningless paperwork errors long before the 2021 election at issue here.

6

(ECF No. 32) and later filing a 26-page opposition to Plaintiff-Voters' emergency stay petition (App. Dkt. 26).

The limited "special circumstances" exception has never been used to deny fees for plaintiffs who had no choice but to file a § 1983 suit to vindicate their rights. *Cf. Disability Rights Pa. v. Erie Cnty.*, No. 19-62, 2020 WL 13469604, at *2 (W.D. Pa. Jan. 21, 2020) ("Plaintiff was left with no alternative but to initiate this action to obtain the court order Defendant required."). It has certainly never been used to let a defendant escape a statutorily mandated fee award after actively opposing the plaintiffs' civil rights claims.

### C. Plaintiff-Voters' Fee Request is Reasonable

#### 1. Plaintiff-Voters' Requested Hourly Rates are Reasonable

The Board does not dispute that Plaintiff-Voters' requested hourly rates are reasonable for Philadelphia. The Board's only objection to the requested hourly rates is that Philadelphia rates are not applicable to this case in the Lehigh Valley. *See* ECF No. 71 at 14-15. But the proper community for determining reasonable hourly rates is the Eastern District of Pennsylvania, not the Lehigh Valley. *See Public Interest Research Grp. of N.J., Inc. v. Windall*, 51 F.3d 1179, 1185-88 (3d Cir. 1995) (affirming adoption of entire District of New Jersey as relevant market for legal rates, and rejecting argument that relevant market should be limited to southern New Jersey). Consistent with *Windall*, this Court has relied on the Community Legal Services fee schedule as "a fair reflection of the prevailing market rates in Philadelphia," and has applied those rates to cases in the Lehigh Valley. *MP ex rel. VC v. Parkland Sch. Dist.*, No. 5:20-cv-4447, 2021 WL 5177012, at *2 (E.D. Pa. Nov. 5, 2021) (quoting *Maldonado v. Houstoun*, 256 F.3d 181, 187 (3d Cir. 2001)).

Because the Board does not dispute that the requested rates are reasonable for Philadelphia, this Court should accept the requested hourly rates. *See Interfaith Community Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 711 (3d Cir. 2005) ("The court may not reduce an award *sua sponte*; rather, it can only do so in response to specific objections made by the opposing party."); *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir.1990) ("The district court cannot 'decrease a fee award based on factors not raised at all by the adverse party.'" (quoting *Bell v. United Princeton Properties, Inc.*, 884 F.2d 713, 720 (3d Cir.1989))).  A hearing to present expert testimony on Lehigh Valley attorney rates, as proposed by the Board, is unnecessary.

        2.        <u>The Board Fails to Provide Specific Objections to Plaintiff-Voters' Requested Fees</u>

"The court may not reduce an award *sua sponte*; rather, it can only do so in response to specific objections made by the opposing party." *Interfaith Community Org.*, 426 F.3d at 711; *see also Rode*, 892 F.2d at 1183 ("The district court cannot 'decrease a fee award based on factors not raised at all by the adverse party.'" (quoting *Bell*, 884 F.2d at 720)).  Objections by the adverse party "cannot merely allege in general terms that the time spent was excessive"; rather, "they must generally identify the type of work being challenged" and "specifically state the adverse party's grounds for contending that the hours claimed in that area are unreasonable." *Bell*, 884 F.2d at 720.  The adverse party's brief "must be specific and clear enough that the fee applicants have a fair chance to respond and defend their request." *Id.*

The Board's objections are not sufficiently specific for Plaintiff-Voters to respond.  The Board generally objects to *all* of Plaintiff-Voters' requested fees, as evidenced by the Board's request that this Court should "reduce the reasonable hours to zero or, at most, a nominal amount." ECF No. 71 at 14.  The Board's general objection to *all* of the requested hours makes it impossible to meaningfully assess the Board's objections.

8

Even if the Board had sufficiently identified "documents," "activities," "legal work," or a subject matter of conferences for which the Board alleges the time spent is unreasonable, *see* ECF No. 71 at 13, the Board ignores the complexity and expedited timing of this case. Cases involving "multiple, complex legal questions," particularly "an issue of first impression" justify the use of multiple attorneys. *Planned Parenthood of Cent. N.J. v. Atty. Gen. of the State of N.J.*, 297 F.3d 253, 272 (3d Cir. 2002). "Even if the attorneys had worked on similar tasks, this would not be *per se* duplicative. . . . '[c]areful preparation often requires collaboration and rehearsal.'" *Id.* (quoting *Rodriguez-Hernandez v. Miranda-Velez*, 132 F.3d 848, 860 (1st Cir.1988)). A "reduction in allowable hours for the claims of multiple attorneys is warranted only if the attorneys are *unreasonably* doing the *same* work." *Rode*, 892 F.2d at 1187. Thus, "an award for time spent by two or more attorneys is proper when it reflects the distinct contribution of each lawyer." *Jones v. Central Soya Co., Inc.*, 748 F.2d 586, 594 (11th Cir. 1984) (quoting *Johnson v. Univ. Coll. of the Univ. of Ala. in Birmingham*, 706 F.2d 1205, 1208 (11th Cir. 1983)).

This case involved multiple, complex legal questions, including whether a private right of action exists under the Materiality Provision of the Civil Rights Act of 1964, and whether the Materiality Provision prohibits disqualification of Pennsylvania mail ballots solely because a voter did not handwrite a date on the ballot return envelope. The first question was an issue of first impression in the Third Circuit, and the second question was an issue of first impression in any court.[4] The complexity of the case, combined with the expedited schedule of the case, justified the use of multiple, experienced attorneys.

---

[4] Pennsylvania state courts have mentioned the Materiality Provision with respect to the handwritten date requirement, but no courts had substantively addressed the issue prior to this case.

Moreover, the Board fails to acknowledge the amount of work required in an extremely short time span to present novel issues to the court. This case was litigated, appealed and considered by the Supreme Court twice in the space of nine months. A complex, novel case requires substantial work including the experience and subject matter expertise brought to bear by counsel. Typically, the ACLU-PA would have engaged outside counsel with much higher standard rates to assist in a matter of this magnitude, but instead handled this matter with its own staff at the reduced CLS rates.

Because the Board failed to provide sufficiently specific objections, and because the complexity and expedited schedule of this case warranted use of multiple attorneys, this Court should award Plaintiff-Voters' requested fees.

### D. Conclusion

For the foregoing reasons, this Court should award Plaintiff-Voters $249,122.50 in reasonable attorneys' fees pursuant to 42 U.S.C. § 1988.

Respectfully submitted,

Dated: December 8, 2022

*s/ Richard T. Ting*
Richard T. Ting (PA No. 200438)
Witold Walczak (PA No. 62976)
ACLU OF PENNSYLVANIA
P.O. Box 23058
Pittsburgh, PA 15222
P: 412-681-7864
vwalczak@aclupa.org
rting@aclupa.org

Stephen A. Loney, Jr. (PA No. 202535)
Marian K. Schneider (PA No. 50337)
ACLU OF PENNSYLVANIA
P.O. Box 60173
Philadelphia, PA 19102
P: 215-592-1513
sloney@aclupa.org
mschneider@aclupa.org

*Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the date set forth below, I caused the foregoing document to be served on all parties of record via the Court's CM/ECF system.

Dated: December 8, 2022                                                  *s/ Richard T. Ting*