IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LINDA MIGLIORI, et al., | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | |
| v. | : | No. 22-cv-397 |
| | : | |
| LEHIGH COUNTY BOARD OF | : | |
| ELECTIONS, | : | |
| Defendant. | : | |

**REPORT AND RECOMMENDATION**

**CRAIG M. STRAW**
**UNITED STATES MAGISTRATE JUDGE**                    **May 19, 2025**

Before the Court is Plaintiffs' Motion for Attorney Fees, Defendant's response in opposition to the motion, and supplemental briefing submitted by both parties at the request of the Court.  Docs. 65, 68, 70, 71, 72, 76, 77, 78, 79, 82, 91, 92, 98, 99.  Additionally, before the Court is Plaintiffs' related Third Circuit Motion for Attorney Fees.  ECF 97.[1]  For the following reasons, I recommend reducing Plaintiffs' reasonably expended hours to 320.05 hours for Plaintiffs' District Court litigation and 395.5 hours for Plaintiffs' Third Circuit litigation.[2]  I further recommend that the lodestar amounts, $185,330 for the District Court litigation and $183,006.50 for the Third Circuit litigation, are reasonable and adequate.  Therefore, I recommend the Court grant in part, and deny in part, Plaintiffs' Motion for Attorney Fees (Doc. 65) in accordance with this report and recommendation.

## I.    FACTUAL HISTORY AND PROCEDURAL HISTORY

The relevant factual and procedural history was set forth in the Court's April 4, 2023, opinion.  Doc. 73.

---

[1] See infra note 3
[2] See infra note 18 (discussing fee petition litigation).

Plaintiffs . . . , a bipartisan group of voters, initiated this action under 42 U.S.C. § 1983, seeking to compel Defendant . . . to count Plaintiffs' mail-in ballots from the November 2021 election, which were set aside for their failure to handwrite a date on the return envelope. Plaintiffs argued that disqualifying the ballots would violate their First and Fourteenth Amendment rights under the U.S. Constitution, as well as violate the Materiality Provision of the Civil Rights Act, 52 U.S.C. § 10101(a)(2)(B). This Court disagreed, granted summary judgment in favor of the Board, and held that the handwritten date requirement under Pennsylvania law did not pose an undue burden on Plaintiffs' constitutional right to vote and that Plaintiffs lacked capacity to bring suit under § 10101. On appeal, the Third Circuit reversed this Court, holding that Plaintiffs had capacity to bring suit and that disqualifying the mail-in ballots in this case would violate the Materiality Provision of § 10101. The Third Circuit remanded the case to this Court with instructions to order the Board to count the ballots.

After the Third Circuit issued its decision, David Ritter, the intervenor Defendant, filed an emergency application in the Supreme Court, asking the Court to stay the Third Circuit's decision pending further appeal. Justice Alito initially entered a temporary administrative stay, . . . , but the full Supreme Court ultimately denied the application for an emergency stay. As a result, the Third Circuit's decision went into effect, . . . , and this Court issued an order directing the Board to count Plaintiffs' mail-in ballots. The Board complied by counting Plaintiffs' ballots and certifying the election results.

After the election results had been certified, Ritter filed a petition for writ of certiorari, asking the Supreme Court to vacate the Third Circuit's decision and dismiss the case as moot. Ritter argued that the case must be dismissed as moot because, although he initially intended to seek a merits review of the Third Circuit's unfavorable decision, the Supreme Court could no longer review the merits of the case given that the election had ended and the results were certified. The Board filed a response adopting Ritter's argument. On October 11, 2022, the Supreme Court granted Ritter's petition and vacated the Third Circuit's judgment on mootness grounds. The Supreme Court did not issue an opinion or address the merits of the Third Circuit's decision but remanded and instructed the Third Circuit to dismiss the case as moot. As a result, the Third Circuit recalled its prior mandate.

Id. at 2-4.

Plaintiffs then filed the Motion for Attorney Fees currently before the District Court and a similar Motion for Attorney Fees before the Third Circuit.  Doc. 65; ECF 97, <u>Migliori et al. v. Lehigh Cnty. Bd. of Elections</u>, No. 22-1499.[3]  Plaintiffs argued that they are entitled to reasonable attorneys' fees under 42 U.S.C. § 1988 for Plaintiffs' District Court and Third Circuit litigation, despite the Third Circuit dismissing the appeal as moot.  Doc. 65; ECF 97.  Defendant argued that Plaintiff was not entitled to reasonable attorneys' fees because Plaintiffs did not meet the "prevailing party" status.  Doc. 71; ECF 105.

On April 4, 2023, the District Court issued an order and opinion finding that Plaintiffs are the prevailing party for purposes of 42 U.S.C. § 1988 and that no special circumstances existed to render a fee award unjust but deferred determining whether the attorneys' fees sought were reasonable.  Doc. 73, at 2.  The District Court then directed the parties to submit supplemental briefing addressing the reasonableness of the fees requested.  Doc. 74.  The parties submitted their respective briefs and responses.  Docs. 76, 77, 78, 79, 82.  The Third Circuit then referred Plaintiffs' Motion for Attorney fees for Plaintiffs' Third Circuit litigation to the District Court for fact-finding to resolve the attorneys' fees issues before both courts.  Doc. 84; ECF 103.  This matter was then reassigned from Judge Leeson to Judge Gallagher and finally to Judge Schmehl.  Docs. 88, 89.  The Court requested supplemental briefing, which the parties submitted.  Doc. 90, 91, 92.  This matter was then referred to me for a Report and Recommendation on the outstanding motions for attorneys' fees.  Doc. 94.

---

[3] Hereafter, citations to Third Circuit documents will be referred to as "ECF" followed by the entry number, while District Court documents will be referred to as "Doc." followed by the entry number.

This Court has already determined that Plaintiffs are the "prevailing party" for purposes of

42 U.S.C. § 1988.[4]  Doc. 74.  The only remaining issue is the reasonableness of attorney's fees.

Plaintiffs request $516,136.50 in attorneys' fees consisting of $249,122.50 (District Court

---

[4]    The Third Circuit referred Plaintiffs' 42 U.S.C. § 1988 motion before it to the District Court for "the requisite fact-finding to resolve the attorneys' fees issues arising before both [the Third Circuit] and the District Court."  ECF 103.  On April 4, 2023, the District Court performed the requisite fact-finding and determined the prevailing party issue after considering the District Court, Third Circuit, and Supreme Court litigation.  Doc. 73.  The District Court found that Plaintiffs were the prevailing party for purposes of 42 U.S.C. § 1988 and that no special circumstances existed to render a fee award unjust.  Id.  Specifically, the District Court held that Plaintiffs satisfied the prevailing party requirement because they received the relief requested at the Third Circuit which resulted in lasting relief—their votes were counted and the election was certified—despite the Supreme Court's mootness decision.  Id. at 12-15.

On March 4, 2025, this Court requested briefing regarding reasonable attorney rates. Doc. 95.  In Defendant's submission, it argued that under Lacky v. Stinnie, 145 S.Ct. 659 (2025) Plaintiffs no longer achieve prevailing party status because relief was temporary due to the Supreme Court's decision that the case was moot.  Doc. 98-1, at 2-4.  After reviewing Lacky, this Court finds that Judge Leeson's opinion (Doc. 73) remains unaffected and Plaintiffs maintain prevailing party status.  In Lacky, a group of Virginia drivers sued the Commissioner of the Virginia Department of Motor Vehicles, arguing that a statute requiring suspension of their licenses for failing to pay court fines or costs was unconstitutional.  Id. at 664.  The court issued a preliminary injunction enjoining the department from enforcing the statute.  Id. at 665.  While suit was pending, the statute was repealed.  Id.  The parties agreed to dismiss the suit.  Id.  The drivers then motioned for attorney's fees under 42 U.S.C. § 1988, claiming prevailing party status.  Id.  The Supreme Court disagreed and held that the drivers did not qualify as the prevailing party because their success in obtaining a preliminary injunction was a transient victory that was not judicially sanctioned relief that materially altered the legal relationship between the parties.  Id. at 668-69.  A preliminary injunction does not reach the merits of the claims but preserves the parties' positions until a trial on the merits can be held.  Id. at 667 (citing University of Tex. v. Camenisch, 451 U.S. 390, 395 (1981)).  Thus, the Court held "[a] party "prevails" when a court conclusively resolves his claim by granting enduring relief on the merits that alters the legal relationship between the parties."  Id. at 671.

Notably, Judge Leeson's decision was not based on Plaintiff's successful preliminary injunction before the Third Circuit.  Doc. 73.  Plaintiffs were deemed the prevailing party because the Third Circuit's decision reached the merits and granted Plaintiffs judicially sectioned relief—counting the votes and certification of the election—which endured.  Doc. 73, at 14-15, note 3; ECF 89-2, at 16.  Therefore, I recommend that this Court defer to Judge Leeson's holding in his April 4, 2023, opinion (Doc. 73) and for the reasons set forth in that opinion find that Plaintiffs maintain prevailing party status.  This Report and Recommendation assumes that the District Court's fact-finding, determinations regarding prevailing party status, and finding that no special circumstances exist to render an award unjust would also apply and be recommended for the Third Circuit fee application.

litigation), $248,404.00 (Third Circuit litigation), and $18,610.00 (attorneys' fees litigation). Docs. 65, 76. Plaintiffs argue that the amount requested is reasonable, complies with the lodestar standard, the time spent is reasonable, the requested hourly rate is below the recommended Community Legal Services ("CLS") fee schedule, the Philadelphia market is the proper fee market, and no special circumstances exist for zero or nominal attorney's fees. Docs. 65-1, 71, 72, 77, 78, 79, 99. Defendant argues that Plaintiffs should receive nominal to no attorneys' fees due to the narrow relief obtained.[5] Doc. 71, 77, 79, 82. Further, Defendant argues that the fees requested are unreasonable, unnecessary, excessive, and redundant, Lehigh County/Allentown market rates should apply, and Plaintiffs failed to support their request for fees associated with the attorneys' fee litigation. Id.

## II.    **LEGAL STANDARD**

---

[5] Specifically, Defendant argues that Plaintiffs did not succeed on a single legal claim because the Supreme Court found the case was moot. Doc. 71, 77, 79, 82. Therefore, Plaintiffs should receive zero or nominal fees because of Plaintiffs' limited success. Id. Hensley provides:

> The district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation. . . . If . . . a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount.

Hensley v. Eckerhart, 461 U.S. 424, 435 (1983). As previously noted by the Court, Plaintiffs sued to have their ballots counted in the November 2021 election, and ultimately received the relief they requested. Doc. 73, at 15. This Court further notes that not only were the votes counted, but Defendant was enjoined from certifying the election without counting the votes, the Third Circuit found that not counting the votes would violate the Materiality Provision, and Defendant was ordered to certify the election after counting the votes. ECF 89. All results realized were part of Plaintiffs' requested relief. Doc. 1, at 20-21; ECF 89-2, at 16. Ultimately, the votes were counted and the election was certified, which remains in effect. Thus, the Court is unpersuaded by Defendant's argument and recommends the loadstar amount set forth in this report and recommendation is reasonable for the result achieved.

At the Court's discretion, the prevailing party of 42 U.S.C. § 1983 litigation may recover reasonable attorney's fees under 42 U.S.C. § 1988(b).  After the prevailing party determination, the Court must determine what fee is "reasonable."  Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  When determining a reasonable attorney's fee, the Court begins by multiplying the reasonable number of hours worked by an attorney by a reasonable hourly rate, also known as a "lodestar" amount.  Id. at 433.  The lodestar amount is presumed to be a reasonable fee. Washington v. Phila. Cnty. Ct. of C.P., 89 F.3d 1031, 1035 (3d Cir. 1996) (citing City of Burlington v. Dague, 505 U.S. 557, 562 (1992)).  It is the burden of the party seeking the fees to "submit evidence supporting the hours worked and rates claimed."  Rode v. Dellarcipete, 892 F.2d 1177, 1183 (3d Cir 1990) (quoting Hensley, 461 U.S. at 433).  The party opposing the fee has the burden of challenging the requested fees by affidavit or brief with sufficient specificity to give the fee applicants notice of the challenge.  Rode, 892 F.2d at 1183.  "The district court cannot 'decrease a fee award based on factors not raised at all by the adverse party.'"  Id. (quoting Bell v. United Princeton Properties, Inc., 884 F.2d 713, 720 (3d Cir. 1989)).

Upon review of the submissions, the Court then determines whether the hours billed are "unreasonable for the work performed."  Washington, 89 F.3d at 1037.  After the reasonable number of hours expended are determined, the reasonable hourly rate is determined.  Hensley, 461 U.S. at 433.  The reasonable hourly rate is calculated according to the prevailing market rates in the relevant community.  Washington, 89 F.3d at 1035 (citing Blum v. Stenson, 465 U.S. 886, 895-96 (1984)).

After the lodestar amount is calculated a district court may, "(1) identify any "*Johnson* factors . . . not subsumed in the lodestar, (2) "analyze[ ] those factors in light of the facts of the case, (3) and decide whether "a downward deviation from the lodestar [is] justified."  MP by and

6

through VC v. Parkland School District, No. 20-cv-4447, 2021 WL 5177012, at *3 (E.D. Pa.

Nov. 5, 2021); see Souryavong v. Lackawanna Cty., 872 F.3d 122, 128 (3d Cir. 2017); see also

Johnson v. Georgia Hwy. Exp., Inc., 488 F.2d 714, 717-20 (5th Cir. 1974). The Johnson factors

include:

> (1) The time and labor required;
> (2) The novelty and difficulty of the questions;
> (3) The skill requisite to perform the legal service
> properly;
> (4) The preclusion of other employment by the attorney
> due to acceptance of the case;
> (5) The customary fee;
> (6) Whether the fee is fixed or contingent;
> (7) Time limitations imposed by the client or the
> circumstances;
> (8) The amount involved and the results obtained;
> (9) The experience, reputation, and ability of the
> attorneys;
> (10) The 'undesirability' of the case;
> (11) The nature and length of the professional relationship
> with the client; and
> (12) Awards in similar cases.

Id.

The lodestar method, however, is presumed to produce a reasonable fee. Washington, 89

F.3d at 1035. A deviation from the lodestar amount and application of the Johnson factors

should only occur in "rare circumstances in which the lodestar does not adequately take into

account a factor that may properly be considered in determining a reasonable fee." Souryavong,

872 F.3d at 128. Thus, the Johnson factors may be considered after the lodestar calculation, so

long as the factor is not already "subsumed in the loadstar" amount. Id.

## III.    DISCUSSION

### A.    A reduction in hours expended is warranted.

#### a.    Reasonable Hours Expended Standard

It is the fee petitioners' duty to establish that the number of hours expended was reasonable. Rode, 892 F.2d at 1183.   Petitioners should include, "'some fairly definite information as to the hours devoted to various general activities, e.g., pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys, e.g., senior partners, junior partners, associates.'"  Id. at 1190 (quoting Lindy Bros. Builders, Inc. of Phila. v. Am. Radiator & Standard Sanatory Corp., 487 F.2d 161,167 (3d Cir. 1973)).  The petition should be specific enough to allow the court to determine if the hours claimed are "unreasonable for the work performed." Id. (citing Pawlak v. Greenawalt, 713 F.2d 972, 978 (3d Cir. 1983)). Inversely, the party opposing the fee petition must raise specific objections to the fees they are challenging.  Id. at 1183; see Interfaith Cmty. Org. v. Honeywell Int'l, Inc., 426 F.3d 694, 711 (3d Cir. 2005) ("The court may not reduce an award sua sponte; rather, it can only do so in response to specific objections made by the opposing party.").

After an objection to the fee request, the court has great discretion to adjust the fees in light of the objections.  Id. (citing Bell, 884 F.2d at 720).  The district court should exclude hours that are not reasonably expended.  Hensley, 461 U.S. at 433.  A reduction in hours may be warranted for a number of reasons.  See Rode, 892 F.2d at 1183 (allowing reduction of hours that are excessive, redundant, or unnecessary); Hensley, 461 U.S. at 433 (allowing reduction of hours when fee petition inadequately documents hours claimed and allowing reduction of hours spent litigating other claims that were distinct in all respects from claims on which the party succeeded); Maldonado v. Houstoun, 256 F.3d 181,186 (3d Cir. 2001) (reducing hours expended preparing for oral argument before Third Circuit as excessive where hours included learning and excessively rehearsing appellate advocacy).

**b.  District Court Litigation Hours**

Along with Plaintiffs' fee petition, Plaintiffs submitted detailed billing sheets for four attorneys that worked on this matter.[6]  Doc. 65-2, at 5-6; Doc. 65-3, at 5-6; Doc. 65-4, at 4-5; Doc. 65-5, at 5-7.  Plaintiffs assert that 415.70 hours spent litigating these claims in District Court is reasonable given the complex and novel legal issues involved.  Doc. 65-1, at 6-10; Doc. 78.  Plaintiffs also assert that Defendant does not provide adequately specific objections to warrant a reduction in the hours expended.  Docs. 65, 72, 76, 78.  Defendant objects to the following hours as unreasonable, excessive, unnecessary, and duplicative in addition to asserting that Plaintiffs should be awarded no more than nominal fees because they only received partial relief:

| Item | Hours Expended |
|------|---------------|
| Temporary Restraining Order Petition | 36.2 |
| Complaint | 32 |
| Stipulation of Facts and Summary Judgment Brief | 36.4 |
| Plaintiffs' Response to Defendant's Summary Judgment Motion | 125.1 |
| Plaintiffs' Summary Judgment Reply Brief | 20.7 |
| Research | 14.9 |
| Strategy Meetings | 35.35 |
| Total | 300.65 |

Doc. 77, at 4-6.  Defendant does not provide how much time Plaintiffs should have spent on each of these tasks.

---

[6] Although there was a fifth attorney, Plaintiffs have foregone recovery of his fees.  Doc. 65-1, at 7.

1.  **No reduction is warranted in the hours spent drafting Plaintiffs' Temporary Restraining Order Petition ("TRO").**

Plaintiffs spent a total of 43.3 hours drafting a TRO (Docs. 2 & 3) between two attorneys, Stephen A. Lonely Jr. ("SL") and Richard T. Ting ("RT").  Doc. 65-4, at 4-5; Doc. 65-5, at 5-7. This petition included a 3-page motion and 22-page brief, for a total of 25 pages.  Docs. 2, 3. Defendant objects to 36.2 hours expended, 83% of the time spent on the TRO.  Doc. 77, at 4-6.  I recommend no reduction in hours and find that the 1.7 hours per page work rate is reasonable for attorneys of SL and RT's experience.[7]  See MP by and through VC, 2021 WL 5177012, at *6 (finding a 45-minutes-per-page rate reasonable); see e.g., Walton v. Massanari, 177 F. Supp. 2d 359, 364 (E.D. Pa. 2001) (finding two-hours-per-page rate reasonable); see also Maldonado, 256 F.3d at 185–87 (finding three-hours-per-page rate reasonable).

2.  **A reduction is warranted in the hours expended drafting Plaintiffs' Complaint.**

 Defendant challenges 32 hours spent drafting Plaintiffs' complaint.  Doc. 77, at 5-6. Two attorneys, Witold Walczak ("WW") and Marian K. Schneider ("MS"), worked on the complaint. Doc. 1; Doc. 65-2, at 5-6; Doc. 65-3, at 5-6.  The complaint in this matter is a 21-page, three- count document, resulting in a work rate of 1.5 hours per page.  Doc. 1.  Both attorneys possess over 35 years of legal experience and a combined 52 years of relevant civil rights related experience.[8]  Doc. 65-2, at 1-4; 65-3, at 1-4.  A reduction to one hour per page with

---

[7] At the time of suit, each attorney possessed the following years of experience:

> Stephen A. Loney, Jr., 18 years of legal experience, 1 month of civil rights related experience.  Doc. 65-4, at 1-3.

> Richard T. Ting, 17 years of legal experience, 8 years of civil rights related experience Doc. 65-5, at 1-4.

[8] At the time of suit, each attorney possessed the following years of experience:

two hours of editing is reasonable, for a total of 23 hours.  See Rainey v. Phila. Hous. Auth., No.
92-6815, 832 F. Supp. 127, 130 (E.D. Pa. Sept. 8, 1993) ("To put it another way, normally the
higher the allowed hourly rate commanded based upon skill and experience, the shorter the time
it should require an attorney to perform a particular task.").

### 3. A slight reduction is warranted in the hours spent reviewing and revising Plaintiffs' Stipulation of Facts and Motion for Summary Judgment.

Defendant challenges 36.4 hours billed to reviewing and revising Plaintiffs' stipulation of
facts and summary judgment motion.  Doc. 77, at 5-6.  SL spent 12.8 hours reviewing and
revising Plaintiffs' stipulation of facts and summary judgment motion.  Id.; Doc. 65-4, at 4-5.
RT spent 14.7 hours reviewing and revising Plaintiffs' summary judgment motion.  Id.; Doc. 65-
5, at 5-7.  MS spent 3.8 hours reviewing the summary judgment motion.  Id.; Doc. 65-3, at 5-6.
WW spent 5.1 hours reviewing the motion.  Id.; Doc. 65-2, at 6.  Plaintiffs' stipulation of facts
was 14 pages, while the summary judgment motion was 27 pages.  Docs. 27, 33.  I recommend a
reduction in editing hours overall.  The hours at issue are for editing and revising both
documents, not drafting.  A week's worth of time spent editing 41 pages is excessive given that
the documents should have been in a workable state by the time editing and review occurred.
Even after generously allowing four attorneys to edit two documents, the time each attorney
spent editing should be considerably less than the time spent/allowed for drafting such
documents.  RT and SL's hours should be reduced to 5 hours and 7 hours respectively.  I find
MS's 3.8 hours of review reasonable.  WW's hours should be reduced to 2.5 hours as WW is the

---

Witold Walczak, 36 years of legal experience, 36 years of civil rights related experience.
Doc. 65-2, at 1-4.

Marian K. Schneider, 35 years of legal experience, 16 years of civil rights related
experience.  Doc. 65-3, at 1-4.

attorney with the most civil rights experience and most experienced attorney on the team.  Thus, reducing the 36.4 hours sought is warranted, and the reasonable hours expended reviewing and revising these documents are 18.3 hours.

### 4.  A reduction is warranted in the hours spent drafting Plaintiffs' Response to Defendant's Motion for Summary Judgment.

Next, Defendant challenges 125.1 hours spent on Plaintiffs' response to Defendant's summary judgment motion.  Doc. 77, at 5-6.  All four attorneys again worked on this document.  Id.  SL spent 47.8 hours drafting and discussing Plaintiffs' response.   Doc. 65-4, at 4-5; Doc. 77, at 5-6.  WW spent 21.9 hours reviewing and revising the response.  Doc. 65-2, at 6; Doc. 77, at 5-6.  RT spent 19.4 hours researching and writing the laches portion of the brief.  Doc. 65-5, at 5-7; Doc. 77, at 5-6.  MS spent 11 hours researching and drafting the private right of action section of the brief and 25 hours reviewing and editing.  Id.; Doc. 65-3, at 5-6.  Plaintiffs' opposition to Defendant's summary judgment motion is a 47-page document, resulting in a 2.6 hour per page work rate.  Doc. 44.  Given the level of experience of the attorneys and number of attorneys involved, a reduction in hours expended is warranted.

SL appears to be the main drafter of the document. Doc. 65-4, at 4-5.  It is clear from Plaintiffs' time entries, however, that MS and RT were responsible for drafting two sections of the document.  Doc. 44; Doc. 65-3, at 5-6; Doc. 65-4, at 4-5; Doc. 65-5, at 5-7.  Thus, SL's time will be reduced by the hours expended by others on drafting their sections, to avoid duplicative billing.  Doc. 65-2, at 5-6; Doc. 65-3, at 5-6; Doc. 65-4, at 4-5; Doc. 65-5, at 5-7; see Rode, 892 F.2d at 1187 (stating reduction for duplication is warranted if attorneys are unreasonably doing same work).  As determined previously, a reasonable work rate for an attorney of SL's experience is 2 hours per page.  SL wrote all sections except the laches argument (5 pages) and the private right of action section (5 pages).  Doc. 44; Doc. 65-3, at 5-6; Doc. 65-4, at 4-5; Doc.

65-5 at 5-7.  Thus, SL wrote 37 pages, at a work rate of 2 hours per page, SL's 47.8 hours spent

drafting is reasonable.  See e.g., Walton v. Massanari, 177 F. Supp. 2d at 364 (finding two-hour-

per-page rate reasonable).

MS spent 11 hours researching and drafting the private right of action portion of the brief.

Doc. 65-3 at 5-6; Doc. 77.  As previously discussed, for an attorney of MS's experience a

reasonable work rate is one hour per page.  Because the laches section of the brief is 5 pages

long, MS's hours should be reduced to 5 hours for drafting plus an additional 2 hours of

research, for a total of 7 hours.  Doc. 44.  RT spent 19.4 hours researching and drafting the laches

section of the brief.  Doc. 77; Doc. 65-5 at 5-7.  As noted previously, a reasonable work rate for

someone of RT's experience is 2 hours per page.  RT's laches section is 5 pages long.  Doc. 44.

RT's reasonable hours expended should be reduced to 12 hours which accounts for 2 hours of

research time.

Regarding revising and editing Plaintiffs' opposition brief, WW spent 21.9 hours on this

task and MS spent 25 hours editing.  Although WW indicates that he substantially edited the

brief, a reduction of his time is a warranted.  Doc. 65-2, at 6.  While the Court appreciates the

time it takes two highly skilled attorneys to review and edit a brief in a matter that involves an

issue of first impression, the arguments in the brief are in response to Defendant's already

briefed arguments and were drafted by SL, RT, and MS.  Importantly, all the attorneys involved

are very experienced attorneys with 18+ years of legal writing experience.  Doc. 65-2, at 1-4;

Doc. 65-3, at 1-4; Doc. 65-4, at 1-3; Doc. 65-5, at 1-4.  Thus, WW's time should be reduced to

10 hours to account for the substantial edits noted in WW's time entry, and MS's review should

be reduced to 8 hours for a total of 18 hours spent editing Plaintiffs' response to Defendant's

summary judgment motion.  Thus, the total amount of reasonable hours expended for Plaintiff's

response to Defendant's summary judgment motion is 84.8 hours.

5.  **No reduction is warranted in the hours spent drafting Plaintiffs' Summary Judgment Reply Brief.**

Defendant objects to 20.7 hours of time spent drafting Plaintiffs' summary judgment

reply brief.  Doc. 77, at 5-6.  SL and RT worked on this document.  Doc. 65-4, at 4-5; Doc. 65-5,

at 5-7.  This document is 12 pages long.  Doc. 48.  I do not recommend reducing these hours and

find that the 1.7 hours per page work rate is reasonable for attorneys of SL and RT's experience.

See MP by and through VC, 2021 WL 5177012, at *6 (finding 45-minutes-per-page rate

reasonable), see e.g., Walton, 177 F. Supp. at 364 (finding two-hour-per-page rate reasonable);

see also Maldonado, 256 F.3d at 185–87 (finding three-hour-per-page rate reasonable).

6.  **A reduction is warranted in the hours spent researching issues.**

Defendant next objects to 14.9 hours spent on unspecified research and research

regarding due process and equal protection.  Doc. 77, at 5-6.  Specifically, Defendant objects to

3.5 hours spent on MS's unspecified legal research, and RT's 11.4 hours spent on due process

and equal protection research.  Id.  MS's entry of 3.5 hours for legal research and analysis should

be reduced to zero, as it is unclear what legal work this entry pertains.  MS's time entry is not

specific enough which prohibits the Court from determining what the research was for, to what

part of litigation it applied, and whether it could reasonably be billed to the client.  See

Maldonado, 256 F.3d at 184 (quoting Public Interest Group, 51 F.3d at 1188) ("Hours that would

not generally be billed to one's own client are not properly billed to an adversary."); see also

Hensley, 461 U.S. at 433 ("Where the documentation of hours is inadequate, the district court

may reduce the award accordingly.").  Additionally, RT's hours spent researching due process

and equal protection warrant a reduction.  RT is an attorney with 17 years of legal experience

and 8 years of civil rights related experience. Doc. 65-5, at 1-4. Additionally, the team working on these issues have a combined 60 years of civil rights related experience. Doc. 65-2, at 1-4; Doc. 65-3, at 1-4; Doc. 65-4, at 1-3; Doc. 65-5, at 1-4. Thus, 11.4 hours of research on due process and equal protection, which are common civil rights concepts, is excessive. Doc. 65-5, at 5-7. RT's due process and equal protection research hours should be reduced to 2 hours.

###    7.    A reduction is warranted in the hours spent conferring, strategizing, and brainstorming issues.

Defendant next objects to 35.35 hours Plaintiffs' attorneys spent conferring, strategizing, and brainstorming issues. Doc. 77, at 6. Defendant specifically notes that four seasoned attorneys did not need to spend so many hours developing one issue. Id. The Court does not find Defendant's argument persuasive. Notably, Plaintiffs argued and briefed more than one issue closely related to the issue on which they prevailed. It would be improper for this Court to separate the claims when they are so closely related. See Hensley, 461 U.S. at 436 (noting when all claims share a common core of facts or related legal theories, court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing fee). Nevertheless, I recommend a slight reduction of hours spent conferring. After review of the time entries, it is notable that multiple attorneys billed different amounts for the same meeting, resulting in inconsistent time keeping. See Hensley, 461 U.S. at 433. Accordingly, a reduction to 20 hours spent conferring is reasonable.

In total, Plaintiffs claim 415.70 hours of time as "time reasonably expended" for Plaintiffs' District Court litigation. Doc. 65-1, at 7. Defendant challenges 300.65 hours of that time. Doc. 77. The Court finds that of the 300.65 hours Defendant objects to only 205 hours were reasonably expended. Thus, the reasonable hours expended on Plaintiffs' District Court litigation is 320.05 hours. The Court notes that this case involved issues of first impression to

15

this Court, which was considered in the Court's overall calculation. Additionally, the Court made allowances for the added time pressures placed on the attorneys when handling election law issues.

### c. Third Circuit Litigation Hours

Plaintiffs filed a Motion for Attorney Fees in the Third Circuit pursuant to 42 U.S.C. § 1988 on the same grounds they asserted before the District Court. ECF. 97. Plaintiffs request $248.404.00 in attorneys' fees for 526.95 hours of time spent litigating before the Third Circuit.[9] ECF 97-1, at 9. Plaintiffs assert that the fee requested and hours expended are reasonable. Id. at 7-15. Defendant objects to the hours expended as excessive and unreasonable. ECF 105, at 2. Specifically, Defendant states that it is excessive that seven attorneys were involved in drafting three legal documents and participated in one oral argument. Id. at 15. Defendant also argues that multiple attorneys edited the same documents and participated in the same activities and that fewer attorneys with their experience could have handled the work. Id. Defendant specifically objects to the following hours expended:

| Item | Hours Expended |
|------|----------------|
| Plaintiffs' Principal/Opening Brief and Reply Brief | 228.75 |
| Preparing for, attending, and reviewing oral argument | 93.2 |
| Plaintiffs' Motion for Emergent Stay | 25.2 |
| Plaintiffs' Response to Ritter's Motion for a Stay | 10 |
| Strategy Meetings | 17.8 |

---

[9] Plaintiffs do not seek attorney's fees for attorney Connor P. Hayes's work. ECF 97-1, at 9.

| Total | 374.95 |
|-------|--------|

Doc. 105, at 15-16.  Defendant does not provide how much time Plaintiffs should have spent on each task.

     **1.  A reduction in the hours spent drafting Plaintiffs' Opening Brief and Reply Brief is warranted.**

Defendant objects to 228.75 hours spent drafting and revising Plaintiffs' opening brief and reply brief (Docs. 32 & 59) between six attorneys, Adriel I. Cepeda ("AC"), Ari Savitzky ("AS"), SL, RT, WW, and MS.  ECF 97-2, at 5-6; ECF 97-3, at 5; ECF 97-4, at 5-6; ECF 97-6, at 5-10; ECF 97-7, at 5-6.  Plaintiffs' opening brief is a 67-page document that contains two main arguments and six sub-arguments.  ECF 32.  Plaintiffs' reply brief is a 38-page document that contains three arguments and seven sub-arguments.  ECF 59.  Defendant claims that because multiple attorneys worked on the same brief some of the hours were repetitive and excessive.  ECF 105, at 15.  After reviewing Plaintiffs' billing sheets, it appears that three associates drafted the opening brief and rely brief, while two senior attorneys revised and edited the documents.  ECF 97-2, at 5-6; ECF 97-3, at 5; ECF 97-4, at 5-6; ECF 97-6, at 5-10; ECF 97-7, at 5-6.  Defendant notes that SL spent 42.7 hours drafting, AC spent 30.5 hours drafting, and AS spent 81.8 hours drafting and revising while WW spent 31.15 hours editing and MS spent 15.5 hours editing.  ECF 105, at 15-16.  Additionally, Defendant notes that RT spent 27.1 hours researching issues for the opening brief and reply brief.  ECF 105, at 16.  The total number of hours spent on the opening brief and reply are 228.75, resulting in a work rate of approximately 2.2 hours per page.

As previously determined, a rate of 2 hours per page for SL is reasonable.  AC has 12 years of legal experience, and 3 years of relevant civil rights related experience.  ECF 97-7, at 1-

2.  AS has 11 years of legal experience, 1 year of relevant civil rights related experience, and 6 years of Supreme Court and appellate litigation experience.  ECF 97-6, at 1-2.  Much like SL and RT, a reasonable work rate for an attorney of AC and AS's experience is 2 hours per page.  The time entries for each document listed, however, do not specify which parts of the briefs each associate completed.  Thus, the Court will divide the document page number by the three associates to avoid awarding fees for duplicative work.  See Hensley, 461 U.S. at 433 ("Where the documentation of hours is inadequate, the district court may reduce the award accordingly.").  The documents are 105 pages in total, and each associate will be credited with 34 pages of work product.[10]  ECF 32, 59.  SL's 42.7 hours is reasonable.  AC's 30.5 hours is reasonable.  AS's 81.6 hours should be reduced to 70 hours.  WW and MS's editing hours should be reduced to 13 hours each, which is a reasonable time for editing 105 pages of work product.  Lastly, RT spent 27.1 hours researching legislative history, laches, and injunctive relief.  ECF 97-5, at 5.  Given RT's experience and the previous arguments made before the District Court on some of the same topics, reducing this time to 4 hours of research is warranted and reasonable.  See Docs. 27, 33, 44, 48.  A total of 173.2 hours were reasonably expended on Plaintiffs' opening and reply briefs.

### 2.  A reduction is warranted in the number of hours Plaintiffs spent preparing, attending, and reviewing oral argument.

Defendant next objects to 93.2 hours spent preparing, attending, and reviewing oral argument.  ECF 105, at 15-16.  Defendant specifically notes that some attorneys billed time for the oral argument but did not attend.  Id.  Oral argument before the Third Circuit took place on May 18, 2022, and lasted a total of 40 minutes.  ECF 79.  Plaintiffs' counsel AS argued on behalf

---

[10] RT also drafted a section of the opening brief related to 52 U.S.C. §10101 which consisted of 3 pages.  ECF 32, at 12-15; ECF 97-5, at 5.  The Court has reduced the amount credited to each attorney by 1 page to account for RT's contribution.  Defendant does not object to the hours RT spent drafting this section.

of Plaintiffs.  Id.  The hours AS spent that Defendant objects to include oral argument

preparation, moot practice, oral argument attendance, and travel, totaling 63 hours.  Id.  MS

billed 9 hours for oral argument preparation, attendance, and review.  ECF 97-3, at 5.  SL billed

13.7 for oral argument preparation, moot participation, preparing a court ordered summary of

oral argument, and oral argument review.  ECF 97-4, at 6.  AC billed 7.5 hours for participating

in moot argument and reviewing the oral argument transcript.  ECF 97-7, at 6.

　　　AS argued Plaintiffs' opening brief which included two main augments and six sub-

arguments.  ECF 79.  The 6.5 hours AS expended for travel and attendance are reasonable.  ECF

97-6, at 5-10.  AS, however, spent 56.5 hours preparing for oral argument.  ECF 97-6, at 5-10.

While the Court appreciates the nuanced issues presented to the Circuit, the District Court record

was not extensive and AS spent a considerable amount of time briefing these issues in the

opening brief, so she was familiar with the facts and law.  See Maldonado, 256 F.3d at 187

(limiting hours spent preparing for oral argument to hours reasonably necessary for attorney to

become familiarized with the facts and law pertaining to issues argued, and reducing hours spent

preparing for oral argument because issues were extensively briefed and addressed by the

attorneys and district court).  Therefore, a reduction to 30 hours is reasonable.  SL attended

argument but did not argue.  ECF 97-4, at 6.  Due to SL's limited involvement in oral argument,

mostly preparing for an argument he did not argue, attending moot arguments with colleagues,

and drafting an argument summary, his time will be reduced to 5 hours for his entries related to

the oral argument.  See Maldonado, 256 F.3d at 187 (finding losing party is not expected to pay

for learning or excessively rehearsing appellate advocacy).  It is reasonable for MS, a

senior/supervising attorney, to attend oral argument with AS.  MS's 9 hours billed to preparation,

attendance, and review are also reasonable.  Lastly, AC did not attend oral argument but billed

for oral argument preparation and participating in moot argument.  ECF 97-7, at 6.  As a result, AC's time should be reduced to 4 hours, which includes one hour of oral argument recording review.  Id.  For these reasons, the hours reasonably expended on oral argument before the Third Circuit are 54.5 hours.

> **3. A reduction is warranted in the hours spent outlining, reviewing, and revising Plaintiffs' Emergency Motion for Injection Pending Appeal and for Temporary Administrative Relief.**

Defendant challenges attorney AS's 25.4 hours billed for outlining, reviewing, and revising Plaintiffs' Emergency Motion for Injection Pending Appeal and for Temporary Administrative Relief.[11]  ECF 105, at 16.  While AS did some initial drafting of the motion, she mainly revised the motion.  ECF 97-6, at 5-6.  The document is 32 pages.  ECF 6.  Given AS's experience and having primarily edited and revised the document, AS's reasonable hours expended on this task are reduced to 6 hours.

> **4. A reduction is warranted in the hours Plaintiffs spent editing and revising the Plaintiffs' opposition to Defendant Ritter's Motion for Stay.**

Defendant challenges 10 hours billed to editing and revising Plaintiffs' opposition to Defendant Ritter's Motion for Stay.  ECF 105, at 15.  Defendant specifically notes WW spent 10 hours revising the document.  Id.  The document is a total of 16 pages.  ECF 83.  For primarily having edited and revised the document, WW's reasonable hours expended on this task are 2.5 hours.

---

[11] The Court notes that Defendant objects to work performed on an "emergency stay motion." ECF 105, at 16.  It is unclear to the Court whether Defendant objects to AS's work on the emergent injunction filed before the Third Circuit (ECF 6-1) or the motion for emergency stay filed before the District Court (Doc. 52).  The Court addresses the emergency injunction in the Third Circuit since the hours spent on the motion align with Defendant's objection.  Nonetheless, if Defendant is objecting to the emergency stay filed before the District Court on which AS spent 16.2 hours working, this number is reasonable, and no reduction is warranted.  ECF 97-6, at 5-10.

**5. A reduction is warranted in the hours Plaintiffs spent conferring, corresponding, planning and conferencing on documents.**

Defendant next objects to 17.8 hours spent conferring, corresponding, planning and conferencing on documents. ECF 105, at 16. Defendant specifically notes that four seasoned attorneys did not need to spend so many hours developing one issue. Id. The Court does not find Defendant's argument entirely persuasive. Notably, Plaintiffs argued and briefed more than one issue closely related to the issue on which they prevailed. See Hensley, 461 U.S. at 436. I do, however, find the 11.8 hours AS spent conferring over documents to be excessive. ECF 97-6, at 5-10. On average, attorneys on this case spent 1.3 hours conferring regarding documents in this matter. ECF 97-2, at 5-6; ECF 97-3, at 5; ECF 97-4, at 5-6; ECF 97-7, at 5-6. AS's time should be reduced to 1.3 hours in line with the hours claimed by her co-counsel of the same experience and drafting involvement.

In total, Plaintiffs claim 526.95 hours of reasonable time expended for Plaintiffs' Third Circuit litigation. ECF 97-1, at 9. Defendant challenges 374.95 hours of that time. ECF 105. The Court finds that 243.5 hours of the 374.95 hours objected to were reasonably expended. Thus, 395.5 hours were reasonably expended on Plaintiffs' Third Circuit litigation.

**B. The relevant community for purposes of determining a reasonable hourly rate is Allentown.**

**a. Reasonable Hourly Rates in the Relevant Community Standard**

After establishing the reasonable hours expended, the Court is tasked with determining the reasonable hourly rate for each attorney. See MP by and through VC, 2021 WL 5177012, at *7. The reasonable hourly rate is calculated according to the prevailing market rates in the relevant community. Washington, 89 F.3d 1031, 1035 (citing Blum, 465 U.S. at 895-96). In general, the relevant community market rate is the market rate of the "vicinage of the litigation."

21

Interfaith Cmty. Org., 426 F.3d at 699; see Beattie v. Line Mountain School Dist., No. 13-cv-2655, 2014 WL 3400975 at *9 (M.D. Pa. July 10, 2024) (holding that, under the vicinage of litigation standard, forum rate rule applies to individual vintages within Middle District of Pennsylvania and declining to adopt one rate for entire district); see also Maldonado, 256 F.3d at 187-188; Rainey, 832 F. Supp. at 129 (applying Philadelphia market rates for litigation filed and litigated in the Eastern District of Pennsylvania-Philadelphia). There are, however, two exceptions to this rule. "[I]f a prevailing party can show that it required the particular expertise of counsel from another vicinage, or that local counsel were unwilling to take on the litigation, then it will be entitled to compensation based on prevailing rates in the community in which its attorneys practice." Interfaith Cmty. Org., 426 F.3d at 699. "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum, 465 U.S. at 895, n. 11.

Here, the suit was filed and litigated in the Eastern District of Pennsylvania ("EDPA")-Allentown. See Docket, Migliori et al v. Lehigh Cty. Bd. of Elections, No. 22-cv-397. Defendant argues that Allentown civil rights attorney rates should apply because this matter was litigated in the Allentown vicinage. Doc. 77, at 7. Plaintiffs argue that Philadelphia rates should apply because the suit was filed in the EDPA, as a whole, and the Third Circuit applied one rate to an entire district in the past. Doc. 72, at 7. The Court is not persuaded by Plaintiffs' argument. See Interfaith Cmty. Org., 426 F.3d at 699; see also Beattie, 2014 WL 3400975 at *9.

Plaintiffs rely on Pub. Int. Rsch. Grp. of N.J., Inc. v. Windall, 51 F.3d 1179 (3d Cir. 1995). In Windall, plaintiff filed suit in the District Court of New Jersey-Trenton. Id. at 1182.

The defendant contended that southern New Jersey was the relevant community and that southern New Jersey market rates should apply to the fees requested. Id. at 1186. The Third Circuit found no error in the Magistrate's application, and District Judge's adoption, of one rate for the entire district of New Jersey because (1) the district court served the entire state of New Jersey and it is common practice for attorneys throughout the state to appear in the Trenton vicinage; (2) the record lacked any evidence establishing the geographic boundaries of the southern New Jersey legal market; and (3) evidence in the record showed few southern New Jersey law firms were available and willing to represent plaintiff. Id. at 1187-88. The Court's holding in Windall is notable because the Court considered the exceptions to the general rule when making its determination and also evaluated the lack of geographical boundaries which are distinguishable from this matter. Id.

    In this case, the EDPA does not serve the entire state of Pennsylvania. Unlike the District Court of New Jersey, all suits filed in Pennsylvania do not necessarily fall under the EDPA's jurisdiction. Compare Id. Further, the EDPA has vicinages in Allentown, Reading, Easton, and Philadelphia, and each vicinage is over an hour and a half from Philadelphia and contain different legal markets with different attorney rates. While Plaintiffs argue that applying vicinage specific rates would be unfair to plaintiffs since plaintiffs have no control over which vicinage the matter is assigned to, the Court disagrees. E.D. Pa. Local Rule 40.1§ II specifically states that if plaintiff or defendant resides in or the cause of action occurred in a specific set of counties the case will be assigned to the Reading, Allentown, or Easton vicinages. Thus, a clear

procedure for assignment of cases exists and the Court makes clear geographical distinctions when assigning cases to specific vicinages.[12]

Plaintiff additionally argues that the majority of counsel appearing for civil rights cases assigned to Allentown are from the Philadelphia region, so Philadelphia market rates should apply.  Doc. 99, at 2.  The Third Circuit in Interfaith Comm. Org., however, explicitly rejected this notion.  See Interfaith Comm. Org., 426 F.3d at 704-05 (holding that the "forum rate," that is the reasonable hourly rate where litigation occurs and not the rate where counsel practices, applies unless the prevailing party can meet one of the exceptions).  Additionally, unlike the plaintiff in Windall who provided evidence for the scarcity of local counsel exception, Plaintiffs do not argue any of the exceptions to the general "vicinage of litigation" rule.  Therefore, I submit the rates for plaintiff's side civil rights attorneys of comparable skill and experience in Allentown should apply.

### b.  Reasonable Hourly Rates Determination

Next, Plaintiffs assert that the requested hourly rates, which comport with the CLS fee schedule, are the reasonable hourly rates of plaintiff's side civil rights attorneys in Allentown. Doc. 99.  Defendant argues that the reasonable hourly rates of civil rights attorneys in Allentown are considerably less than those Plaintiffs proposed.  Doc. 98-1.  Plaintiffs request $750 per hour for WW and MS, $25 per hour more than the highest amount CLS recommends for an attorney with 25+ years of experience.  Doc. 65-1, at 8; see infra note 15.  Plaintiff further asks for $525 per hour for SL and $474 per hour for RT.  Doc. 65-1, at 9.  Regarding Plaintiffs' Third Circuit

---

[12] This Court does not consider or determine in this opinion the reasonable hourly market rates in Reading or Easton.

litigation, Plaintiffs request $375 for AS, $400 for AD, and $360 for Sophia Lin Lakin ("SLL").[13] ECF 97-1, at 12-15.

Plaintiffs, as the prevailing party, are required to submit, "satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum, 465 U.S. at 895, n. 11. Likewise, it is the opposing party's burden to produce contradicting evidence. See Washington, 89 F.3d at 1036 (quoting Griffiths v. Cigna Corp., Nos. 94-2090 & 94-2091, 77 F.3d 462 (3d Cir. 1995)). If the prevailing party meets their burden the court may not exercise its discretion to adjust the requested rate downward. Id. If the prevailing party, however, fails to produce satisfactory evidence of the reasonable market rate then the court must exercise its discretion in fixing a reasonable hourly rate. Id.

Plaintiffs submitted two affidavits in addition to its own attorney affidavits regarding reasonable hourly rates. Docs 65, 99. Plaintiffs' first affidavit is from Donald E. Wieand, Jr. Doc. 99-1, at 3-7. Mr. Wieand has practiced civil litigation, specifically civil rights defense, for 25 years in the Lehigh and Northampton Counties. Id. Mr. Wieand certifies that Plaintiffs' requested rates are the prevailing rates in Allentown for civil rights attorneys of similar experience. Id. at 7. Mr. Wieand, however, notes that the $750 requested for WW and MS is on the high end of the prevailing rate, but is still reasonable. Id. at 4. Plaintiffs also provided an affidavit from Peter Winebrake. Doc. 99-1 at 9. Mr. Winebrake is the managing partner at Winebrake & Santillo, LLC in Drasher, PA. Id. Mr. Winebrake has represented plaintiffs in

---

[13] Plaintiffs proposed the same hourly rates for WW, MS, SL, and RT for their involvement in the Third Circuit and District Court litigation. ECF. 97-1, at 10-12

employment rights litigation since 2007 and has frequently sought recovery of fees under fee shifting statutes in the EDPA. Id. Mr. Winebrake certifies that the hourly rates for his practice throughout EDPA follow the CLS fee schedule. Doc. 99-1, at 9-13. Thus, the hourly rates Plaintiffs requested are appropriate for Allentown litigation. Id. Defendant rebuts Plaintiffs' submissions with an affidavit from Joshua A. Mazin. Doc. 98. Mr. Mazin is an equity partner at Repka Mazin LLC, in Easton, PA, and practices civil litigation including civil rights, school and education law, and employment matters. Doc. 98. Mr. Mazin also serves as an assistant solicitor at the Lehigh County Department of Law where he litigates matters on behalf of the county. Id. He has practiced for 24 years. Id. Mr. Mazin notes that he considered the CLS fee schedule's suggested rates for fee shifting cases. Id. Mr. Mazin also relies on many Middle District of Pennsylvania cases from 2015-2016, involving attorneys' fees and attorneys involved in this matter, when recommending the reasonable hourly rates for civil rights attorneys in Allentown. Id. Mr. Mazin recommends the following rates for each attorney: $375 for WW and MS, and $250 for SL and RT. Id.

 Both parties have failed to meet the burden of establishing the market rate of plaintiff's side civil rights attorneys in Allentown. While the parties submitted affidavits from defense litigators and an affidavit from an employment rights litigator, these affidavits are insufficient to establish the requested market rate for plaintiff's side civil rights attorneys in Allentown. See Washington, 89 F.3d at 1036 (quoting Griffiths, 77 F.3d 462) (holding plaintiffs failed to meet their burden because they failed to submit affidavits specifically addressing the experience and skill of two attorneys claiming fees, and finding affidavits from defense attorneys regarding plaintiff attorney rates insufficient to effectively challenge the reasonable hourly market rate claimed by plaintiff's attorneys). Additionally, Defendant failed to provide any evidence

rebutting the requested hourly rates for AS, AC, and SLL.  Id.; Doc. 98.  Therefore, the Court

must use its discretion to establish the reasonable hourly market rate.  Id. (holding in absence of

prima facie showing of reasonable hourly rate, district court must exercise its discretion in fixing

a reasonable hourly rate).

When determining the reasonable attorney rate the Court must, "assess the experience

and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the

community for similar services by lawyers of reasonably comparable skill, experience, and

reputation."[14]  See Interfaith Comm. Org., 426 F.3d at 708 (quoting Loughner v. Univ. of

Pittsburg, 260 F.3d 173, 180 (3d Cir. 2001)).  The Court may consider the parties' submissions

when determining the reasonable hourly rate.  See Blum, 465 U.S. at 895, n. 11.  While Plaintiffs

failed to meet their burden and Defendant failed to rebut the hourly rate proposed, the Court

finds the CLS fee schedule persuasive.  All attorneys that submitted affidavits on behalf of the

parties referenced or relied on the CLS fee schedule when they determined the reasonable hourly

rates for plaintiff's side civil rights attorneys in Allentown.  Doc.  98, at 4; Doc. 99-1, at 7; Doc.

99-1, at 11-12.  Accordingly, the Court finds that the CLS fee schedule reflects a reasonable

hourly rate for plaintiff's side civil rights attorneys in Allentown.[15]  I recommend the following

---

[14] Attorney admission to the bar is the relevant starting point for evaluating experience.  MP by
and through VC, 2021 WL 5177012, at *2 (citing Maldonado, 256 F.3d at 187).
[15] The recommended rates comport with the 2018 CLS fee schedule which was in effect at the
time litigation started.  The 2018 CLS fee schedule is as follows:

      Attorneys post-law school experience under 2 years $200-$220
      Attorneys 2-5 years experience $230-$275
      Attorneys 6-10 years experience $280-$360
      Attorneys 11-15 years experience $375-$450
      Attorneys 16-20 years experience $475-$530
      Attorneys 21-25 years experience $550-$640
      Attorneys more than 25 years experience $650-$725
      Law Students $110-$160

reasonable hourly rates for each attorney. The recommended hourly rates are based on each attorney's representation to the Court regarding experience, skill, reputation, and claimed billing rates, and are recommended within the suggested CLS fee schedule experience bands.[16]  See Docs. 65-2, 65-3, 65-4, 65-5; ECF 97-2, 97-3, 97-4, 97-5, 97-6, 97-7, 97-8.

| Attorney | Hourly Rate |
|----------|-------------|
| WW | $725 |
| MS | $725 |
| SL | $525 |
| RT | $475 |
| AC | $400 |
| AS | $375 |
| SLL | $360 |

After determining the reasonably expended hours and reasonable hourly rate for each attorney, I recommend the Court award Plaintiffs the following lodestar amounts:

| District Court Litigation | | |
|---------------------------|--------------|-------------|
| Attorney | Hours x Rate | Total |
| WW | 46.45 x $725 | $33,676.25 |
| MS | 59.95 x $725 | $43,463.75 |
| SL | 132.7 x $525 | $69,667.50 |
| RT | 81.1 x $475 | $38,522.50 |
| Total | | $185,330.00 |

---

[16] The Court finds $725 per hour the reasonable market rate for WW and MS, instead of the $750 proposed hourly rate. The Court adopts the CLS fee schedule in this matter and $725 reflects the top of the 25+ years' experience band on the CLS fee schedule. The Court's decision relies on WW and MS's submissions regarding their 25+ years of experience, skill, and specialized knowledge respectively, and the suggested CLS fee schedule rate as explained above. Docs. 65-2, 65-3; ECF 97-2, 97-3.

| Third Circuit Litigation | | |
|---|---|---|
| Attorney | Hours x Rate | Total |
| WW | 21.55 x $725 | $15,623.75 |
| MS | 36.25 x $725 | $26,281.25 |
| SL | 84.4 x $525 | $44,310 |
| RT | 10.4 x $475 | $4,940 |
| AC | 64.5 x $400 | $25,400 |
| AS | 148.5 x $375 | $55,687.50 |
| SLL | 29.4 x $360 | $10,764 |
| Total | | $183,006.50 |

Accordingly, I recommend the reasonable attorney's fees for Plaintiffs' District Court litigation and Third Circuit litigation total $368,336.50.

## <u>RECOMMENDATION</u>

AND NOW, on May 19, 2025, it is respectfully recommended that the hours reasonably expended for Plaintiffs' District Court litigation are 320.05 hours and 395.5 hours for Plaintiffs' Third Circuit litigation.  It is further recommended that the Court grant the reasonable hourly rates set forth in this report and recommendation.  Finally, I recommend the Court find the lodestar calculation reasonable and adequate,[17] granting in part, and denying in part, Plaintiff's motion for attorneys' fees (Doc. 65) in the amounts explained above.[18]


BY THE COURT:

<u>/s/ Craig M. Straw</u>
CRAIG M. STRAW, U.S.M.J.

---

[17] The lodestar calculation adequately encompasses <u>Johnson</u> factor considerations.  <u>See</u> <u>Souryavong</u>, 872 F.3d at 128.

[18] Plaintiffs additionally claim 32.95 hours totaling $18,610.00 in fees for litigating the attorneys' fees petitions.  Doc. 76, at 3.  While the Court agrees these fees are recoverable, Plaintiffs failed to provide any documentation in support of the hours worked.  <u>See</u> <u>Prandini v. Nat'l Tea Co.</u>, 585 F.2d 47, 53 (3d Cir. 1978) ("[T]he time expended by attorneys in obtaining a reasonable fee is justifiably included in the attorneys' fee application, and in the court's fee award."); <u>see also</u> <u>Hensley</u>, 461 U.S. at 433 (requiring evidence to support the hours worked and rates claimed). Thus, the Court recommends denying Plaintiff's request for fees pertaining to the attorneys' fees litigation.  <u>See</u> <u>Hensley</u>, 461 U.S. at 433 (allowing court discretion when documentation of hours is inadequate).